SHANNON LISS-RIORDAN (SBN 310719)
(sliss@llrlaw.com)
LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, MA 02116
Telephone:     (617) 994-5800
Facsimile:      (617) 994-5801

Attorney for Plaintiffs

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THOMAS COLOPY, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>UBER TECHNOLOGIES, INC,<br><br>Defendant. | Case No. 19-cv-06462<br><br>**NOTICE OF MOTION AND MOTION FOR PRELIMINARY INJUNCTION**<br><br>**Hearing:**<br>Judge: Hon. Edward Chen<br>Courtroom: Courtroom 05, 17th Floor<br>Time: 1:30 p.m.<br>Date: Nov. 21, 2019 |

# NOTICE OF MOTION

PLEASE TAKE NOTICE that Plaintiff Thomas Colopy moves this Court for a preliminary injunction to prevent Defendant Uber Technologies, Inc. from misclassifying Plaintiff and all others similarly situated, namely all other individuals working as Uber drivers in California, as independent contractors, when they should be classified as employees under California law.

This motion is supported by the attached memorandum of law and the pleadings in this action.

Dated: October 8, 2019               Respectfully submitted,

                                     THOMAS COLOPY, individually and on behalf of all others similarly situated,

                                     By his attorney,

                                     ___/s/ Shannon Liss-Riordan___
                                     Shannon Liss-Riordan (SBN 310719)
                                     LICHTEN & LISS-RIORDAN, P.C.

# **TABLE OF CONTENTS**

I.   INTRODUCTION ........................................................................................................ 1

II.  FACTUAL AND PROCEDURAL BACKGROUND........................................................ 3

    A.   The Court Should Grant Plaintiff's Motion for a Preliminary Injunction ................................................................................................... 5

        i.   Standard of Review............................................................................. 5

        ii.  Plaintiff Has Raised Serious Questions on the Merits................................ 6

        iii. Plaintiff and the Class and the Public Interest Will Suffer Irreparable Harm if an Injunction is Not Issued ........................................ 8

        iv.  The Balance of Hardships Tips Sharply in Plaintiff's Favor..................... 10

        v.   An Injunction is in the Public Interest ..................................................... 11

III. CONCLUSION............................................................................................................ 11

# **TABLE OF AUTHORITIES**

**Cases**

Alliance for the Wild Rockies v. Cottrell,
    632 F.3d 1127 (9th Cir. 2011) .................................................................................... 5, 6

Arizona Dream Act Coalition,
    757 F.3d 1053 (9th Cir. 2014) .................................................................................... 8, 9

Blair v. Rent-A-Center, Inc.,
    928 F.3d 819 (9th Cir. 2019) ........................................................................................... 8

Cavillo Manriquez v. Devos,
    345 F. Supp. 3d 1077 (N.D. Cal. 2018) ........................................................................... 9

Chalk v. U.S. Dist. Court Cent. Dist. of California,
    840 F.2d 701 (9th Cir. 1988) .......................................................................................... 10

Dynamex Operations W., Inc. v. Superior Court,
    4 Cal. 5th 903 (2018) ............................................................................................... passim

McGill v. Citibank, N.A.,
    2. Cal. 5th 945 (2017) ................................................................................................. 7, 8

O'Connor v. Uber Technologies, Inc.,
    82 F. Supp. 3d 1133 (N.D. Cal. 2015) .............................................................................. 7

O'Connor v. Uber Technologies, Inc.,
    C.A. No. C-13-3826 ........................................................................................................ 11

Rittman v. Amazon,
    383 F. Supp. 3d 1196 (W.D. Wash. 2019) ....................................................................... 7

Robinson v. Jardine Ins. Brokers Intern. Ltd.,
    856 F. Supp. 554 (N.D. Cal. 1994) ................................................................................. 10

Singh v. Uber Technologies
    (3rd Cir., Sept. 11, 2019), C.A. No. 17-1397, 2019 WL 4282185 .................................. 7

Waithaka v. Amazon,
    C.A. No. 18-40150-TSH, 2019 WL 3938053 (D. Mass., Aug. 20, 2019) ...................... 7

**Statutes**

2019 California Assembly Bill No. 5, California 2019-2020 Regular Session ("AB 5") ..... passim

Cal. Lab. Code § 1182.12 ........................................................................................................ 1

Cal. Lab. Code § 1194 ............................................................................................................. 1

Cal. Lab. Code § 1197 ............................................................................................................. 1

Cal. Lab. Code § 1198 ............................................................................................................. 1

Cal. Lab. Code § 1199 ............................................................................................................. 1

Cal. Lab. Code § 280 ............................................................................................................... 1

Cal. Lab. Code § 510 ........................................................................................................................ 1

Cal. Lab. Code § 544 ........................................................................................................................ 1

Uniform Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202 ............................................... 7

**Other Authorities**

Carolyn Said,
   *Uber: We'll Fight In Court To Keep Drivers As Independent Contractors*, San Francisco
   Chronicle, Sept. 11, 2019,
   https://www.sfchronicle.com/business/article/Uber-We-ll-fight-in-court-to-keep-drivers-
   as-14432241.php ........................................................................................................................ 2

Cheryl Miller,
   *Uber's Top Lawyer Vows Fight as California Embraces Sweeping New Labor Rules*, The
   Recorder (Sept. 11, 2019) ........................................................................................................... 2

Kate Conger and Noam Scheiber,
   *California Bill Makes App-Based Companies Treat Workers as Employees*, N.Y. Times,
   Sept. 11, 2019,
   https://www.nytimes.com/2019/09/11/technology/california-gig-economy-bill.html ............ 2, 4

Michael J. de la Merced and Kate Conger, *Uber I.P.O. Values Ride-Hailing Giant at $82.4
   Billion*, N.Y. Times, May 9, 2019, https://www.nytimes.com/2019/05/09/technology/uber-
   ipo-stock-price.html ................................................................................................................. 10

Tracey Lien,
   *Most Uber and Lyft drivers in L.A. Work Full Time and Still Struggle To Make Ends Meet,
   Study Say*, L.A. Times, May 30, 2018,
   https://www.latimes.com/business/technology/la-fi-tn-uber-lyft-work-study-20180530-
   story.html .................................................................................................................................... 9

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF HER MOTION FOR INJUNCTIVE RELIEF**

## I. INTRODUCTION

Plaintiff brings this motion to seek a preliminary injunction against Uber for misclassifying Uber drivers, including Plaintiff, as independent contractors when they should be classified as employees under California law.  As a result of this misclassification, Uber has forced Plaintiff and other Uber drivers to pay business expenses (including but not limited to the cost of maintaining their vehicles, gas, insurance, phone and data expense, and other costs) in violation of Cal. Lab. Code § 2802, and has failed to guarantee that Plaintiff and other Uber drivers received minimum wage for all hours worked and failed to pay overtime premium for hours worked in excess of forty hours per week, thereby violating numerous provision of the California Labor Code.  Cal. Lab. Code §§ 1182.12, 1194.2, 1194, 1197, 1197.1, 1198, 1199, 510, and 544; see also Compl. Dkt-1 at p. 2.

Uber drivers are harmed by these violations, as drivers struggle to earn a living wage due to the burden of paying necessary business expenses and the loss of workplace and wage protections under Uber's misclassification scheme.  Uber has furthermore exacted an irreparable, public harm on the State of California, by diminishing labor standards, depriving the state of tax revenue, costing the state and taxpayers money in public assistance that is needed for Uber drivers who cannot meet their basic necessities due to their being deprived of their rights under the Labor Code and Wage Orders, and unfairly disadvantaging other transportation companies who classify drivers as employees in compliance with California state law.

Since the California Supreme Court's decision in Dynamex Operations W., Inc. v. Superior Court, 4 Cal. 5th 903, 956–57 (2018), which adopted the stringent "ABC test," see discussion infra at pp. 4, 8,  whereby an alleged employer must prove all three prongs of the test in order to justify independent contractor status, including that workers "performs work that is outside the usual course of the hiring entity's business," id. at 957, Uber has faced an uphill (and insurmountable) battle in justifying its classification of drivers as independent contractors.

The California state legislature just made this battle even more difficult this week, with

the passage of Assembly Bill No. 5 ("AB 5"), which (as both the public and legislators understand) speaks directly to Uber's (and other "gig economy" companies') misclassification of their drivers.[1]  As the preamble to the legislation makes clear, arguments that Uber drivers are independent contractors will fail under the new statute and the continued misclassification of these drivers as independent contractors constitutes a public harm to the State of California and its residents, as well as harm to drivers and competing complying companies.  Despite the clear message of AB 5, Uber has announced its intent to continue misclassifying drivers beyond the bill's effective date, on January 1, 2020, despite Dynamex and AB 5.[2]  Uber's chief legal officer, Tony West, indicated the company will continue to pursue its legal strategy of battling in court and delaying resolution (primarily through litigating Uber's arbitration clauses): "We continue to believe that drivers are properly classified as independent [contractors] . . . We expect we will continue to respond to claims of misclassification in arbitration and in court, as necessary, just as we do now."[3]

---

[1]  See, e.g., Kate Conger and Noam Scheiber, *California Bill Makes App-Based Companies Treat Workers as Employees*, N.Y. Times, Sept. 11, 2019, https://www.nytimes.com/2019/09/11/technology/california-gig-economy-bill.html  (last accessed Sept. 12, 2019) ("California legislators approved a landmark bill on Tuesday that requires **companies like Uber** and Lyft to treat contract workers as employees") (emphasis supplied); Liam Nelson, *Sweeping Bill On Independent Contractors Passes California State Senate*, L.A. Times, https://www.latimes.com/california/story/2019-09-10/california-ab5-independent-contractors-employees-newspapers (last accessed Sept. 12, 2019) (describing Senator Gonzalez, who introduced the bill, having to resists pushback from "most notably **Uber**, Lyft, Postmates and Doordash") (emphasis supplied); George Skelton, *Labor won big with bill to rewrite California employment law – but its' flawed*, L.A. Times, https://www.latimes.com/california/story/2019-09-11/skelton-ab5-independent-contractors-california-employment-law (last accessed Sept. 12, 2019) ("**most of the public's attention concerning the bill has focused on Uber** and Lyft drivers").

[2]  California's Governor, Gavin Newsom, has already endorse the bill and is expected to sign AB 5 into law this month, which would give the bill an effective date of Jan. 1, 2020. Conger, supra n. 1. Cheryl Miller, *Uber's Top Lawyer Vows Fight as California Embraces Sweeping New Labor Rules*, The Recorder (Sept. 11, 2019).

[3]  Carolyn Said, *Uber: We'll Fight In Court To Keep Drivers As Independent Contractors*, San Francisco Chronicle, Sept. 11, 2019, https://www.sfchronicle.com/business/article/Uber-We-ll-fight-in-court-to-keep-drivers-as-14432241.php (last accessed Sept. 13, 2019).

This case is no usual case. The "ABC test" has been the law in California since <u>Dynamex</u> was issued and is only further reinforced with the passage of AB 5 this week. As demonstrated by the intense public debate surrounding the <u>Dynamex</u> decision and subsequent codification through AB 5—but continued obstinance of Uber in the face of clear law—this case is an extreme case that compels a preliminary injunction. The legislature's passage of the bill, which is expected to be signed into law shortly by the Governor, underscores the strong public interest in making this injunction necessary and appropriate.

For the foregoing reasons, and as outlined below, Plaintiff respectfully requests that this Court issue a preliminary injunction enjoining Uber from misclassifying its drivers and ordering that Uber classify its drivers as employees so as to prevent irreparable harm to Uber drivers and the public.

## II.     FACTUAL AND PROCEDURAL BACKGROUND

On October 8, 2019, Plaintiff brought this class action complaint alleging that Defendant Uber Technologies, Inc. ("Uber") has misclassified Plaintiff Colopy and similarly situated individuals as independent contractors, when the reality of the situation is that they are employees of Uber and therefore entitled to employment protections under the California Labor Code. <u>See</u> Compl. Dkt-1, at ¶2.

Plaintiff is an adult resident of San Franciso, California, where he has been driving for Uber since November of 2012. Complaint ¶5. Uber has misclassified him, and other Uber drivers, as independent contractors. Complaint ¶13. As a result of this misclassification, Plaintiff and other Uber drivers have suffered a variety of other wage law violations.

In summer of 2018, the California Supreme Court issued a strong statement regarding the importance of proper classification of workers as employees and how critical it is to the State of California that workers receive protection under the Labor Code. In <u>Dynamex Operations W., Inc. v. Superior Court</u>, 4 Cal. 5th 903, 956–57 (2018), the California Supreme Court adopted an especially stringent "ABC" test for employee classification, making it very difficult for alleged

employers to justify classifying workers as independent contractors.[4]  Because of the difficulty, in particular, of Uber proving Prong B of this test, Plaintiff will have has a strong chance for success on the merits.  Plaintiff's likelihood of success is magnified under AB 5, which codifies Dynamex and is directed at Defendant's misclassification policies.  See discussion supra n. 1.

Plaintiff's likelihood of success is ***heightened*** by the passage this week of the 2019 California Assembly Bill No. 5, California 2019-2020 Regular Session, ("AB 5"), which codifies Dynamex and is directed at Uber's misclassification policy.  See discussion infra p. 2 at note 1.  The bill passed the California State Assembly, Governor Gavin Newsom has pledged to sign the bill into law, and AB 5 expected to become effective Jan. 1, 2020.[5]  The California legislature explained that the bill intended to codify and clarify the application of Dynamex.[6]  The state legislature also acknowledged, and outlined, the public harms exacted in absence of proper classification.  Legislators put it bluntly in Section 1 of the bill: "The misclassification of

---

[4]  Under this "ABC" test, which the Court adopted from Massachusetts, the burden is on the alleged employer to prove three prongs in order to justify independent contractor status, including: "(A) that the worker is free from the control and direction of the hiring entity in connection with the performance of the work, both under the contract for the performance of the work and in fact; and (B) that the worker performs work that is outside the usual course of the hiring entity's business; and (C) that the worker is customarily engaged in an independently established trade, occupation, or business of the same nature as the work performed." Id. at 957.

[5]  Kate Conger and Noam Scheiber, *California Bill Makes App-Based Companies Treat Workers as Employees*, N.Y. Times, Sept. 11, 2019, https://www.nytimes.com/2019/09/11/technology/california-gig-economy-bill.html  (last accessed Sept. 12, 2019).

[6]  "This bill would state the intent of the Legislature to codify the decision in the Dynamex case and clarify its application. The bill would provide that for purposes of the provisions of the Labor Code, the Unemployment Insurance Code, and the wage orders of the Industrial Welfare Commission, a person providing labor or services for remuneration shall be considered an employee rather than an independent contractor unless the hiring entity demonstrates that the person is free from the control and direction of the hiring entity in connection with the performance of the work, the person performs work that is outside the usual course of the hiring entity's business, and the person is customarily engaged in an independently established trade, occupation or business." 2019 California Assembly Bill No. 5, California 2019-2020 Regular Session

workers as independent contractors has been a significant factor in the erosion of the middle class and the rise in income inequality." Id.  The bill's author articulated her motivation and the intent even more clearly, stating that the bill's message is that the state legislature "will not in good conscience allow free-riding businesses to profit off depriving millions of workers from basic employee rights that lead to middle-class job."[7]

Thus, Plaintiff has a strong likelihood of success, but absent prompt court intervention, Uber will continue to violate it drivers' basic rights and diminish the labor standards of California's transportation industries, and will continue to put the onus on the State of California to provide a financial safety net for its drivers (and essentially subsidize Uber's continued misclassification of its drivers), despite the California Supreme Court's decision and legislature's determination that to do so constitutes a public harm.  Accordingly, Plaintiff and similarly situated Uber drivers, as well as competing companies who are attempting to comply with the law, as well as the coffers of California, will suffer irreparable harm in the absence of a preliminary injunction while enduring years more of litigation.  This Court should therefore grant preliminary injunctive relief and enjoin Uber from classifying Plaintiff and other Uber drivers as "independent contractors" and order Uber to classify its drivers as employees under California law.

### A. The Court Should Grant Plaintiff's Motion for a Preliminary Injunction

#### i. Standard of Review

This Court has the authority to issue a preliminary injunction under Fed. R. Civ. P. 65(a) and (b).  In order to prevail on a motion for a preliminary injunction, Plaintiffs must establish that they are likely to suffer irreparable harm, that they have raised "serious questions" going to the merits of their claim, that the balance of hardships tips sharply in their favor, and that an injunction would be in the public interest. Alliance for the Wild Rockies v. Cottrell, 632 F.3d 1127, 1134–39 (9th Cir. 2011).  The Ninth Circuit follows a "sliding scale approach," under

---

[7]   Miller, supra note 2.

which the "elements of the preliminary injunction test are balanced, so that a stronger showing of one element may offset a weaker showing of another." Id. at 1131.  As set forth below, Plaintiff meets all of these requirements and, moreover, when balanced in conjunction with each other (given the likelihood of success on the merits and the scale of the harm), compel the issuance of a preliminary injunction.

### ii. Plaintiff Has Raised Serious Questions on the Merits

Plaintiff needs not show a "likelihood of success" on the merits, but only that he has raised "serious questions" on the merits (so long as Plaintiff also shows irreparably injury, that the injunction is in the public interest, and that the balance of hardship tips in Plaintiff's favor). See Cottrell, 632 F.3d at 1135.

Here, Plaintiff has shown all these factors.  Moreover, Plaintiff has not merely raised "serious questions" on the merits – he *has* demonstrated an indisputable likelihood of success on the merits.

Under Dynamex and the stringent "ABC test" adopted in that case, workers are presumed to be employees. Dynamex, 4 Cal. 5th at 956-57.  The putative employer bears the burden of proving the conjunctive, three-prong test that: "(A) the worker is free from the control and direction of the hiring entity in connection with the performance of the work, both under the contract for the performance of the work and in fact; *and* (B) that the worker performs work that is outside the usual course of the hiring entity's business; *and* (C) that the worker is customarily engaged in an independently established trade, occupation, or business of the same nature as the work performed." Id. at 956-57.  Uber cannot meet its burden to justify independent contractor status for its drivers under the "ABC" test because its drivers perform services in the usual course of Uber's business as a transportation service, and thus, Uber cannot prove Prong B.  As Judge Chen stated in denying Uber's motion for summary judgment on misclassification claims under the "ABC test" in California, "it strains credulity to argue that Uber is not a 'transportation company' or otherwise is not in the transportation business; it strains credulity even further to argue that Uber drivers do not provide Uber a valuable service." O'Connor v. Uber Technologies,

Inc., 82 F. Supp. 3d 1133, 1144 (N.D. Cal. 2015).

This conclusion is underscored, and Plaintiff's likelihood of success on the merits and under this argument, heightened with the passage of AB 5. Not only does the legislature and public understand the Bill to be aimed at Uber – and to act as a directive to the company to reclassify its drivers as employees, see supra p. 2 at note 1 – the legislature explicitly stated that the bill was meant to not only clarify Dynamex but, in doing so, "increase the categories of individuals [classified as employees and therefore] eligible to receive benefits from, and thus would result in additional moneys being deposited into, the Unemployment Fund." 2019 California Assembly Bill No. 5, California 2019-2020 Regular Session (Preamble). As the bill acknowledges, this expansion comes not from a change in the law, but rather from the declaration that the law represents: companies like Uber must come into compliance with Dynamex. Uber recognized that the bill was aimed at Uber's misclassification, and launched an aggressive lobbying campaign to block the bill, which it failed to do; Uber then lobbies for an exemption and failed yet again.

Because Plaintiff is seeking a public injunction under the Uniform Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, see Compl. Dkt-1, at ¶ 46, his claim cannot be compelled to arbitration under California state law. As the California Supreme Court held in McGill v. Citibank, N.A., 2. Cal. 5th 945, 962 (2017), an arbitration agreement cannot deny a Plaintiff the right to seek a public injunction in order to vindicate his statutory rights; such an agreement is unenforceable as contrary to public policy.[8] Although this case proceeds in federal court,

---

[8] In addition to McGill, which prohibits a defendant's use of an arbitration clause to block a public injunction claim in court, Plaintiff now has an additional argument as to why Uber's arbitration clause cannot be enforced. This week, the Third Circuit ruled in Singh v. Uber Technologies (3rd Cir., Sept. 11, 2019), C.A. No. 17-1397, 2019 WL 4282185, that drivers who transport passengers may be exempt from the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, under the transportation worker exemption. See also Rittman v. Amazon, 383 F. Supp. 3d 1196, 1200–02 (W.D. Wash. 2019) (drivers need not cross state lines themselves in order to satisfy the transportation worker exemption to the FAA, so long as some—though not all--of what they are transporting has crossed state lines); Waithaka v. Amazon, C.A. No. 18-40150-TSH, 2019 WL 3938053, at *2–4 (D. Mass., Aug. 20, 2019) (same).

California law applies to the contract enforceability analysis and so, under McGill, Plaintiff's claim for public injunction will (or at the very least is likely to) proceed in court. See, e.g., Blair v. Rent-A-Center, Inc., 928 F.3d 819, 827–32 (9th Cir. 2019) (ruling that that Federal Arbitration Act ("FAA") did not preempt the McGill rule).  Accordingly, Plaintiff has also demonstrated likelihood of success on the merits of this claim in court.

Absent court intervention, however, Uber drivers, as well as the State of California, will suffer irreparable harm if Uber is able to delay this case (as it has delayed past litigation) for years while awaiting resolution. As outlined further below, a public injunction to prevent this harm is in the public's best interest (as already determined by this state's legislature), and the balance of hardship tips sharply in favor of Plaintiff.

### iii. Plaintiff and the Class and the Public Interest Will Suffer Irreparable Harm if an Injunction is Not Issued

"Irreparable harm is traditionally defined as harm for which there is no adequate legal remedy, such as an award of damages." Arizona Dream Act Coalition, 757 F.3d 1053, 1068 (9th Cir. 2014).  While Defendant may argue that the "harm" at issue here is the unpaid wages and reimbursements, such an argument would misconstrue Plaintiff's claims for declaratory judgment and request a public injunction to enjoin Uber's policy of misclassification. See Compl. Dkt-1, at ¶ 42–46. As Plaintiff made clear in his complaint: "[t]he injunction that Plaintiff seeks is in the nature of a public injunction and is not solely for the benefit of himself and other Uber drivers." Id. at ¶ 46. As explained further below, the implications of Uber's misclassification scheme are far-reaching and cannot be remedied through an award of damages.

First, the practice of misclassifying Uber drivers degrades the entire economy of the transportation industry and diminishes labor standards and wages of its drivers.  As long as Uber maintains its policy of misclassification, Uber drivers will continue to hemorrhage money daily, paying for their necessary business expenses, and engage in an endless chase to make enough to cover these costs and then make, in addition, enough to earn a living wage; even working full-

time, Uber drivers struggle to string together a livelihood and survive in California, due to their failure to be protected by the California Labor Code and Wage Orders.[9] Notably, the "irreparable nature of a plaintiff's injury is heightened" when plaintiffs are young or in a fragile socioeconomic position. Uber drivers are in a "fragile socioeconomic position," due to the misclassification policy, which further heightens the irreparable nature of the harm. Cavillo Manriquez v. Devos, 345 F. Supp. 3d 1077, 1106–107 (N.D. Cal. 2018). Furthermore, the effect of Uber's misclassification of its drivers on the transportation industry degrades other professional opportunities the drivers could pursue, by depressing the wages offered by competitors.[10]

Second, the misclassification does irreparable harm to the State of California, as Uber will continue to avoid its obligation to pay payroll taxes, premiums for workers compensation, Social Security, unemployment, and disability insurance. 2019 California Assembly Bill No. 5, California 2019-2020 Regular Session, Section 1(b) (citing Dynamex).  California and its taxpayers continue to lose money every day that Uber continues its policy of misclassification. The State and its taxpayers likewise lose money in the form of public assistance that is provided to Uber drivers who cannot support themselves, due to their deprivation of the protections of the California Labor Code and Wage Orders.

Third, other businesses who must compete with the unfair business practices of Uber, and who may comply or desire to comply with California law, are harmed by the illegal misclassification of Uber drivers.  2019 California Assembly Bill No. 5, California 2019-2020

---

[9]   See, e.g., Tracey Lien, *Most Uber and Lyft drivers in L.A. Work Full Time and Still Struggle To Make Ends Meet, Study Say*, L.A. Times, May 30, 2018, https://www.latimes.com/business/technology/la-fi-tn-uber-lyft-work-study-20180530-story.html (last accessed Sept. 12, 2019) ("Many [] struggle to pay for expenses such as gas, insurance and vehicle maintenance costs, and around a third either purchased or leased their car specifically to drive for the companies and must now continue driving to pay off those loans.").

[10]   Loss of professional opportunities constitutes irreparable harm, as its impact can echo throughout the course of the workers' careers. See e.g., Arizona Dream Act Coalition, 757 F.3d at 1068 ("no award of damages can compensate Plaintiff's for the myriad of person and ***professional harm*** caused by their inability to obtain a driver's licenses") (emphasis supplied).

Regular Session, Section 1(b).  Indeed, allowing companies like Uber to avoid its responsibilities as an employer fuels a race to the bottom, making it difficult for competing companies to comply with their legal obligations as employers.

As a result, Plaintiff has shown that Uber drivers are posed to suffer continued wage violations and loss of workplace protections.  California taxpayers and the State will similarly suffer as a result of Uber's misclassification scheme.

### iv.  The Balance of Hardships Tips Sharply in Plaintiff's Favor

Finally, the balance of hardships tips sharply in Plaintiff's favor.  In considering this factor, the Court should consider whether the injuries of Plaintiff and the class would outweigh any harm to Uber.  See Chalk v. U.S. Dist. Court Cent. Dist. of California, 840 F.2d 701, 710 (9th Cir. 1988).  In calculating hardship, courts must "consider the impact of the proposed preliminary injunction on both parties," including the size and strength of each party. Robinson v. Jardine Ins. Brokers Intern. Ltd., 856 F. Supp. 554, 559 n.20 (N.D. Cal. 1994) (holding that the balance of hardships tipped in employee's favor where employer was a large company with annual revenues of nearly $8 billion).

As set forth above, Plaintiff is an individual who has brought wage claims against Uber, contending that he and other drivers have suffered wage violations.  Uber drivers are posed to suffer continued wage violations, limitations on professional opportunities, and a prolonged public and court battle against the company. See also discussion infra Part II.A.v.

In contrast, Uber is a massive international corporation, which recently received an $82.4 billion valuation.[11]  If Uber is enjoined from classifying its drivers as independent contractors, any financial harm, immediate or otherwise, pales in comparison to that shouldered by its drivers.  Thus, the balance of hardships in this case tips sharply against Uber and towards Plaintiff.

---

[11]     Michael J. de la Merced and Kate Conger, *Uber I.P.O. Values Ride-Hailing Giant at $82.4 Billion*, N.Y. Times, May 9, 2019, https://www.nytimes.com/2019/05/09/technology/uber-ipo-stock-price.html (last accessed Sept. 12, 2019).

### v. An Injunction is in the Public Interest

Finally, enjoining Uber's conduct is in the public interest. As discussed <u>supra</u> in Part II.A.i, the irreparable harm suffered by ***both*** Uber drivers and the public is enormous. Were this Court not to enjoin Uber's conduct, it would present a free pass to any employer accused of misclassifying its employees as independent contractors (or of any wage violations) and engaging in an end run around <u>Dynamex</u>, in which the California Supreme Court made a strong statement about the importance of protecting workers from such conduct, and AB 5, in which the legislature has made clear the enormity of the public harm companies like Uber have perpetrated through misclassification, and the importance of protecting Uber drivers from such conduct.

Moreover, to not issue a preliminary injunction would result in (extreme) delay. As demonstrated by the previous six years of intense litigation against Uber regarding its misclassification policy (which was delayed primarily due to litigation regarding Uber's arbitration clause), see <u>O'Connor v. Uber Technologies, Inc.</u>, C.A. No. C-13-3826, if this injunction is not addressed up front in this litigation, this , litigation will almost certainly be dragged out for years, while Plaintiff and the public await a decision on the merits of the case. The public cannot wait another six years for Uber to come into compliance with <u>Dynamex</u> and AB 5. As outlined <u>supra</u> in Part II.A.i, every day that Uber continues its misclassification scheme costs California state, California taxpayers, complying competitors, the entire transportation industry and its workers – Plaintiff and similarly situated Uber drivers who labor under this dystopian model. This ongoing harm that Uber drivers and the public continue to suffer as a result of Uber's misclassification – and will continue to suffer daily, for years, should this injunction not issue – cannot be remedied later. For these reasons, Plaintiff seeks a public injunction.

### III.   <u>CONCLUSION</u>

For the foregoing reasons, this Court should enjoin Uber from misclassifying its drivers as independent contractors, rather than as employees. Plaintiff respectfully requests that this Court issue a preliminary injunction ordering Uber to reclassify its drivers as employees, and to

comply with the California Labor Code and Wage Orders, to prevent immense interim harm to Uber drivers and the California public.

Respectfully submitted,

THOMAS COLOPY, individually
and on behalf of all others similarly situated,

By their attorneys,

 /s/ Shannon Liss-Riordan
Shannon Liss-Riordan, SBN 310719
Anne Kramer, SBN 315131
LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, MA 02116
(617) 994-5800
Email: sliss@llrlaw.com, akramer@llrlaw.com

Dated:          October 8, 2019

## **CERTIFICATE OF SERVICE**

I, Shannon Liss-Riordan, hereby certify that, on October 8, 2019, a copy of this document and all supporting documents referenced herein were delivered via electronic filing and via electronic mail to the following counsel for Defendant Uber Technologies Inc. in both *O'Connor v. Uber Technologies Inc.*, Civ. A. No. 13-3826-EMC, and *McRay v. Uber Technologies Inc.*, Civ. A. No. 4:19-cv-05723-EMC, as listed below:

Theane Evangelis
Theodore J. Boutrous Jr.
Dhananjay Saikrishna Manthripragada
Gibson, Dunn & Crutcher LLP
333 South Grand Avenue
Los Angeles, CA 90071
(213) 229-7726
Email: tevangelis@gibsondunn.com, dmanthripragada@gibsondunn.com, tboutrous@gibsondunn.com

Greta B. Williams
Joshua S. Lipshutz
Gibson Dunn Crutcher LLP
1050 Connecticut Avenue, NW, Suite 300
Washington, DC 20036
202-887-3745
Email: gbwilliams@gibsondunn.com, jlipshutz@gibsondunn.com

Michele Leigh Maryott
Gibson Dunn & Crutcher LLP
3161 Michelson Drive
Irvine, CA 92612
(949) 451-3945
Email: mmaryott@gibsondunn.com

                                        */s/ Shannon Liss-Riordan*
                                      Shannon Liss-Riordan (SBN 310719)
                                      LICHTEN & LISS-RIORDAN, P.C.