GIBSON, DUNN & CRUTCHER LLP
THEODORE J. BOUTROUS JR., SBN 132099
  tboutrous@gibsondunn.com
THEANE EVANGELIS, SBN 243570
  tevangelis@gibsondunn.com
HEATHER RICHARDSON, SBN 246517
  hrichardson@gibsondunn.com
333 South Grand Avenue
Los Angeles, CA  90071-3197
Telephone: 213.229.7000
Facsimile:  213.229.7520

JOSHUA S. LIPSHUTZ, SBN 242557
  jlipshutz@gibsondunn.com
555 Mission Street, Suite 3000
San Francisco, CA 94105-0921
Telephone: 415.393.8200
Facsimile:  415.393.8306

Attorneys for Defendants UBER
TECHNOLOGIES, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THOMAS COLOPY, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>UBER TECHNOLOGIES, INC.,<br><br>Defendant. | CASE NO. 3:19-cv-06462-EMC<br><br>**DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS AND MOTION TO STRIKE PLAINTIFF'S CLASS ACTION COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>[*Declaration of Michael Chan, Declaration of Joshua Lipshutz, and [Proposed] Order Filed Concurrently Herewith*]<br><br>**Hearing:**<br>Date:  November 21, 2019<br>Time:  1:30 p.m.<br>Place:  Courtroom 5<br>Judge:  Honorable Edward M. Chen<br><br>Action Filed:  October 8, 2019<br>Trial Date:  None Set |

Gibson, Dunn &
Crutcher LLP

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS AND MOTION TO STRIKE PLAINTIFF'S
CLASS ACTION COMPLAINT
CASE NO. 3:19-cv-06462-EMC

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE THAT** on November 21, 2019, at 1:30 p.m., or as soon thereafter as the matter may be heard before the Honorable Edward M. Chen, in Courtroom 5 of the United States District Court for the Northern District of California in the San Francisco Courthouse, Seventeenth Floor, 450 Golden Gate Avenue, San Francisco, California, Defendant Uber Technologies, Inc. ("Defendant") will and hereby does move this Court, pursuant to Rules 12 and 23(d)(1)(D) of the Federal Rules of Civil Procedure, for an order striking and dismissing with prejudice the class allegations contained in Plaintiff Thomas Colopy's ("Plaintiff") Class Action Complaint.  This motion is brought on the grounds that Plaintiff's claims fail as a matter of law.  In addition, the Court cannot certify a class in which the vast majority of members are required to individually arbitrate their claims.  Thus, Defendant moves the Court to dismiss the action in its entirety.

This Motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the Declarations of Michael Chan and Joshua Lipshutz filed herewith, all papers and pleadings from this case on file with the Court, all other matters of which the Court may take judicial notice, any further evidence or argument offered to the Court at the hearing on this Motion, and any other matters that the Court may consider.

Dated: October 18, 2019

GIBSON, DUNN & CRUTCHER LLP

By:        /s/ Theane Evangelis
Theane Evangelis

Attorneys for Defendant UBER TECHNOLOGIES, INC.

Gibson, Dunn & Crutcher LLP

1

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS AND MOTION TO STRIKE PLAINTIFF'S CLASS ACTION COMPLAINT
3:19-cv-06462-EMC

**TABLE OF CONTENTS**

Page

I.     INTRODUCTION ........................................................................................... 1

II.    FACTUAL AND PROCEDURAL BACKGROUND............................................... 2

       A.     Technology Services Agreements And Arbitration Agreement ................. 2

       B.     Plaintiff's Claims ................................................................................ 2

III.   THE COURT SHOULD DISMISS COLOPY'S CLAIMS FOR FAILURE TO
       STATE CLAIMS UPON WHICH RELIEF CAN BE GRANTED ........................... 3

       A.     Legal Standard for Motion to Dismiss ................................................... 3

       B.     Colopy Fails to Adequately Plead His Allegations.................................. 5

              1.     Colopy Fails to State a Claim for Reimbursement of Business Expenses
                     (Count II)................................................................................... 5

              2.     Colopy Fails to State a Willful Misclassification Claim (Count III) ............... 8

              3.     Colopy Fails to State a Claim for Minimum Wage Violations (Counts
                     IV and V) ................................................................................. 10

              4.     Colopy Fails to State a Claim for Failure to Pay Overtime Premiums
                     (Count V) ................................................................................. 14

              5.     Colopy Fails to State a Claim for Failure to Provide Accurate Itemized
                     Pay Statements (Count VI) ......................................................... 16

              6.     Colopy Fails to State a Claim for Unlawful or Unfair Business
                     Practices (Count VII) ................................................................ 17

              7.     Colopy Fails to State a Claim for Declaratory Judgment (Count I)............... 18

IV.    PLAINTIFF'S SWEEPING CLASS ALLEGATIONS SHOULD BE DISMISSED OR
       STRICKEN ................................................................................................ 18

       A.     Legal Standard for Motion to Strike ..................................................... 18

       B.     Plaintiff Fails to Adequately Allege a Prima Facie Showing under Rule 23.............. 20

       C.     Colopy's Claims Lack Commonality, Predominance, And Superiority.................... 21

       D.     Plaintiff Colopy Is Not A Typical Or Adequate Class Representative..................... 22

       C.     Plaintiff's Class Claims Should Be Dismissed With Prejudice ................................. 24

V.     CONCLUSION ............................................................................................ 24

i

Gibson, Dunn &
Crutcher LLP

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Amchem Prod., Inc. v. Windsor*,
   521 U.S. 591 (1997)........................................................................................................22

*Anderson v. Blockbuster Inc.*,
   No. 2:10–cv–00158–MCE–GGH, 2010 WL 1797249 (E.D. Cal. May 4, 2010) ..........................16

*Angeles v. U.S. Airways, Inc.*,
   No. C 12–05860 CRB, 2013 WL 622032 (N.D. Cal. Feb. 19, 2013)............................................17

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)........................................................................................4, 8, 13, 17, 19

*Avilez v. Pinkerton Gov't Servs., Inc.*,
   596 F. App'x 579 (9th Cir. 2015) .......................................................................1, 20, 23

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)........................................................................................4, 5, 10, 14, 19

*Borja-Valdez v. City & Cnty. of S.F.*,
   No. 3:14–cv–04168–CRB, 2015 WL 5522287 (N.D. Cal. Sept. 18, 2015)...................................24

*Bruno v. Quten Research Inst. LLC*,
   280 F. App'x 524 (C.D. Cal. 2011)...........................................................................................23

*Byrd v. Masonite Corp.*,
   No. EDCV 16-35 JGB (KKx), 2016 WL 756523 (N.D. Cal. Feb. 25, 2016)..............11, 13, 16, 17

*Cal. Dep't of Toxic Substances Control v. Alco Pac., Inc.*,
   217 F. Supp. 2d 1028 (C.D. Cal. 2002) ...................................................................................18

*Carter v. Raiser-CA, LLC*,
   No. 17-cv-00003-HSG, 2017 WL 4098858 (N.D. Cal. Sept. 15, 2017)........................................13

*Carter v. Rasier-CA, LLC*,
   724 F. App'x 586 (9th Cir. 2018) ..............................................................................................11

*Carter v. Rasier-CA, LLC*,
   No. 4:17-cv-00003-HSG, Dkt. 40 (N.D. Cal. Sept. 15, 2017)...................................................11

*Castillo v. United Rentals, Inc.*,
   No. C17-1573JLR, 2018 WL 1382597 (W.D. Wash. Mar. 19, 2018)..........................................12

*Cervantes v. Countrywide Home Loan Servs., Inc.*,
   656 F.3d 1034 (9th Cir. 2011)....................................................................................................24

ii

Gibson, Dunn &
Crutcher LLP

1

**TABLE OF AUTHORITIES**
(continued)

2

Page(s)

3
4

*In re Checking Account Overdraft Litig.*,
780 F.3d 1031 (11th Cir. 2015)..................................................................................23

5

*Christie v. Tuesday Morning, Inc.*,
No. 214CV06505PSGAGR, 2015 WL 12781053 (C.D. Cal. May 27, 2015) ...............15

6
7

*Comcast Corp. v. Behrend*,
569 U.S. 27 (2013) ....................................................................................................21

8

*Conde v. Open Door Mktg., LLC*,
223 F. Supp. 3d 949 (N.D. Cal. 2017) .......................................................................23

9
10

*Doe v. Wal-Mart Stores, Inc.*,
572 F.3d 677 (9th Cir. 2009).......................................................................................4

11
12

*Dynamex Operations W., Inc. v. Superior Court*,
4 Cal. 5th 903, 416 P.3d 1 (2018), reh'g denied (June 20, 2018) ................................8

13
14

*Eclectic Props. E., LLC v. Marcus & Millichap Co.*,
751 F.3d 990 (2014).....................................................................................................5

15

*Fantasy, Inc. v. Fogerty*,
984 F.2d 1524 (9th Cir. 1993), *rev'd on other grounds*, 510 U.S. 517 (1994)..............19

16
17

*Flores v. Supervalu, Inc.*,
509 F. App'x 593 (9th Cir. 2013) ..............................................................................24

18
19

*Francisco v. Emeritus Corp.*,
No. CV 17–02871–BRO (SSx), 2017 WL 7790038 (C.D. Cal. July 14, 2017) ...........19

20

*Franke v. Anderson Merchandisers LLC*,
No. CV 17-3241 DSF, 2017 WL 3224656 (C.D. Cal. July 28, 2017)..........................6

21
22

*Garcia v. Bryant*,
No. CV–F–11–1566–LJO, 2011 WL 5241177 (E.D. Cal. Oct. 31, 2011)....................6

23
24

*Gattuso v. Harte-Hanks Shoppers, Inc.*,
42 Cal. 4th 554 (2007) ...............................................................................................7

25

*Gen. Tel. Co. of Sw. v. Falcon*,
457 U.S. 147 (1982)............................................................................................18, 22

26
27

*Gutierrez v. Aaron's Inc.*,
No. 2:10–cv–02417–MCE–EFB, 2010 WL 4968142 (E.D. Cal. Dec. 1, 2010)............4

28

Gibson, Dunn &
Crutcher LLP

# TABLE OF AUTHORITIES
(continued)

Page(s)

*Hall v. Plastipak,*
   No. 15-11428, 2015 WL 5655888 (E.D. Mich. Sept. 25, 2015)......................................12

*Hammitt v. Lumber Liquidators,*
   19 F. Supp. 3d 989 (S.D. Cal. 2014) ...............................................................................8

*Harding v. Time Warner, Inc.,*
   No. 09-cv-1212–WQH–WMC, 2009 WL 2575898 (S.D. Cal. Aug. 18, 2009) ..............4

*Harris v. Best Buy Stores, L.P.*
   No. 17-CV-00446-HSG, 2018 WL 984220 (N.D. Cal. Feb. 20, 2018) .........................16

*Jasper v. C.R. England, Inc.,*
   No. CV 08–5266–GW(CWx), 2012 WL 7051321 (C.D. Cal. Aug. 30, 2012)................4

*John v. Nat'l Sec. Fire & Cas. Co.,*
   501 F.3d 443 (5th Cir. 2007)........................................................................................18

*Kellgren v. Petco Animal Supplies, Inc.,*
   No. 13-CV-0644 W (KSC), 2013 WL 12076473 (S.D. Cal. Sept. 13, 2013)................9

*Landers v. Quality Commc'ns, Inc.,*
   771 F.3d 638 (9th Cir. 2014)....................................................1, 6, 7, 10, 12, 13, 14, 15

*Lee v. Postmates Inc.,*
   No. 18-CV-03421-JCS, 2018 WL 6605659 (N.D. Cal. Dec. 17, 2018), motion to
   certify appeal granted, No. 18-CV-03421-JCS, 2019 WL 1864442 (N.D. Cal. Apr.
   25, 2019) ..........................................................................................................6, 8, 10, 11

*Lopez v. Wendy's Int'l, Inc.,*
   No. CV 11-00275 MMM, 2011 WL 6967932 (C.D. Cal. Sept. 19, 2011) ...................14

*Lozano v. AT & T Wireless Servs., Inc.,*
   504 F.3d 718 (9th Cir. 2007)........................................................................................20

*Lujan v. Defenders of Wildlife,*
   504 U.S. 555 (1992) ........................................................................................................5

*Magadia v. Wal-Mart Assocs., Inc.,*
   384 F. Supp. 3d 1058 (N.D. Cal. 2019) .......................................................................17

*Magana v. DoorDash, Inc.,*
   343 F. Supp. 3d 891 (N.D. Cal. 2018) .........................................................................20

*Mantolete v. Bolger,*
   767 F.2d 1416 (9th Cir. 1985).......................................................................................19

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS AND MOTION TO STRIKE PLAINTIFF'S
CLASS ACTION COMPLAINT
3:19-cv-06462-EMC

Gibson, Dunn &
Crutcher LLP

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*McMillian v. Overton Sec. Servs., Inc.*,
    No. 17-cv-03354-JSC, 2017 WL 4140906 (N.D. Cal. Sept. 19, 2017) ..........................11

*Melendres v. Arpaio*,
    784 F.3d 1254 (9th Cir. 2015)...................................................................................23

*Miller v. Amazon.com, LLC*,
    No. 17-cv-03488-MMC, 2018 WL 2215600 (N.D. Cal. Mar. 29, 2018) ......................13

*Mohamed v. Uber Techs., Inc.*,
    848 F.3d 1201 (9th Cir. 2016).....................................................................................2

*Mohammad v. King City Police Dep't*,
    2017 WL 2617980 (N.D. Cal. June 16, 2017) ............................................................24

*Noe v. Superior Court*,
    237 Cal. App. 4th 316 (2015) ......................................................................................9

*O'Connor v. Uber Techs., Inc.*,
    904 F.3d 1087 (9th Cir. 2018).......................................................................1, 20, 22

*O'Connor v. Uber Techs., Inc.*,
    No. 13-CV-03826-EMC, 2019 WL 1437101 (N.D. Cal. Mar. 29, 2019) ......................22

*Pablo v. ServiceMaster Global Holdings, Inc.*,
    No. C 08–03894 SI, 2011 WL 3476473 (N.D. Cal. Aug. 9, 2011) ..............................22

*Perez v. Wells Fargo & Co.*,
    75 F. Supp. 3d 1184 (N.D. Cal. 2014) ........................................................................13

*Pilgrim v. Universal Health Card, LLC*,
    660 F.3d 943 (6th Cir. 2011)......................................................................................18

*Pruell v. Caritas Christi*,
    678 F.3d 10 (1st Cir. 2012) ........................................................................................14

*Pryor v. Aerotek Sci., LLC*,
    No. CV1006575MMMAJWX, 2011 WL 13133757 (C.D. Cal. Mar. 14, 2011)............15

*Quinlan Macy's Corp. Servs., Inc.*,
    No. CV1200737DDPJCX, 2013 WL 11091572 (C.D. Cal. Aug. 22, 2013) .................21

*Reilly v. Recreational Equip., Inc.*,
    No. 18-CV-07385-LB, 2019 WL 1024960 (N.D. Cal. Mar. 4, 2019) ....................1, 3, 11

Gibson, Dunn &
Crutcher LLP

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*Rice v. Fox Broad. Co.*,
    330 F.3d 1170 (9th Cir. 2003) ................................................................18

*Rio v. Uber Techs., Inc.*,
    No. 15-cv-03667-EMC, 2016 WL 10837864 (N.D. Cal. Mar. 28, 2016) ....................13

*Rittman v. Amazon.com, Inc.*,
    No. C16-1554-JCC, 2017 WL 881384 (W.D. Wash. Mar. 6, 2017) ........................12

*Romano v. SCI Direct, Inc.*,
    No. 17-cv-03537-ODW (JEM), 2017 WL 8292778 (C.D. Cal. Nov. 27, 2017) ............9

*Rosset v. Hunter Eng'g Co.*,
    No. C 14-01701 LB, 2014 WL 3569332 (N.D. Cal. July 17, 2014) .......................9

*Santangelo v. Comcast Corp.*,
    No. 15-cv-0293, 2017 WL 6039903 (N.D. Ill. Dec. 6, 2017) ...........................19

*Schneider v. Space Sys./Loral, Inc.*,
    No. 5:11–cv–02489–JF, 2011 WL 4344232 (N.D. Cal. Sept. 15, 2011) ...............13, 17

*Smith v. Level 3 Commc'ns Inc.*,
    No. C 14-05036 WHA, 2014 WL 7463803 (N.D. Cal. Dec. 30, 2014) .....................17

*Stuart v. RadioShack Corp.*,
    641 F. Supp. 2d 901 (N.D. Cal. 2009) ........................................................7

*Tan v. GrubHub, Inc.*,
    171 F. Supp. 3d 998 (N.D. Cal. 2016) ...........................................10, 11, 12, 17

*Tan v. Grubhub, Inc.*,
    No. 15-CV-05128-JSC, 2016 WL 4721439 (N.D. Cal. July 19, 2016) .............20, 21, 23

*Thomas-Byass v. Michael Kors Stores (Cal.), Inc.*,
    No. EDCV 15-369 JGB (KKx), 2015 WL 13756100 (C.D. Cal. Sept. 16, 2015) ..........16

*Tietsworth v. Sears*,
    720 F. Supp. 2d 1123 (N.D. Cal. 2010) ........................................................19

*In re Titanium Dioxide Antitrust Litig.*,
    962 F. Supp. 2d 840 (D. Md. 2013) ............................................................21

*Titsworth v. SKO Brenner Am., Inc.*,
    CV 12–03457 SJO (SHx), 2012 WL 13013042 (C.D. Cal. Aug. 15, 2012) ...............19

Gibson, Dunn &
Crutcher LLP

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS AND MOTION TO STRIKE PLAINTIFF'S
CLASS ACTION COMPLAINT
3:19-cv-06462-EMC

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*Tschudy v. J.C. Penney Corp., Inc.*,
  No. 11CV1011 JM, 2015 WL 8484530 (S.D. Cal. Dec. 9, 2015) .................................20

*Velasco v. Elliot*,
  No.18-cv-03191-VKD, 2018 WL 6069009 (N.D. Cal. Nov. 20, 2018) ........................11

*Villalpando v. Exel Direct Inc.*,
  No. 12-CV-04137 JCS, 2014 WL 1338297 (N.D. Cal. Mar. 28, 2014) ....................8, 9

*Vinole v. Countrywide Home Loans, Inc.*,
  571 F.3d 935 (9th Cir. 2009)........................................................................................18

*Wal-Mart Stores, Inc. v. Dukes*,
  564 U.S. 338 (2011) .....................................................................................................21

*White v. Starbucks Corp.*,
  497 F. Supp. 2d 1080 (N.D. Cal. 2007) .......................................................................17

*Wilson v. Hewlett-Packard Co.*,
  668 F.3d 1136 (9th Cir. 2012).....................................................................................7, 9

*Yucesoy v. Uber Techs., Inc.*,
  No. 15-cv-00262-EMC, 2016 WL 493189 (N.D. Cal. Feb. 9, 2016) ......................12, 15

*Yucesoy v. Uber Techs., Inc.*,
  No. 15-CV-00262-EMC, 2015 WL 6955140 (N.D. Cal. Nov. 10, 2015) ................13, 15

**Statutes**

Cal. Lab. Code § 226.8 .....................................................................................2, 8, 9, 17

Cal. Lab. Code § 226(a) ........................................................................................3, 16, 17

Cal. Lab. Code § 2802(a) ....................................................................................3, 5-8, 17

Cal. Lab. Code § 1182.12 ..........................................................................................3, 17

Cal. Lab. Code § 1194.2 .............................................................................................3, 17

Cal. Lab. Code § 1194 ......................................................................................3, 12, 14, 17

Cal. Lab. Code § 1197 ..........................................................................................3, 12, 17

Cal. Lab. Code § 1198 ..........................................................................................3, 14, 17

Cal. Lab. Code § 1199 .................................................................................................3, 17

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS AND MOTION TO STRIKE PLAINTIFF'S
CLASS ACTION COMPLAINT
3:19-CV-06462-EMC

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**TABLE OF AUTHORITIES**
(continued)

Page(s)

Cal. Lab. Code § 510 ....................................................................................................3, 14, 17

Cal. Lab. Code § 554 ....................................................................................................3, 14, 17

Cal. Bus. and Prof. Code § 17200, *et seq* ...................................................................................3

28 U.S.C. §§ 2201, 2202 .................................................................................................3, 18

**Rules**

Fed. R. Civ. P. 12(f) ..................................................................................................................18

Fed. R. Civ. P. 23(a)(2) .............................................................................................................21

Fed. R. Civ. P. 23(a)(3) .............................................................................................................22

Fed. R. Civ. P. 23(a)(4) .............................................................................................................22

Fed. R. Civ. P. 23(b)(3) .............................................................................................................22

Fed. R. Civ. P. 23(b)(3) .............................................................................................................21

Fed. R. Civ. P. 23(c)(1)(A) .......................................................................................................19

Fed. R. Civ. P. 23(d)(1)(D) .......................................................................................................19

Gibson, Dunn &
Crutcher LLP

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS AND MOTION TO STRIKE PLAINTIFF'S
CLASS ACTION COMPLAINT
3:19-CV-06462-EMC

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

## I.   INTRODUCTION

Plaintiff Thomas Colopy filed a class action complaint asserting that Defendant Uber Technologies, Inc. ("Uber") failed to pay minimum wage, overtime premiums, and business expense reimbursements and failed to provide accurate itemized wage statements to him and other similarly situated individuals.  Each of these allegations is premised on Uber's purported misclassification of individuals who use the Uber App as drivers.

Uber disputes that it misclassified Colopy and other similarly situated individuals as independent contractors.  But setting aside Plaintiff's contention that drivers should instead be classified as employees, Plaintiff's Complaint nonetheless fails to allege sufficient factual allegations to state a plausible claim for relief as to any of the Complaint's seven counts.  Indeed, the Complaint is comprised of nothing more than boilerplate recitals of the legal elements of Colopy's claims and conclusory allegations that entirely lack factual detail of any kind.

These multiple, significant deficiencies in the Complaint are fatal and require dismissal of all claims with prejudice.  *See Landers v. Quality Commc'ns, Inc.*, 771 F.3d 638, 646 (9th Cir. 2014), as amended (Jan. 26, 2015); *Reilly v. Recreational Equip., Inc.*, No. 18-CV-07385-LB, 2019 WL 1024960, at *4 (N.D. Cal. Mar. 4, 2019)  ("*Twombly* and *Iqbal* apply to all civil claims in federal court (not just FLSA claims), and thus federal courts apply the *Twombly/Iqbal* standard as delineated in Landers to minimum-wage, overtime, meal-breaks, and rest-period claims under the California Labor Code").

Further, it is undisputed that the vast majority of putative class members entered into binding agreements to individually arbitrate their disputes with Uber, but yet Plaintiff *still* attempts to bring this action and to certify a class "of *all* other individuals who have worked as Uber drivers in California who have not released all of their claims against Uber," not just the subset of individuals whose claims are not subject to arbitration.  Compl. ¶ 5.  As a result, Uber moves, in the alternative, to strike all class allegations because the vast majority of the putative class is bound to arbitrate their claims on an individual basis.  *See O'Connor v. Uber Techs., Inc.*, 904 F.3d 1087, 1094–95 (9th Cir. 2018); *Avilez v. Pinkerton Gov't Servs., Inc.*, 596 F. App'x 579, 579 (9th Cir. 2015).

In sum, Colopy's claims are deficient as a matter of law and should be dismissed with prejudice and in the alternative the class allegations should be stricken.

## II.   FACTUAL AND PROCEDURAL BACKGROUND

### A.   Technology Services Agreements And Arbitration Agreement

Uber developed a smartphone application (the "Uber App") that connects individuals in need of transportation ("riders") with individuals who use the Uber App as drivers. *See generally* Compl. ¶¶ 1-2.  An individual who wishes to use the Uber App to generate "leads" for his business may do so by executing a technology services agreement with Uber. *Id.*; Declaration of Michael Chan ("Chan Decl.") at ¶ 3.  The technology services agreement is periodically revised and reissued to drivers and includes an Arbitration Agreement. *Id.*

The Arbitration Agreement requires signatories to arbitrate all disputes—except for certain expressly enumerated disputes not relevant here. *Id.* Ex. A at § 15.3.  The Arbitration Agreement also expressly requires signatories to arbitrate any challenges to the validity or enforceability of the Arbitration Agreement, including whether any opt out is valid. *Id.* at § 15.3(i).  Further, the Arbitration Agreement provides that signatories may pursue any claims in arbitration solely on an individual basis, and not on a class or collective basis. *Id.* at § 15.3(v).  Finally, the Arbitration Agreement contains an opt-out provision that affords signatories 30 days to opt out of the Arbitration Agreement. *Id.* at § 15.3(viii). The Ninth Circuit has confirmed that the Arbitration Agreement issued by Uber, back to its first iteration in the 2013 Agreements—and in particular every delegation clause contained therein— is valid and enforceable. *See Mohamed v. Uber Techs., Inc.*, 848 F.3d 1201, 1212 (9th Cir. 2016).

Colopy, for his part, first signed up to use the Uber App on March 24, 2013.  Chan Decl. at ¶ 6. He agreed to the updated technology services agreement on July 18, 2017, and validly exercised his opt-out right by sending his opt-out notice to Uber on August 2, 2017. *Id.*

### B.   Plaintiff's Claims

Plaintiff Thomas Colopy initiated this class action on October 8, 2019, on behalf of himself and other similarly situated individuals, alleging that Uber willfully misclassified drivers as independent contractors. *See* Compl. ¶¶ 49-50 (alleging that Uber violated Labor Code § 226.8).

Gibson, Dunn & Crutcher LLP

2

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS AND MOTION TO STRIKE PLAINTIFF'S CLASS ACTION COMPLAINT
3:19-CV-06462-EMC

He also alleges that Uber unlawfully required drivers to pay business expenses, including vehicle maintenance, gas, insurance, phone and data expenses and other costs, pursuant to Labor Code § 2802. *See id.* ¶ 2. Colopy also contends that Uber failed to pay drivers minimum wage and overtime premiums under Labor Code §§ 1182.12, 1194.2, 1194, 1197, 1198, 1199, 510, and 554. *Id.* Further, Colopy asserts that Uber failed to provide complete and accurate wage statements under Labor Code § 226(a) (*id.* ¶ 55), and that Uber violated California's Unfair Competition Law ("UCL") (Business and Professions Code § 17200, *et seq.*). *Id.* ¶ 57. Colopy requests declaratory relief pursuant to the Uniform Declaratory Judgment Act (28 U.S.C. §§ 2201, 2202), compensatory damages, including all expenses and wages owed, pre-and post-judgment interest, attorneys' fees and costs, purported public injunctive relief, and all other relief to which the Plaintiff and the class may be entitled. *See id.* ¶¶ 42-43, 58.

The Complaint does not allege, however, even an *estimate* of the number of hours Colopy has purportedly worked for Uber, what compensation (if any) he received and when, what time periods Colopy worked, what activities Colopy considers to be compensable, whether Colopy was reimbursed less than the applicable minimum wage during any particular workweek, or facts related to any out-of-pocket business expenditures he allegedly incurred and for which he now seeks reimbursement. Nor does the Complaint allege any of this information on behalf of any putative class action member. Rather, Colopy's Complaint simply recites the language of various Labor Code provisions and contends in conclusory fashion that Uber violated them. That is insufficient to state a claim.

## III. THE COURT SHOULD DISMISS COLOPY'S CLAIMS FOR FAILURE TO STATE CLAIMS UPON WHICH RELIEF CAN BE GRANTED

### A. Legal Standard for Motion to Dismiss

Where a complaint asserts Labor Code claims, federal courts apply the standards provided in *Twombly* and *Iqbal*. *Reilly v. Recreational Equip., Inc.*, No. 18-CV-07385-LB, 2019 WL 1024960, at *3 (N.D. Cal. Mar. 4, 2019). "To survive a motion to dismiss [under Federal Rule of Civil Procedure 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). If the complaint pleads facts that are "'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to

1    relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).  Rule 8 "does not unlock the doors of discovery for

2    a plaintiff armed with nothing more than conclusions." *Id.* at 678–79.  Further, "[t]hreadbare recitals

3    of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to state

4    a claim. *Id.* at 678; *see, e.g.*, *Doe v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 683 (9th Cir. 2009) (finding

5    that plaintiffs' "general statement that [defendant employer] exercised control over their day-to-day

6    employment [wa]s a conclusion, not a factual allegation stated with any specificity" under *Twombly*

7    and *Iqbal*, in affirming a motion to dismiss a labor action).

8             Courts follow a two-step approach when applying the plausibility standard.  First, all conclusory

9    statements and allegations must be pared from the complaint.  *Twombly*, 550 U.S. at 555; *Harding v.*

10   *Time Warner, Inc.*, No. 09-cv-1212–WQH–WMC, 2009 WL 2575898, at *3 (S.D. Cal. Aug. 18, 2009).

11   "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is

12   inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678; *see also id.* (Rule 8 requires more than

13   "unadorned, the defendant-unlawfully-harmed-me accusation[s]," or "naked assertions devoid of

14   further factual enhancement" (citations omitted)).  Courts "need not accept as true 'legal conclusions

15   merely because they are cast in the form of factual allegations.'" *Jasper v. C.R. England, Inc.*, No. CV

16   08–5266–GW(CWx), 2012 WL 7051321, at *3 (C.D. Cal. Aug. 30, 2012).

17            Second, after paring all conclusory allegations from the complaint, a court should review the

18   complaint's remaining contents to determine whether they "plausibly" entitle the plaintiff to relief.  For

19   a claim to be "plausible," it is insufficient that the facts alleged are "'consistent with' a defendant's

20   liability," or that a violation is "conceivable." *Iqbal*, 556 U.S. at 678–80 (citations omitted).  Further,

21   facts that raise a "mere possibility of misconduct" are insufficient—they must actually "*show*," in a

22   plausible way, that the plaintiff is entitled to relief. *Id.* at 679 (emphasis added); *see, e.g.*, *Gutierrez v.*

23   *Aaron's Inc.*, No. 2:10–cv–02417–MCE–EFB, 2010 WL 4968142, at *3 (E.D. Cal. Dec. 1, 2010)

24   (dismissing wage and hour claims where Plaintiff merely provided "a legal conclusion and limited

25   factual allegations supporting the claim").  The mere "possibility" of a violation is not enough. *Iqbal*,

26   556 U.S. at 679.

27

28

Gibson, Dunn &
Crutcher LLP

4

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS AND MOTION TO STRIKE PLAINTIFF'S
CLASS ACTION COMPLAINT
3:19-cv-06462-EMC

1

B.      **Colopy Fails to Adequately Plead His Allegations**

2

1.      **Colopy Fails to State a Claim for Reimbursement of Business Expenses**

3

**(Count II)**

4

Colopy alleges that because Uber classified drivers as an independent contractors, they were

5

not reimbursed for expenses allegedly incurred while using Uber's App pursuant to California Labor

6

Code section 2802 and Wage Order 9-2001.  Compl. ¶ 47.  California Labor Code section 2802

7

provides, in relevant part:

8

> An employer shall indemnify *his or her employee* for *all necessary expenditures or losses*
> incurred by the employee in *direct consequence of the discharge of his or her duties*, or of his

9

> or her obedience to the directions of the employer, even though unlawful, unless the
> employee, at the time of obeying the directions, believed them to be unlawful.

10

Cal. Lab. Code § 2802(a) (emphases added).

11

Colopy alleges that such costs generally included "gas, insurance, car maintenance, and phone

12

data charges."  Compl. ¶ 47.  But, the Complaint fails to allege that *he* was not reimbursed for

13

business expenses; thus, Colopy has not alleged any injury-in-fact as to himself, and thus would not

14

have standing to pursue this claim.  *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)

15

(constitutional standing requires, at an "irreducible" minimum, that the plaintiff has suffered an

16

"injury in fact").

17

Beyond this threshold standing defect, Colopy's allegations also lack "sufficient 'factual

18

enhancement' to cross 'the line between possibility and plausibility.'"  *Eclectic Props. E., LLC v.*

19

*Marcus & Millichap Co.*, 751 F.3d 990, 995 (2014) (quoting *Twombly*, 550 U.S. at 557).  Colopy

20

fails to establish any entitlement to reimbursement under section 2802 because he has not provided

21

any non-conclusory allegations to support his claim.

22

To start, the Complaint provides no detail *whatsoever* about the expenses that members of the

23

putative class, let alone Colopy himself, actually incurred.  *See* Compl. ¶ 47; Cal. Lab. Code §

24

2802(a).  Instead, Colopy merely alleges that drivers in general incurred expenses such as "gas,

25

insurance, car maintenance, and phone data charges."  Compl. ¶ 47.  However, Colopy does not

26

allege a single instance in which he incurred a particular expense that he would not have incurred

27

otherwise if not for his use of the Uber App.  Colopy does not allege, for example, what type of

28

Gibson, Dunn &
Crutcher LLP

5

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS AND MOTION TO STRIKE PLAINTIFF'S
CLASS ACTION COMPLAINT
3:19-CV-06462-EMC

vehicle maintenance expenses he incurred, when he incurred them, or whether he would have

incurred them had he not contracted with Uber.  Nor does Colopy allege what additional vehicle

insurance expenses he was required to incur as a direct result of his use of the Uber App.  Similarly,

while the Complaint includes a single, vague reference to "phone data charges," Colopy has not

alleged that he purchased a cell phone or incurred any related costs *as a result of* his use of the Uber

App.  Indeed, he alleges no facts regarding what kind of cell phone service plan he has (i.e., whether

it is an unlimited plan, provides a specific amount of minutes or text messages per month, or charges

for each individual call or text message), or whether under that plan he incurred any charges for calls

or cellular data as a result of work-related cell phone usage.  Nor does Colopy allege that he incurred

any work-related expenses in any particular week that he used the Uber App.  Without factual

allegations demonstrating that Colopy actually "incurred" out-of-pocket "expenditures or losses" and

specifying at least a single week (or pay period) in which such losses were incurred, Colopy cannot

state a plausible section 2802 claim.  Nearly identical, defective expense reimbursement claims were

recently dismissed for this very reason.  *Lee v. Postmates Inc.*, No. 18-CV-03421-JCS, 2018 WL

6605659, at *10 (N.D. Cal. Dec. 17, 2018), motion to certify appeal granted, No. 18-CV-03421-JCS,

2019 WL 1864442 (N.D. Cal. Apr. 25, 2019) ("This case must be viable as an individual action

before it can be certified as a class action, and general allegations regarding 'couriers' do not

substitute for allegations pertaining to [plaintiff] specifically.").

Further, it is unlikely (even if given the opportunity to amend) that Colopy would be able to

parse out what expenses he incurred as a consequence of his use of the Uber App versus his personal

use; further, because drivers can use competing companies' applications while logged into the Uber

App, another company could have already covered those expenses.  At bottom, conclusory

allegations that merely "set[] forth the elements of the claim" are insufficient under *Twombly* and

*Iqbal*.  *See Landers*, 771 F.3d at 640; *see also Franke v. Anderson Merchandisers LLC*, No. CV 17-

3241 DSF (AFMx), 2017 WL 3224656, at *7 (C.D. Cal. July 28, 2017) (dismissing claim for

business expenses where complaint merely alleged "use of personal phones for business-related

purposes, costs incurred to comply with Defendants' dress code, and costs incurred using their

personal vehicles for work travel," but "fail[ed] to provide a single instance when such a cost was

incurred"); *cf. Garcia v. Bryant*, No. CV–F–11–1566–LJO, 2011 WL 5241177, at *9 (E.D. Cal. Oct. 31, 2011) (concluding the § 2802 claim was sufficiently pled where the plaintiffs alleged that their employer did not reimburse them for travel expenses associated with mandatory travel to stores located in certain cities, or mandatory correspondence with supervisors using their personal telephones, both of which were required as part of their job duties).

Colopy also fails to allege facts that any supposed expense was "necessary" to or "in direct consequence" of his "discharge of his . . . duties," as required by Cal. Lab. Code § 2802(a).  Colopy makes only the conclusory allegation that the unspecified costs he purportedly incurred were "necessary expenditure[s] to work for Uber, which California law requires employers to reimburse." Compl. ¶ 27.  Section 2802 only requires an employer to reimburse its employees for expenses they "actually and necessarily incur in performing their employment tasks," and whether an expense was necessary "depends on the reasonableness of the employee's choices." *Gattuso v. Harte-Hanks Shoppers, Inc.*, 42 Cal. 4th 554, 567–68 (2007).  Colopy fails to allege facts sufficient to support these essential elements of his expense reimbursement claim, and his vague and unspecific allegation that he incurred costs as a "necessary expenditure" to provide rides using the Uber App is insufficient to cross the plausibility threshold.  As in *Landers*, Colopy has made only "generalized allegations" that such expenses were required, with no supporting factual details about why.  *Landers*, 711 F.3d. at 646.

Lastly, Colopy fails to allege any facts establishing that Uber knew or had reason to know that he incurred any expenditures subject to reimbursement.  Uber disputes that it can properly be deemed an "employer," but *even if* it were, an employer's duty to reimburse is not triggered unless it "either know[s] or has reason to know that the employee has incurred a reimbursable expense."  *Stuart v. RadioShack Corp.*, 641 F. Supp. 2d 901, 903 (N.D. Cal. 2009).  Only after "the employer has such knowledge" does it have a "duty to exercise due diligence and take any and all reasonable steps to ensure that the employee is paid for the expense."  *Id*.  As the court explained in *Stuart*, "if the employer had no knowledge or reason to know that the expense was incurred and the employee withheld that information, it would hardly seem fair to hold the employer accountable."  *Id*. at 902–03.  Here, Colopy has not even alleged that Uber knew or had reason to know that he was incurring

any work-related expenses, let alone alleged any specific facts demonstrating such knowledge.  *Cf.*

*Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1145 (9th Cir. 2012) ("[P]laintiffs must sufficiently

allege that a defendant was aware of" the circumstances giving rise to its legal obligations "to survive

a motion to dismiss.").  And while driving necessarily will involve certain expenses, drivers often

work on multiple apps simultaneously.  Consequently, the facts alleged are at most "merely

consistent with" liability but "stop[] short of the line between possibility and plausibility of

'entitlement to relief.'"  *Iqbal*, 556 U.S. at 678.

Because Colopy fails to plead the required elements of his claims under 2802, his claim fails

"as a matter of law" and should be dismissed.  *Hammitt v. Lumber Liquidators*, 19 F. Supp. 3d 989,

1001 (S.D. Cal. 2014).

### 2. Colopy Fails to State a Willful Misclassification Claim (Count III)

Colopy further alleges that Uber's conduct "in continuing to classify drivers as independent

contractors notwithstanding the California Supreme Court's decision in *Dynamex Operations W., Inc.*

*v. Superior Court*, 4 Cal. 5th 903, 416 P.3d 1 (2018), reh'g denied (June 20, 2018), and

notwithstanding the California Legislature's passage of Assembly Bill 5 . . . violates Cal. Lab. Code §

226.8 and constitutes willful misclassification."  Compl. ¶ 49.  Colopy's claim fails, however, for two

independent reasons: (1) there is no private right of action for violations of section 226.8, and (2)

even if there were, Colopy has not sufficiently pleaded a "willful misclassification" claim.

*First*, California courts have repeatedly held that section 226.8 does not provide a private

right of action.  "The existence of a private right of action depends on whether the Legislature has

manifested an intent to create such a right, which is revealed through the language of the relevant

statute and its legislative history."  *Villalpando v. Exel Direct Inc.*, No. 12-CV-04137 JCS, 2014 WL

1338297, at *14–19 (N.D. Cal. Mar. 28, 2014).  In *Villalpando*, the court dismissed with prejudice a

plaintiff's section 226.8 claim for willful misclassification after finding no clear legislative intent to

create a private right of action under section 226.8.  *Id.* at *19, 21.  Since *Villalpando*, courts in this

Circuit have consistently adopted its reasoning and concluded that section 226.8 does not provide

individual plaintiffs with a private right of action to enforce the statute.  *See, e.g., Lee*, 2018 WL

6605659, at *9–10 (noting that "[s]everal district court decisions have held that section 226.8 does

not create a private right of action" and dismissing that claim with prejudice); *Rosset v. Hunter Eng'g Co.*, No. C 14-01701 LB, 2014 WL 3569332, at *8 (N.D. Cal. July 17, 2014) ("Section 226.8 does not explicitly create a private right of action and neither the legislative history nor the other Labor Code provisions impliedly create one, either.") (citing *Villalpando*, 2014 WL 1338297, at *19); *Romano v. SCI Direct, Inc.*, No. 17-cv-03537-ODW (JEM), 2017 WL 8292778, at *8 (C.D. Cal. Nov. 27, 2017) (finding no private right of action for a violation of section 226.8 and granting motion to dismiss the claim without leave to amend).  In *Noe v. Superior Court*, 237 Cal. App. 4th 316, 338 (2015), the California Court of Appeals came to the same conclusion, reasoning that "the only specific language regarding enforcement of section 226.8 appears in subdivision (g), which authorizes the Labor Commissioner"—not a private plaintiff—"to enforce the statute."  Because Colopy does not have a private right of action under section 226.8, his claim must be dismissed with prejudice.

    *Second*, even if a private right of action existed under section 226.8, Colopy's claim must fail because Colopy has not plausibly alleged that Uber "willfully misclassified" him or other members of the putative class.  To survive a motion to dismiss a "willful misclassification" claim, a plaintiff must plead sufficient facts to support a claim that the defendant "avoid[ed] employee status for an individual by *voluntarily and knowingly* misclassifying that individual as an independent contractor." Cal. Lab. Code § 226.8(i)(4) (emphasis added).  Colopy's allegations fall far short of meeting this standard.  Indeed, although Colopy repeatedly alleges in a conclusory fashion that Uber has "willfully continued to misclassify its drivers as independent contractors," Compl. ¶¶ 31, 49, "[n]oticeably absent from the Complaint are any facts which plausibly suggest that [defendant]'s alleged violations were willful."  *Kellgren v. Petco Animal Supplies, Inc.*, No. 13-CV-0644 W (KSC), 2013 WL 12076473, at *3 (S.D. Cal. Sept. 13, 2013) (granting motion to dismiss where plaintiff's allegations that defendant "willfully violated the FLSA" "lack[ed] sufficient factual matter to satisfy the plausibility standard set forth in *Iqbal* and *Twombly*," as it "[c]ontain[ed] no factual allegations demonstrating that Petco showed *reckless disregard* of whether its alleged conduct was prohibited by the FLSA," emphasis added); *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1147–48 (9th Cir. 2012) (affirming dismissal of complaint where plaintiffs' allegations of defendants' knowledge were

"merely conclusory").  Nor does Colopy's "formulaic recitation of the elements" of the "ABC" test

set forth in *Dynamex*, Compl. ¶¶ 14-16, suffice to state a claim that Uber willfully misclassified him

as an independent contractor.  *Landers*, 771 F.3d at 641 ("Under *Twombly*, a complaint that offers . . .

'a formulaic recitation of the elements of a cause of action[,]' . . . will not suffice." (quoting

*Twombly*, 550 U.S. at 555, 557)).  For these reasons, Colopy's willful misclassification claim should

be dismissed without leave to amend.

### 3. Colopy Fails to State a Claim for Minimum Wage Violations (Counts IV and V)

Colopy also fails to plead sufficient factual allegations to support his minimum wage claims.

*Landers* is instructive; there, the Ninth Circuit addressed a claim for violations of the minimum wage,

and explained that the complaint must provide more than "generalized allegations asserting violations

of the minimum wage" laws in order to survive a motion to dismiss.[1]  *Landers*, 171 F.3d at 646.  To

meet this threshold, plaintiffs must provide facts "regarding a given workweek when [they] . . .

[were] not paid minimum wages."  *Id.*  Plaintiffs must also provide sufficient detail about the number

of compensable hours worked and the amount of wages paid in order to "support a reasonable

inference" of undercompensation.  *See id.*  For example, "[a] plaintiff may establish a plausible

[minimum wage] claim by estimating the length of her average workweek during the applicable

period and the average rate at which she was paid, . . . or any other facts that will permit the court to

find plausibility."  *Id.* at 645.  These specific factual allegations are necessary, the court held, in light

of *Twombly* and *Iqbal*'s mandate that "a complaint must contain sufficient factual content 'to state a

claim to relief that is plausible on its face,'" and not "merely set[] forth the elements of the claim."

*Id.* at 640–41 (quoting *Twombly*, 550 U.S. at 570).

*Lee v. Postmates Inc.* dismissed plaintiff's minimum wage claims even though the "plaintiff's

burden at the pleading stage is relatively light."  2018 WL 6605659 at *9.  Plaintiff's "general

allegations," simply could not "substitute" for more specific allegations as to plaintiff himself where

---

[1]  "Although *Landers* discussed FLSA claims," courts have determined that "its reasoning applies to California Labor Code claims as well."  *Tan v. GrubHub, Inc.,* 171 F. Supp. 3d 998, 1006 (N.D. Cal. 2016); *see also Byrd v. Masonite Corp.*, No. EDCV 16-35 JGB (KKx), 2016 WL 756523, at *3 (C.D. Cal. Feb. 25, 2016).

Gibson, Dunn &
Crutcher LLP

1    he merely described defendants' "typical conduct with respect to couriers in general," and contended

2    that he and other class members "suffered damages as a result of [defendant's] conduct and actions."

3    *Id.* at *10.

4          And in *Carter v. Rasier-CA, LLC*, No. 4:17-cv-00003-HSG, Dkt. 40 (N.D. Cal. Sept. 15, 2017),

5    for example, the plaintiff "allege[d] in conclusory fashion that Defendants 'did not pay [him] the

6    prevailing minimum wage, for each hour worked.'"  Declaration of Joshua Lipshutz, Ex. A at 5.  The

7    plaintiff further alleged that "there were periods or hours where Uber paid [him] $3.75 or less in fares."

8    *Id.*  The court determined that the plaintiff "critically fail[ed] to explain how he calculated this figure,

9    his hours worked, or his related hourly rate of pay."  *Id.*  Moreover, it was "unclear from the complaint

10   whether Plaintiff's definition of 'hours worked' include[d] time spent simply logged into the Uber

11   application in 'driver mode' or why such hours should be considered compensable time."  *Id.*  Because

12   this Court "did not find his claims plausible," it dismissed the minimum wage claim, *id.*, and the Ninth

13   Circuit affirmed, *Carter v. Rasier-CA, LLC*, 724 F. App'x 586 (9th Cir. 2018).

14         *Reilly v. Recreational Equipment, Inc.*, No. 18-cv-07385-LB, 2019 WL 1024960 (N.D. Cal.

15   Mar. 4, 2019) also dismissed minimum wage claims.  The plaintiff in *Reilly* alleged "that she 'was

16   required to undergo . . . security inspections without payment of minimum wages' … without further

17   facts." *Id.* at *4.  The court found the plaintiff did "not plead how many hours she worked or any facts

18   regarding a workweek when she was not paid minimum wage," *id.*, and dismissed the minimum wage

19   claim as a "vague recitation" that was "insufficient to state a claim."  *Id.*

20         Other examples abound.  *See, e.g.*, *Velasco v. Elliot*, No.18-cv-03191-VKD, 2018 WL

21   6069009, at *4–5 (N.D. Cal. Nov. 20, 2018) (noting that the "*Landers* pleading standard for FLSA

22   violations" applies to "similar California state law claims for … minimum wage violations" and

23   dismissing minimum wage claim under *Landers* standard); *McMillian v. Overton Sec. Servs., Inc.*, No.

24   17-cv-03354-JSC, 2017 WL 4150906, at *3 (N.D. Cal. Sept. 19, 2017) (plaintiff failed to state a FLSA

25   minimum wage claim where he did "not allege[] any pay period where he was paid below the minimum

26   wage"); *Byrd v. Masonite Corp.*, No. EDCV 16-35 JGB (KKx), 2016 WL 756523, at *3 (N.D. Cal.

27   Feb. 25, 2016) (dismissing minimum wage claim because "[n]owhere in the Complaint does Plaintiff

28   identify a specific instance in which he was denied a minimum wage"); *Tan v. GrubHub, Inc.*, 171 F.

11

Gibson, Dunn &
Crutcher LLP

1    Supp. 3d 998, 1008 (N.D. Cal. 2016) (dismissing minimum wage claim where "[t]here are no

2    allegations about what period of time or type of conduct Plaintiffs are counting as hours worked");

3    *Yucesoy v. Uber Techs., Inc.*, No. 15-cv-00262-EMC, 2016 WL 493189, at *5–6 (N.D. Cal. Feb. 9,

4    2016) (dismissing Massachusetts minimum wage claims with prejudice under FLSA standard); *see

5    also Castillo v. United Rentals, Inc.*, No. C17-1573JLR, 2018 WL 1382597, at *4 (W.D. Wash. Mar.

6    19, 2018) (dismissing minimum wage claim where the complaint did not "additionally allege that

7    violations occurred for the specific week"); *Rittman v. Amazon.com, Inc.*, No. C16-1554-JCC, 2017

8    WL 881384, at *2 (W.D. Wash. Mar. 6, 2017) (dismissing minimum wage claim where the plaintiff's

9    allegations "do not show there was a particular workweek in which any Plaintiff did not receive

10   minimum wage … to which she was entitled") (quotation marks and citation omitted).

11          The allegations in this case are materially similar to the cases above, and the result should be

12   the same.  For instance, Colopy does not allege when (if at all) he completed rides using Uber's App,

13   how much he was compensated in any given workweek, the amount of expenses that allegedly

14   contributed to the underpayment, or any other facts that would allow the Court to infer the

15   plausibility of a violation of minimum wage requirements.  Not only does the Complaint fail to

16   describe a single instance in which Colopy was paid less than minimum wage, but it also never

17   attempts to explain the methods by which Colopy calculates the minimum wages he is allegedly

18   owed.  *Landers*, 171 F.3d at 645 ("A plaintiff may establish a plausible [minimum wage] claim by

19   estimating the length of her average workweek during the applicable period and the average rate at

20   which she was paid . . . .").  For instance, Colopy does not explain "what period of time or type of

21   conduct [he is] counting as hours worked." *Tan*, 171 F. Supp. 3d at 1008.  Further, Colopy has not

22   alleged any facts explaining what hourly and regular rates of pay he used to compute minimum wage

23   pay, how he calculated those rates, or which records he consulted in doing so.  *See Hall v. Plastipak*,

24   No 15-11428, 2015 WL 5655888, at *3 (E.D. Mich. Sept. 25, 2015).  Without "basic factual

25   allegations" to support his minimum wage claims, Colopy cannot show a plausible entitlement to

26   relief.  *Tan*, 171 F. Supp. 3d at 1008; *see also Landers*, 171 F.3d at 646.

27          Instead, Colopy merely contends that "Uber has violated Cal. Lab. Code §§ 1194, 1197 by

28   failing to assure that drivers, including Thomas Colopy, make the applicable minimum wage for all

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS AND MOTION TO STRIKE PLAINTIFF'S
CLASS ACTION COMPLAINT
3:19-CV-06462-EMC

1  hours worked, after accounting for their expenses and other deductions taken from their pay."

2  Compl. ¶ 28; *cf. Yucesoy v. Uber Techs., Inc.,* No. 15-CV-00262-EMC, 2015 WL 6955140, at *3

3  (N.D. Cal. Nov. 10, 2015) (dismissing minimum wage claims where Plaintiff only contended that

4  "Plaintiff Morris calculates that in some weeks (including the week of June 16, 2015), considering

5  the hours he was logged in to receive ride requests from Uber, and after deducting the cost of his car

6  and gas expenses, the amount he received for his work driving for Uber came to less than the

7  Massachusetts minimum wage of $9.00 per hour.").  Colopy's allegations are "naked assertion[s]

8  devoid of further factual enhancement" and, therefore, insufficient to state a claim, *Iqbal*, 556 U.S. at

9  678, and courts must dismiss complaints that "contain[] only bare assertions untethered to any facts

10  about [the plaintiffs'] particular employment history."  *Schneider v. Space Sys./Loral, Inc.*, No. 5:11–

11  cv–02489–JF, 2011 WL 4344232, at *2 (N.D. Cal. Sept. 15, 2011) (dismissing overtime claim).

12  　　　　Applying *Landers*, courts have repeatedly dismissed minimum wage claims premised on

13  similarly threadbare allegations.  *See, e.g.*, *Miller v. Amazon.com, LLC*, No. 17-cv-03488-MMC,

14  2018 WL 2215600, at *1 (N.D. Cal. Mar. 29, 2018) (minimum wage claim dismissed where plaintiff

15  failed "to 'allege facts showing that there was a given week in which [she] was entitled to but denied

16  minimum wages'" (quoting *Landers*, 771 F.3d at 645)); *Carter v. Raiser-CA, LLC*, No. 17-cv-00003-

17  HSG, 2017 WL 4098858, at *3 (N.D. Cal. Sept. 15, 2017) (dismissing minimum wage claims where

18  complaint alleged "in conclusory fashion that Defendants 'did not pay Plaintiff the prevailing

19  minimum wage, for each hour worked'"); *Rio v. Uber Techs., Inc.*, No. 15-cv-03667-EMC, 2016 WL

20  10837864, at *3 (N.D. Cal. Mar. 28, 2016) (dismissing minimum wage claim where "Plaintiffs do not

21  even allege that they were personally not paid overtime or less than minimum wage, let alone a week

22  in which they were not paid overtime or less than minimum wage"); *Byrd v. Masonite Corp.*, 2016

23  WL 756523, at *3 & n.6 (dismissing minimum wage claim because "[n]owhere in the Complaint

24  does Plaintiff identify a specific instance in which he was denied a minimum wage"; instead, "[t]he

25  Complaint alleges only: 'During the relevant time period, Defendants failed to pay minimum wage to

26  Plaintiff and the other class members as required'"); *Perez v. Wells Fargo & Co.*, 75 F. Supp. 3d

27  1184, 1191 (N.D. Cal. 2014) (dismissing minimum wage claims where "there are no details pled as to

28  any specific named plaintiff—not where he/she worked, not what his/her job duties were, not what

13

1    the circumstances were under which any plaintiff was allegedly not paid minimum wage").  Non-

2    specific allegations that are "so threadbare or speculative that they fail to cross 'the line between the

3    conclusory and the factual'" and should be dismissed.  *Pruell v. Caritas Christi*, 678 F.3d 10, 13 (1st

4    Cir. 2012); *see also Landers*, 771 F.3d at 642, 644 (citing *Pruell* with approval).

5         Furthermore, Colopy's minimum wage claim must also fail because it is derivative of his

6    claim for business expenses reimbursement, which is deficient for the reasons stated above.  Section

7    III.B.1 *supra*.  Colopy does not allege which costs, or even what types of costs, he chose to deduct

8    when making any minimum wage calculations.  *See* Compl. ¶¶ 28, 51.  Colopy's vague references to

9    "the cost of maintaining [drivers'] vehicles, gas, insurance, and phone and data expenses," Compl. ¶

10   27, without more, leaves Uber with no way of determining whether these alleged "costs" were even

11   conceivably reimbursable expenses under any California law.  *See* Section III.B.1, *supra*.  Because

12   Colopy's minimum wage claim relies on his conclusory business expenses reimbursement claim,

13   Colopy's minimum wage claim fails.  *See Lopez v. Wendy's Int'l, Inc.*, No. CV 11-00275 MMM

14   (JCx), 2011 WL 6967932, at *12 (C.D. Cal. Sept. 19, 2011) (minimum wage claim that was possibly

15   derivative of a meal and rest break claim was insufficiently pleaded because the break claim on

16   which it relied was also conclusory).

17        Colopy's minimum wage allegations do not contain "enough facts to state a claim to relief

18   that is plausible on its face" and should be dismissed.  *Twombly*, 550 U.S. at 570.

19         **4.      Colopy Fails to State a Claim for Failure to Pay Overtime Premiums**

20                 **(Count V)**

21        Colopy further complains that Uber "has violated Cal. Lab. Code §§ 1194, 1198, 510 and 554

22   by failing to pay its drivers like Thomas Colopy the appropriate overtime premium for all overtime

23   hours worked beyond forty per week or eight per day," and that "Mr. Colopy has worked more than

24   eight hours per day and more than forty hours per week at various times since he began driving for

25   Uber."  Compl. ¶ 29.  He contends that his hours worked included "hours spent transporting

26   passengers, driving to pick up passengers, and driving between rides while awaiting the next ride."

27   *Id.*

28

Gibson, Dunn &
Crutcher LLP

While a plaintiff alleging overtime claims need not allege overtime compensation owed with mathematical precision, he must still provide "sufficient detail about the length and frequency of [his] unpaid work to support a reasonable inference that [he] worked more than forty hours in a given week." *Landers*, 771 F.3d 638 at 646. But here, Colopy did not provide *any* type of estimate of the number of hours he allegedly worked; he merely states that at "various times" he has worked "more than eight hours per day and more than forty hours per week," without any additional specificity. Compl. ¶ 29. Thus, he did not provide (1) a general estimate of the number of hours he worked per week, (2) any indication of how he calculated compensable time, (3) the reason he purportedly worked overtime hours, (4) any indication of the number of times he allegedly worked overtime hours, (5) any specific occasion on which he was not compensated for overtime worked, or (6) any single pay period in which he was wrongfully underpaid overtime. *See Christie v. Tuesday Morning, Inc.*, No. 214CV06505PSGAGR, 2015 WL 12781053, at *5 (C.D. Cal. May 27, 2015) ("While Plaintiff's claim that she was 'not paid for overtime hours worked' raises the 'possibility' of undercompensation, 'a possibility is not the same as plausibility.'").

These allegations are nearly identical to the overtime claims in *Yucesoy v. Uber Technologies, Inc.*, which this Court dismissed. *Yucesoy v. Uber Techs., Inc.*, No. 15-CV-00262-EMC, 2015 WL 6955140 (N.D. Cal. Nov. 10, 2015). In *Yucesoy*, plaintiffs alleged only that they "often worked more than 40 hours per week." *Id.* at *4; *cf.* Compl. ¶ 29 ("Mr. Colopy has worked more than eight hours per day and more than forty hours per week at various time since he began driving for Uber."). Plaintiffs did not, however, allege "how the basic rate of pay is calculated," or "their precise theory of overtime"; rather, they effectively argued that "there is a per se violation based *solely* on the failure to set a policy providing for overtime pay whenever an individual works more than forty hours," without pleading any "*specific* facts supporting their theory." *Id.* (emphasis added).

In short, Plaintiff's "conclusory allegations that merely recite the statutory language" are not sufficient to survive a motion to dismiss. *Landers*, 771 F.3d at 644; *see also, e.g.*, *Pryor v. Aerotek Sci., LLC*, No. CV1006575MMMAJWX, 2011 WL 13133757, at *4 (C.D. Cal. Mar. 14, 2011) ("Rather than specifically alleging that she worked pre-shift hours for which she was not compensated, [Plaintiff] asks the court to *infer* from the general allegations found in the first

Gibson, Dunn &
Crutcher LLP

15

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS AND MOTION TO STRIKE PLAINTIFF'S
CLASS ACTION COMPLAINT
3:19-CV-06462-EMC

amended complaint that she complied with [Defendant]'s policy.  Under the pleading standard articulated in *Twombly* and *Iqbal*, the court is not at liberty to do so."); *Anderson v. Blockbuster Inc.*, No. 2:10–cv–00158–MCE–GGH, 2010 WL 1797249, at *3 (E.D. Cal. May 4, 2010) (dismissing complaint alleging that "Plaintiff and class members consistently worked in excess of eight hours in a day, in excess of 12 hours in a day and/or in excess of 40 hours in a week" and that "Defendants willfully failed to pay all overtime").

### 5.  Colopy Fails to State a Claim for Failure to Provide Accurate Itemized Pay Statements (Count VI)

Colopy's Sixth Count, alleging failure to maintain required records and non-compliant wage statements, fails to state a claim because it is derivative of his other claims.  *See, e.g.*, *Harris v. Best Buy Stores, L.P.* No. 17-CV-00446-HSG, 2018 WL 984220, at *9 (N.D. Cal. Feb. 20, 2018) (dismissing derivative wage statement claims where underlying overtime claims failed); *cf. Thomas-Byass v. Michael Kors Stores (Cal.), Inc.*, No. EDCV 15-369 JGB (KKx), 2015 WL 13756100, at *7–8 (C.D. Cal. Sept. 16, 2015).  Independent of this factor, the claims fail on their own, as they are just as conclusory as Colopy's other claims.  *First*, Colopy merely recites the requirements of Labor Code Section 226(a) and avers that Uber has not met those requirements.  *Compare* Compl. ¶ 30 ("Uber has violated Cal. Lab. Code § 226(a) by failing to provide proper itemized wage statements that include all the requisite information required by California law, including hours worked and hourly wages and has failed to provide pay statements that are accessible to drivers outside of the Uber Application") *with* Cal. Lab. Code § 226 ("An employer . . . shall furnish . . . an accurate itemized statement in writing showing[:] gross wages earned, [] total hours worked by the employee, . . . all deductions, . . . net wages earned, . . . the inclusive dates of the period for which the employee is paid, . . . and [] all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee").  Indeed, Colopy "does not identify a single deficient wage statement or inadequate payroll record."  *See Byrd*, 2016 WL 756523, at *3.  *Second*, a wage statement claim under Labor Code section 226 can only stand where an employee has suffered "injury as a result of *a knowing and intentional failure* by an employer" to provide accurate wage statements.  But here, Colopy does not prove each of these elements, as he does not contend

16

that any purported failure to provide wage statements was "knowing and intentional." *See Magadia v. Wal-Mart Assocs., Inc.*, 384 F. Supp. 3d 1058, 1080–82 (N.D. Cal. 2019) ("the knowing and intentional requirement of § 226 is akin to a willfulness requirement. That is, in order to be liable, Wal-Mart must have willfully intended to issue wage statements that were out of compliance with § 226."). And, he does not allege that he or any putative class members were injured as a result of any purported wage statement defects. Such conclusory allegations are "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" and accordingly Colopy's Sixth Count should be dismissed. *See Iqbal*, 556 U.S. at 678.

### 6. Colopy Fails to State a Claim for Unlawful or Unfair Business Practices (Count VII)

Colopy's claim under the California Business and Professions Code, like his prior claim, is entirely derivative of his inadequate Labor Code claims, and thus should also be dismissed. *Byrd v. Masonite Corp.*, 2016 WL 756523, at *4 (C.D. Cal. Feb. 25, 2016) (dismissing plaintiff's unfair competition law claim "premised on [underlying dismissed] California Labor Code claims"); *Angeles v. U.S. Airways, Inc.*, No. C 12–05860 CRB, 2013 WL 622032, at *10–11 (N.D. Cal. Feb. 19, 2013) (dismissing waiting time penalty and unfair competition claims based on failed overtime, meal period, and rest break claims); *White v. Starbucks Corp.*, 497 F. Supp. 2d 1080, 1089–90 (N.D. Cal. 2007) (dismissing Section 17200 and wage statement claims where underlying claims were invalid); *Schneider*, 2011 WL 4344232, at *3.

Specifically, in Count VII Colopy alleges that Uber's conduct "constitutes unlawful business acts or practices, in that Uber has violated California Labor Code Sections 2802, 1194, 1198, 510, 554, 1197, 1194, 1182.12, 1194.2, 1197.1, 1199, 226.8, and 226(a)." Compl. ¶ 57. Because Colopy has failed to state a plausible claim for relief under any of the predicate statutes (see Sections III.B.1-5), this derivative claim also fails and should be dismissed. *See, e.g.*, *Tan v. GrubHub, Inc.*, 171 F. Supp. 3d 998, 1010–11 (N.D. Cal. 2016) (where "UCL claim is premised on the same acts alleged in the complaint's other causes of action, and those causes of action fail, the UCL claim likewise must be dismissed because the plaintiff has not adequately alleged any predicate unlawful acts"); *Smith v. Level 3 Commc'ns Inc.*, No. C 14-05036 WHA, 2014 WL 7463803, at *4 (N.D. Cal. Dec. 30, 2014)

17

Gibson, Dunn &
Crutcher LLP

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS AND MOTION TO STRIKE PLAINTIFF'S
CLASS ACTION COMPLAINT
3:19-CV-06462-EMC

1  ("To state a claim under Section 17200, a plaintiff must adequately plead a violation of a specific

2  alternative statute."); *see also Rice v. Fox Broad. Co.*, 330 F.3d 1170, 1182 (9th Cir. 2003) (where a

3  "claim under § 17200 is dependent" on another claim, the two claims "rise and fall together" (internal

4  quotation marks omitted)).

5              **7.      Colopy Fails to State a Claim for Declaratory Judgment (Count I)**

6          Plaintiff's pursuit of declaratory relief pursuant to the Uniform Declaratory Judgment Act, 28

7  U.S.C. §§ 2201 and 2202, for a declaration that Uber has violated the California Labor Code and

8  Wage Orders and purported "public injunct[ive]" relief should also be dismissed along with his other

9  claims because his expense reimbursement, willful misclassification, minimum wage, overtime, wage

10 statement, and UCL claims all fail as a matter of law.  Thus, Count I of Colopy's Complaint, seeking

11 declaratory relief, should also be dismissed.

12 **IV.    PLAINTIFF'S SWEEPING CLASS ALLEGATIONS SHOULD BE DISMISSED OR
          STRICKEN**

13

14         Plaintiff's class allegations should be dismissed or stricken pursuant to Rules 12(b)(6) and

15 23(d)(1)(D) of the Federal Rules of Civil Procedure for failure to state a plausible claim for classwide

16 relief, or, in the alternative, class certification should be denied under Rule 23(c)(1)(A).  *See, e.g.*, *Gen.

17 Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982) (noting that "[s]ometimes the issues are plain

18 enough from the pleadings" to resolve class certification); *Vinole v. Countrywide Home Loans, Inc.*,

19 571 F.3d 935, 939–40, 944 (9th Cir. 2009) (affirming the "den[ial] [of] class certification before the

20 close of discovery and before the pretrial motion deadline"); *Pilgrim v. Universal Health Card, LLC*,

21 660 F.3d 943, 949 (6th Cir. 2011) (affirming lower court's decision to strike class allegations where

22 the plaintiff failed to "explain what type of discovery or what type of factual development would alter

23 the central defect in th[e] class claim"); *John v. Nat'l Sec. Fire & Cas. Co.*, 501 F.3d 443, 445 (5th Cir.

24 2007) (affirming dismissal of class allegations pursuant to Rule 12(b)(6)).

25         **A.      Legal Standard for Motion to Strike**

26         Under Rule 12(f), courts may "strike from a pleading . . . any redundant, immaterial,

27 impertinent, or scandalous matter."  Fed. R. Civ. P. 12(f).  Redundant matter is defined as "needlessly

28 repetitive or wholly foreign to the issues involved in the action."  *Cal. Dep't of Toxic Substances*

Gibson, Dunn &
Crutcher LLP

18

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS AND MOTION TO STRIKE PLAINTIFF'S
CLASS ACTION COMPLAINT
3:19-CV-06462-EMC

*Control v. Alco Pac., Inc.*, 217 F. Supp. 2d 1028, 1033 (C.D. Cal. 2002).  "Immaterial matter 'has no essential or important relationship to the claim[s] for relief pleaded,' and impertinent matter 'does not pertain and is not necessary to the issues in question in the case.'"  *Francisco v. Emeritus Corp.*, No. CV 17–02871–BRO (SSx), 2017 WL 7790038, at *2 (C.D. Cal. July 14, 2017).  "[T]he function of a Rule 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial[.]"  *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993), *rev'd on other grounds*, 510 U.S. 517 (1994).

Rule 23(c)(1)(A) mandates that "[a]t an early practicable time after a person sues or is sued as a class representative, the court must determine by order whether to certify the action as a class action."  Rule 23(d)(1)(D) similarly permits a court to "issue orders that . . . require that the pleadings be amended to eliminate allegations about representation of absent persons and that the action proceed accordingly."

Taken together, these Rules permit district courts to resolve and strike claims at the pleading stage where it is plain from the pleadings that the class cannot be certified as defined.  *See Titsworth v. SKO Brenner Am., Inc.*, CV 12–03457 SJO (SHx), 2012 WL 13013042, at *5 (C.D. Cal. Aug. 15, 2012); *Tietsworth v. Sears*, 720 F. Supp. 2d 1123, 1146–47 (N.D. Cal. 2010); *Santangelo v. Comcast Corp.*, No. 15-cv-0293, 2017 WL 6039903, at *1 (N.D. Ill. Dec. 6, 2017).

"[T]he plaintiff bears the burden of advancing a prima facie showing that the class action requirements of Fed. R. Civ. P. 23 are satisfied or that discovery is likely to produce substantiation of the class allegations."  *Mantolete v. Bolger*, 767 F.2d 1416, 1424 (9th Cir. 1985) (rejecting plaintiff's claim that "the trial court abused its discretion by refusing to allow discovery for an asserted national class").  As with any other claim, to survive a motion to dismiss, a plaintiff must plead "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft*, 556 U.S. at 678 (quoting *Bell Atl. Corp*, 550 U.S. at 570).  The pleading standard of Rule 8 of the Federal Rules of Civil Procedure "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."  *Id.* at 678–79.

Gibson, Dunn &
Crutcher LLP

### B.   Plaintiff Fails to Adequately Allege a Prima Facie Showing under Rule 23

In *O'Connor v. Uber Technologies, Inc.*, the Ninth Circuit held that a class cannot be certified where it "includes drivers who entered into agreements to arbitrate their claims" and who "waive[d] their right to participate in a class action with regard to those claims." *O'Connor v. Uber Techs., Inc.*, 904 F.3d 1087, 1094–95 (9th Cir. 2018).   Indeed, the existence of these agreements constituted an insurmountable barrier to certification, as the question of whether "those agreements were enforceable was not properly for the district court to answer," because "[t]he question of arbitrability was designated to the arbitrator." *Id.*   But even prior to the Ninth Circuit's decision in *O'Connor*, it recognized that arbitration agreements eroded commonality and other requisite certification factors. *See, e.g.*, *Avilez v. Pinkerton Gov't Servs., Inc.*, 596 F. App'x 579 (9th Cir. 2015) ("the district court abused its discretion to the extent it certified classes and subclasses that include employees who signed class action waivers"); *Lozano v. AT & T Wireless Servs., Inc.*, 504 F.3d 718, 728 (9th Cir. 2007) (affirming denial of class certification where defendant sought to enforce arbitration agreement as to class members).

Here, many California drivers already released their claims against Uber; and while the class definition excludes that subset of individuals, only a small number of putative class members[2] both opted out Uber's arbitration agreement and are not covered by prior releases, while more than 173,000 of the sweeping putative class members are bound to arbitrate their claims on an individual basis and therefore cannot participate in a class proceeding (*see* Chan. Decl. ¶¶ 4-5).   *Cf. O'Connor*, 904 F.3d at 1094–95; *see also Magana v. DoorDash, Inc.*, 343 F. Supp. 3d 891, 897 (N.D. Cal. 2018) (denying argument that "drivers who agreed to binding arbitration may now be 'deemed' to have opted out of arbitration so long as a single driver opted out of arbitration, and so long as that driver is a named plaintiff in a putative class action").   Indeed, the fact that most putative class members are bound to arbitrate necessarily precludes commonality and predominance.   And it renders Colopy atypical and

---

[2] For purposes of this brief, Uber accepts a liberal definition of the putative class such that "drivers who worked in California" includes drivers who have taken even one trip in California.  But Uber reserves the right to challenge this definition for purposes of any class certification opposition and otherwise.

Gibson, Dunn &
Crutcher LLP

1    inadequate class representatives because he is *not* bound to arbitrate.  A plethora of cases confirm that

2    a class cannot be certified under these circumstances.  *See Tan*, 2016 WL 4721439, at *3 (class

3    representative who opted out of arbitration agreement "would be unable to credibly make several

4    procedural unconscionability arguments on behalf of unnamed class members"); *Tschudy v. J.C.*

5    *Penney Corp., Inc*., No. 11CV1011 JM, 2015 WL 8484530, at *3 (S.D. Cal. Dec. 9, 2015) ("[p]utative

6    class members with arbitration provisions likely cannot be included in the class because they are

7    uniquely subject to having their disputes resolved in a non-judicial forum"); *Quinlan Macy's Corp.*

8    *Servs., Inc*., No. CV1200737DDPJCX, 2013 WL 11091572, at *3 (C.D. Cal. Aug. 22, 2013) (named

9    plaintiff not typical of class where plaintiff was not subject to arbitration program applicable to most

10   of the putative class).

11         **C.    Colopy's Claims Lack Commonality, Predominance, And Superiority**

12         Colopy's class claims cannot be certified because they do not present common questions of law

13   and fact, and whatever common questions do exist would not predominate over individualized

14   questions.  *See* Fed. R. Civ. P. 23(a)(2), (b)(3).  Plaintiffs bear a heavy burden to establish that common

15   questions will predominate; as the Supreme Court has observed, "Rule 23(b)(3)'s predominance

16   criterion is *even more demanding* than Rule 23(a)."  *Comcast Corp. v. Behrend*, 569 U.S. 27, 34 (2013)

17   (emphasis added).  This is because "[t]he class action is 'an exception to the usual rule that litigation

18   is conducted by and on behalf of the individual named parties only,'" and Rule 23(b)(3) especially is

19   "an 'adventuresome innovation,'" "designed for situations in which class-action treatment is not as

20   clearly called for."  *Id.* at 33–34.

21         The Arbitration Agreement destroys any commonality among putative class members.[3]  "What

22   matters . . . is not the raising of common 'questions'—even in droves—but rather, the capacity of a

23   class-wide proceeding to generate common *answers* apt to drive the resolution of the litigation."  *Wal-*

24   *Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) (internal quotations and citations omitted).  But

25

26   [3]  Of course, even a class comprised only of individuals who were not required to arbitrate their
     claims would lack commonality and predominance in light of the countless variations among
27   individuals who use the Uber App as drivers.  Uber reserves the right to assert denial of class
     certification, modification of the class definition, or other appropriate relief (including moving to
28   compel individual arbitration when and if a class including such individuals is certified) if the
     Court does not dismiss or strike the class allegations at this stage.

Gibson, Dunn &
Crutcher LLP

classwide answers are not possible here given that the Court lacks authority to render *any* answers for the vast majority of putative class members who agreed to submit their disputes to arbitration. "[W]here certain members of a class are subject to contracts containing arbitration clauses, while other class members are not, those differences in contractual relationships destroy[] the commonality . . . of the class." *In re Titanium Dioxide Antitrust Litig.*, 962 F. Supp. 2d 840, 861 (D. Md. 2013); *see* Tan 2016 WL 4721439, at *3 (agreeing with *Titanium* that when the vast majority of class members are subject to individual arbitration, the class action will not generate common answers). Again, *O'Connor* is instructive; there, the Ninth Circuit noted that Rule 23's requirements simply cannot be satisfied where the majority of the putative class is bound by an arbitration agreement and where the named plaintiff is not: "certification of the class by the district court, notably the court's determinations that the requirements of Rule 23 were satisfied, was premised upon the district court's conclusion that the arbitration agreements were not enforceable." 904 F.3d at 1094 (9th Cir. 2018).

For the same reasons, it is apparent that a class action does not provide a superior mechanism for resolving this dispute. *See* Fed. R. Civ. P. 23(b)(3). In fact, because the vast majority of putative class members are bound to arbitrate their claims on an individual basis, a class action is an *inferior* vehicle for litigating this action. *See O'Connor v. Uber Techs., Inc.*, No. 13-CV-03826-EMC, 2019 WL 1437101, at *2 (N.D. Cal. Mar. 29, 2019) (explaining that the court denied class settlement where it "agreed with Plaintiffs' assessment that they faced a substantial risk that the Ninth Circuit would decide that Uber's arbitration agreement was enforceable, which 'could well render a settlement providing for monetary relief reflecting a 90% discount off the verdict value along with limited non-monetary relief fair and adequate.'"); *see also Pablo v. ServiceMaster Global Holdings, Inc.*, No. C 08–03894 SI, 2011 WL 3476473, at *2 (N.D. Cal. Aug. 9, 2011) ("The arbitration agreements . . . support the Court's finding that a class action is not the superior method of adjudication in this case.").

### D.   Plaintiff Colopy Is Not A Typical Or Adequate Class Representative

A class may not be certified unless "the claims or defenses of the representative parties are typical of the claims or defenses of the class" and "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(3), (4). These requirements "serve[] to uncover conflicts of interest between named parties and the class they seek to represent," *Amchem Prod., Inc.*

22

Gibson, Dunn &
Crutcher LLP

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS AND MOTION TO STRIKE PLAINTIFF'S
CLASS ACTION COMPLAINT
3:19-CV-06462-EMC

*v. Windsor*, 521 U.S. 591, 625 (1997), acting "as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence," *Gen. Tel. Co. of the Sw.*, 457 U.S. at 157 n.13.  Colopy cannot satisfy either of these requirements.

Unlike the vast majority of putative class members, Colopy is not subject to the Arbitration Agreement and, accordingly, is not subject to its class waiver. *See* Chan Decl. ¶ 6.  As discussed above, the fact that most putative class members are bound by arbitration agreements precludes class certification *no matter who purports to represent the class*.  But the commonality and predominance problems inherent in the proposed class are compounded where one of the few putative class members who has not signed an arbitration agreement seeks to represent the overwhelming proportion who *have* done so.  Because Colopy is not bound by an arbitration agreement, he "is not an adequate representative, and h[is] claims lack[] typicality."  *Avilez*, 596 F. App'x at 579; *see also In re Checking Account Overdraft Litig.*, 780 F.3d 1031, 1039 (11th Cir. 2015) ("The named plaintiffs lack standing to assert any rights the unnamed putative class members might have to preclude Wells Fargo from moving to compel arbitration because the named plaintiffs have no cognizable stake in the outcome of that question."); *Tan*, 2016 WL 4721439, at *3 (denying class certification because the named plaintiff, who opted out of arbitration, could not represent a class of individuals bound to arbitrate their claims on an individual basis); *see, e.g.*, *Conde v. Open Door Mktg., LLC*, 223 F. Supp. 3d 949, 960 (N.D. Cal. 2017) ("Plaintiffs are not personally affected by the arbitration agreements at issue because they have not signed agreements that contain similar terms. . . .  Thus, the defenses the named Plaintiffs are subject to are not typical of the class as proposed.").

Given this important and undisputed difference between Colopy's relationship with Uber and that of the vast majority of putative class members he seeks to represent, his claims are not typical of the claims of the alleged putative class, and he cannot adequately represent the interests of the putative class, as a matter of law.

Further, given the failure to actually allege plausible claims, Colopy cannot actually assert any of his claims on behalf of the class.  As the Ninth Circuit has stated, "representative parties who have

1    a direct and substantial interest have [Article III] standing; the question of whether they may be allowed

2    to present claims on behalf of others" depends "on an assessment of typicality and adequacy of

3    representation." *Melendres v. Arpaio*, 784 F.3d 1254, 1262 (9th Cir. 2015) (citation omitted); *Bruno*

4    *v. Quten Research Inst., LLC*, 280 F.R.D. 524, 530 (C.D. Cal. 2011) (Carter, J.) (agreeing that it is a

5    question of typicality and adequacy).  Where a named plaintiff has not suffered the harm alleged to

6    have been suffered by absent members of the class, he cannot adequately serve as its representative.

7    *See, e.g.*, *Flores v. Supervalu, Inc.*, 509 F. App'x 593, 594 (9th Cir. 2013) (the named plaintiff "having

8    never been denied appropriate overtime compensation, was not a member of that class and therefore

9    did not have standing").

10       **C.      Plaintiff's Class Claims Should Be Dismissed With Prejudice**

11       A court may dismiss claims with prejudice where "amendment[] would fail to cure the pleading

12   deficiencies and amendment would be futile."  *Cervantes v. Countrywide Home Loan Servs., Inc.*, 656

13   F.3d 1034, 1041 (9th Cir. 2011).  Such is the case here.  As noted above (*see supra* at pp. 20-23), the

14   fact that the vast majority of putative class members signed the valid Arbitration Agreement precludes

15   commonality and predominance of the putative class Colopy seeks, no matter what particular causes

16   of action they allege or whom they identify to represent the class.

17       And here, there is no reason to think that amendment will aid Colopy's Complaint should he be

18   granted another bite at the apple.   Accordingly, Colopy's class claims should be dismissed with

19   prejudice.  *See Mohammad v. King City Police Dep't*, No. 17-cv-00615-BLF, 2017 WL 2617980, at

20   *4 (N.D. Cal. June 16, 2017) ("Mr. Mohammad has, over the course of four years, three cases, and four

21   motions, failed to remedy this basic error in his pleadings despite clear warnings."); *Borja-Valdez v.*

22   *City & Cnty. of S.F.*, No. 3:14–cv–04168–CRB, 2015 WL 5522287, at *8 (N.D. Cal. Sept. 18, 2015)

23   ("Ellison has had ample opportunity to articulate a viable legal theory").

24   **V.      CONCLUSION**

25       Because Colopy has failed to state "enough facts to state a claim to relief that is plausible on its

26   face" with respect to himself—much less the circumstances of the putative class members—with

27   respect to all claims he has alleged, the Court should dismiss his entire Complaint.  At a minimum,

28   because Plaintiff is not bound by the Arbitration Agreement, and thus cannot pursue his claims on

Gibson, Dunn &
Crutcher LLP

24
DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS AND MOTION TO STRIKE PLAINTIFF'S
CLASS ACTION COMPLAINT
3:19-CV-06462-EMC

behalf of the alleged class because the vast majority of the absent persons he seeks to represent are bound by the Arbitration Agreement, this Court should strike Colopy's class action allegations.

Dated: October 18, 2019                              GIBSON, DUNN & CRUTCHER LLP

                                        By:    _____/s/ Theane Evangelis_____
                                                     Theane Evangelis

                                        Attorneys for Defendants UBER TECHNOLOGIES, INC.

Gibson, Dunn &
Crutcher LLP

I, Theane Evangelis, hereby attest that I have on file all holographic signatures corresponding to any signatures indicated by a conformed signature (/s/) within this e-filed document.


By: _____/s/ Theane Evangelis_____
Theane Evangelis

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS AND MOTION TO STRIKE PLAINTIFF'S
CLASS ACTION COMPLAINT
3:19-CV-06462-EMC

Gibson, Dunn &
Crutcher LLP