1

2

3

4                        UNITED STATES DISTRICT COURT

5                      NORTHERN DISTRICT OF CALIFORNIA

6

7    THOMAS COLOPY,                          Case No.  19-cv-06462-EMC

8                    Plaintiff,               **ORDER DENYING PLAINTIFF'S**
                                              **MOTION FOR PRELIMINARY**
9            v.                               **INJUNCTION, GRANTING IN PART**
                                              **AND DENYING IN PART**
10   UBER TECHNOLOGIES INC.,                  **DEFENDANT'S MOTION TO DISMISS,**
                                              **AND DENYING DEFENDANT'S**
11                   Defendant.               **MOTION TO STRIKE**

12                                            Docket Nos. 2, 11

13

14                       **I.      INTRODUCTION**

15          Thomas Colopy ("Plaintiff") works as a driver for Uber Technologies, Inc. ("Defendant"

16   or "Uber").  Plaintiff brings this putative class action alleging that Uber misclassifies its drivers as

17   independent contractors, while California law requires that they be classified as employees.

18   Plaintiffs have filed a Motion for Preliminary Injunction, and Defendants have filed a Motion to

19   Dismiss and a Motion to Strike.

20                       **II.      BACKGROUND**

21   A.      Factual Background

22          Plaintiff is Thomas Colopy, a resident of San Francisco, California, who has worked as an

23   Uber driver since 2012.  *See* Class Action Complaint ("Complaint") ¶ 5.  Defendant is Uber

24   Technologies, Inc., a corporation headquartered in San Francisco, California.  *Id.* ¶ 7, 10.  Mr.

25   Colopy brings the case as a putative class action.  *Id.* ¶ 6, 33.  He seeks damages, as well as

26   declaratory and injunctive relief.  *Id.* ¶ 4.

27          Plaintiff alleges the following.  Uber has "misclassified its drivers, including Plaintiff

28   Thomas Colopy, as independent contractors when they should be classified under California law

United States District Court
Northern District of California

as employees." *Id.* ¶ 2.  This alleged misclassification has permitted the company to require drivers to pay their own business expenses, to avoid paying minimum wage and overtime premiums, and to avoid providing itemized wage statements in violation of the California Labor Code.  *See id.* ¶ 2, 28–30.

Plaintiff further asserts that Uber's actions constitute "willful misclassification" pursuant to California Labor Code Section 226.8.  *Id.*  In support of that contention, Plaintiff highlights the passage of Assembly Bill 5 ("AB5"), codifying the California Supreme Court decision *Dynamex Operations W., Inc. v. Superior Court*, 4 Cal. 5th 903 (2018), *reh'g denied* (June 20, 2018), "under which an alleged employer cannot justify classifying workers as independent contractors who perform services within its usual course of business." *Id.* ¶ 3, 31.  Plaintiff contends that the author of the bill specifically intended that it would cover Uber, and when Uber failed to obtain a "carve-out" from AB5, it "publicly stated that it intends to defy th[e] statute and continue to classify its drivers as independent contractors."  *Id.*; *see also id.* ¶ 32.

B.     Procedural Background

Plaintiff filed a Class Action Complaint on October 8, 2019.  *See* Docket No. 1.  That same day, Plaintiff also filed a Motion for Preliminary Injunction.  *See* Docket No. 2.  On October 10, 2019, the case was related to *O'Connor v. Uber Technologies, Inc.* (Case No. 3:13-cv-03826) and reassigned to this Court.  *See* Docket No. 8.  On October 18, 2019, Defendant filed a Motion to Dismiss and a Motion to Strike.  *See* Docket No. 11.  A motion for class certification has not yet been filed.  These are the only three motions pending before the Court.

## III.     **DISCUSSION**

A.     Preliminary Injunction

Within the Ninth Circuit, the issuance of class-wide relief prior to the certification of the class is strongly disfavored.  *See M.R. v. Dreyfus*, 697 F.3d 706, 738 (9th Cir. 2012) (citing *Zepeda v. INS*, 753 F.2d 719 (9th Cir. 1985).  In *Zepeda*, the court held: "Without a properly certified class, a court cannot grant relief on a class-wide basis. . . . This is particularly true when, as here, a preliminary injunction is involved."  *Id.* at 728 n.1.  *See also id.* ("A district court's power to issue a preliminary injunction should not be broader in scope with respect to nonparties

than its powers following a full trial on the merits.").

Although exceptions to this general rule have been permitted (particularly in the civil rights context), those exceptions are bound by "narrow confines." *Zepeda*, 753 F.2d at 728 n.1. For example, class certification may not be necessary prior to the issuance of injunctive relief where "the relief necessary . . . for individual plaintiffs would be identical to that necessary for a class." *Id.* (discussing *Bailey v. Patterson*, 323 F.2d 201 (5th Cir. 1963), *cert. denied*, 376 U.S. 910 (1964)). In *Bailey*, the Fifth Circuit explained:

> Appellants do not seek the right to use those parts of segregated facilities that have been set aside for use by "whites only." They seek the right to use facilities which have been desegregated, that is, which are open to all persons, appellants and others, without regard to race. The very nature of the rights appellants seek to vindicate *requires* that the decree run to the benefit not only of appellants but also for all persons similarly situated.

*Bailey*, 323 F.2d at 206 (emphasis added). Thus, "the relief required for the individual plaintiffs [in *Bailey*] was necessarily identical to the relief that would have been granted had a class action been filed." *Zepeda*, 753 F.2d at 728 n.1. That is not true of the case at bar. Relief can be granted to Mr. Colopy without necessarily granting relief to other drivers.[1]

Plaintiff argues that pre-certification injunctive relief is appropriate because "Plaintiff is seeking *public*–not class-wide–injunctive relief." Reply in Support of Preliminary Injunction ("PI Reply") at 10, Docket No. 21. This argument is not convincing. Even if "public" injunctive relief could be sought on a preliminary basis,[2] Mr. Colopy does not seek a public injunction under *McGill*. "Merely declaring that a claim seeks a public injunction . . . is not sufficient to bring that claim within the bounds of the rule set forth in *McGill*." *Sponheim v. Citibank, N.A.*, No. SACV19264JVSADSX, 2019 WL 2498938, at *4 (C.D. Cal. June 10, 2019) (quoting *Blair v.*

---

[1] Compare classes certified under Fed. R. Civ. P. 23(b)(2) with those certified under Rule 23(b)(3). Injunctive relief under Rule 23(b)(3) typically does not inevitably affect all class members; such a class action would appear to be less amenable to the exception to *Zepeda*.

[2] The issuance of a preliminary injunction is primarily procedural. *See, e.g.*, *S. Milk Sales, Inc. v. Martin*, 924 F.2d 98, 102 (6th Cir. 1991) (noting that "the purpose of a preliminary injunction . . . is essentially procedural"). Federal law, not state law, controls. *See id.* ("It is federal law, therefore, that controls in this action."); *see also Hanna v. Plumer*, 380 U.S. 460, 465 (1965) ("federal courts are to apply state substantive law and federal procedural law"). It is not clear how *McGill* would apply under *Zepeda*.

United States District Court
Northern District of California

*Rent-A-Center, Inc.*, No. C 17-02335 WHA, 2017 WL 4805577, at *2 (N.D. Cal. Oct. 25, 2017));
*see also Johnson v. JP Morgan Chase Bank, N.A.*, No. EDCV 172477 JGB (SPx), 2018 WL
4726042, at *6 (C.D. Cal. Sept. 18, 2018) ("Merely requesting relief which would generally enjoin
a defendant from wrongdoing does not elevate requests for injunctive relief to requests for public
injunctive relief."); *Wright v. Sirius XM Radio Inc.*, No. SACV 16-01688, 2017 WL 4676580, at
*9 (C.D. Cal. June 1, 2017) (finding a request for injunctive relief to be a request for private
injunctive relief because the "generalized allegations" about harm to the public did not change the
fact that "any benefit to the public [would be] merely 'incidental'").  Public injunctive relief must
actually "ha[ve] the primary purpose and effect of prohibiting unlawful acts that threaten future
injury to the general public."  *McGill v. Citibank, N.A.*, 2 Cal. 5th 945, 955 (2017) (quoting
*Broughton v. Cigna Healthplans of California*, 21 Cal. 4th 1066, 1077 (1999)).  "Relief that has
the primary purpose or effect of redressing or preventing injury to an individual plaintiff—or to a
group of individuals similarly situated to the plaintiff—does not constitute public injunctive
relief."  *Magana v. DoorDash, Inc.*, 343 F. Supp. 3d 891 (N.D. Cal. 2018) (Hamilton, J.) (quoting
*McGill*, 2 Cal. 5th at 955).

In *Magana*, the court examined *McGill* in a case very analogous to the one at bar:

> Here, plaintiff's operative complaint and proposed amended
> complaint both seek injunctive relief only for his California Labor
> Code claims.  Those claims have the primary purpose and effect of
> redressing and preventing harm to DoorDash's employees.  Indeed,
> plaintiff's argument makes clear that the injunctive relief he seeks
> would be entirely opposite of what *McGill* requires—any benefit to
> the public would be derivate of and ancillary to the benefit to
> DoorDash's employees (in the form of, for example, the company's
> increased tax payments and employees' possible decreased
> dependence on assistance from the state government).  Therefore,
> Magana does not assert a claim for public injunctive relief under
> state law.

*Magana*, 343 F. Supp. 3d at 901.  Similarly, in *Clifford v. Quest Software Inc.*, 38 Cal. App. 5th
745, 755 (Ct. App. 2019), *review denied* (Nov. 13, 2019), the California Court of Appeal found
that the "public interest and any incidental benefit to the public from ensuring Quest's compliance
with wage and hour laws [stemming from misclassification as an exempt employee] d[id] not
transform Clifford's private UCL injunctive relief claim into a public one under the definitions of

United States District Court
Northern District of California

1  public and private injunctive relief articulated by our Supreme Court in *Broughton, Cruz*, and

2  *McGill*" and explained that "[u]nder those definitions, an employee's request for an injunction

3  requiring his employer to comply with the Labor Code is indisputably private in nature." *Clifford*,

4  38 Cal. App. 5th at 755.   Other courts have declined to find the injunctive relief public in

5  analogous circumstances.  *See, e.g.*, *McGovern v. U.S. Bank N.A.*, 362 F. Supp. 3d 850, 858 (S.D.

6  Cal. 2019) ("any injunction . . . would primarily benefit only USB account-holders who would

7  otherwise incur the duplicate OON Fees or OD Fees in the future"); *Croucier v. Credit One Bank,*

8  *N.A.*, No. 18CV20-MMA (JMA), 2018 WL 2836889, at *5 (S.D. Cal. June 11, 2018) (declining to

9  find that the injunctive relief was public injunctive relief where "the putative class affected by the

10  alleged conduct [robo-calls to customers who failed to make timely payments and who also

11  revoked consent to receive such calls] would be limited to a small group of individuals similarly

12  situated to the plaintiff").

13      *McGill* does not apply here.  As in *Clifford* and *Magana*, Mr. Colopy is seeking a private,

14  not public, injunction.

15      Finally, Uber's arbitration agreement—to which many members of the putative class are

16  bound—underscores the fact that preliminary injunctive relief is inappropriate at this stage.  This

17  arbitration agreement has been upheld as enforceable by the Ninth Circuit.  *See O'Connor v. Uber*

18  *Techs., Inc.*, 904 F.3d 1087, 1094 (9th Cir. 2018); *see also Mohamed v. Uber Techs., Inc.*, 848

19  F.3d 1201, 1208 (9th Cir. 2016).  As a result, the number of drivers entitled to injunctive relief is

20  likely to be a small subset of all drivers.  The scope of an enforceable injunction is ill-defined at

21  this juncture.  This underscores the prematurity of Mr. Colopy's motion for broad preliminary

22  injunctive relief.

23      The Court thus **DENIES** Plaintiff's Motion for Preliminary Injunction.

24  B.    Motion to Dismiss

25      Under *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atlantic Corp. v. Twombly*, 550 U.S.

26  544 (2007), a plaintiff's factual allegations in the complaint "must . . . suggest that the claim has at

27  least a plausible chance of success."  *In re Century Aluminum Co. Securities Litigation*, 729 F.3d

28  1104, 1107 (9th Cir. 2013).  In other words, the complaint "must allege 'factual content that

1  allows the court to draw the reasonable inference that the defendant is liable for the misconduct

2  alleged.'"

3         The Ninth Circuit has settled on a two-step process for evaluating pleadings.  It explains

4  the established approach as follows:

> First, to be entitled to the presumption of truth, allegations in a
> complaint or counterclaim may not simply recite the elements of a
> cause of action, but must contain sufficient allegations of underlying
> facts to give fair notice and to enable the opposing party to defend
> itself effectively.  Second, the factual allegations that are taken as
> true must plausibly suggest an entitlement to relief, such that it is not
> unfair to require the opposing party to be subjected to the expense of
> discovery and continued litigation.

10 *Levitt v. Yelp! Inc.*, 765 F.3d 1123, 1134–35 (9th Cir. 2014).  The plausibility standard is not akin

11 to a "probability requirement," but it asks for more than a sheer possibility that a defendant has

12 acted unlawfully.  Where a complaint pleads facts that are "merely consistent with" a defendant's

13 liability, it "stops short of the line between possibility and plausibility 'of entitlement to relief.'"

14 *Iqbal*, 556 U.S. at 678.

15             1.    <u>Count 1</u>

16        In Count 1, Mr. Colopy seeks declaratory relief pursuant to the Uniform Declaratory

17 Judgment Act, 28 U.S.C. § 2201.  Complaint ¶¶ 42–43.  In relevant part, 28 U.S.C. ¶ 2201 states:

> In a case of actual controversy within its jurisdiction . . . any court of
> the United States, upon the filing of an appropriate pleading, may
> declare the rights and other legal relations of any interested party
> seeking such declaration, whether or not further relief is or could be
> sought. Any such declaration shall have the force and effect of a
> final judgment or decree and shall be reviewable as such.

22 28 U.S.C. § 2201.  Count 1 is predicated on a finding that Uber has failed "to comply with its

23 obligations under the California Labor Code."  *Id.* ¶ 42.  Specifically, Plaintiff contends that

24 "Uber's conduct in misclassifying its drivers, including Plaintiff Thomas Colopy, as independent

25 contractors, failing to ensure that they are reimbursed for their necessary business expenditures,

26 [and] failing to ensure that they receive minimum wage for all hours worked, overtime pay, and

27 other protections of California's Labor Code and Wage Orders, contravenes California state law."

28 Complaint ¶ 43.  Based on those allegations, Mr. Colopy seeks an order declaring that "as a result

United States District Court
Northern District of California

1    of its misclassification of its drivers, Uber has violated the California Labor Code and Wage

2    Orders and declaring that Uber must comply with the Labor Code and Wage Orders." *Id.* ¶ 45.

3            Whether Count 1 states a sufficient claim for declaratory relief depends on the adequacy of

4    Mr. Colopy's pleadings regarding violations of the California Labor Code, upon which Count 1 is

5    premised.  While those counts are discussed in greater detail below, one threshold issue is whether

6    Mr. Colopy has adequately alleged that he should be properly classified as an employee, rather

7    than as an independent contractor.  Although Plaintiff does not describe the relevant time-frame or

8    scope of the declaratory relief he seeks in any detail, *see id.* ¶¶ 42–46, Mr. Colopy was a part of

9    the *O'Connor v. Uber Technologies, Inc.* (Case No. 3:13-cv-03826) class action settlement,

10   pursuant to which he released all misclassification-based claims against Uber through February

11   28, 2019.  *See* Order Granting Plaintiffs' Motion for Final Approval at 2, Docket No. 964 (in

12   *O'Connor*).  Therefore, assuming that Mr. Colopy seeks relief herein from March 1, 2019 forward,

13   whether he is properly classified as an employee is governed by the California Supreme Court's

14   decision in *Dynamex Operations W., Inc. v. Superior Court*, 4 Cal. 5th 903 (2018), *reh'g denied*

15   (June 20, 2018), "under which an alleged employer cannot justify classifying workers as

16   independent contractors who perform services within its usual course of business."  Complaint ¶ 3,

17   31.

18           In *Dynamex*, the court "adopt[ed] the ABC test, ma[king] clear that all workers are

19   presumed to be employees."  *Karl v. Zimmer Biomet Holdings, Inc.*, No. C 18-04176 WHA, 2018

20   WL 5809428, at *2 (N.D. Cal. Nov. 6, 2018) (citing *Dynamex*, 4 Cal. 5th at 955–56).  An

21   employer may rebut that presumption by showing that (1) the worker is free from the control and

22   direction of the hiring entity, (2) the worker performs work that is outside the usual course of the

23   hiring entity's business, and (3) the worker customarily engages in an independently established

24   trade, occupation, or business of the same nature as the work performed for the hiring entity.

25   *Dynamex*, 4 Cal. 5th at 958–62.  Plaintiff alleges in particular that "Uber holds itself out as a

26   transportation service," that "[d]rivers perform a service in the usual course of Uber's business,"

27   and that "drivers such as Plaintiff Thomas Colopy perform that transportation service."  Complaint

28   ¶ 14.  Plaintiff further alleges that "Uber also requires its drivers to abide by a litany of policies

United States District Court
Northern District of California

7

United States District Court
Northern District of California

and rules designed to control the drivers' work performance[, and that] Uber retains the right to terminate drivers at any time in its discretion." *Id.* ¶ 15.  For purposes of the motion to dismiss, Plaintiff has alleged sufficient facts to support a plausible claim that Uber will be unable to rebut the presumption of employee-status under *Dynamex*, and therefore that Uber has misclassified Mr. Colopy and other drivers as independent contractors.

Because Mr. Colopy has pled sufficient facts to support his allegation of misclassification, and because—as discussed below—he has adequately pled several violations of California law that could form the basis for declaratory relief, the Court **DENIES** Defendant's Motion to Dismiss as to Count 1.

> 2.   Count 2

In Count 2, Mr. Colopy asserts a violation of California Labor Code § 2802.  Complaint ¶ 47.  In relevant part, Section 2802 states:

> An employer shall indemnify his or her employee for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties, or of his or her obedience to the directions of the employer, even though unlawful, unless the employee, at the time of obeying the directions, believed them to be unlawful.

Cal. Lab. Code § 2802.  That counts alleges Uber's "fail[ure] to reimburse [drivers] for expenses they paid that should have been borne by their employer, including but not limited to gas, insurance, car maintenance, and phone data charges." *Id.*

"The elements of a claim under Section 2802 are: (i) the employee made expenditures or incurred losses; (ii) the expenditures or losses were incurred in direct consequence of the employee's discharge of his or her duties, or obedience to the directions of the employer; and (iii) the expenditures or losses were reasonable and necessary.  In addition, the employer 'must either know or have reason to know that the employee has incurred [the] expense.'" *Marr v. Bank of Am.*, No. C 09-05978 WHA, 2011 WL 845914, at *1 (N.D. Cal. Mar. 8, 2011), *aff'd sub nom. Marr v. Bank of Am., NA*, 506 F. App'x 661 (9th Cir. 2013) (first citing *Gattuso v. Harte–Hanks Shoppers, Inc.,* 42 Cal.4th 554, 568 (2007), and then quoting *Stuart v. RadioShack Corp.,* 641 F.Supp.2d 901 (N.D. Cal. 2009) (Chen, M.J.)).

8

1    Uber contends that the Complaint "fails to allege a 'specific instance' in which Mr. Colopy

2    incurred business-related expenses" and never states "that Colopy *ever* personally incurred

3    business-related expenses."  Reply in Support of Motion to Dismiss ("Dis. Reply") at 3, Docket

4    No. 22.  Uber relies on *Landers v. Quality Commc'ns, Inc.*, 771 F.3d 638 (9th Cir. 2014), *as*

5    *amended* (Jan. 26, 2015), to argue that the Complaint therefore lacks sufficient factual detail to

6    establish the required elements.

7    However, "nothing in *Landers* suggests that to state a plausible claim for failure to

8    reimburse business expenses a plaintiff must identify a particular calendar week; here, the

9    allegation is that because [the employer] did not treat Plaintiffs as employees, they *never*

10   reimbursed the identified expenses.  As Plaintiffs have identified the expenses that Defendants

11   failed to reimburse, the claim can proceed."  *Tan v. GrubHub, Inc.*, 171 F. Supp. 3d 998, 1006

12   (N.D. Cal. 2016).  Here, the second paragraph of the Complaint states: "Uber has misclassified its

13   drivers, *including Plaintiff Thomas Colopy*, as independent contractors when they should be

14   classified under California law as employees.  Based on the drivers' misclassification as

15   independent contractors, Uber has unlawfully required drivers to pay business expenses (including

16   but not limited to the cost of maintaining their vehicles, gas, insurance, phone and data expenses,

17   and other costs)."  Complaint ¶ 2 (emphasis added).  Thus, by identifying the expenses that Uber

18   failed to reimburse, the Complaint states a plausible claim for failure to reimburse business

19   expenses.

20   As to Count 2, the Court **DENIES** Defendant's Motion to Dismiss.

21          3.      Count 3

22   In Count 3, Mr. Colopy asserts a violation of California Labor Code § 226.8.  Complaint ¶

23   49.  In relevant part, section 226.8 states:

24          It is unlawful for any person or employer to engage in . . . Willful
             misclassification of an individual as an independent contractor. . . .
25          'Willful misclassification' means avoiding employee status for an
             individual by voluntarily and knowingly misclassifying that
26          individual as an independent contractor.

27   Cal. Lab. Code § 226.8.  That count alleges that *Dynamex* and the passage of AB5, "make clear

28   that Uber drivers are employees under California law," and thus that Uber's continued

United States District Court
Northern District of California

1    classification of its drivers as independent contractors constitutes willful misclassification. *Id.*

2        First, the Court must examine whether there is a private right of action for willful

3    misclassification under Labor Code § 226.8. Plaintiff concedes that "this Court has previously

4    determined that there is no direct private right of action for willful misclassification under Labor

5    Code § 226.8." PI Reply at 6 n.13. (citing *Villalpando v. Exel Direct Inc.*, 2014 WL 1338297, at

6    *14–19 (N.D. Cal. Mar. 28, 2014)). Plaintiff also argues, however, that "at least one judge in this

7    District has recognized a private right of action under this section." *Id.* (citing *Lawson v. Deliv,*

8    *Inc.*, No. 18-cv- 3632-VC (Docket No. 26 ("*Lawson*")) (Sept. 26, 2018, N.D. Cal.). In *Lawson*,

9    Judge Chhabria stated:

10              The plaintiffs' claim under Labor Code section 226.8 for willful
                misclassification is dismissed, with prejudice as it pertains to
11              Lawson, and with leave to amend as it pertains to Albert. This claim
                is based on the California Supreme Court's recent decision in
12              *Dynamex Operations West Inc. v. Superior Court*, 416 P.3d 1 (Cal.
                2018), which, Lawson concedes, bars him from bringing this claim
13              given that he worked for Deliv before that decision was issued. The
                complaint is silent, however, on when Albert worked for Deliv.
14

15   *Lawson* ¶ 2. However, since Judge Chhabria's order, Judge Spero has concluded that "Judge

16   Chhabria's order in Lawson *does not consider* whether section 226.8 provides a private right of

17   action." *Lee v. Postmates Inc.*, No. 18-CV-03421-JCS, 2018 WL 6605659, at *9 (N.D. Cal. Dec.

18   17, 2018), *motion to certify appeal granted,* No. 18-CV-03421-JCS, 2019 WL 1864442 (N.D. Cal.

19   Apr. 25, 2019) (emphasis added). Judge Spero noted: "a California appellate court has held in a

20   carefully reasoned opinion that the statute does not create a private right of action." *Id.* (citing

21   *Noe v. Superior Court*, 237 Cal. App. 4th 316, 334–41 (2015)). In *Noe*, the court concluded that

22   "[s]ection 226.8 contains no language indicating that the Legislature intended to create a private

23   right of action to enforce or collect the penalties set forth in the statute." *Noe*, 237 Cal. App. 4th at

24   337. In so concluding, it observed that "the statute includes specific language indicating that the

25   provision is to be enforced by the 'Labor Commissioner,'" and that such language "precludes a

26   direct private right of action." *Id.* Thus, under current case law, section 226.8 does not provide a

27   private right of action. *See also Romano v. SCI Direct, Inc.*, No. 2:17-cv-03537-ODW, 2017 WL

28   8292778, at *8 (C.D. Cal. Nov. 27, 2017) (concluding "that there is no private right of action for a

1    violation of Section 226.8"); *Rosset v. Hunter Eng'g Co.*, No. C 14-01701 LB, 2014 WL 3569332,

2    at *8 (N.D. Cal. July 17, 2014)) (concluding that "there is no individual private right of action for

3    a violation of Section 226.8").

4         "Plaintiff [also] contends that [even] if there is no private right of action under § 226.8,

5    violation of this provision of the Labor Code can form the predicate for Plaintiff's UCL claim, and

6    as such, Plaintiff can still pursue the claim."  PI Reply at 6.  "Section 17200 'borrows' violations

7    from other laws by making them independently actionable as unfair competitive practices." *CRST*

8    *Van Expedited, Inc. v. Werner Enterprises*, Inc., 47 9 F.3d 1099, 1107 (9th Cir. 2007) (quoting

9    *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1143 (2003)).  Thus, the question

10   is whether Plaintiff can allege an Unfair Competition Law ("UCL") violation premised upon the

11   violation of a law that affords no private right of action.  Several California district courts have

12   concluded that a Plaintiff may do so.  *See, e.g.*, *Mary A. Rhodeman, et al. v. Ocwen Loan*

13   *Servicing, LLC, et al. Additional Party Names: Altisource Sols., Inc., David Doyle*, No.

14   EDCV182363JGBKKX, 2019 WL 5955368, at *16 (C.D. Cal. Nov. 12, 2019) ("The California

15   Supreme Court has held that 'a private plaintiff may bring a UCL action even when the conduct

16   alleged to constitute unfair competition violates a statute for the direct enforcement of which there

17   is no private right of action.'" (citing *Kasky v. Nike, Inc.*, 27 Cal. 4th 939, 950 (2002), *as modified*

18   (May 22, 2002)); *King v. Bumble Trading, Inc.*, 393 F. Supp. 3d 856, 870 (N.D. Cal. 2019) ("A

19   private plaintiff may bring a UCL action even when the conduct alleged to constitute unfair

20   competition violates a statute for the direct enforcement of which there is no private right of

21   action.") (internal quotation marks and citations omitted).  Thus, Mr. Colopy can allege a UCL

22   violation premised upon a violation of section 226.8, although the scope of the remedy is defined

23   and limited by the UCL.

24         Turning to the sufficiency of the pleadings in support of the willful classification claim, the

25   Court has already determined that Plaintiff has alleged sufficient facts to state a claim for

26   misclassification.  Thus, only the issue of willfulness remains to be addressed here.  Plaintiff

27   argues that *Dynamex* and the passage of AB5, "*make clear* that Uber drivers are employees under

28   California law," and thus that Uber's continued classification of its drivers as independent

contractors constitutes willful misclassification. Complaint ¶ 49 (emphasis added). Plaintiff further alleges that it has been "widely recognized" (including by the bill's author) that Uber was a specific target of the AB5 legislation. *Id.* ¶ 3. This position is bolstered by the fact that Uber unsuccessfully sought a "carve-out" from the legislation. *Id.*; *see also id.* ¶ 32. In light of these allegations, Plaintiff has made out a plausible claim that any misclassification by Uber is willful. *See e.g.*, *Albert v. Postmates Inc.*, No. 18-CV-07592-JCS, 2019 WL 1045785, at *5 (N.D. Cal. Mar. 5, 2019) (finding sufficient allegations "to support a plausible inference" of willful misclassification where Plaintiff alleged that Defendant held "itself out to the public as a delivery service" and Plaintiff performed services within Defendant's "usual course of business as a delivery service").

Thus, the Court **GRANTS** Defendant's Motion to Dismiss as it pertains to Count 3 (but finds Count 3 sufficiently alleged as a predicate for Plaintiff's UCL claim). The dismissal of Count 3 in part is with prejudice.

4.     <u>Counts 4 and 5</u>

In Count 4, Mr. Colopy asserts a violation of California Labor Code Sections 1197, 1194, 1182.12, 1194.2, 1197.1, and 1199, as well as Wage Order 9-2001; and the minimum wage ordinances of San Francisco, the City of Los Angeles, and Los Angeles County. Complaint ¶ 2. That count alleges that Uber fails "to ensure its drivers receive minimum wage for all hours worked." *Id.* ¶ 51.

In Count 5, Mr. Colopy asserts a violation of California Labor Code Sections 1194, 1198, 510 and 554, as well as Wage Order 9-2001. *Id.* ¶ 53. That count alleges that Uber failed "to pay its employees the appropriate overtime premium for overtime hours worked." *Id.*

Plaintiff cites cases from outside the Ninth Circuit to support the contention that he has sufficiently pled his minimum wage and overtime counts. However, the Ninth Circuit guidelines on pleading such claims are set out in *Landers v. Quality Commc'ns, Inc.*, 771 F.3d 638 (9th Cir. 2014), *as amended* (Jan. 26, 2015). As the Ninth Circuit explained, "detailed factual allegations regarding the number of overtime hours worked are not required to state a plausible claim," but "conclusory allegations that merely recite the statutory language" are inadequate. *Landers*, 771

F.3d at 644.  Instead, "a plaintiff asserting a claim to overtime payments must allege that she worked more than forty hours in a given workweek without being compensated for the overtime hours worked during that workweek." *Id.* at 644–45.  Thus, "[a] plaintiff may establish a plausible claim by estimating the length of her average workweek during the applicable period and the average rate at which she was paid, the amount of overtime wages she believes she is owed, or any other facts that will permit the court to find plausibility." *Id.* at 645.  "[A]t a minimum, a plaintiff asserting a violation of the FLSA overtime provisions must allege that she worked more than forty hours in a given workweek without being compensated for the hours worked in excess of forty during that week." *Id.*  The Ninth Circuit concluded that Landers "failed to state a claim for unpaid minimum wages and overtime wages" because his complaint "did not allege facts showing that there was a given week in which he was entitled to but denied minimum wages or overtime wages." *Id.*; *see also Boon v. Canon Bus. Sols., Inc.*, 592 F. App'x 631, 632 (9th Cir. 2015) (noting that plaintiffs "must allege facts demonstrating that there was at least one workweek in which they worked in excess of forty hours and were not paid overtime wages" and finding sufficient allegations where plaintiff "identified tasks for which he was not paid and alleged that he regularly worked more than eight hours in a day and forty hours in a week").

Plaintiff fails to allege with sufficient specificity concrete violations of wage laws. Complaints alleging far greater detail than the one at issue here have been found insufficiently pled. *See, e.g.*, *Velasco v. Elliot*, No. 18-CV-03191-VKD, 2018 WL 6069009, at *4 (N.D. Cal. Nov. 20, 2018) (dismissing complaint where Plaintiff alleged: "Monday through Friday, Mr. Velasco usually checked into work at approximately 8:00 am at the Defendant's yard and returned or ended his work day at between 4:00 and 6:00 pm.  Mr. Velasco further alleges that on average he worked for six hours two Saturdays a month and on that basis, alleges that he estimates he worked on average five hours a week of overtime" (internal quotation marks and citations omitted)).

Thus, as it relates to Counts 4 and 5, the Court **GRANTS** Defendant's Motion to Dismiss, but permits Plaintiff leave to amend.

1                 5.       <u>Count 6</u>

In Count 6, Mr. Colopy asserts a violation of California Labor Code Sections 226(a), as

well as Wage Order 9-2001.  Complaint ¶ 55.  In relevant part, Section 226(a) states:

> An employer, semimonthly or at the time of each payment of wages,
> shall furnish to his or her employee, either as a detachable part of
> the check, draft, or voucher paying the employee's wages, or
> separately if wages are paid by personal check or cash, an accurate
> itemized statement in writing showing (1) gross wages earned, (2)
> total hours worked by the employee, except as provided in
> subdivision (j), (3) the number of piece-rate units earned and any
> applicable piece rate if the employee is paid on a piece-rate basis,
> (4) all deductions, provided that all deductions made on written
> orders of the employee may be aggregated and shown as one item,
> (5) net wages earned, (6) the inclusive dates of the period for which
> the employee is paid, (7) the name of the employee and only the last
> four digits of his or her social security number or an employee
> identification number other than a social security number, (8) the
> name and address of the legal entity that is the employer and, if the
> employer is a farm labor contractor, as defined in subdivision (b) of
> Section 1682, the name and address of the legal entity that secured
> the services of the employer, and (9) all applicable hourly rates in
> effect during the pay period and the corresponding number of hours
> worked at each hourly rate by the employee . . . .

Cal. Lab. Code § 226.  Count 6 alleges that Uber failed "to provide proper itemized wage

statements."  *Id.*

Pursuant to California Labor Code Section 226(e)(1): "An employee suffering injury as a

result of a knowing and intentional failure by an employer to comply with subdivision (a) is

entitled to recover . . . damages . . . ."  Cal. Lab. Code § 226(e)(1).  Thus, "[a] claim against an

employer for violating Labor Code section 226(a) requires a showing of three elements: (1) a

violation of the statute; (2) the violation was knowing and intentional; and (3) an injury resulted

from the violation."  *Achal v. Gate Gourmet, Inc.*, 114 F. Supp. 3d 781, 810 (N.D. Cal. 2015).

With respect to the first element, the Complaint alleges that Uber has failed "to provide

proper itemized wage statements that include all the requisite information required by California

law, including hours worked and hourly wages and has failed to provide pay statements that are

accessible to drivers outside of the Uber Application."  Complaint ¶ 30.  Because Section 226(a)

requires that hours worked and hourly wages be included on wage statements, Plaintiff has

fulfilled the first requirement, an allegation of a violation of the statute.

"Whether a violation was 'knowing and intentional' is a question of fact. . . . A simple allegation that an employer's failure to provide accurate wage statements was 'knowing and intentional' suffices to state a claim under section 226." *Achal*, 114 F. Supp. 3d at 811; *see also Reinhardt v. Gemini Motor Transp.*, 879 F. Supp. 2d 1138, 1142 (E.D. Cal. 2012) (finding allegation that Defendant's "failure to comply with § 226 was 'knowing and intentional'" was sufficient); *see also* Fed. R. Civ. P. 9 ("Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."). Here, assuming all allegations of material fact as true and construing them in favor of the non-moving party, Plaintiff has—through his allegations regarding Uber's willful misclassification of its drivers—pled sufficient facts to allege that Uber's failure to provide those drivers with required wage statements was "knowing and intentional."

With respect to an injury, "[a]n aggrieved employee is held to have suffered injury under section 226(a) if his employer fails to provide accurate and complete information . . . and the employee cannot promptly and easily determine from the wage statement alone one or more of the following: (i) the amount of gross or net wages paid or any other information required to be provided pursuant to items (2) to (4), (6), and (9)." *Achal v. Gate Gourmet, Inc.*, 114 F. Supp. 3d at 811. "Other injuries . . . may be shown through the possibility of not being paid overtime, employee confusion over whether they received all wages owed them, difficulty and expense involved in reconstructing pay records, and forcing employees to make mathematical computations to analyze whether the wages paid in fact compensated them for all the hours they worked." *Id.* at 811–12; *see also Alonzo v. Maximus, Inc.*, 832 F. Supp. 2d 1122, 1135 (C.D. Cal. 2011) ("Courts interpreting California law have recognized that the possibility of not being paid overtime, employee confusion over whether they received all wages owed them, difficulty and expense involved in reconstructing pay records, and forcing employees to make mathematical computations to analyze whether the wages paid in fact compensated them for all hours worked can constitute an injury under section 226(e)." (internal quotations omitted)). Here, Plaintiff's allegations support—although he does not state this point explicitly—a claim that he "could not promptly and easily determine" critical information, including his hours worked and his hourly wages. *Achal*, 114 F. Supp. 3d at 813; *see also Alonzo*, 832 F. Supp. 2d at 1135 (recognizing "an

15

1    injury . . . which required . . . plaintiffs to engage in discovery . . . to reconstruct time records to

2    determine if they were correctly paid" as a sufficient injury under section 226(e).

3          Thus, as it relates to Count 6, the Court **DENIES** Defendant's Motion to Dismiss.

4                6.    Count 7

5          In Count 7, Mr. Colopy asserts a violation of California's Unfair Competition Law.  *Id.* ¶

6    57.  That Count alleges that "Uber's conduct constitutes unlawful business acts or practices, in that

7    Uber has violated California Labor Code §§ 2802, 1194, 1198, 510, 554, 1197, 1194, 1182.12,

8    1194.2, 1197.1, 1199, 226.8, and 226(a)."  *Id.*  Mr. Colopy further contends that, as a result of

9    such conduct, "Plaintiff and class members suffered injury in fact and lost money and property,

10   including, but not limited to business expenses that drivers were required to pay and wages that

11   drivers were due."  *Id.*

12         However, having denied Defendant's Motion to Dismiss Counts 2 (failure to reimburse)

13   and 6 (failure to provide wage statements), several potential predicates exist for Count 7.  Count 2

14   alleged a violation of California Labor Code Section 2802, which was pled as a basis for

15   Plaintiff's UCL claim.  Complaint ¶ 57.  Similarly, Count 6 alleged a violation of California Labor

16   Code Sections 226(a), which was also pled as a basis for Plaintiff's UCL claim.  *Id.* ¶ 57.  Count 3

17   (willful misclassification) was dismissed as a free-standing claim without leave to amend, but—as

18   discussed above—can nonetheless serve as a predicate for Mr. Colopy's UCL claims.  *See*

19   discussion, *supra*, Section III.b.3.

20         Thus, as it relates to Count 7, the Court **DENIES** Defendant's Motion to Dismiss.

21   C.    Motion to Strike

22         Under Rule 12(f), "[a] court may strike from a pleading an insufficient defense or any

23   redundant, immaterial, impertinent, or scandalous matter."  Fed. R. Civ. P. 12(f).  "The function of

24   a 12(f) motion to strike is to avoid the expenditure of time and money that must arise from

25   litigating spurious issues by dispensing with those issues prior to trial."  *Whittlestone, Inc. v.*

26   *Handi–Craft Co.*, 618 F.3d 970, 973 (9th Cir. 2010).  Motions to strike are generally disfavored.

27   *See Barnes v. AT & T Pension Ben. Plan–Nonbargained Program*, 718 F.Supp.2d 1167, 1170

28   (N.D. Cal. 2010); *see also Platte Anchor Bolt, Inc. v. IHI, Inc.*, 352 F.Supp.2d 1048, 1057 (N.D.

United States District Court
Northern District of California

1    Cal.2 004) (stating that, "[i]f there is any doubt whether the portion to be stricken might bear on an

2    issue in the litigation, the court should deny the motion").

3        Uber contends that Plaintiff's class claims should be stricken because "the vast majority of

4    putative class members signed the valid Arbitration Agreement precludes commonality, typicality,

5    superiority, and predominance of the putative class Colopy seeks to represent, no matter what

6    particular causes of action he alleges."  Dis. Reply at 9.

7        "Courts disfavor motions to strike class allegations because issues related to class

8    allegations are generally more appropriately resolved on a motion for class certification."  *Moser*

9    *v. Health Ins. Innovations, Inc.*, No. 3:17-CV-1127-WQH-KSC, 2018 WL 325112, at *11 (S.D.

10   Cal. Jan. 5, 2018) (citing *Lyons v. Coxcom, Inc.*, 718 F. Supp. 2d 1232, 1235–36 (S.D. Cal. 2009);

11   *Thorpe v. Abbott Labs., Inc.*, 534 F. Supp. 2d 1120, 1125 (N.D. Cal. 2008)).

12       Accordingly, the Court **DENIES** Defendant's Motion to Strike.

### IV.    CONCLUSION

14       For the foregoing reasons, the Court **DENIES** Plaintiff's Motion for Preliminary

15   Injunction.  In addition, the Court **GRANTS** in part and **DENIES** in part Defendant's Motion to

16   Dismiss as follows:

17       • **DENIES** as to Count 1

18       • **DENIES** as to Count 2

19       • **GRANTS** as to Count 3 without leave to amend (but permits Count 3 to serve as a

20           basis for Mr. Colopy's UCL claim).

21       • **GRANTS** as to Count 4 with leave to amend

22       • **GRANTS** as to Count 5 with leave to amend

23       • **DENIES** as to Count 6

24       • **DENIES** as to Count 7

25   ///

26   ///

27   ///

28   ///

United States District Court
Northern District of California

1    Lastly, the Court **DENIES** Defendant's Motion to Strike Plaintiff's class claims.

2           This order disposes of Docket Nos. 2 and 11.

3

4           **IT IS SO ORDERED**.

5

6    Dated: December 16, 2019

7

8    _____

9    EDWARD M. CHEN
     United States District Judge

10