SHANNON LISS-RIORDAN, SBN 310719
(sliss@llrlaw.com)
ANNE KRAMER, SBN 315131
(akramer@llrlaw.com)
LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, MA 02116
Telephone:    (617) 994-5800
Facsimile:    (617) 994-5801

Attorneys for Plaintiffs Thomas Colopy,
Christopher James, and Spencer Verhines,
on behalf of themselves and all others
similarly situated,

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THOMAS COLOPY, CHRISTOPHER JAMES, and SPENCER VERHINES, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>UBER TECHNOLOGIES, INC,<br><br>Defendant. | Case No. 19-cv-06462<br><br>**CLASS ACTION COMPLAINT**<br><br>1. FAILURE TO REIMBURSE FOR BUSINESS EXPENSES (CAL. LAB. CODE § 2802, WAGE ORDER 9-2001)<br>2. MINIMUM WAGE (CAL. LABOR CODE §§ 1197, 1194, 1182.12, 1194.2, 1197.1, 1199, WAGE ORDER 9-2001)<br>3. UNLAWFUL AND/OR UNFAIR BUSINESS PRACTICES (CAL. BUS. & PROF. CODE §§17200-17208)<br>4. OVERTIME (CAL. LAB. CODE § 1194, 1198, 510 AND 554, WAGE ORDER 9-2001)<br>5. FAILURE TO PROVIDE PROPER ITEMIZED PAY STATEMENTS (CAL. LABOR CODE § 226(A), WAGE ORDER 9-2001)<br>6. DECLARATORY JUDGMENT (28 U.S.C. §§2201-02) |

## I. **INTRODUCTION**

1. Uber is a car service, which engages thousands of drivers across the state of California who can be hailed and dispatched through a mobile phone application to transport riders. Uber is based in San Francisco, California, and it does business across the United States and extensively throughout California.

2. As described further below, Uber has misclassified its drivers, including Plaintiffs Thomas Colopy, Christopher James, and Spencer Verhines, as independent contractors when they should be classified under California law as employees. Based on the drivers' misclassification as independent contractors, Uber has unlawfully required drivers to pay business expenses (including but not limited to the cost of maintaining their vehicles, gas, insurance, phone and data expenses, and other costs) in violation of Cal. Lab. Code § 2802. Uber has also failed to guarantee and pay its drivers minimum wage for all hours worked and it has failed to pay overtime premiums for hours worked in excess of eight hours per day or forty hours per week in violation of Cal. Lab. Code §§ 1182.12, 1194.2, 1194, 1197, 1197.1, 1198, 1199, 510, and 554. Uber has also failed to provide proper itemized wage statements that include all the requisite information, including hours worked and hourly wages and that are accessible outside the Uber Application in violation of Cal. Lab. Code § 226(a). Uber's continued misclassification of its drivers as independent contractors is willful misclassification in violation of Cal. Labor Code § 226.8.

3. Indeed, the California legislature has now passed a statute known as Assembly Bill 5 (or "A.B. 5"), which codifies the 2018 California Supreme Court decision, Dynamex Operations W., Inc. v. Superior Court, 4 Cal. 5th 903, 416 P.3d 1 (2018), reh'g denied (June 20, 2018), under which an alleged employer cannot justify classifying workers as independent contractors who perform services within its usual course of business. It has been widely recognized by the California legislature, including the bill's author, that the purpose and intent of

2
CLASS ACTION COMPLAINT

this statute is to ensure that companies, including specifically Uber, stop misclassifying their workers as independent contractors. Although Uber attempted to obtain a "carve-out" from this statute, it did not obtain such an exemption, and the legislature passed the statute so that it would include Uber drivers. Nevertheless, Uber has publicly stated that it intends to defy this statute and continue to classify its drivers as independent contractors – in violation of the express intent of the California legislature. This ongoing defiance of the law constitutes a willful violation of California law.

4. Plaintiff brings these claims on behalf of themselves and all other similarly situated pursuant to Fed. R. Civ. P. 23. They seek recovery of damages for themselves and the class, as well as declaratory and injunctive relief, requiring Uber to reclassify its drivers as employees in California.

## II. PARTIES

5. Plaintiff Thomas Colopy is an adult resident of San Francisco, California, where he has worked as an Uber driver since 2012.

6. Plaintiff Christopher James is an adult resident of Stockton, California, where he has worked as an Uber driver since 2015.

7. Plaintiff Spencer Verhines is an adult resident of Foothill Ranch, California, where he has worked as an Uber driver (and in Los Angeles) since 2014.

8. The above-named plaintiffs have brought this action on their own behalf and on behalf of all others similarly situated, namely all other individuals who have worked as Uber drivers in California who have not released all of their claims against Uber.

9. Defendant Uber Technologies, Inc. ("Uber") is a corporation headquartered in San Francisco, California.

//
//

## III. JURISDICTION

10. This Court has jurisdiction over the state law claims asserted here pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2), since Defendant is a California citizen and, upon the filing of this complaint, members of the putative plaintiff class reside in states around the country; there are more than 100 putative class members; and the amount in controversy exceeds $5 million.

11. This Court also has jurisdiction under the Declaratory Judgment Act, 28 U.S.C. §§ 2201-02, and Rule 57 of the Federal Rules of Civil Procedure.

## IV. STATEMENT OF FACTS

12. Uber is a San Francisco-based car service that provides transportation service in cities throughout the country, including in California, via an on-demand dispatch system.

13. Uber offers customers the ability to hail a car service driver on a mobile phone application.

14. Uber's website has advertised that "Uber is your on-demand private driver."

15. Although classified as independent contractors, Uber drivers are employees under California law.

16. Drivers perform a service in the usual course of Uber's business, since Uber is a car service that provides transportation to its customers, and drivers such as Plaintiffs Thomas Colopy, Christopher James, and Spencer Verhines, perform that transportation service. Uber holds itself out as a transportation service, and it generates its revenue primarily from customers paying for the very rides that its drivers perform. Without drivers to provide rides for Uber's customers, Uber would not exist.

17. Uber also requires its drivers to abide by a litany of policies and rules designed to control the drivers' work performance. Uber retains the right to terminate drivers at any time in its discretion. Uber may terminate a driver if the driver behaves in a way that Uber believes

4
CLASS ACTION COMPLAINT

in inappropriate or has violated one of Uber's rules or standards. Drivers are also subject to termination based on Uber's system of using customer rating feedback; drivers can be terminated in Uber's discretion if Uber deems their customer ratings to be inadequate.

18. When driving for Uber, Uber drivers are not engaged in their own transportation business. Instead, when driving Uber customers, drivers wear the "hat" of Uber. Customers cannot request specific Uber drivers; instead, Uber assigns particular rides to drivers.

19. Uber does not require drivers to possess any skill above and beyond that necessary to obtain a normal driver's license.

20. Drivers' tenure with Uber is for an indefinite amount of time.

21. Uber provides the drivers with the primary instrumentality with which they can perform services for Uber because Uber only derives a benefit from the drivers' labor when they use Uber's software.

22. Uber sets the rate of pay for drivers' services and changes the rate of pay in its sole discretion.

23. At times, Uber has deducted money from drivers' fares to cover the cost of an Uber-issued iPhone, which drivers use to run Uber's software and accept ride requests.

24. Drivers must undergo background checks, receive initial training, and, in some circumstances, Uber has required drivers to attend training classes and pass a written test as a prerequisite to driving for Uber.

25. Drivers' vehicles must meet Uber's quality standards, which it determines and may change at any time at its sole discretion.

26. Uber may make promotional offers to riders that reduce drivers' income without consulting the drivers.

27. Uber monitors drivers' performance and may suspend or terminate drivers who do not accept enough rides, cancel too many rides, do not maintain high customer satisfaction

ratings, do not take what Uber deems to be the most efficient routes, or engage in other conduct that Uber, in its sole discretion, may determine constitutes grounds for suspension or termination.

28.     Uber drivers are engaged in interstate commerce.  At times, drivers transport passengers across state lines.  Furthermore, drivers are engaged in interstate commerce insofar as they transport passengers who are within the flow of interstate commerce; indeed, passengers at times arrive from, or are traveling to destinations, out of state, such as arriving at or leaving train stations or airports.

29.     Uber does not reimburse drivers for any expenses they incur while working for Uber, including, but not limited to the cost of maintaining their vehicles, gas, insurance, and phone and data expenses for running the Uber Application.  Drivers incur these costs as a necessary expenditure to work for Uber, which California law requires employers to reimburse.

30.     Uber has violated Cal. Lab. Code §§ 1194, 1197 by failing to assure that drivers, including Thomas Colopy, Christopher James, and Spencer Verhines, make the applicable minimum wage for all hours worked, after accounting for their expenses and other deductions taken from their pay.  The hours they work include hours spent transporting passengers, driving to pick up passengers, and driving between rides while awaiting the next ride.

31.     For example, the week of December 8 to December 15, 2019, Plaintiff James only earned $5.36 per hour when accounting for all of his time spent on the Uber app and after deducting expenses for mileage driven transporting passengers and between rides (calculated at the standard IRS reimbursement rate).  Likewise, the week of October 21 to October 27, 2019, Plaintiff Colopy only earned $11.70 per hour when accounting for all of his time spent on the Uber app and after deducting expenses for mileage driven transporting passengers and between rides (calculated at the standard IRS reimbursement rate).

32.     Uber has violated Cal. Lab. Code §§ 1194, 1198, 510 and 554 by failing to pay its drivers like Christopher James and Spencer Verhines the appropriate overtime premium for all overtime hours worked beyond forty per week or eight per day.  For example. Plaintiff James has worked more than eight hours per day and more than forty hours per week at various times since he began driving for Uber and was never paid the appropriate premium for hours worked beyond eight per day or forty per week.  For example, on November 2, 2019, Plaintiff James worked over eight hours.  However, he did not receive time-and-a-half his regular rate of pay for the time he spent driving beyond eight hours that day.  The hours that drivers such as Plaintiff James have worked include hours spent transporting passengers, driving to pick up passengers, and driving between rides while awaiting the next ride.

33.     Uber has violated Cal. Lab. Code § 226(a) by failing to provide proper itemized wage statements that include all the requisite information required by California law, including hours worked and hourly wages and has failed to provide pay statements that are accessible to drivers outside of the Uber Application.

34.     On April 30, 2018, the California Supreme Court issued its decision in Dynamex Operations W., Inc. v. Superior Court, 4 Cal. 5th 903, 416 P.3d 1 (2018), reh'g denied (June 20, 2018), which makes clear that Uber drivers should be classified as employees rather than as independent contractors under California law for purposes of wage-and-hour statutes like the ones at issue here.  Under the "ABC" test adopted in Dynamex, in order to justify classifying the drivers as independent contractors, Uber would have to prove that its drivers perform services outside its usual course of business (in addition to other requirements), which it cannot do.  Notwithstanding this decision, Uber has willfully continued to misclassify its drivers as independent contractors.

35.     Furthermore, the California legislature has now taken steps to clarify and codify the Dynamex decision by passing Assembly Bill 5 ("A.B. 5"), which has been passed by the

7
CLASS ACTION COMPLAINT

California legislature and signed into law by the governor. However, Uber has nevertheless publicly and defiantly stated, including through its General Counsel Tony West, that it will not classify its drivers as employees.[1] Uber has stated that it will not reclassify its drivers, even though the legislature has clearly intended for Uber to be covered by this statute; indeed, the author of the statute, Assemblywoman Lorena Gonzalez, has made clear that Uber (and similar "gig economy" companies) would not be exempted from the law. Uber specifically lobbied to obtain a "carve-out" exemption from the law, which it did not receive from the legislature.

36. A.B. 5 is effective as of January 1, 2020, and has amended the Labor Code to include Section 2750.3, which mandates that the "ABC" test for misclassification applies for the purposes of the Labor Code, the Unemployment Insurance Code, and for the Wage Orders. *See* Cal. Lab. Code. § 2750.3(a). Under the "ABC" test, in order to justify classifying the drivers as independent contractors, Uber would have to prove that its drivers perform services outside its usual course of business (in addition to other requirements), which it cannot do. Notwithstanding this enactment, Uber has willfully continued to misclassify its drivers as independent contractors.

37. Now, rather than comply with the Labor Code, Uber has filed a complaint challenging the constitutionality of A.B. 5 and asserting that A.B. 5 will dramatically affect its business model. *Olson et al., v. State of California, et al.* No. 2:19-cv-10956 (C.D. Cal.). Thus, Uber has acknowledged that its business model of classifying drivers as independent contractors violates A.B. 5, but it has refused to come into compliance with the law.

---

[1] See Conger, Kate and Noam Scheiber, Confusion and Defiance Follow California's New Gig-Worker Law, NEW YORK TIMES (Sept. 11, 2019); Miller, Cheryl, Uber's Top Lawyer Vows Fight as California Embraces Sweeping New Labor Rules, THE RECORDER (Sept. 11, 2019).

## V. CLASS ACTION ALLEGATIONS

38. The class representatives, Thomas Colopy, Christopher James, and Spencer Verhines, have brought this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of Uber drivers who have worked for Uber in California.

39. The class representatives and other class members have uniformly been misclassified as independent contractors.

40. The members of the class are so numerous that joinder of all class members is impracticable.

41. Common questions of law and fact regarding Uber's conduct exist as to all members of the class and predominate over any questions affecting solely any individual members of the class. Among the questions of law and fact common to the class are:

   a. Whether the work performed by class members—providing transportation service to customers—is within Uber's usual course of business, and whether such service is fully integrated into Uber's business;

   b. Whether class members have been required to work under Uber's direction and control;

   c. Whether class members are engaged in an independently established business or occupation while they are transporting Uber customers;

   d. Whether class members have been required to bear the expenses of their employment, such as expenses for their vehicles, gas, and other expenses;

   e. Whether class members have suffered other violations of the California Labor Code and Wage Orders, as described herein.

42. The class representatives are a member of the class, who suffered damages as a result of Defendant's conduct and actions alleged herein.

43. The class representatives' claims are typical of the claims of the class and they have the same interests as the other members of the class.

44. The class representatives will fairly and adequately represent and protect the interests of the class. The class representatives have retained able counsel experienced in class action litigation and particularly in the allegations included here. The interests of the class representative are coincident with, and not antagonistic to, the interests of the other class members.

45. The questions of law and fact common to the members of the class predominate over any questions affecting only individual members, including legal and factual issues relating to liability and damages.

46. A class action is superior to other available methods for the fair and efficient adjudication of this controversy because joinder of all class members is impractical. Moreover, since the damages suffered by individual members of the class may be relatively small, the expense and burden of individual litigation makes it practically impossible for the members of the class individually to redress the wrongs done to them. The class is readily definable and prosecution of this action as a class action will eliminate the possibility of repetitive litigation. There will be no difficulty in the management of this action as a class action.

## COUNT I
### Declaratory Judgment
**Uniform Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2201**

47. An actual controversy of sufficient immediacy exists between the Parties as to whether Uber has failed to comply with its obligations under the California Labor Code, as described above.

48. Uber's conduct in misclassifying its drivers, including Plaintiffs Thomas Colopy, Christopher James, and Spencer Verhines, as independent contractors, failing to ensure that they

are reimbursed for their necessary business expenditures, failing to ensure that they receive minimum wage for all hours worked, overtime pay, and other protections of California's Labor Code and Wage Orders, contravenes California state law, including newly enacted A.B. 5 and Cal. Lab. Code § 2750.3(a).

49. As a result of the factual allegations above, Plaintiffs and all Uber drivers in California have suffered actionable harm, as they are not properly compensated for their work for Uber.

50. Plaintiffs seek an order of this Court pursuant to 28 U.S.C. §§2201-02 and Fed. R. Civ. P. 57 declaring that, as a result of its misclassification of its drivers, Uber has violated the California Labor Code and Wage Orders and declaring that Uber must comply with the Labor Code and Wage Orders.

51. The injunction that Plaintiffs seek is in the nature of a public injunction and is not solely for the benefit of themselves and other Uber drivers. Instead, ordering Uber to comply with the California Labor Code is in the public interest because Uber's violation of the Labor Code and Wage Orders diminishes labor standards more generally in the California economy and particularly in the transportation industry. Complying competitors are put at a disadvantage when companies such as Uber flout the Labor Code and Wage Orders by misclassifying their employees as independent contractors. Public funds are also impacted by these violations because the state incurs costs in supporting and providing services to employees who are not properly paid and do not even receive minimum wage. The California Supreme Court made a strong statement in the recent <u>Dynamex</u> decision – and the California legislature has now reinforced that statement by passing Assembly Bill 5 -- of the importance to the public good of employers properly classifying their workers as employees. That public interest is harmed by an employer such as Uber ignoring the decision and continuing to classify its employees as independent contractors.

## COUNT II
### Expense Reimbursement
### Violation of Cal. Lab. Code § 2802, Wage Order 9-2001

52. Plaintiffs reallege and incorporate by reference the allegations in the preceding paragraphs as if fully alleged herein. Uber's conduct, as set forth above, in misclassifying its drivers as independent contractors, and failing to reimburse them for expenses they paid that should have been borne by their employer, including but not limited to gas, insurance, car maintenance, and phone data charges, constitutes a violation of California Labor Code Sections 2802, 2750.3(a) and Wage Order 9-2001.

53. This claim is brought on behalf of a class of similarly situated individuals who have worked as drivers for Uber in the state of California.

## COUNT III
### Minimum Wage
### Violation of Cal. Lab. Code §§ 1197, 1194, 1182.12, 1194.2, 1197.1, 1199; Wage Order 9-2001; San Francisco Minimum Wage Ordinance; Los Angeles Citywide Minimum Wage Ordinance; Los Angeles County Minimum Wage Ordinance

54. Plaintiffs reallege and incorporate by reference the allegations in the preceding paragraphs as if fully alleged herein. Uber's conduct, as set forth above, in failing to ensure its drivers receive minimum wage for all hours worked as required by California law, violates Cal. Lab. Code §§ 1197, 1194, 1182.12, 1194.2, 1197.1, 1199, 2750.3 and Wage Order 9-2001 (as well as the higher minimum wage rates established by the San Francisco Minimum Wage Ordinance, the Los Angeles Citywide Minimum Wage Ordinance, and the Los Angeles County Minimum Wage Ordinance, for those drivers who worked in those jurisdictions).

55. This claim is brought on behalf of a class of similarly situated individuals who have worked as drivers for Uber in the state of California.

## COUNT IV
### Overtime
### Violation of Cal. Lab. Code §§ 1194, 1198, 510 and 554; Wage Order 9-2001

56. Plaintiff James realleges and incorporates by reference the allegations in the preceding paragraphs as if fully alleged herein. Defendant's conduct, as set forth above, in failing to pay its employees the appropriate overtime premium for overtime hours worked as required by California Law, violates Cal. Lab. Code §§ 1194, 1198, 510, 554, 2750.3 and Wage Order 9-2001.

57. This claim is brought on behalf of a class of similarly situated individuals who have worked as drivers for Uber in the state of California.

## COUNT V
### Failure to Provide Accurate Itemized Pay Statements
### Violation of Cal. Lab. Code § 226(a), 226.3; Wage Order 9-2001

58. Plaintiffs reallege and incorporate by reference the allegations in the preceding paragraphs as if fully alleged herein. Uber's conduct, as set forth above, in failing to provide proper itemized wage statements, as required by California state law, violates Cal. Lab. Code §§ 226(a), § 2750.3. and Wage Order 9-2001.

59. This claim is brought on behalf of a class of similarly situated individuals who have worked as drivers for Uber in the state of California.

## COUNT VI
### Unfair Business Practices
### Violation of Cal. Bus. & Prof. Code §17200, *et seq*.

60. Plaintiffs reallege and incorporate by reference the allegations in the preceding paragraphs as if fully alleged herein. Defendant's conduct, as set forth above, in continuing to classify drivers as independent contractors notwithstanding the California Supreme Court's decision in Dynamex Operations W., Inc. v. Superior Court, 4 Cal. 5th 903, 416 P.3d 1 (2018),

reh'g denied (June 20, 2018), the California Legislature's passage of A.B. 5, and the newly amended Cal. Lab. Code §2750.3 which sets forth the "ABC" test to define "employee" for purposes of the Cal. Lab. Code, all of which make clear that Uber drivers are employees under California law, violates Cal. Lab. Code §226.8 and constitutes willful misclassification.

61. Uber's willful misclassification and other conduct, as set forth above, violates the California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 et seq. ("UCL"). Uber's conduct constitutes unlawful business acts or practices, in that Uber has violated California Labor Code §§ 2802, 1194, 1198, 510, 554, 1197, 1194, 1182.12, 1194.2, 1197.1, 1199, 226.8, and 226(a). As a result of Uber's unlawful conduct, Plaintiff and class members suffered injury in fact and lost money and property, including, but not limited to business expenses that drivers were required to pay and wages that drivers were due. Pursuant to California Business and Professions Code § 17203, Plaintiffs and class members seek declaratory and injunctive relief for Uber's unlawful conduct and to recover restitution. Pursuant to California Code of Civil Procedure § 1021.5, Plaintiffs and class members who worked for Uber are entitled to recover reasonable attorneys' fees, costs, and expenses incurred in bringing this action.

62. This claim is brought on behalf of a class of similarly situated individuals who have worked as drivers for Uber in the state of California.

WHEREFORE, Plaintiffs requests that this Court enter the following relief:

a. Declare that Uber's actions described in this Complaint violate the rights of Plaintiffs and Uber drivers throughout California;

b. Declare and find that the Uber has violated Wage Order 9-2001, the UCL, and Cal. Lab. Code 226(a), 226.3, 226.7, 510, 558, 1184.12, 1194, 1194.2, 1197, 1197.1, 1199, 1198, 2802, 2750.3 as well as the San Francisco Minimum Wage Ordinance,

the Los Angeles Citywide Minimum Wage Ordinance, the Los Angeles County Minimum Wage Ordinance, and the provisions of A.B. 5;

c. Certify a class action under Count I through VI and appoint Plaintiffs Thomas Colopy, Christopher James, and Spencer Verhines, and their counsel to represent a class of Uber drivers in the state of California;

d. Award compensatory damages, including all expenses and wages owed, in an amount according to proof;

e. Award pre- and post-judgment interest;

f. Award reasonable attorneys' fees, costs, and expenses;

g. Issue a declaratory judgment that Uber has violated the California Labor Code and Wage Orders in connection with its misclassification of drivers as independent contractors;

h. Issue public injunctive relief in the form of an order requiring Uber to comply with the California Labor Code and Wage Orders and other provisions cited herein; and

i. Award any other relief to which the Plaintiffs and the class may be entitled.

Respectfully submitted,

THOMAS COLOPY, CHRISTOPHER JAMES, and SPENCER VERHINES, individually and on behalf of all others similarly situated,

By their attorneys,

 /s/ Shannon Liss-Riordan
Shannon Liss-Riordan, SBN 310719

Anne Kramer, SBN 315131
LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, MA 02116
(617) 994-5800
Email: sliss@llrlaw.com, akramer@llrlaw.com

Dated:        January 3, 2020

### **CERTIFICATE OF SERVICE**

I, Shannon Liss-Riordan, hereby certify that, on January 6, 2020, a copy of this document and all supporting documents referenced herein were delivered via electronic filing to counsel for Defendant.

        /s/ Shannon Liss-Riordan
Shannon Liss-Riordan (SBN 310719)
LICHTEN & LISS-RIORDAN, P.C.