# EXHIBIT B

| **CLERK'S NOTICE** | DOCKET NUMBER<br><br>1581CV04743 | **Trial Court of Massachusetts**<br>**The Superior Court** |
|---|---|---|

| CASE NAME:<br>Luiz Thomas DaCosta on behalf of Themselves and all others similarly situated et al vs. Vanguard Cleaning Systems, Inc. et al | Michael A. Sullivan, Clerk of Court<br>Middlesex County |
|---|---|
| TO:<br>Shannon Liss-Riordan, Esq.<br>Lichten & Liss-Riordan, P.C.<br>729 Boylston St<br>Suite 2000<br>Boston, MA 02116 | COURT NAME & ADDRESS<br>Middlesex County Superior Court - Woburn<br>200 Trade Center<br>Woburn, MA 01801 |

You are hereby notified that on 10/02/2017 the following entry was made on the above referenced docket:

MEMORANDUM & ORDER:

MEMORANDUM OF DECISION AND ORDER ON PLAINTIFFS' CROSS-MOTION FOR SUMMARY JUDGMENT AND DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT: ORDER: Based on the foregoing, it is hereby ORDERED that the plaintiffs' motion for summary judgment is ALLOWED, and defendant's cross motion summary judgment is DENIED. Dated: September 29, 2017

| DATE ISSUED<br><br>10/02/2017 | ASSOCIATE JUSTICE/ ASSISTANT CLERK<br><br>**Hon. Kenneth J Fishman** | SESSION PHONE#<br><br>(781)939-2757 |
|---|---|---|

27

# COMMONWEALTH OF MASSACHUSETTS

**MIDDLESEX, ss.**                                                                                                       SUPERIOR COURT
                                                                                                                         CIVIL ACTION
                                                                                                                         NO. 15-04743

### LUIZ THOMAZ DA COSTA & others[1]
### vs.
### VANGUARD CLEANING SYSTEMS, INC.

### MEMORANDUM OF DECISION AND ORDER ON PLAINTIFFS' CROSS-MOTION FOR SUMMARY JUDGMENT AND DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT

The plaintiffs, Luiz Thomaz Da Costa and others, and the defendant, Vanguard Cleaning Systems, Inc. ("Vanguard"), have filed cross motions for summary judgment seeking a ruling on the plaintiffs' employment classification status under the laws of Massachusetts and Connecticut in connection with commercial cleaning work which the plaintiffs claim they performed on behalf of Vanguard. G.L. c. 149, § 148B; Conn. Gen. Stat. § 31-222(a)(1)(B). After hearing, and upon review and consideration, the plaintiffs' cross-motion for summary judgment is **ALLOWED**, and Vanguard's cross-motion for summary judgment is **DENIED**.

### BACKGROUND

The undisputed facts, and any disputed facts viewed in the light most favorable to the non-moving party, are as follows. Additional facts are reserved for discussion below.[2]

Vanguard is a corporation headquartered in California that operates a three-tier franchise system selling commercial cleaning services. Vanguard sells licenses to use its name and

---

[1] Flavio Melo Filho; Geraldo Dimas Figueiredo; Sebastiao Matos; Dominga Almonte; Laura Abreu; and Rafael Abreu, on behalf of themselves and all others similarly situated.

[2] The summary judgment record contains several additional facts that are in dispute; however, at the summary judgment hearing, the parties agreed that the facts relevant to this Court's disposition of the instant motion are undisputed.

trademarked Vanguard Cleaning Systems in defined geographic areas to regional master franchisees. Regional master franchisees, in turn, enter into franchise agreements with unit franchisees, which conduct commercial cleaning.[3] Vanguard receives four percent of regional master franchisees' gross revenue, which consists of payments for commercial cleaning and fees levied on unit franchisees.[4] Vanguard solicits business through national sales bids, and offers quotes to prospective customers on its website; Vanguard's website forwards cleaning account leads to regional master franchisees.

Regional master franchisees implement Vanguard's commercial cleaning framework. Vanguard provides regional master franchisees with extensive operating instructions, forms, and templates. Vanguard authored the franchise agreements that regional master franchisees and unit franchisees execute, but is a non-signatory to these agreements. Vanguard also drafted the franchise disclosure document, operations manual, cleaning safety manual, and commercial cleaning information manual. Additionally, Vanguard supplies regional master franchisees with accounting software and templates, which include franchise agreements and account acceptance forms.

Unit franchisees must meet current and future standards outlined in Vanguard's operations manual. Vanguard requires that unit franchisees form independent entities to conduct cleaning services. Vanguard prohibits unit franchisees from billing client accounts for cleaning supplies; unit franchisees must purchase their own supplies. Vanguard imposes minimum

---

[3] There are currently fifty-three master franchised regional offices and over 3,000 unit franchisees in the United States and Canada.

[4] Unit franchisees must pay numerous fees, such as: a five percent royalty fee; continuing royalty fee of ten percent of gross revenues for use of Vanguard's system, marks, and other Vanguard Cleaning Systems benefits; five percent business support fee; special services fee of ten to fifteen percent, contingent on how the work was acquired; and additional volume and marketing fees up to four times the first month's gross billing for each new account supplied to unit franchisees past the initial franchise package they purchased

2

standard service requirements, along with detailed instructions on how to clean commercial spaces. Vanguard also requires that unit franchisees attend a mandatory training program, and emphasizes that unit franchisees are subject to Vanguard's quality control standards.

Vanguard outlines a series of inspections and oversight methods in its operations manual. For example, Vanguard representatives routinely conduct room-by-room quality control inspections if the client consents. Unit Franchise Operations Manual, PL000259-000260.[5] The Vanguard representative records the client's concerns, looks for deficiencies on its own, and notifies the unit franchisee of any deficiencies. *Id.* Vanguard also conducts telephone and written surveys, and communicates deficiencies with unit franchisees. *Id.* Vanguard states that "good quality control consists of carefully checking our own work (and the work of our franchisee's employees) to be sure it meets OUR STANDARDS." *Id.*

Vanguard supplies its account holders with Vanguard-branded logbooks and characterizes them as "[t]he most important communication tool we have." *Id.* at PL000244. Unit franchisees "must check the logbook every visit to see if the client has written a note" and, if they have, the unit franchisee "must always write a response to acknowledge that you are using the logbook, and you have understood their comment or request." *Id.*

Vanguard allows unit franchisees to pursue cleaning work unrelated to current accounts. Unit franchisees must obtain express permission to perform extra work for a *current* account or else risk termination. Vanguard must grant express approval to any unit franchisee advertisements regarding its cleaning services.

---

[5] Although this opinion makes references to portions of the Operation Manual which itself was sealed pursuant to a stipulated protective order, this Court deems that the references cited herein are both necessary to a clear understanding of this decision and do not disclose material that is confidential and in need of protection from disclosure.

3

In 2006 and in 2009, Vanguard executed master franchise agreements with Ztico Inc. d/b/a Vanguard Cleaning Systems of Southern New England ("Ztico"), allowing Ztico to operate as a regional master franchisee in Massachusetts and Connecticut. The plaintiffs executed franchise agreements with Ztico to receive cleaning work. The Massachusetts plaintiffs, Geraldo Figueiredo and Sebastiao Matos, entered into unit franchise agreements with Ztico on January 15, 2007 and August 21, 2007, respectively. The Connecticut plaintiffs, Dominga Almonte and Rafael Abreu, entered into unit franchise agreements with Ztico on June 13, 2008 and March 5, 2013, respectively.

The plaintiffs are immigrants who do not speak English well,[6] and believed their agreements were with Vanguard; they were unaware Vanguard and Ztico were separate entities, or that Ztico existed. The plaintiffs created independent entities under which they operated while cleaning for Vanguard. Other than Matos, who operated a cleaning business prior to executing his franchise agreement, the plaintiffs were instructed by a perceived Vanguard representative to form independent entities.

The plaintiffs filed this four-count class action complaint, alleging misclassification as independent contractors under Massachusetts law, G. L. c. 149, §148B (Count I); violations of the Wage Act, G. L. c. 149, §148 (Count II); misclassification as independent contractors under Connecticut law, Conn. Gen. Stat. § 31-222(a)(1)(B) (Count III); and illegal refund of wages for furnishing employment under Connecticut law, Conn. Gen. Stat. § 31-71e and Conn. Gen. Stat. § 31-73 (Count IV). The parties have agreed to defer class certification, and to limit summary judgment to the four named plaintiffs who are "test cases."[7] The parties filed cross motions for

---

[6] Two plaintiffs, Figueiredo and Almonte, testified in their depositions through a translator.

[7] The plaintiffs and the defendant each selected one plaintiff from Massachusetts and one plaintiff from Connecticut to serve as the test cases.

4

summary judgment, seeking a ruling on the plaintiffs' employment classification under the laws of Massachusetts and Connecticut.

## DISCUSSION

### I. Summary Judgment Standard

Summary judgment shall be granted when all material facts have been established and the moving party is entitled to judgment as a matter of law. Mass. R. Civ. P. 56(c); *Kourouvacilis* v. *General Motors Corp.*, 410 Mass. 706, 716 (1991). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue. *Pederson* v. *Time, Inc.*, 404 Mass. 14, 16-17 (1989). The moving party may satisfy this burden either by submitting affirmative evidence that negates an essential element of the opposing party's case, or by demonstrating that the opposing party has no reasonable expectation of proving an essential element of his case at trial. *Flesner* v. *Technical Commc'ns Corp.*, 410 Mass. 805, 809 (1991). Once the moving party establishes the absence of a triable issue, the party opposing the motion must respond with evidence of specific facts establishing the existence of a genuine dispute of material fact. *Pederson*, 404 Mass. at 17.

### II. Misclassification under Massachusetts and Connecticut Law (Counts I and II)

In Count I and Count III of the First Amended Class Action Complaint, the plaintiffs allege that Vanguard misclassified them as independent contractors, rather than employees, in violation of G.L. c. 149, § 148B, and Conn. Gen. Stat. § 31-222(a)(1)(B) (collectively "Independent Contractor Statutes").

The Independent Contractor Statutes establish "a standard to determine whether an individual performing services for another shall be deemed an employee or an independent

contractor for purposes of our wage statutes." *Somers* v. *Converged Access, Inc.*, 454 Mass. 582, 588–589 (2009); accord *Standard Oil of Conn., Inc.* v. *Adm'r, Unemployment. Comp. Act*, 320 Conn. 611, 623 (2016). The Independent Contractor Statutes were enacted to "to protect workers by classifying them as employees, and thereby grant them the benefits and rights of employment, where the circumstances indicate that they are, in fact, employees." *Depianti* v. *Jan–Pro Franchising Int'l, Inc.*, 465 Mass. 607, 620 (2013) (citations omitted); accord *Standard Oil*, 320 Conn. at 616-617.

Generally, remedial statutes like the Independent Contractor Statutes are entitled to liberal construction. *Monell* v. *Boston Pads, LLC*, 471 Mass. 566, 575 (2015) (independent contractor statute is a remedial statute); see *Terra Nova Ins. Co.* v. *Fray–Witzer,* 449 Mass. 406, 420 (2007) (statutes are remedial where they address "misdeeds suffered by individuals," rather than punish public wrongs); accord *Sw. Appraisal Grp., LLC* v. *Adm'r, Unemployment Comp. Act*, 324 Conn. 822, 833 (2017). The Independent Contractor Statutes presume that individuals performing services are employees. G.L. c. 149, § 148B (a); Conn. Gen. Stat. § 31-222(a)(1)(B); *Sebago* v. *Boston Cab Dispatch, Inc.*, 471 Mass. 321, 327 (2015); *Sw. Appraisal Grp.*, 324 Conn. at 833. An employer may overcome this presumption and establish that its presumptive employee is an independent contractor, if it can establish that:[8]

> "(1) the individual is free from control and direction in connection with the performance of the service, both under his contract for the performance of service and in fact; and
>
> "(2) the service is performed outside the usual course of the business of the employer; and

---

[8] Connecticut employs the same three-prong test, but has an additional clause in the second prong, which states:

> "(ii) such service is performed either outside the usual course of the business for which the service is performed *or is performed outside of all the places of business of the enterprise for which the service is performed.*"

Conn. Gen. Stat. § 31-222(a)(1)(B)(ii) (emphasis added).

6

> "(3) the individual is customarily engaged in an independently established trade, occupation, profession or business of the same nature as that involved in the service performed."

G.L. c. 149, § 148B; accord Conn. Gen. Stat. § 31-222(a)(1)(B); *Somers*, 454 Mass. at 589. Thus, to rebut this presumption of employment, Vanguard shoulders the burden of satisfying **all three** prongs by a preponderance of the evidence. *Somers*, 454 Mass. at 589; accord *JSF Promotions, Inc.* v. *Adm'r, Unemployment Comp. Act*, 265 Conn. 413, 418 (2003).

### a. The Plaintiffs Provided Services to Vanguard

In *Depianti* v. *Jan-Pro Franchising Int'l, Inc.*, 39 F. Supp. 3d 112 (D. Mass. 2014), (Wolf, J.), a case factually similar to this matter, unit franchisees in a three-tier franchise sued their master franchisor, alleging they had been misclassified as independent contractors under G.L. c. 149, § 148B. *Depianti*, 39 F. Supp. at 116. The district court certified the following question to the Supreme Judicial Court ("SJC"): "[W]hether a defendant may be liable for employee misclassification under [G.L. c. 149, § 148B], where there was no contract for service between the plaintiff and the defendant." *Depianti*, 465 Mass. at 608. The SJC answered in the affirmative, stating that "the lack of a contract for service between the putative employer and putative employee does not preclude liability under G.L. c. 149, § 148B." *Id.* at 619.

While the federal district court ultimately decided that Jan-Pro Franchising International was not Depianti's employer with respect to the Massachusetts Independent Contractor Statute, based its decision on its obligation to give full faith and credit to a decision of the Georgia Court of Appeal,[9] it also opined that the Georgia decision was consistent with Massachusetts law and the SJC's *Depianti* decision. 39 F. Supp. 3d at 126.

---

[9] *Jan-Pro Franchising Int'l, Inc.* v. *Depianti*, 310 Ga. App. 265 (Ga. Ct. App. 2011) (declaratory judgment action in Georgia where Jan-Pro was headquartered). The *Depianti* case in federal court in Massachusetts was a putative class action.

7

The decision of this Court differs from the conclusion of the *Depianti* federal district court decision based not only upon the different factual record, but this Court's application of the SJC's view that of the expansive coverage of G.L. c. 148, §148B. In the SJC's *Depianti* decision, after noting the appropriateness of a liberal statutory construction of the statute, the Court found that the statute's purpose was "to protect workers by classifying them as employees, and thereby grant them the benefits and rights of employment, where the circumstances indicate that they are, in fact, employees." 465 Mass. at 620, citing *Taylor* v. *E. Connection Operating, Inc.*, 465 Mass. 191, 198 (2013). Significantly, the SJC concluded that § 148B does not contain any language mandating that the employer and employee enter into a contract together. *Id.* at 621. To hold otherwise, the SJC reasoned, would deviate from the intent of the legislature because an entity could insulate its liability for misclassifying employees by merely establishing a separate entity to contract with its employees. *Id.* at 622. Rather, the Court concluded that § 148B (a)(1) requires that an employer's control and direction over an employee's performance "is to be assessed both under the terms of the employee's contract for service, if any, *as well as in fact*." *Id.* The SJC found support for this proposition in the wage statute, G.L. c. 149, § 148, which declares "[n]o person shall by a special contract with an employee or by any means exempt himself" from the obligation to pay employees lawful wages. *Id.* citing *Awuah* v. *Coverall N. Am., Inc.*, 460 Mass. 484 (2011). That provision, the SJC reasoned, demonstrated the legislature's cognizance that employers could utilize special contracts or other means to circumvent the statute and the Legislature's intent to hinder such efforts. *Id.* Therefore, the SJC concluded that the absence of a contract for service between an employer and employee does not by itself preclude liability under G.L. c. 149, § 148B. *Id.* at 624-625.

8

It is in this context, that the relationship between the plaintiffs and Vanguard must be analyzed. The threshold question under the Independent Contractor Statutes is "whether the plaintiffs provided services to the defendant." *Sebago* v. *Boston Cab Dispatch, Inc.*, 471 Mass. 321, 329 (2015). Vanguard's three-tier franchise structure creates a system where the plaintiffs must establish their own entities and enter into franchise agreements with Ztico; Vanguard is a non-signatory and collects revenue from commercial cleaning and franchise fees.

The plaintiffs executed their unit franchise agreements with Ztico. Vanguard's three-tier franchise structure is contingent on this arrangement, and this Court finds that this structure is effectively an attempt to accomplish an end run around the Independent Contractor Statutes. In *Depianti*, the SJC expressly held that "the lack of a contract for service between the putative employer and putative employee does not itself preclude liability under G.L. c. 149, § 148B." 465 Mass. 607, 624; accord *Sw. Appraisal Grp., LLC*, 324 Conn. at 833–834 (citations omitted) (expressing the need to balance prevention of use of sham independent contractor agreements against agreements that legitimately undertake doing business together as independent contracting parties).

The plaintiffs have performed a service for Vanguard. Vanguard's revenue is derived from initial franchise fees, four percent of the gross billings from work performed by unit franchisees, and various fees imposed on unit franchisees. Vanguard's revenue, therefore, is directly dependent on commercial cleaning work of the plaintiffs and other unit franchisees. While the plaintiffs were not required to perform services for Vanguard – they could refuse jobs or not enter into franchise agreements – they did in fact do work for Vanguard. See *Sebago*, 471 Mass. at 331.

9

Because Vanguard is not precluded from liability under the Independent Contractor Statutes and because the plaintiffs provided services to the defendant, this Court must determine whether the plaintiffs are Vanguard's employees by deciding whether the defendant has established the requirements of the three prongs of the Independent Contractor Statutes. G.L. c. 149, § 148B(a), Conn. Gen. Stat. § 31-222(a)(1)(B).

### b. Freedom of Control and Direction – Massachusetts and Connecticut

The first prong requires an analysis of whether the plaintiffs were "free from control and direction in connection with the performance of the service," that is, cleaning commercial spaces. G.L. c. 149, § 148B (a)(1); Conn. Gen. Stat. § 31-222(a)(1)(B)(i). The Massachusetts Attorney General has advised that this analysis is contingent on whether the "worker's activities and duties [were] actually . . . carried out with minimal instruction." *Sebago*, 471 Mass. at 332, citing Advisory 2008/1, Attorney General's Fair Labor and Business Division ("independent contractor completes the job using his or her own approach with little direction and dictates the hours that he or she will work on the job"); accord *Standard Oil*, 320 Conn. at 623 (independent contractor "contracts to do a piece of work according to his own methods and without being subject to the control of his or her employer, except as to the result of his work"). Because the Attorney General's office is charged with enforcing the wage and hour laws, courts must give substantial deference to its interpretation of G.L. c. 149, § 148B(a). *Smith* v. *Winter Place, LLC*, 447 Mass. 363, 367-368 (2006).

Vanguard controlled and directed the manner in which the plaintiffs conducted their commercial cleaning services. The plaintiffs must comply with Vanguard's operations manual, franchise agreement, and other training, policies, and procedures. See Business Management Manual, at PL001372 ("[t]his manual may describe mandatory Vanguard Cleaning Systems

requirements . . . mandatory portions are identified by language such as 'must', 'required' and 'shall,' and you are expected to comply with these terms as part of your VCS business franchise commitments."). These documents set forth various mandates and prohibitions, including mandatory training programs, a prohibition from billing clients for cleaning supplies, minimum standard service requirements, and step-by-step detailed cleaning instructions. The plaintiffs were subject to Vanguard's quality control standards at all times.

Vanguard argues that Ztico was responsible for overseeing and controlling the plaintiffs because Ztico oversaw the accounts the plaintiffs serviced, paid the plaintiffs, and was free to amend the franchise documents. As noted, Vanguard cannot evade liability under the Independent Contractor Statutes simply because it is not a signatory to the franchise agreement, particularly where, as here, it created the framework and boundaries under which the plaintiffs must operate. *Depianti*, 465 Mass. at 621 (§ 148B(a) "contains no language limiting its application to circumstances where the putative employer and the putative employee have entered into a contract together"); accord *Standard Oil*, 320 Conn. at 623 ("the decisive test is who has the right to direct what shall be done and when and how it shall be done?"). Vanguard has failed to satisfy its burden under the first prong.

    c. **Usual course of Business – Massachusetts and Connecticut**

The second prong is satisfied if the defendants show that the plaintiffs' cleaning services are "outside the usual course of the business of the employer." G.L. c. 149, § 148B (a)(2); Conn. Gen. Stat. § 31-222(a)(1)(B)(ii). A purported employer's own definition of its business is emblematic of its usual course of business. *Sebago*, 471 Mass. at 333; see, *e.g.*, *Athol Daily News* v. *Board of Review of the Div. of Employment & Training*, 439 Mass. 171, 179 (2003) (news carriers performed its services in usual course of a news publisher's business, in part

because "[publisher] itself define[d] its business as 'publishing and distributing' a daily newspaper"). Another factor to be considered is "whether the service the individual is performing is necessary to the business of the employing unit or merely incidental." See *Sebago*, 471 Mass. at 333, citing Advisory 2008/1, Attorney General's Fair Labor and Business Division.

Vanguard asserts that its usual course of business is establishing a trademark and licensing system pursuant to which it can license to regional franchisees which in turn license those rights to unit franchisees. Vanguard notes the absence of any language in its master franchise agreements indicating that its usual course of business includes commercial cleaning, citing to the Georgia Court of Appeals, observation that one factor to determine a company's usual course of business was to look at the recitals in the master franchise agreement. See *Jan-Pro Franchising Int'l, Inc.*, 310 Ga. App. at 266.

This Court finds that Vanguard's characterization is too narrow. Vanguard created a regulated system – a necessary component of its business – under which the plaintiffs must operate. Vanguard characterizes on its website as "The Standard of Clean Since 1984," "a leader in the commercial cleaning industry," and a "leading brand in commercial cleaning." See *Sebago*, 471 Mass. at 333. Vanguard is directly dependent on unit franchisees' success; it receives a percentage of the revenue generated by unit franchisees and the fees they pay. Compare *id.* at 334 (businesses that lease taxi medallions to drivers for a flat fee are not in business of driving because their revenue is not directly dependent on the success of drivers' endeavors). Vanguard cannot reasonably maintain that commercial cleaning is not part of its ordinary course of business to avoid classifying its workers as employees while simultaneously touting that it is "a leader in the commercial cleaning industry." To conclude otherwise would

be to accept the type of end run that contravenes the express purpose of § 148B(a). *Depianti*, 465 Mass. at 624.

### d. Usual Course of Business - Connecticut

The second prong of Conn. Gen. Stat. § 31-222(a)(1)(B) differs from Massachusetts in that it affords putative employers an additional criterion to satisfy its burden:

> "(ii) such service is performed either outside the usual course of the business for which the service is performed *or is performed outside of all the places of business of the enterprise for which the service is performed*[.]"

Conn. Gen. Stat. § 31-222(a)(1)(B).

The Connecticut Supreme Court, recognizing the different views regarding the definition of an employer's "place of business," held that a determination of this issue requires a fact intensive analyses. See *Standard Oil*, 320 Conn. at 643-655. The Court did acknowledge that "individual job sites are not necessarily synonymous with 'places of business of the enterprise for which the service is performed.'" *Id.* at 643.

The Supreme Court of Connecticut, however, did offer guiding principles to determine whether an area is an employer's "place of business" under Conn. Gen. Stat. § 31-222(a)(1)(B)(ii). *Id.* at 653-654. When construing an employer's "place of business" under prong two, courts should consider "the extent to which the employer exercised control over the location where the independent contractor worked." *Id.* at 653. Moreover, "places of business" does not extend "to all locations where the technicians performed their services or regularly represented the interests of the plaintiff." *Id.* at 654 (citations omitted).

Vanguard argues that it has met this portion of Connecticut's second prong because its only place of business is its California headquarters. The plaintiffs assert that Vanguard's places

of business include its customers' facilities where the Connecticut plaintiffs routinely conduct commercial cleaning services.

This Court finds that Vanguard's "regular place of business" extends to the commercial sites where the plaintiffs cleaned because of the amount of control Vanguard exercised over them. Vanguard had a strict cleaning regimen, left Vanguard-branded logbooks at each site, and mandated that the plaintiffs "check the logbook every visit to see if the client has written a note." Ex. C, Unit Franchise Operations Manual, PL000259-000260. If the client did leave a note, Vanguard required that the plaintiffs "must always write a response to acknowledge you are using the logbook, and you have understood their comment or request." *Id.* Moreover, Vanguard routinely sent representatives to conduct room-by-room quality control inspections if the client consented. *Id.* Vanguard acknowledges this control in its operations manual when it stated "good quality control consists of carefully checking our own work (and the work of our franchisee's employees) to be sure it meets OUR STANDARDS." *Id.*

This level of control is distinguishable from the circumstances present in *Standard Oil*, where the Supreme Court of Connecticut held that "places of business" did not extend to the homes in which technicians worked, unaccompanied by the plaintiff's employees and without the plaintiff's supervision. 320 Conn. at 655. In *Standard Oil*, the court was persuaded that it was the homeowner, and not the putative employer that: (1) scheduled the putative employees to work; (2) identified installation problems; and (3) brought the putative employees inside their home and showed them where to work. *Id.* These three factors are absent here. Through Vanguard's framework, Ztico assigns cleaning schedules to the plaintiffs, Vanguard representatives conduct room-by-room inspections or survey customers about the plaintiffs'

14

work; and the plaintiffs are governed by established cleaning protocols, including areas to be cleaned, and techniques to clean them.

Vanguard has failed to satisfy its burden under the second prong of the statutes as well.

### e. Engaged in an Independently Established Trade – Massachusetts and Connecticut

The third prong requires that the plaintiffs be "customarily engaged in an independently established trade, occupation, profession or business of the same nature as that involved in the service performed." G.L. c. 149, § 148B(a)(3); Conn. Gen. Stat. § 31-222(a)(1)(B)(iii). Thus, the critical inquiry is whether "the worker is capable of performing the service to anyone wishing to avail themselves of the services or, conversely, whether the nature of the business compels the worker to depend on a single employer for the continuation of the services." *Sebago*, 471 Mass. at 336 (citations omitted); accord *Sw. Appraisal Grp., LLC*, 324 Conn. at 835, quoting *Athol Daily News*, 439 Mass. at 181 (prong three "seeks to discern whether the worker is wearing the hat of an employee of the employing company, or is wearing the hat of his own independent enterprise").

Vanguard's three-tier franchise system compelled the plaintiffs to register as independent contractors and form separate cleaning entities.[10] Matos, who executed his unit franchise agreement in 2007, has operated his cleaning business since 1995 and earns twenty-five percent of his income from cleaning services unrelated to Vanguard. See *Subcontracting Concepts, Inc. v. Comm'r of Div. of Unemployment Assistance*, 86 Mass. App. Ct. 644, 649 (2014) (employer may satisfy the third prong if it can demonstrate that plaintiffs are performing the commercial

---

[10] Geraldo Figueiredo formed MG Commercial Cleaning; Sebastiao Matos formed Matos Cleaning Service in 1995 and Matos Cleaning Inc. in 2011; Domina Almonte formed Sunrise Cleaning, LLC; and Rafael Abreu formed Cleaning Engineers, LLC.

15

cleaning services as entrepreneurs). Abreu and Figueiredo, however, exclusively serviced Vanguard accounts. Almonte has serviced one account unrelated to Vanguard in seven years. .

Vanguard distributes Vanguard-branded uniforms and encouraged, but did not require, the plaintiffs to wear them. The record reflect that Abreu, who formed Cleaning Engineers, LLC, serviced Vanguard accounts wearing a Cleaning Engineers uniform. Figueiredo, however, wore a Vanguard uniform while servicing Vanguard accounts. The record is unclear what uniforms Matos and Almonte wore.

Given the record as it relates to Matos, it appears that the nature of Vanguard's business did not compel the plaintiffs to depend solely on Vanguard for the continuation of their services. See *Sebago*, 471 Mass. at 336 (citations omitted); *Sw. Appraisal Grp., LLC*, 324 Conn. at 835, quoting *Athol Daily News*, 439 Mass. at 181. Moreover, there is evidence that the plaintiffs are not necessarily literally "wearing the hat" of Vanguard as distinguished from "the hat" of their own independent enterprise. *Athol Daily News*, 439 Mass. at 181; *Sw. Appraisal Grp., LLC*, 324 Conn. at 835 (citations omitted).

It is not necessary, however, to decide whether the defendant has established that the plaintiffs engaged in an independently established trade, occupation, profession, or business of the same nature as Vanguard, because the failure of Vanguard to establish the first two statutory prongs mandates that summary judgment be granted in favor of the plaintiffs.

## ORDER

Based on the foregoing, it is hereby **ORDERED** that the plaintiffs' motion for summary judgment is **ALLOWED**, and defendant's cross motion summary judgment is **DENIED**.

Dated: `September 29, 2017.

_____
Kenneth J. Fishman
Justice of the Superior Court