# EXHIBIT C

COMMONWEALTH OF MASSACHUSETTS

HAMPDEN, ss.                                     SUPERIOR COURT
                                                 CIVIL ACTION NO. 2013-00488

MORGAN MEIER & others[1]

vs.

MASTEC NORTH AMERICA, INC.

HAMPDEN COUNTY
SUPERIOR COURT
FILED
JAN 06 2015
CLERK OF COURTS

## MEMORANDUM OF DECISION AND ORDER ON PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

### I. Introduction

The plaintiffs are twelve technicians who all repaired and installed DirecTV telecommunications equipment for the defendant, MasTec North America, Inc. ("MasTec") in Massachusetts, between June of 2011 and the fall of 2013. They were hired by MasTec's various subcontractors. They brought this action on behalf of themselves and a putative class, complaining that MasTec unlawfully misclassified them as independent contractors rather than employees, and thereby deprived them of employee benefits and protections.

On that basis, the plaintiffs' second amended complaint contains the following claims against MasTec: violation of the Independent Contractor Law, G. L. c. 149, § 148B (Count 1); violation of the Wage Act, G. L. c. 149, § 148, by failing to pay wages, by taking improper deductions from their pay and by requiring the plaintiffs to bear costs which employers are statutorily required to bear (Count 2); violation of the Overtime Law, G. L. c. 151, § 1A, by failing to pay overtime wages (Count 3); and violation of the Wage Act, G. L. c. 149, § 148, by failing to pay some of the plaintiffs their final weeks of wages and by failing to pay them on time

---

[1] Heriberto Flores, Greg Holloway, João Carvalho, Jeffrey Barrows, Israel Burgos, Brian Perniciaro, Miguel Moreira, Luis Carmona, Paul Whitman, Benjamin Unruh, and Daniel Hersy

(Count 4). The plaintiffs seek a declaration that they and the putative class members were employees rather than independent contractors of MasTec, and they ask for restitution of all wages, payments and benefits to which they were entitled as employees, plus treble damages. Before me is the plaintiffs' motion, pursuant to Mass. R. Civ. P. 23 and G.L. c. 149, § 150, to certify as a class technicians who worked for MasTec through these intermediary companies in Massachusetts from June 2011 to the fall of 2013.[2]

## II. The Plaintiffs' Relationship With MasTec

In June of 2011, DirecTV and MasTec entered a contract giving MasTec the exclusive right to perform all DirecTV service, installation, and repair work for DirecTV's customers in 36 geographic territories in the United States. In Massachusetts, from June 2011 until the fall of 2013, MasTec assigned that work either to its own in-house technicians or to approximately 40 technicians, including the plaintiffs, who were retained through intermediary companies with which MasTec had contracts. These intermediary companies included New England Satellite, Sabra, Level 3, Superior, and Total Media.[3] MasTec's contracts with these companies required the plaintiffs to work exclusively on DirecTV jobs. The plaintiffs were paid per job and their paychecks were issued by the intermediary companies.

Under this arrangement, customers seeking DirecTV service or repairs contacted

---

[2] Jeffrey Barrows does not join in the motion for class certification.

[3] Medeiros testified in his deposition that as of approximately September or October of 2013, MasTec only used its own in-house technicians. One plaintiff, David Hersy, alleges in the second amended complaint (filed in February of 2014) that he worked from November 2011 "to the present" installing DirecTV equipment for MasTec through three intermediary companies: New England Satellite & Sound, Sabra, and Total Media Installations, Inc. Medeiros testified at his January 2014 deposition that Sabra no longer contracted with MasTec, but he did not rule out that New England Satellite & Sound and Total Media Installations, Inc. have continued their contractual relationships with MasTec. It is not entirely clear from the record, therefore, whether the alleged conduct by MasTec continued past the fall of 2013. For present purposes only, the Court assumes without making any determination that the challenged employment practices ended in the fall of 2013.

2

DirecTV, which generated a work order. If the customer's location was within MasTec's geographical territory, the work order was assigned to MasTec, which then either sent its own in-house technicians to perform the work or it used the intermediaries' technicians, among them the plaintiffs and proposed class members.

Very little of the plaintiffs' work was controlled by the intermediaries; some was controlled by DirecTV, and most was controlled by MasTec. DirecTV issued for each technician an identification number, or tech ID, and a badge bearing that technician's photograph, tech ID number, and the DirecTV logo.

In MasTec's contracts with the intermediaries, MasTec retained authority to schedule and allocate technicians' work any way it chose and to terminate the agreement if the work as not timely completed. MasTec owned and issued to the technicians handheld devices or smartphones which used DirecTV's work order management software, Siebel. Several times a day, technicians accessed Siebel, using their tech ID, to report their job site arrivals and job closures. Through this system, MasTec monitored each technician's whereabouts and the status of jobs. Technicians did not have to inform the intermediaries when they arrived on job sites.[4]

The Siebel software assigned specific jobs to the plaintiffs, taking into account each technician's skill sets. Based on those assignments, MasTec issued work orders for each technician, stating the amount of time allotted for each job. Departures from those assignments sometimes occurred. The intermediaries had the ability to reroute some work and occasionally asked technicians to make additional, previously unplanned service calls. Moreover, technicians were given a list of MasTec telephone numbers and two DirecTV numbers to call to report job

---

[4] DirecTV also maintained another reporting system, Analytics, which kept track of each technician's jobs in any given period.

cancellations or rescheduled jobs.

DirecTV's work standards and requirements were imposed on the technicians through MasTec and the intermediaries. MasTec gave technicians written standards and guidelines for installing DirecTV equipment, and MasTec held monthly meetings at its offices, where technicians viewed videos about DirecTV equipment, learned about upgrades, and took tests. MasTec required technicians to comply with DirecTV's standards for licensing, certifications, and passing drug tests.

MasTec evaluated, rewarded, and penalized technicians' performance, using several methods, including the results of customer satisfaction surveys conducted by MasTec and/or DirecTV. Technicians whose customer satisfaction ratings exceeded 96% received a bonus from MasTec, whereas those whose ratings fell below 93% were charged "tech repair fees" which translated into significant pay deductions. These bonuses and deductions were reflected on the plaintiffs' paychecks and itemized on documents generated by MasTec.

Materials needed by technicians to perform their jobs came from a variety of sources. DirecTV supplied the satellite receivers to MasTec, which in turn provided them to the intermediaries, which distributed them to the technicians as needed for each day's jobs. Technicians had to buy some of their own materials, such as cement, poles, and drill bits. Some intermediary companies had technicians drive their own vehicle, marked with a DirecTV logo, while others required technicians to pay $125 per week to use a cargo van with the DirecTV logo on it. Technicians paid for the gas they used getting to and from jobs.

The plaintiffs were paid per job at fixed rates, some dismally low. For example, a technician could spend an entire day unsuccessfully trying to install DirecTV equipment in a

4

remote, heavily-wooded site and be paid nothing. The plaintiffs did not receive overtime pay despite working regularly more than 40 hours per week. Some plaintiffs worked more than 40 hours per week, not because they were required to do so, but because they were allowed to work as much as they wanted, and wanted to make more money.

### III. The Plaintiffs' Motion for Class Certification

> "A class action may be maintained under rule 23(a) only if findings are made that: '(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.' Rule 23(b) further requires findings that 'questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.'"

*Aspinall* v. *Philip Morris Cos., Inc.*, 442 Mass. 381, 391 (2004), quoting Mass. R. Civ. P. 23.

"Although the plaintiffs bear the burden of establishing that the class meets the requirements of rule 23, this burden must be construed within the framework of the broad discretion judges have to grant or deny a motion for certification." *Weld* v. *Glaxco Wellcome, Inc.*, 434 Mass. 81, 86-87 (2001). "The plaintiffs bear the burden of providing information sufficient to enable the motion judge to form a reasonable judgment that the class meets the requirements of rule 23; they do not bear the burden of producing evidence sufficient to prove that the requirements have been met." *Id.* at 87. It is not "essential that the interest of each member of the class be identical in all aspects with that of the plaintiffs." *Salvas* v. *Wal-Mart Stores, Inc.*, 452 Mass. 337, 363-364 (2008).

There is no dispute that the plaintiffs have presented evidence from which I can form a reasonable judgment that the class is so numerous that joinder of all members is impracticable.

At least 40 technicians at any given time worked for MasTec in Massachusetts between June 2011 and the fall of 2013. The joinder of all of these technicians would be impractical, unwise, and imprudent. See *Brophy v. School Committee of Worc.*, 6 Mass. App. Ct. 731, 735 (1978) (impracticable in the context of Mass. R. Civ. P. 23 means impractical, unwise or imprudent, but not impossible).

MasTec argues that the motion for class certification fails on the commonality and predominance tests, and that resolution of the putative plaintiffs' claims requires an individualized inquiry. I find that there are questions of law or fact common to the class. All of the proposed class members worked on DirecTV installation and servicing for MasTec through intermediary companies and were treated as independent contractors. The dominant question of fact and law is whether these technicians were employees of MasTec, given the latter's significant control over technicians' day-to-day work. See G. L. c. 149, § 148B ("an individual performing any service, except as authorized under this chapter, shall be considered to be an employee . . . unless: (1) the individual is free from control and direction in connection with the performance of the service, both under his contract for the performance of service and in fact . . . ."). Other common factual and legal questions flowing from that core question relevant to all of the putative class members include whether they were unlawfully deprived of timely payment of wages, of overtime wages, and of employee benefits, and whether they were subject to unlawful wage deductions.

Contrary to MasTec's argument, differences in the actual amounts of hours worked by each class member does not undermine the conclusion that common questions of law and fact exist. See *Spear v. H.V. Greene Co.*, 246 Mass. 259, 266 (1923) ("It is not essential that the

6

interest of each member of the class be identical in all aspects with that of the plaintiffs. The interest must arise out of a common relationship to a definite wrong. There must be a joint prejudice to all the class whom the plaintiffs seek to represent"). I find that the plaintiffs have met the commonality requirement, and address the related predominance issue below.

The plaintiffs' showing also supports a finding that the claims of the representative parties are typical of the claims of the class, composed of technicians purportedly hired as independent contractors by intermediary companies working for MasTec between June 2011 and the fall of 2013 in Massachusetts. The named plaintiffs' multiple claims of injury by MasTec are premised on the same theory-- misclassification as independent contractors--as are the claims of the proposed class members. See *Weld v. Glaxco Wellcome, Inc.*, 434 Mass. at 87.

The plaintiffs have also met their burden of presenting information sufficient to allow me to form a reasonable judgment that they will fairly and adequately protect the interests of the class. The record discloses no significant conflicts between the representatives and the proposed class members. To the contrary, the plaintiffs' prosecution of their claims will further the interests of the class members to obtain recognition of their status as MasTec employees and to seek redress for unpaid and untimely pay and benefits. Nothing in the record suggests, nor does MasTec assert, that the named plaintiffs will not fairly and adequately protect the interests of the class. See Mass. R. Civ. P. 23.

The plaintiffs have satisfied the requirement that questions of law or fact common to the class members predominate over any questions affecting individual members. The common factual and legal questions are not only whether the plaintiffs and putative class members were MasTec employees, but whether, as misclassified independent contractors, they suffered the

7

same injuries, such as nonpayment of overtime pay, improper wage deductions, deprivation of employee benefits, and untimely payment of wages. The factual differences among the putative class members, as among the named plaintiffs, include their dates of performing the relevant work, the intermediaries with whom they contracted, the calculation of employee benefits of which they were deprived, the amounts of hours over 40 they worked (and when), and the amounts of improper wage deductions to which they were subjected. A comparison of the common questions and the individualized inquiries pertinent to each plaintiff's damages persuades me that the common questions predominate over the individual ones.

Finally, resolution of the proposed class members' claims through a class action advances judicial economy. I find that a class action in this case is superior to other available methods for fairly and efficiently adjudicating this controversy. See Mass. R. Civ. P. 23.

## ORDER

For all the foregoing reasons, it is hereby **ORDERED** that the Plaintiffs' Motion for Class Certification is **ALLOWED**.

Constance M. Sweeney
Justice of the Superior Court

Dated: 1/6/15