# EXHIBIT E

COMMONWEALTH OF MASSACHUSETTS

HAMPDEN, ss.
SUPERIOR COURT
CIVIL ACTION
NO. 2010-00034

HAMPDEN COUNTY
SUPERIOR COURT
FILED
DEC 1 1 2013
CLERK OF COURTS

PAULA RAPOSA & others[1]

vs.

MARDI GRAS ENTERTAINMENT, INC. & others[2]

## MEMORANDUM OF DECISION AND ORDER ON PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

This action arises out of the plaintiffs' work as exotic dancers, bartenders, and disc jockeys at the defendants' adult entertainment establishments in Western Massachusetts and, at the core, involves a dispute as to whether the plaintiffs were improperly classified as independent contractors. The plaintiffs allege violations of the Massachusetts independent contractor law; failure to pay minimum wage in violation of state law; violation of the Massachusetts tips law; violation of the Massachusetts wage law; quantum meruit and unjust enrichment; and retaliation.

Before the court is the plaintiffs' motion for class certification. The defendants oppose class certification on several grounds, including (1) that the named plaintiffs are inadequate representatives of the class; (2) that there are conflicts among the proposed class members; (3) that the named plaintiffs' claims are not typical due to the existence of counterclaims; and (4) that it would be a violation of due process to certify a class for a suit in which several putative

---

[1] Robert Bruso, Maureen Rushby, Jessica Taylor, Patricia Carbone, Leslie Campbell, Aimee Mathews, Amanda Shumway, and Jessica Ellen Wright.

[2] The Worthington Shops, Inc., BSC Realty, Inc., James Santaniello, Anthony Santaniello, Helen Santaniello, and their other corporate presidents and officers.

89

members do not wish to participate. For the reasons that follow, the plaintiffs' motion for class certification will be allowed.

## BACKGROUND

The named plaintiffs are comprised of exotic dancers, bartenders, and a disc jockey who performed at adult entertainment clubs owned or operated by the defendants. The defendants owned and/or operated, for the relevant time periods, at least five adult entertainment clubs in western Massachusetts: the Mardi Gras Complex, Anthony's Gentlemen's Club, Center Stage, Fifth Alarm, and Lace. These clubs provide adult entertainment in the form of exotic dancing.

During the time period relevant to the present action, hundreds of women have worked as exotic dancers at the clubs owned by the defendants. Many of the dancers are transient, and work at one or more of the clubs either infrequently or for a short period of time.

All of the plaintiffs, before this action was filed in 2010, were classified as independent contractors rather than employees and, as a result, were not paid any minimum hourly wage. The plaintiffs challenge this as a mis-classification. Additionally, the exotic dancer plaintiffs allege that they were required to pay a portion of their tips received, or "tip out," to several individuals at the end of each shift work. Those tipped-out included bouncers, managers, bartenders, and disc jockeys. The dancers were also required to pay the club a fixed fee, also referred to as "rent," for every shift worked. The amount of the rent fee varied from club to club and sometimes depended on the amount of tips the dancer had received during her shift as well as whether the dancer had been on time for work.

The defendants did not maintain any records for its workers during the period in which they were classified as independent contractors.

2

Beginning in January 2010, the defendants re-classified its dancers as employees, although they continued charging the dancers various fees that the plaintiffs claim are illegal, such as a fee to use a particular room for changing and taking breaks at the Mardi Gras Complex.

Since September 2007, the defendants have employed approximately sixty bartenders at the Mardi Gras Complex. These bartenders, for the relevant time period, were paid a base hourly rate of $2.63 per hour, plus tips received from customers. The plaintiffs challenge the defendants' practice of not allowing the bartenders to retain all of their tips received, instead requiring that each bartender pay a mandatory per-shift "tip out" to the club's managers.

The remaining named plaintiffs for the putative class of exotic dancers are Paula Raposa and Amanda Shumway.[3] The remaining named plaintiffs for the putative class of bartenders are Maureen Rushby, Jessica Taylor, and Patricia Carbone. The final plaintiff, Robert Bruso, worked as a disc jockey for the defendants and does not claim affiliation with either proposed class.

## DISCUSSION

The plaintiffs move to certify two separate classes: one for all exotic dancers who have worked at any strip club owned by Mardi Gras at any time since January 2007; and one for all bartenders who have worked at the Mardi Gras Complex since January 2007.

Rule 23 of the Massachusetts Rules of Civil Procedure sets out the prerequisites for class certification that may be summarized as follows: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy. See Mass. R. Civ. P. 23 (a). Once these threshold requirements have been met,

---

[3] According to the plaintiffs' Third Amended Complaint, Shumway and Raposa worked as both dancers and bartenders during the relevant time period. Notwithstanding, the Third Amended Complaint limits Shumway and Raposa's roles as named plaintiffs to the class of exotic dancers only. Plaintiffs Leslie Campbell and Aimee Mathews were the subject of a motion to dismiss by the defendants, and such motion was allowed. As such, these two named plaintiffs have been dismissed from the action, with prejudice. Additionally, the defendants were awarded summary judgment with respect to the claims asserted against them by Jessica Ellen Wright.

3

the putative class plaintiffs must also establish predominance and superiority. See Mass. R. Civ. P. 23 (b). Each of these requirements will be discussed more fully herein.

The party seeking class certification bears the burden of establishing that all of the Rule 23 requirements have been met. *Fletcher* v. *Cape Cod Gas Co.*, 394 Mass. 595, 601 (1985). "The decision to grant or deny class status under rule 23 is within the broad discretion of the motion judge." *Weld* v. *Glaxo Wellcome, Inc.*, 434 Mass. 81, 85 (2000). Although the putative class plaintiff must provide "information sufficient to enable a judge to form a reasonable judgment that the class meets the certification requirements of rule 23; they do not bear the burden of producing evidence sufficient to prove that the requirements have been met." *Weld*, 434 Mass. at 87. Because Massachusetts' Rule 23 was written "in light of the Federal rule," case law construing the Federal rule is, with some exceptions not pertinent here, generally analogous. *Weld*, 434 Mass. at 95.

The defendants argue that the plaintiffs cannot meet either the typicality or adequacy of representation requirements imposed by Mass. R. Civ. P. 23 (a) and that the plaintiffs fail to meet the predominance and superiority requirements of Rule 23 (b).

I.  Rule 23 (a)

   i.  **Numerosity**

Rule 23 provides that "[o]ne or more members of a class may sue or be sued as representative parties on behalf of all only if . . . the class is so numerous that joinder of all members is impracticable . . . ." Mass. R. Civ. P. 23 (a)(1). Where joinder is "impracticable, unwise, or imprudent," a class will usually satisfy the numerosity requirement. *Brophy* v. *School Comm. of Worcester*, 6 Mass. App. Ct. 731, 735 (1978) ("impracticable" does not mean

"impossible" or "incapable of being performed"). "Considerations of efficiency, limitation of judicial resources and expense to the plaintiffs support a determination that joinder will not be required." *Id.*

The plaintiffs claim that joinder would be impracticable in the present case because Mardi Gras employed hundreds of dancers, who are all potential plaintiffs in the case. They also allege that at least fifty-nine bartenders have been wronged by the defendants' conduct regarding wages, an issue that is common to the class. The defendants reply that the putative members of the class are unascertainable and that the class of dancers is limited in scope because several of them do not desire to be a part of this litigation and, indeed, wish to remain classified as independent contractors. The defendant-employers further maintain that the putative class members are unascertainable because the defendants did not keep records of the dancers.

In this case, joinder would be impracticable due to the sheer numbers of potential class members. The plaintiffs have introduced evidence that hundreds of dancers and at least fifty-nine bartenders worked at the defendants' establishments during the time period at issue. As a result, the numbers are sufficiently large so as to make joinder impracticable in this case. See *Brophy*, 6 Mass. App. Ct. at 736 (no abuse of discretion in determining that class of seventy teachers was too numerous to require joinder). The defendants, moreover, should not be permitted to avoid a class action due to their own failure to maintain records. Indeed, the difficulty of ascertaining the identity and addresses of class members weighs in favor of a class action because these circumstances make joinder impracticable. See, e.g., *Garcia v. Gloor*, 618 F.2d 264, 267 (5th Cir. 1980) (class status denied where identity and addresses of thirty-one putative class members was readily ascertainable and where all of the putative members lived in compact geographic

5

area). The plaintiffs have thus satisfied the numerosity requirement for the putative classes of dancers and bartenders.

### ii. Commonality

Secondly, Rule 23 requires that there be "questions of law or fact common to the class." Mass. R. Civ. P. 23 (a)(2). Commonality demands that "all persons whom [the plaintiffs] profess to represent have a common interest in the subject matter of the suit and a right and interest to ask for the same relief." *Spear* v. *H.V. Greene Co.*, 246 Mass. 259, 266 (1923). "The interest must arise out of a common relationship to a definite wrong." *Id.* Additionally, for the purposes of class certification, "[e]ven a single [common] question will do." *Wal-Mart Stores, Inc.* v. *Dukes*, 131 S. Ct. 2541, 2556 (2011) (citations omitted) (internal quotations omitted).

The plaintiffs assert that whether the dancers should have been classified as either independent contractors or employees is an issue that is common to the class because a resolution of the classification issue would affect all potential class members. As to the bartenders, the plaintiffs contend that the common issues center on the challenged distribution of gratuities and tips.

The court is satisfied that the plaintiffs have established commonality of claims for both the dancer and bartender classes. Notwithstanding whether any particular dancers preferred to be classified as independent contractors,[4] resolution of whether that classification was legally proper will certainly impact all of the members of the putative dancer class. Similarly, notwithstanding whether the practice was voluntarily upheld, whether the defendants improperly required the

---

[4] See typicality and adequacy section, *infra*, for a discussion as to why preferences for unlawful activity on the part of some putative class members does not undermine class certification.

6

bartenders to distribute portions of their tips is an issue common to all members of the putative bartender class, and resolution of the issue would impact them all. As such, commonality has been shown for both putative classes.

### iii. Typicality & Adequacy

Next, Rule 23 requires the plaintiffs to establish that "the claims or defenses of the representative parties are typical of the claims or defenses of the class, and . . . the representative parties will fairly and adequately protect the interests of the class." Mass. R. Civ. P. 23 (a)(3) & (a)(4). The typicality and adequacy requirements should be read together, as "[b]oth requirements state the need for the ability of the representatives of the class to protect its interests." Mass. R. Civ. P. 23 (Reporter's notes). "The word 'typical' does not require that all members of the class be identically situated. . . . [Rather,] '[t]he interest must arise out of a common relationship to a definite wrong.'" *Id.* (internal citation omitted), quoting *Spear v. H. V. Greene Co.*, 246 Mass 259, 266 (1923). In addition, for a plaintiff to be considered a fair and adequate representative of the class, the plaintiff must have (1) no potential conflicts with the class members; and (2) qualified, experienced counsel able to conduct vigorously the proposed litigation. *Andrews v. Bechtel Power Corp.*, 780 F.2d 124, 130 (1st Cir. 1985).

The defendants argue that the plaintiffs do not fulfill the typicality requirement because the plaintiffs' and putative class members' interests are not "squarely aligned." Contrary to the defendants' arguments, however, typicality is established when (1) the claims and legal theories of the plaintiffs and the putative class are sufficiently related; and (2) there is a link among the defendants sufficient to permit the class action to proceed against all defendants. *Weld*, 434 Mass. at 89. "The typicality requirement may be satisfied by an allegation that the defendant

7

acted consistently toward the members of a putative class." *Fletcher*, 394 Mass. at 606.

The plaintiffs contend that the named plaintiffs' claims and those of the putative dancer class are based on a single course of conduct engaged in by the defendants. Because the potential class members are dancers who did not receive proper wages as a result of an improper classification, the injury they have suffered is the same as the named plaintiffs' injury. The defendants, on the other hand, maintain that because their counterclaims against the dancer plaintiffs involve issues that do not apply to other, potential class members, typicality is not established. The defendants' counterclaims involve agreements, allegedly signed by some dancers, but not others, wherein the dancers allegedly promised to defend, indemnify, and hold the defendants harmless as to claims arising out of their employment as dancers. The defendants also argue that many putative class members preferred to be classified as independent contractors and, thus, do not claim that they have been mis-classified.

Notwithstanding the presence of counterclaims against some of the dancers or any desire by some putative class members to remain classified as independent contractors, typicality has been established here because the plaintiffs' claims and the claims of the putative class members are based on the same legal theories, i.e., violation of state wage and employment laws. Under these circumstances, it has been established that the named plaintiff dancer's claims exemplify those of the class.

Further, the defendants' assertions that the presence of counterclaims against some of the named plaintiffs is unavailing. Determining whether any individual has released or agreed to indemnify the defendants for the claims asserted is not likely to require a significant amount of time to resolve and, therefore, is unlikely to detract attention from the claims of absent class

8

members. Additionally:

> "Courts are in agreement that a counterclaim against the proposed class representative generally will not render her claims atypical. The counterclaim essentially initiates a separate two-party lawsuit between the defendant and the class representative and that alone does not necessarily render the proposed class representative's claims atypical. A contrary rule would encourage the defendants to file counterclaims reflexively for the purpose of defeating class certification."

1 Newberg on Class Actions § 3:46 (5th ed.) (internal footnotes omitted).

Finally, the defendants' claim that typicality and adequacy is defeated by the existence of individuals who prefer to remain classified as independent contractors is specious. Although the defendants argue that the lack of an opt-out provision for those who do not wish to participate in the litigation violates Due Process, no court in Massachusetts has held that the lack of an opt-out provision renders the State rule to be unconstitutional. Furthermore, "[i]t is not fatal if some members of the class might prefer not to have violations of their rights remedied." *Lanner v. Wimmer*, 662 F.2d 1349, 1357 (10th Cir. 1981) (internal quotations omitted). See also *Ruggles v. WellPoint, Inc.*, 272 F.R.D. 320, 338 (N.D.N.Y. 2011) (representatives in wage and hour case were adequate despite that some employee class members did not share the goals of the litigation, because "[a]dequacy is not undermined where the opposed class members' position requires continuation of an allegedly unlawful practice."). Additionally,

> "Plaintiffs cogently argue that an interest by certain putative class members in maintaining the allegedly unlawful policy is not a reason to deny class certification. Indeed, were the Court to hold otherwise, an employer could readily insulate itself from class liability simply by establishing a communal 'tip pool' for both managerial and non-managerial employees. Such an 'end run' clearly contravenes the purpose of the Tips Law."

*Matamoros v. Starbucks Corp.*, 2011 U.S. Dist. LEXIS 28227, 3 (D. Mass. Mar. 18, 2011).

The defendants further argue that conflicts between the proposed class members and

9

plaintiffs' counsel should bar class certification. In support of this contention, the defendants point to dancers who had varying level of difficultly exiting the litigation due, allegedly, to plaintiffs' counsel failing to follow their instruction. Next, the defendants argue that because Bruso, a disk jockey, was one of the individuals alleged to have improperly received portions of the dancers' tips, an impermissible conflict exists that precludes class certification. Bruso, however, does not seek to be a member of either proposed class. The defendants have not established that their counterclaim for contribution against Bruso is legally tenable, and they have failed to cite any authority establishing that, absent adverse interests among plaintiffs, plaintiffs' counsel is unable to represent multiple sets of clients against the same defendants. That Bruso may have retained portions of tips from the putative classes does not render his wage and hour claims adverse to those of the putative classes. Indeed, Bruso's claims of mis-classification and improper pay are squarely aligned with those of the exotic dancer class plaintiffs. Additionally, that some plaintiffs may have faced some level of resistance from plaintiffs' counsel in dropping out of the litigation appears to speak more to counsel's efforts to protect the putative class than it does to any alleged conflict. The defendants, therefore, have not shown that a fundamental conflict exists that should preclude class certification. See *Natchitoches Parish Hosp. Service Dist. v. Tyco Intern., Ltd.*, 247 F.R.D. 253, 256 (D. Mass. 2008) ("The conflict that will prevent a plaintiff from meeting the Rule 23 (a)(4) prerequisite must be fundamental, and speculative conflict should be disregarded at the class certification stage.") (citations omitted).

Moreover, although the defendants argue that the plaintiffs are inadequate to serve as fiduciaries for the class, because all of them have allegedly been involved in acts of dishonesty, including felonies, financial crimes, and the like, there is no evidence to suggest that the

10

plaintiffs and the lawyers would not adequately serve class interests. Also, the defendants' assertion that the named plaintiffs are inadequate representatives because they lack a thorough knowledge of the case is both factually inaccurate and legally unavailing. See, e.g., *Adair* v. *Sorenson*, 134 F.R.D. 13, 18-19 (D. Mass. 1991) ("The plaintiff's deposition demonstrates that his personal knowledge of many of the facts pleaded in the complaint is limited. However, a representative need not have personal knowledge of all the relevant facts to be an adequate representative."). See also *Massengill* v. *Board of Education*, 88 F.R.D. 181, 186 (N.D. Ill. 1980) ("A representative, held to a standard of minimal awareness about the class, should at least be knowledgeable of the essential issues of the case. There should also be an awareness of the basic composition of the class."). The named plaintiffs here have demonstrated sufficient knowledge of the class claims and membership to establish that they will adequately represent the absent class members.

Finally, plaintiffs' counsel is qualified and experienced in class action litigation, as evidenced by a showing of numerous class actions handled by plaintiffs' counsel involving substantially similar issues to those presented here, and there is no evidence of any fundamental conflict between the named plaintiffs and potential class members.

In conclusion, therefore, the plaintiffs have established that the named dancers and named bartenders' claims are typical of the absent classes, and that the named plaintiffs and their counsel are adequate representatives of the classes.

## II. Rule 23 (b): Predominance and Superiority

Rule 23 (b) provides that once the prerequisites of Rule 23 (a) are satisfied, an action may be maintained as a class action if the court finds "that the questions of law or fact common to the

11

members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Mass. R. Civ. P. 23 (b). Rule 23 (b) directs the court to make a comparison between common and individual questions involved and to consider whether a class action would advance the parties' interests and aid economy of judicial administration. *Salvas* v. *Wal-Mart Stores*, 452 Mass. 337, 363 (2008); *Fletcher*, 394 Mass. at 604.

The plaintiffs argue that predominance is satisfied for the same reasons that they satisfy the commonality requirement, and this court agrees. Because the dancers' claims are all premised on their alleged mis-classification, which is the basis for their wage claims against the defendants, this common question outweighs any individual issues. The bartenders's claims center on the sole question of whether they were required to give a portion of their tips to the defendants, a practice which they claim violates the minimum wage and tips laws. The existence of counterclaims against any of the named plaintiffs is not likely to overshadow the claims of the entire class. Further, "[e]ven if, as the defendants contend, an individualized inquiry is necessary to determine damages . . . , a dispute we need not resolve, such a necessity at the damages stage does not preclude class certification where all other requirements are met." *Weld*, 434 Mass. at 92. See also *Shelter Realty Corp.* v. *Allied Maintenance Corp.*, 75 F.R.D. 34, 37-38 (S.D.N.Y. 1977) ("The predominance requirement calls only for predominance, not exclusivity, of common questions. There are many causes of action--e.g., securities frauds, consumer injuries--for which each individual plaintiff must show individual damages in order to prevail. This has not barred class certification . . . [and it] may well eventuate that decision of the common questions, if in plaintiffs' favor, will lead to some generalized or formulary approach to the calculation of

12

damages."

The plaintiffs, therefore, have established predominance for both putative classes.

Lastly, the plaintiffs argue that class adjudication is superior in this case because it would (1) avoid a multiplicity of lawsuits; and (2) it would be grossly inefficient to require each potential class member to bring their own lawsuit. Again, this court agrees. Requiring hundreds of potential class members to bring individualized claims would be grossly inefficient when one action could resolve the claims of all class members. Additionally, the amount of damages any individual class member may have suffered, on average, is likely to pale in comparison to the cost of litigating a Superior Court action. As such, the plaintiffs have sufficiently shown that class adjudication is a superior method of adjudicating the claims of both the dancers and the bartenders in this case.

## ORDER

For the foregoing reasons, it is hereby **ORDERED** that the plaintiffs' Motion for Class Certification be **ALLOWED**.

Constance Sweeney
Justice of the Superior Court

DATED: December 11, 2013

13