# EXHIBIT G

# Commonwealth of Massachusetts
## County of Worcester
## The Superior Court

CIVIL DOCKET#: WOCV2009-00043-E

RE:  Driscoll Jr et al v Worcester Telegram & Gazette Corporation et al

TO:  James M Galliher, Esquire
     Bonville & Howard
     154 Prichard Street
     Fitchburg, MA 01420-7654

## NOTICE OF DOCKET ENTRY

You are hereby notified that on **08/26/2013** the following entry was made on the above referenced docket:

**MEMORANDUM OF DECISION AND ORDER on Plaintiffs' motions for class certification and for partial summary judgment - Plffs' motion for Class Certification is ALLOWED. This action may be maintained as a class action pursuant to GL c. 149. sec 150 and MRCP 23. The class consisting of the following persons shall be certified, which class the court finds is adequately defined and clearly ascertainable: all individuals who were adult news carriers at defendant Worceter T & G Corp a/k/a T & G Corp. at any time since January 8, 2006. The class representatives shall be Arthur Pace, Lyssa Boudreau & Neal Arsenault. James M. Galliher & Barry M. Altman are appointed lead class counsel. Lead class counsel may be assisted by class counsel. The following counts of plaintiff's complaint shall be certified for class treatment (a) Count I, (b) Count II and (c) Count III . Plaintiffs' motion for partial summary judgment as to liability is DENIED. Plaintiffs' motion to strike is DENIED. Deft's motion to strike plff's proposed exhibit 22 is DENIED. (Peter B. Krupp, Justice). Copies mailed 8/27/13.**
Dated at Worcester, Massachusetts this 27th day of August, 2013.

Dennis P. McManus, Esq.,
Clerk of the Courts

BY: Catherine Brennan
Assistant Clerk

Telephone: 508-831-2356 (Session Clerk) or 508-831-2350

Disabled individuals who need handicap accommodations should contact the Administrative Office of the Superior Court at (617) 788-8130 cvdgeneric_2.wpd 1798066 memord marchand

COMMONWEALTH OF MASSACHUSETTS

WORCESTER, ss.                                           SUPERIOR COURT
                                                         CIVIL ACTION NO.
                                                         WOCV2009-00043-E

THOMAS G. DRISCOLL, JR., & others[1]
Plaintiffs

vs.

WORCESTER TELEGRAM & GAZETTE CORPORATION
Defendant

### MEMORANDUM OF DECISION AND ORDER ON PLAINTIFFS' MOTIONS FOR CLASS CERTIFICATION AND FOR PARTIAL SUMMARY JUDGMENT

This matter came before the court on plaintiffs' motions for class certification (docket #35) and for partial summary judgment as to liability on Count I (violation of G.L. c. 149, § 148B), Count II (violation of G.L. c. 149, § 148), and Count III (breach of contract and implied covenant of good faith and fair dealing) (docket #35.2).

After hearing, and upon review of all papers, the motion for class certification is **ALLOWED**. The court finds, however, that there are sufficient issues of fact to preclude entry of summary judgment as to liability on any of the three counts, including the central question of whether T&G's adult carriers were properly characterized as independent contractors under G.L. c. 149, § 148B, or should have been characterized as "employees" under G.L. c. 149, § 148, as Driscoll v. Worcester Telegram & Gazette ("Driscoll"), 72 Mass. App. Ct. 709 (2008), strongly suggests. Accordingly, plaintiffs' motion for partial summary judgment is **DENIED**.[2]

---

[1] Arthur Pace ("Pace"), Lyssa Boudreau ("Boudreau") and Neal Arsenault ("Arsenault").

[2] Also before the court are (i) Plaintiffs' Motion to Strike (Docket #35.3), which seeks to strike various of defendant's affidavits, which plaintiffs contend are inconsistent with or

Copies Mailed 8/27/13

## BACKGROUND

During the period relevant to this case, defendant Worcester Telegram & Gazette Corporation ("T&G") was in the business of publishing and distributing news media to customers throughout Worcester and surrounding counties. It did so through a network of distribution centers, district managers and carriers. The carriers, each of whom was required to sign a Home Delivery Service Agreement ("HDSA"), which defined the carriers as independent contractors, were responsible for delivering T&G's newspaper and, as directed other materials, to customers. The customers arranged and paid for delivery directly with T&G.

Each carrier who signed an HDSA was assigned to a route or routes for delivery. Most were given at least initial instruction on their route by the district manager. Each carrier was or could be given daily written instructions by T&G about changes to the carrier's route. The HDSA set requirements on the carrier's performance (e.g. time of delivery, items to be delivered, condition of delivery, charges for "redress" if complaints from customers on the carrier's route exceed a specified threshold). It also authorized T&G to change the carrier's route or products to be delivered, and to supervise the carrier's performance for complaints.

---

supplementary to information defendant disclosed in its interrogatory answers and its depositions under Mass. R. Civ. P. 30(b)(6); and (ii) Defendant's Motion to Strike Plaintiffs' Proposed Exhibit 22 (Docket #35.4), which is a February 2013 email from defendant's counsel submitted late confirming that after 2006 T&G discontinued performance reviews of its area managers and district managers, having concluded they were not particularly useful. The court finds none of the additional materials objected-to by the parties to come as an undue surprise to the other. Defendants' affidavits respond directly to factual material addressed in plaintiff's summary judgment filings. Several of the affidavits present factual material not sought by plaintiffs in discovery, or not in defendant's possession, custody or control at the time it answered plaintiffs' discovery. The representation of defendant's counsel (Ex. 22) will presumably be substantiated by defendant's employees and will not render counsel a witness at trial or otherwise. Both motions are **DENIED**.

The HDSA in effect in 2000 was revised in September 2006, shortly after the lower court decision in Driscoll. Each of T&G's carriers was required to sign the new version of the HDSA for each route.[3] A few highlights bearing on the issue in this case are worth noting:

- Under the 2000 HDSA, if T&G requested the carrier to perform a service for which the HDSA's Schedule 1 did not provide a specified fee, the fee for the new service was to be "determined by T&G." In 2006, this language was changed so that "the fee will be negotiated by [the carrier] and T&G."

- The 2000 HDSA was explicit that it terminated "upon the death of [the carrier]." In 2006, this provision was removed (although it is implicit in the 2006 version) and language requiring the carrier to "engage its own employees and agents to satisfy its obligation to perform" under the HDSA was added. Also added was a provision requiring the carrier to "provide T&G proof of license to operate, registration and insurance," if the carrier "uses a motor vehicle in the performance of" the HDSA.

- The 2000 HDSA barred the carrier from assigning the HDSA. The 2006 version permitted assignment, upon 30-day advance written notice to T&G "of the name and address of the assignee, and such other information as T&G may reasonably require," and "provided that the assignee, in the discretion of the T&G, shall be capable of performing the obligation under this Agreement."

According to defendant's managerial employees, the distribution policies and procedures in the different distribution centers were similar in most material respects, if not identical; and the relationship between carriers and T&G (through its district managers) did not change materially in 2006 with the change in the HDSA.

---

[3] The HDSA was also revised minimally in 2008.

3

Plaintiffs are each adults, who at various times entered into contracts to deliver newspapers for T&G.

Following the 2008 decision in Driscoll, which affirmed a finding that Thomas G. Driscoll, Jr. ("Driscoll") had been an employee of T&G in 2003 for purposes of recovering unemployment benefits under G.L. c. 151A,[4] Driscoll and the other named plaintiffs filed this action, among other things, seeking redress under G.L. c. 149, §§ 148 and 148B,[5] and for breach of contract and breach of the implied covenant of good faith and fair dealing, for themselves and the class of adult carriers for T&G who worked within the limitations period.

## DISCUSSION

### I. Class Certification

Under Rule 23, the court may certify a class "if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class." Mass. R. Civ. P. 23(a). Moreover, the court must find "that the questions of law or fact common to the members of the class predominate over any questions affecting only individual

---

[4] After a careful review of the relationship between T&G and its carriers generally (not simply the relationship between T&G and Mr. Driscoll), the Appeals Court in Driscoll distinguished Athol Daily News v. Board of Review of the Div. of Employment & Training, 439 Mass. 171, 172 (2008), which was also decided under G.L. c. 151A, and affirmed a district court finding that T&G "fail[ed] to demonstrate that Driscoll delivered newspapers free from its direction and control," 72 Mass. App. Ct. at 718, and that Driscoll qualified as an employee of T&G under G.L. c. 151A, § 2, and not merely an independent contractor. Much if not all of the description of the relationship between T&G and its carriers outlined in Driscoll, 72 Mass. App. Ct. at 710-712, appears to have remained during the period relevant to this case.

[5] The definition of what constitutes "employment" under G.L. c. 151A, § 2, which was applied to in Driscoll, 72 Mass. App. Ct. at 713, and the definition of an "employee" under G.L. c. 149, § 148B, are nearly identical.

4

members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Mass. R. Civ. P. 23(b). The court "has broad discretion to certify or decertify a class." Salvas v. Wal-Mart Stores, Inc., 452 Mass. 337, 361 (2008).

Applying this standard, the court finds the plaintiffs have met the prerequisites for class certification under Mass. R. Civ. P. 23. The class of T&G's adult carriers -- estimated at upwards of 1,500 people -- is so numerous that joinder of all members is impracticable. Even when evaluated over only the three years prior to the filing of this action, see, infra, at 7-8, the number of class members will likely number in the hundreds.

The court also finds that there are questions of law *and* fact common to the class, Mass. R. Civ. P. 23(a); those issues "predominate over any questions affecting only individual members"; and a class action is the best available method for resolving the matter. Mass. R. Civ. P. 23(b). Here the legal and factual question of whether T&G's carriers were "free from control and direction in connection with the performance of [their] service, both under [their] contract for performance of service and in fact," G.L. c. 149, § 148B, is the dominant issue in this case and applies across all carriers. It depends on proof and factual findings about the contracts, which were the same for all carriers, and about the way T&G used, gave instructions to, supervised, charged and monitored its carriers, or left them to their own devices.

Defendant points to variability in the way individual carriers were supervised as creating individual (i.e. not class) issues about how individual carriers were "free from control and direction . . . in fact" within the meaning of G.L. c. 149, § 148B. The court disagrees. Like in any organization, some individuals will assume more independence, operate with more autonomy, and require less supervision, while others will require more oversight. Individual differences are not surprising. The issue in this case, however, is not meaningfully individualized. Here, either all of T&G's adult carriers should have been classified as T&G

5

employees or none of them. The issue is fairly presented as a matter of T&G's policy and practice. These issues are best handled on a class-wide basis. The fact that there was individual variability in the level of supervision is relevant to the issue, but it is not dispositive either on the merits or on the suitability of this dispute to be handled on a class basis.

To be sure, when and if it comes to damages, a more nuanced individual determination likely will be required. The court finds class certification is nonetheless appropriate here because the "common issues of law and fact . . . form the nucleus of [the] liability claim." Salvas v. Wal-Mart Stores, Inc., 452 Mass. at 364. See also Olson v. Energy North, Inc., 9 Mass. L. Rptr. 22, 1999 WL 1332362 at * 6 (Mass. Super. Mar. 29, 1999) (Gants, J.) ("If liability is established, creative ways will simply need to be fashioned to disgorge the fraudulently obtained monies and distribute them equitably to the aggrieved class.").

Finally, the court finds that the claims of the representative parties are typical of the claims of the class as a whole, and that the representative parties will fairly and adequately protect the interests of the class. Pace was an adult T&G carrier from 1996 to April 2011. Boudreau was an adult T&G carrier from 1994 to January 2011. Arsenault was an adult T&G carrier from 1995 to April 2011. They each have a personal interest in prosecuting this matter on behalf of the class.[6] The fact that they each worked out of T&G's Gardner distribution center does not make them unrepresentative. The HSDAs did not vary by distribution center, nor did T&G's policies. Even if there was some variability in the practice of the different distribution centers, such variability, according to T&G's Rule 30(b)(6) designees, appears to have been immaterial. See, e.g., Joint Appendix, Ex. 9 at 249-250, Ex. 10 at 159-160. Moreover, from

---

[6] The court is unable to find that Driscoll is an appropriate plaintiff to represent the class. Driscoll apparently was terminated by T&G on or about June 27, 2003. See Joint Appendix, Ex. 13d, Int. Ans. 3, 5; Ex. 17. As such, he has no claim within the applicable limitations period. See, infra, at 7-8.

6

their summary judgment filings, plaintiffs have demonstrated their ability to produce proof of practices at other distribution centers.

## II. Partial Summary Judgment

With regard to the motion for summary judgment, the court finds there exist material disputes of fact about the nature of T&G's supervision over, and relationship with, its carriers during the relevant period. These issues will have to be resolved at trial.

The decision in Driscoll does not collaterally estop T&G from litigating this case. In Driscoll, T&G was asked to defend against a claim by an individual for unemployment benefits under G.L. c. 151A. That case was filed in 2003, before T&G revised its HDSA in 2006. While factually relevant and overlapping with fact questions in this case, the issue in Driscoll was not "identical to the issue presented" in this case. Tuper v. North Adams Ambulance Service, Inc., 428 Mass. 132, 134 (1998). Nor was Driscoll a class action. Even if, in dicta, Driscoll broadly outlined the relationship between T&G and its carriers in 2003, it was only necessary to the decision that the court find whether T&G had demonstrated that Driscoll was himself "free from control or direction of" T&G. Driscoll, 72 Mass. App. Ct. at 713, 718, quoting G.L. c. 151A, § 2.

The issue regarding the statute of limitations bears discussion. This action was filed on January 8, 2009. The provision that allows an employee to sue "for himself and for others similarly situated" to remedy a violation of G.L. c. 149, §§ 148 and 148B, contains a three-year statute of limitations. See G.L. c. 149, § 150, para. 2. Thus, both Counts I and II are subject to a three-year limit, looking back only to January 8, 2006. Plaintiffs have no ability to recover under G.L. c. 149, § 150, prior to that date. See Crocker v. Townsend Oil Co., Inc., 464 Mass. 1, 10-12 (2012).

7

Pointing to Count III, plaintiffs argue that the HDSAs included, as do all contracts, an implied covenant of good faith and fair dealing, and that in this case that implied covenant included a promise to follow the law, including G.L. c. 149, §§ 148 and 148B. They argue that the court must therefore apply the six-year statute of limitations applicable to breach of contract actions, see G.L. c. 260, § 2, in connection with Count III, and they can look back six years to recover for a violation of G.L. c. 149, §§ 148 and 148B, under a breach of contract theory.

The flaw in this argument, however, is that the court must look to "the 'gist of the action' or the essential nature of the plaintiff's claim," in determining which statute of limitations applies. Hendrickson v. Sears, 365 Mass. 83, 85 (1974). See also Royal Globe Ins. Co. v. Craven, 411 Mass. 629, 636 (1992). Here, plaintiffs do not seek to enforce an express provision of the HDSA. Cf. Lipsett v. Plaud, 466 Mass. 240, 2013 WL 4034374 at ** 3-5 (Aug. 12, 2013) (contract action is not preempted by the Wage Act). Instead, they argue that the HDSA impliedly incorporated the requirements of G.L. c. 149, §§ 148 and 148B and therefore a six-year limitations period should apply. Such an argument would disregard the "essential nature" of the plaintiffs' claim, which is to enforce the policy and requirements of G.L. c. 149, §§ 148 and 148B. Moreover, plaintiffs argue the substance of G.L. c. 149, §§ 148 and 148B should be implied in the contract, but not the three-year limitations period for bringing such an action. If such an argument were to prevail, the three-year limitations period in G.L. c. 149, § 150 would be meaningless. The class will therefore be approved only for the period three years prior to the filing of this action.

For these reasons, it is hereby ORDERED as follows:

## ORDER

1. Plaintiffs' Motion for Class Certification is **ALLOWED**. This action may be maintained as a class action pursuant to G.L. c. 149, § 150 and Mass. R. Civ. P. 23. The class

8

consisting of the following persons shall be certified, which class the court finds is adequately defined and clearly ascertainable:

> All individuals who were adult news carriers at defendant Worcester Telegram & Gazette Corporation, a/k/a Worcester Telegram & Gazette Corp. at any time since January 8, 2006.

The class representatives shall be Arthur Pace, Lyssa Boudreau and Neal Arsenault. James M. Galliher and Barry M. Altman are appointed lead class counsel. Lead class counsel may be assisted by class counsel. The following counts of plaintiffs' complaint shall be certified for class treatment: (a) Count I (violation of G.L. c. 149, § 148B); (b) Count II (violation of G.L. c. 149, § 148), and (c) Count III (breach of contract and implied covenant of good faith and fair dealing).

2. Plaintiffs' Motion for Partial Summary Judgment as to Liability is **DENIED**.

3. Plaintiffs' Motion to Strike is **DENIED**.

4. Defendant's Motion to Strike Plaintiffs' Proposed Exhibit 22 is **DENIED**.

Dated: August 26, 2013

Peter B. Krupp
Justice of the Superior Court

9