# EXHIBIT J

RECEIVED SEP 2 4 2009

## COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX, ss.

SUPERIOR COURT
CIVIL ACTION
MICV 2008-2659

### DONALD FUCCI & others[1]

vs.

### EASTERN CONNECTION OPERATING, INC.

## MEMORANDUM OF DECISION AND ORDER ON PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

The plaintiffs, Donald Fucci ("Fucci"), Nickolas Markos ("Markos"), and Michael Sarkis ("Sarkis"), brought this action against the defendant, Eastern Connection Operating, Inc. ("Eastern Connection" or "Company"), seeking damages arising from Eastern Connection's alleged misclassification of the plaintiffs as independent contractors rather than as employees. The matter is now before the Court on the plaintiffs' Motion for Partial Summary Judgment on Count I of their Complaint, claiming that Eastern Connection violated G. L. c. 149, § 148B, the Massachusetts Independent Contractor Law. For the foregoing reasons, the plaintiffs' motion is **ALLOWED**.

## BACKGROUND

The undisputed facts, and the disputed facts in the light most favorable to Eastern Connection as the nonmoving party, are as follows:

---

[1] Nickolas Markos and Michael Sarkis

Eastern Connection is a Massachusetts corporation in the business of delivering packages, at one time promoting itself on its website as "the largest Regional Express Parcel Delivery Service on the East Coast." In 2005 and 2006, Eastern Connection entered into identical agreements with the plaintiffs to perform package pickup and delivery services, with each of these agreements entitled "Agreement with Independent Contractor" (collectively, the "Agreements").[2]

In the sections entitled "Recital," the Agreements provided that Eastern Connection "engage[d] in the courier business and desire[d] certain services performed, namely the pickup, transportation[,] and delivery of small packages in various cities and in between . . . states." According to the "Description of Work" sections, the plaintiffs acknowledged that Eastern Connection would require their services only as needed and that the plaintiffs had the right to "accept or reject the services requested by the Company." When the plaintiffs agreed to perform these requested services, the Agreements required them to "account for pick-ups and deliveries on the Company's approved forms."

The "Relationship Between Parties" sections provided that the parties to each agreement "intend that the relationship between them created by [each] agreement is that of independent contractors. No agent, employee, or servant of [each plaintiff] shall be or shall be deemed to be the agent, employee, or servant of the Company." These sections also provided that the plaintiffs had the right to contract with other entities "for similar services to be performed" while working for Eastern Connection.

Concerning the manner of the plaintiffs' performance, the "Relationship Between Parties"

---

[2] Fucci and Markos began working for Eastern Connection in 2005, while Sarkis began in 2006.

2

sections stated that "[t]he Company is interested only in the results obtained under this agreement; the manner and means of conducting the service are under the sole control of the [plaintiffs]." Similarly, the "Rights and Obligations" sections stated that "[t]he [plaintiffs] shall have sole control of the manner and means of performing this agreement and [they] shall complete it according to [their] own means and methods to achieve the desired result." These sections also required the plaintiffs to "comply with all logistical, pick-up[,] and delivery requirements of the Company's customers for packages the [plaintiffs] agree[] to pick up and/or deliver." In addition, the "Rights and Obligations" sections granted the plaintiffs "full authority to hire, compensate, supervise[,] and control whatever labor [they] deem[] necessary for the performance of such services, including fully trained relief or substitute drivers who fully comply with all applicable government requirements."

In terms of uniforms, the "Rights and Obligations" sections stated that Eastern Connection had established "an approved vendor that the [plaintiffs] [are] required to use for the purchase of all . . . uniforms. The Company reserves the right to approve all items of clothing prior to acceptance as part of the official uniform. The [plaintiffs] will bear any and all costs associated with uniform purchases . . . . Understanding that consistent presentation is of the utmost importance, [the plaintiffs] further agree[] to wear a clean, Company-approved uniform in good repair whenever [working] for the Company."

In terms of transport, the "Description of Work" and "Rights and Obligations" sections required the plaintiffs to "maintain and operate motor vehicles of sufficient size to transport small packages." These sections also provided that the plaintiffs were responsible for the storing, repairing, and fueling of these vehicles at their own expense.

3

The "Compensation" sections provided Eastern Connection would pay the plaintiffs an amount set forth on a payment schedule, which was located in an addendum attached to each individual agreement. These sections also stipulated that Eastern Connection would charge the plaintiffs a six percent "administrative fee" that would be deducted from their compensation.

According to the Agreements, the plaintiffs were parties to these Agreements as sole proprietorships. Prior to entering into these Agreements, none of the plaintiffs had ever operated a delivery business.

In practice, the plaintiffs generally worked five days a week for Eastern Connection.[3] This work involved the pickup and delivery of medical specimens, library books, and other packages for Eastern Connection customers. Eastern Connection provided plaintiffs with daily manifests that listed customer names, addresses, and times that each customer had requested a package to be picked up or delivered on that particular day. Eastern Connection required the plaintiffs to comply with these customer requests. Eastern Connection did not, however, demand that the plaintiffs follow specific directions when traveling between customers' locations or directly supervise their performance during the work day.

Eastern Connection allowed the plaintiffs, when working a regularly-scheduled route, to occasionally extend this route by making additional, unscheduled pickups and deliveries. Eastern Connection also allowed the plaintiffs to make deliveries for other entities while performing the same service for the Company, though none of the plaintiffs exercised this right. The plaintiffs used their own vehicles when working for Eastern Connection, and wore at least one required

---

[3] Fucci stopped working for Eastern Connection in 2007, and Markos and Sarkis stopped in 2008.

4

uniform item that identified them as working on behalf of Eastern Connection. Eastern Connection also required that the plaintiffs own and carry a cell phone during work hours so that it could contact them.

The plaintiffs had no involvement in the pricing of their services or customer billing. Instead, all negotiations concerning the services provided by the plaintiffs transpired between Eastern Connection and its customers. Eastern Connection compensated the plaintiffs for their performed services, subtracting six percent of their earnings as an administrative fee.

## DISCUSSION

Summary judgment may be granted when "viewing the evidence in the light most favorable to the nonmoving party, all material facts have been established and the moving party is entitled to judgment as a matter of law." Cabot Corp. v. AVX Corp., 448 Mass. 629, 636-637 (2007). If the affidavits, pleadings, and other discovery materials demonstrate the lack of a genuine issue as to any material fact, then summary judgment is proper. Mass. R. Civ. P. 56(c); Dupont v. Commissioner of Corr., 448 Mass. 389, 397 (2007). A party moving for summary judgment in which the opposing party will have the burden of proof at trial is entitled to summary judgment if he demonstrates that the party opposing the motion has no reasonable expectation of proving an essential element of that party's case or if he submits affirmative evidence to negate one or more elements of the other party's claim, and if the opposing party fails to respond with countervailing materials that set forth specific facts showing that there is a genuine issue for trial. Kourouvacilis v. General Motor Co., 410 Mass. 706, 716 (1991).

General Laws c. 149, § 148B, most recently amended in 2004, provides the standard for determining whether an individual performing services shall be deemed an employee or an

5

independent contractor. Under this law, such an individual is presumed to be an employee unless the employer proves "(1) the individual is free from control and direction in connection with the performance of the service, both under his contract for the performance of the service and in fact; and (2) the service is performed outside the usual course of the business of the employer; and (3) the individual is customarily engaged in an independently established trade, occupation, profession or business of the same nature as that involved in the service performed." G. L. c. 149, § 148B(a); Somers v. Coverged Access, Inc., 454 Mass. 582, 589 (2009). Because this test is conjunctive, the employer's failure to prove any one of these three elements suffices to establish that the individual is an employee. Id.; see also Athol Daily News v. Board of Review of the Div. of Employment & Training, 439 Mass. 171, 175 (2003) (referencing nearly identical language in G. L. c. 151A, § 2). Proper classification of an individual as an independent contractor or an employee may determine whether an employer has violated certain provisions of Massachusetts labor laws, such as an employee's right to overtime pay and workers' compensation benefits. See, e.g., G. L. c. 149, § 148B(d); G. L. c. 151.

## 1. Control and Direction

The first element of the test set forth in § 148B asks whether the plaintiffs were free from control and direction of Eastern Connection in connection with the performance of their services, both under their Agreements and in fact. See G. L. c. 149, § 148B(a)(1). Under the common law, the test was whether the employer had the right to control the details of the individual's performance or whether the individual was free from such supervision, "not only as to the result to be accomplished but also as to the means and methods that [were] utilized in the performance of the work." Athol Daily News, 439 Mass. at 177 (internal citations and

6

quotations omitted); see also Case of McDermott, 283 Mass. 74, 77 (1933) ("[I]t is the right to control rather than the exercise of it that is the test."). This test "is not so narrow as to require that a worker be entirely free from direction and control from outside forces." Athol Daily News, 439 Mass. at 178 (internal quotations omitted).

In the present case, the undisputed facts demonstrate that the plaintiffs were not sufficiently free from Eastern Connection's control and direction in connection with the performance of their delivery services. Although the Agreements stated that the plaintiffs had "sole control of the manner and means of performing this agreement," the Agreements contained a contravening statement requiring the plaintiffs to "comply with all logistical, pick up[,] and delivery requirements of the Company's customers." This requirement took the form of the daily manifests that Eastern Connection provided to the plaintiffs, which detailed their work schedule for that day. While Eastern Connection asserts that the pickup and delivery times listed on these manifests were customer-driven guidelines for service times, it admits that the plaintiffs were required to comply with specific customer pickup and delivery requirements. In addition, Eastern Connection required the plaintiffs to obtain vehicles of sufficient size for transporting their packages and to ensure that any substitute drivers were deemed qualified by Eastern Connection. The company also required the plaintiffs to wear uniforms identifying them as working for Eastern Connection and to carry cell phones so that they could be contacted regarding deliveries. Compare Athol Daily News, 439 Mass. at 178 (affirming that a company did not control how news carriers delivered its newspapers where the carriers could choose any method of delivery and did not wear uniforms, and once they had received the newspapers, were completely free from supervision).

7

At the same time, the plaintiffs did retain some control over how they performed their deliveries. For instance, the plaintiffs had the right to reject Eastern Connection's request to pickup or deliver a package. They also had the right to hire and supervise whatever labor they deemed necessary in order to perform the deliveries listed on their daily manifests. In addition, Eastern Connection did not demand that the plaintiffs take specific routes when performing their work or directly supervise the plaintiffs when they performed their deliveries. Finally, Eastern Connection allowed the plaintiffs to expand on their scheduled routes and deliver packages for other entities. Nonetheless, the overall evidence demonstrates that Eastern Connection exercised a degree of control and direction over the plaintiffs' performance, both under their Agreements and in fact, sufficient for them to be deemed employees and not independent contractors under the first element of the § 148B test. See Driscoll v. Worcester Telegram & Gazette, 72 Mass. App. Ct. 709, 715-716 (2008) (determining that the ability of news carriers to expand their routes and engage in other business activities, including the delivery of competitor's newspapers, did not diminish the control the company had over their performance, evidenced by the company's requiring a delivery schedule and handling customer payments).

## 2. Usual Course of Business

While the determination of this first element suffices to establish that the plaintiffs were employees of Eastern Connection, this Court also examines the remaining two elements of the § 148B test. The second element asks whether the services performed by the plaintiffs fell outside the usual course of Eastern Connection's business. See G. L. c. 149, § 148B(a)(2). An individual who regularly performs services that are the usual and customary activities of a business must be deemed an employee of that business. See Athol Daily News, 439 Mass. at

8

178-179 (determining that news carriers' services were performed in the usual course of newspaper's publication and distribution business); see also American Zurich v. Department of Industrial Accidents, 2006 WL 2205085, *4 (Mass. Super. Ct. 2006) ("Generally, a worker whose services form a regular and continuing part of the employer's business, and whose method of operation is not such an independent business [through which his workers' compensation costs can be channeled] should be found to be an employee and not an independent contractor.").

In the present case, the undisputed facts demonstrate that the plaintiffs did not perform services outside the usual course of Eastern Connection's business.  Although Eastern Connection asserts it is only a marketing logistics corporation which outsources transportation needs for customers, the evidence reveals that Eastern Connection is in fact a courier business that picks up, transports, and delivers packages for customers located in the upper eastern region of the United States.  Eastern Connection acknowledged this fact in its Agreements with the plaintiffs, on its website, and in corporate papers filed with the Commonwealth.

In practice, Eastern Connection not only arranged for the pickup and delivery of its customers' packages, but also compensated the plaintiffs to perform these non-logistical services and billed its customers for the same.  In addition, Eastern Connection admits it hired individuals it classified as employees to perform these between 2005 and 2008, further demonstrating that these services formed part of its usual course of business.  Although the plaintiffs entered into their respective Agreements as sole proprietorships, the evidence indicates that Eastern Connection would only contract with the plaintiffs in business rather than personal capacities, not that the plaintiffs formed these businesses to channel worker's compensation costs.  Therefore, summary judgment is also warranted under the second element of the § 148B test.

9

## 3. Independently Established Business

The third element of the § 148B test also falls in the plaintiffs' favor. This element asks whether the plaintiffs were customarily engaged in independently-established businesses that involved the delivery of packages. See G. L. c. 149, § 148B(a)(3). When analyzing this element, the court may consider whether "'the worker is capable of performing the service to anyone wishing to avail themselves of the services or, conversely, whether the nature of the business compels the worker to depend on a single employer for the continuation of the services.'" Coverall North America, Inc. v. Commissioner of the Div. of Unemployment Assistance, 447 Mass. 852, 858 (2006), quoting Athol Daily News, 439 Mass. at 181. The court must essentially determine "whether the worker is wearing the hat of an employee of the employing company, or is wearing the hat of his own independent enterprise." Boston Bicycle Couriers, Inc. v. Deputy Dir. of the Div. of Employment & Training, 56 Mass. App. Ct. 473, 480 (2002) (interpreting an identical provision in G. L. c. 151A, § 2(c)).

In the present case, the undisputed facts demonstrate that the plaintiffs were not entrepreneurs operating independently-established businesses. Instead, each plaintiff "wore the hat" of an Eastern Connection employee when delivering its customers' packages. Specifically, Eastern Connection required the plaintiffs to comply with the daily manifests that it provided, wear uniform items identifying them as working on behalf of the company, and carry cell phones so that they could be quickly contacted by the Company.

Furthermore, Eastern Connection directly negotiated with its customers regarding the cost of its services, with the plaintiffs having no involvement with either customer billing or payments. See Coverall North America, Inc., 447 Mass. at 859 (affirming that a worker's

10

business was not independent of a company where the company negotiated contracts and pricing with customers, billed customers, and required the worker to adhere to daily schedules). Moreover, the plaintiffs depended on Eastern Connection to provide them with work, as none of the plaintiffs had previously operated a delivery business prior to entering into their Agreements or delivered packages for entities while working for Eastern Connection.  Eastern Connection's retention of a percentage of the plaintiffs' earnings as an administrative fee further demonstrates this dependence on Eastern Connection for the continuation of services.

The plaintiffs have therefore satisfied their summary judgment burden by submitting affirmative evidence showing that they worked for Eastern Connection as employees and not as independent contractors based on any one of the three elements set forth in G. L. c. 149, § 148B. Conversely, Eastern Connection has failed to meet its burden of setting forth specific facts showing that there is a genuine issue as to all three elements in G. L. c. 149, § 148B. Accordingly, the plaintiffs' Motion for Summary Judgment as to Count I of their Complaint must be granted.

**ORDER**

For the foregoing reasons, it is hereby **ORDERED** that the plaintiffs' Motion for Partial Summary Judgment be and hereby is **ALLOWED** as to Count I of their complaint.

W. Gershengorn
Justice of the Superior Court

DATED: September _____, 2009

11
