SHANNON LISS-RIORDAN, SBN 310719
(sliss@llrlaw.com)
ANNE KRAMER, SBN 315131
(akramer@llrlaw.com)
LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, MA 02116
Telephone:     (617) 994-5800
Facsimile:      (617) 994-5801

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

CHRISTOPHER JAMES and SPENCER
VERHINES, individually and on behalf
of all others similarly situated,

                    Plaintiffs,

        v.

UBER TECHNOLOGIES, INC.,

                    Defendant.

CASE NO. 3:19-cv-06462-EMC
CASE NO. 3:20-cv-01886-EMC

**PLAINTIFFS' SUPPLEMENTAL
BRIEF PURSUANT TO THE COURT'S
NOVEMBER 24, 2020 ORDER,
REGARDING THE IMPACT OF
PROPOSITION 22 ON PLAINTIFFS'
PENDING MOTION FOR CLASS
CERTIFICATION (DKT 56)**

Hon. Edward M. Chen

## I.     INTRODUCTION

Uber has taken the extraordinary step of attempting to buy its way out of the law, by spearheading the most expensive ballot initiative in California state history.  With the passage of Proposition 22, Uber hopes to have exempted itself from the California Supreme Court decision Dynamex Operations W. v. Superior Court, 4 Cal. 5th 903 (2018), and from application of Assembly Bill No. 5 ("AB 5") and the "ABC" test contained therein.  However, Proposition 22 does not dispose of this suit nor preclude class certification.  At most, it may (or may not) limit the end date for the class period.

As a preliminary matter, it is unclear whether Uber will have successfully exempted itself from the "ABC" test with the passage of Proposition 22.  Uber has not yet demonstrated whether it meets the requirements of Proposition 22, in order to classify its drivers as independent contractors under the statutory definition set forth in Section 7451. Whether Proposition 22 will cut off the date beyond which Plaintiffs can pursue their claims in this case thus remains an open question that constitutes a merit-based inquiry that itself can and should be decided on a class basis.[1]  See Part III(A).

In any event, should Proposition 22 apply to Uber drivers, the only potential effect that the passage of the ballot measure would have on class certification would be in shaping the class period.  The ballot measure is expected to go into effect on December 16, 2020, which may simply be the end date for which the class could recover damages (assuming Uber complies with the mandates of Proposition 22).  The ballot measure is not retroactive and therefore at most will only affect forward-looking relief in this action.  See Part III(B).  Even in that event, Plaintiffs' pursuit of restitution and damages will remain of continued vitality, as the damages owed to drivers will both continue to grow as they accrue interest and will serve an

---

[1]     For example, whether Uber drivers are allowed to reject ride assignments without consequence will be a facts-based question common to the class, which will determine whether the putative class of drivers falls under Proposition 22.

PLAINTIFFS' SUPPLEMENTAL BRIEF PURSUANT TO THE COURT'S NOVEMBER 24, 2020, ORDER REGARDING THE IMPACT OF PROPOSITION 22 ON PLAINITFFS' PENDING MOTION FOR CLASS CERTIFICATION (DKT. 56) CASE NO. 3:19-cv-06462-EMC; CASE NO. 3:20-cv-01886-EMC

1

important deterrent effect on unlawful business practices.  See Part III(C).

Regardless of its victory with the voters, there is no reason that Uber should not be held to account for its previous conduct in "thumbing its nose" at California state employment law. Rogers v. Lyft, Inc., 2020 WL 1684151, at *2 (N.D. Cal., Apr. 7, 2020).  Class certification in this action remains eminently appropriate, and Proposition 22 serves only to *potentially* limit the period for which damages are available to the class.[2]

## II.     BACKGROUND

Plaintiffs filed their Motion for Class Certification on May 19, 2020, seeking to certify a class of drivers who drove for Uber in California at any time since February 28, 2019, and who opted out of Uber's arbitration agreement. Dkt. 56 at 1.[3]  By Uber's estimate, the putative class consists of approximately 4,828 drivers. Dkt. 94 at 3 ¶ 9.

The Parties completed briefing on the motion for class certification on October 15, 2020, and the Motion is currently scheduled for hearing on December 22, 2020. Dkt. 135.

Proposition 22 passed on November 3, 2020.[4]  The ballot measure was funded primarily by Uber, Lyft, and Doordash – and was decidedly the most expensive ballot measure in state

---

[2]     As noted, there remains a question as to whether Uber will comply with the requirements of Proposition 22 and, if it does not, the claims may proceed for the period beyond the ballot measure's effective date.  Also, there may be challenges to Proposition 22. See further discussion infra note 11.  If any are successful, while this case remains pending, it may be appropriate for the Court to extend the class period.

[3]     As Plaintiffs noted in their class certification motion, the Ninth Circuit is currently considering whether Uber drivers are exempt from the Federal Arbitration Act under the transportation worker exemption.  That case, Capriole v. Uber, No. 20-16030 (9th Cir.), was argued on October 16, 2020.  Should the Ninth Circuit reverse and hold that Uber cannot enforce its arbitration clause against its drivers, then the class in this case may be expanded to cover drivers who did not opt out of arbitration.

[4]     See Election Results, California Proposition 22, Ballotpedia, https://tinyurl.com/y3hg7bqo.

history.[5]  Uber donated approximately $47.5 million to the initiative in total.[6]  Proposition 22 repeals AB 5 with respect to app-based drivers; the ballot measure declares these drivers to be independent contractors and in return requires specific wage and hour protections for the drivers.[7]

In order to fall within the definition of an "app-based driver" covered by Proposition 22, the network company must meet the following requirements:

> 7451. Protecting Independence.
> … [A]n app-based driver is an independent contractor and not an employee or agent with respect to the app-based driver's relationship with a network company if the following conditions are met:
> (a) The network company does not unilaterally prescribe specific dates, times of day, or a minimum number of hours during which the app-based driver must be logged into the network company's online enabled application or platform.
> (b) The network company does not require the app-based driver to accept any specific rideshare service or delivery service request as a condition of maintaining access to the network company's online enabled application or platform.
> (c) The network company does not restrict the app-based driver from performing rideshare services or delivery services through other network companies except during engaged time.
> (d) The network company does not restrict the app-based driver from working in any other lawful occupation or business.

Further, the company is required to provide the following benefits to its drivers, such as guaranteeing a "net earnings floor", comprised of 120% the minimum wage for "engaged hours" plus a $.30 per-mile compensation for vehicle expenses (based on number of "engaged"

---

[5]     See George Skelton, *It's No Wonder Hundreds of Millions Have Been Spent on Prop 22. A Lot is at Stake*, L.A. Times, Oct. 16, 2020, https://tinyurl.com/y2qy97fc.

[6]     Michael Hiltzik, *Colum: Uber and Lyft Just Made Their Campaign to Keep Exploiting Workers the Costliest in History*, L.A. Times, Sept. 8, 2020, https://tinyurl.com/y56mvx5b.

[7]     Prop 22, *Exempts App-Based Transportation and Delivery Companies from Providing Employee Benefits to Certain Drivers. Initiative Statute*, California General Elections, November 3, 2020, Official Voter Information Guide, https://voterguide.sos.ca.gov/propositions/22/.

miles). <u>See</u> Proposition 22, to be codified at Cal. Bus. Prof. Code § 7453.[8]

The ballot measure is expected to take effect December 16, 2020.

Pursuant to the Court's November 24, 2020, order, Plaintiffs submit this supplement brief to address the impact of the passage of Proposition 22 on Plaintiffs' Motion for Class Certification. Dkt. 133.

## III.    LEGAL ARGUMENT
### A.  It Remains to be Seen Whether Proposition 22 Will Apply to Uber

Plaintiffs in this action seek damages on behalf of the putative class, for Uber's failure to provide them with various employment protections, including requirements to reimburse drivers for their necessary operating expenses pursuant to Cal. Lab. Code § 2802, pay minimum wage as required by Cal. Lab. Code §§ 1194, 1194.2, 1197, 1197.2, 1182.12, 1199, Wage Order 9-2001; pay overtime as required by Cal. Lab. Code §§ 510 554, 1194, 1198, and Wage Order 9-2001; provide properly itemized pay statements, as required by Cal. Lab. Code § 226(a); and provide state-mandated paid sick leave in violation of Cal. Lab. Code § 246. <u>See</u> Dkt. 81.[9] These violations are predicated on Plaintiffs' allegation that Uber has misclassified its drivers as independent contractors.

Proposition 22 statutorily defines app-based drivers as independent contractors *if the conditions set forth in* Section 7451, <u>supra</u> p. 3, are met.  Here, Plaintiffs' allegations against Uber make clear that whether these conditions are met will be a fact-based question common to the class.  For example, Plaintiffs have alleged that Uber suspends or terminates drivers who "do not accept enough rides, cancel too many rides, do not maintain high customer satisfaction

---

[8]     If a company does not provide these promised benefits, for example by not ensuring all drivers receive "net floor earnings" for hours worked, then it may not be entitled to the protection of Proposition 22.

[9]     These predicate violations of the Labor Code also give rise to a violation of Cal. Bus. & Prof. Code § 17200 *et seq.* ("UCL").  <u>See</u> Dkt. 81.

ratings, do not take what Uber deems to be the most efficient routes[.]" See Dkt. 81 ¶ 38. Should this allegation prove true, Uber drivers may not fall under the statutory definition of independent contractor set forth in Proposition 22, because they would not meet the pre-condition set forth in Section 7451(b), that the network company *not* require its driver "to accept any specific rideshare service or delivery service request as a condition of maintaining access" to the app.  If Uber drivers are removed from the app for canceling too many rides, this condition may not be met, and Uber would not be able to take refuge in Proposition 22. Likewise, whether Uber provides the protections required by Proposition 22 (which the voters agreed to substitute for Labor Code protections for certain "app-based" drivers) will also determine whether Uber can rely on Proposition 22 as a defense in this case.

Thus, whether these various conditions are met, and Proposition 22 applies, will constitute a merits-based inquiry common to the class, which thus only further counsels in favor of class certification.[10]

### B.  Proposition 22 Will at Most Affect the Class Period; It Does Not Alter the Class Certification Analysis

Should Proposition 22 apply to Uber drivers, thus defining them as independent contractors, then the *only* impact of Proposition 22 will be to cut off damages and the class period in this case as of December 16, 2020 (assuming that Proposition 22 survives potential legal challenges[11]).  Even if forward-looking relief falls away as a result of Proposition 22, the

---

[10]    All that the class certification inquiry demands from the court is a determination as to whether the claims can be resolved on a class-wide basis based on common evidence. Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 177-78 ("In determining the propriety of a class action, the question is not whether the [] plaintiffs… will prevail on the merits, but rather whether the requirements of Rule 23 are met[,]…[N]othing in either the language or history of Rule 23 ... gives a court any authority to conduct a preliminary inquiry into the merits of a suit in order to determine whether it may be maintained as a class action."); Blackie v. Barrack, 534 F.2d 981, 901 (9th Cir. 1975) ("the possibility that a plaintiff will be unable to prove his allegations" is not a bar to class certification).

[11]    Labor groups have suggested that they may pursue legal challenges over specific provisions of Proposition 22, including its preemption of local labor laws, provisions related to

drivers' pursuit of damages from at least February 28, 2019, to December 16, 2020, will remain salient, as Proposition 22 does not apply retroactively.

It is black letter law that statutes are presumptively limited to prospective-only application, absent a clear intent that the statute be applied retroactively. See Landgraf v. USI Film Products, 511 U.S. 244, 265 (1994) ("the presumption against retroactive legislation is deeply rooted in our jurisprudence, and embodies a legal doctrine centuries older than our Republic."); United States v. Security Industrial Bank 459 U.S. 70, 79–80 (1982) ("The principle that statutes operate only prospectively, while judicial decisions operate retrospectively, is familiar to every law student…. 'retrospective operation will not be given to a statute which interferes with antecedent rights ... unless such be "the unequivocal and inflexible import of the terms, and the manifest intention of the legislature.") (internal citations omitted); Evangelatos v. Superior Court, 753 P.2d 585, 597 (Cal. 1988) (the "common understanding [is] that legislative provisions are presumed to operate prospectively, and that they should be so interpreted 'unless express language or clear and unavoidable implication negatives the presumption.'") (internal citations omitted).  This same principle applies to ballot initiatives. See, e.g., Robert L. v. Superior Court, 69 P.3d 951, 900-01 (Cal. 2003) ("In interpreting a voter initiative ..., we apply the same principles that govern statutory construction.") (quoting Horwich v. Superior Court 980 P.2d 927 (Cal. 1999)); Evangelatos, 753 P.2d at 598; Strauss v. Horton, 207 P.3d 48, 120-21 (Cal. 2009).

Under these general principles, it is clear that Proposition 22 does not apply retroactively.  The ballot measure itself contains no express retroactivity provision, and the ballot summaries prepared by the California Attorney General lack any reference to

---

workers' compensation, and its requirement that the state legislature have a seven eights (7/8) supermajority to override the measure. See *After Gig Companies' Prop. 22 Win, Labor Groups Vow Challenges*, Cal Matters, Nov. 5, 2020, https://tinyurl.com/y5mpekzg (quoting Rey Fuentes, legal fellow with Partnership for Working Families).

retroactivity.[12]  Moreover, unlike A.B. 5, the ballot measure does not contain any statement that it is a declaration of current law.[13]  On the contrary, it is clear that Uber and other gig-economy companies relentlessly pursued the measure with the voters in order to *change* the law in California (recognizing that under <u>Dynamex</u> and A.B. 5, their drivers are employees).[14]

Accordingly, Proposition 22 will at most impact the claims in this action (and limit Plaintiffs' damages) from the date of December 16, 2020, forward.  Damages accrued prior to December 16, 2020, remain.

### C.  Deterrence Interests Continue to Counsel in Favor of Class Certification

Finally, Plaintiffs note that the damages they pursue will continue to accrue in value and serve the further purpose of deterring unlawful conduct, despite whether the interim change in the law cuts off the class period.

First, under Cal. Lab. Code § 218.6, interest shall accrue on the class claims for all due and unpaid wages, at the rate of 10% per annum.  <u>See</u> Cal. Code. Civ. P. § 3289.  The putative class shall further be entitled to liquidated damages on their claim for minimum wages violations, based on the unpaid wages and interest accrued thereon.  <u>See</u> Cal. Lab. Code § 1194.2.  This Court will also have discretion, should Plaintiffs prevail, in awarding prejudgment

---

[12]     The text of Proposition 22 may be found at
https://vig.cdn.sos.ca.gov/2020/general/pdf/topl-prop22.pdf.  The official title and summary of Proposition 22 ("Changes Employment Classification Rules for App-Based Transportation and Delivery Drivers"), issued by Attorney General of California Xavier Becerra, on January 2, 2020, may be found at
https://oag.ca.gov/system/files/initiatives/pdfs/Title%20and%20Summary%20%2819-0026A1%29_0.pdf.

[13]     AB 5 makes clear that its revisions to the Labor Code do not constitute a change in the law, but rather clarify existing law. <u>See</u> Cal. Lab. Code § 2785 ("(a) Section 2775 [which codifies the "ABC" test] does not constitute a change in, but is declaratory of, existing law with regard to wage orders of the Industrial Welfare Commission and violations of this code relating to wage orders.").

[14]     <u>See</u> <u>People v. Uber Techs. Inc., et al.</u>, 56 Cal.App.5th 266, 319 (2020) (holding that Uber was extremely unlikely to be able to satisfy the "ABC" test with respect to its drivers).

interest on the restitution damages under the UCL. See Espejo v. The Copley Press, 13 Cal.App.5th 329, 375 (2017) (the court [] has discretion in equity to award prejudgment interest on a UCL award as a component of restitution"). In other words, although the California Labor Code may be changing on December 16, 2020, thus potentially bringing Uber's classification of its drivers as independent contractors into compliance with the law, the clock will continue to (at a minimum) run on the damages it incurred for violating the law while it waged its campaign against the "ABC" employee status test adopted in Dynamex and codified in AB 5.

Towards that end, the restitution damages that Plaintiffs seek under the UCL also have continued vitality, beyond remedying harm to the putative class, because the damages serve the dual purpose of deterring unlawful conduct. See Krueger v. Wyeth, Inc., 396 F.Supp.3d 931, 950-51 (S.D. Cal. 2019) (contrasting the purpose of actual damages and restitution damages, as provided for by the UCL, noting that the latter is meant to also have a deterrent effect on unlawful conduct); In re Tobacco Cases II, 240 Cal.App.4th 779, 795 (2015) ("The UCL 'serves the dual purposes of compensating victims and deterring perpetrators.") (quoting Colgan v. Leatherman Tool Group, Inc. 135 Cal.App.4th 663, 700 (2006)) (italics in original removed).

Uber's ability to purportedly buy its way out from under the obligations of Dynamex and AB 5 does not absolve the company of its prior violation of the Labor Code and UCL in this case. Certainly, Uber should not be rewarded for "thumbing its nose" at the California Supreme Court and state legislature law by evading the consequences of its heretofore blatantly unlawful conduct. See Rogers, 2020 WL 1684151, at *2.

## IV. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully submit that Proposition 22 does not impact their pending Motion for Class Certification. The Court may need to determine, on a class basis, whether Proposition 22 applies in this action and, if it does, the ballot measure will only serve to limit the class period in this action. Proposition 22 in no way undermines or alters

the arguments set forth in support of Plaintiffs' Class Certification Motion.  As detailed herein, the claims and damages pursued in this case have continued vitality, and the Court should certify the class based on the arguments set forth in Plaintiffs' papers, which demonstrate that Plaintiffs and the putative class have met the requirements of Rule 23(a) and 23(b)(3).

DATED:        December 8, 2020              Respectfully submitted,

CHRISTOPHER JAMES and SPENCER
VERHINES, individually and on behalf of all
others similarly situated,

By: */s/ Shannon Liss-Riordan*
Shannon Liss-Riordan, SBN 310719

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was served by electronic filing on December 8, 2020, on all counsel of record.

By: */s/ Shannon Liss-Riordan*
Shannon Liss-Riordan