1  SHANNON LISS-RIORDAN, SBN 310719
   (sliss@llrlaw.com)
2  ANNE KRAMER, SBN 315131
   (akramer@llrlaw.com)
3  LICHTEN & LISS-RIORDAN, P.C.
   729 Boylston Street, Suite 2000
4  Boston, MA 02116
   Telephone:    (617) 994-5800
5  Facsimile:    (617) 994-5801

6  Attorneys for Plaintiffs

7

8                  **UNITED STATES DISTRICT COURT**

9                 **NORTHERN DISTRICT OF CALIFORNIA**

10

11  CHRISTOPHER JAMES, et al., individually        CASE NO. 19-cv-06462-EMC
    and on behalf of all others similarly situated,
12                      Plaintiffs,                 **NOTICE OF MOTION AND MOTION FOR**
                                                    **PRELIMINARY APPROVAL OF**
13           v.                                     **SETTLEMENT; MEMORANDUM OF**
                                                    **POINTS AND AUTHORITIES IN SUPPORT**
14  UBER TECHNOLOGIES, INC.,                        **THEREOF**
                        Defendant.
15

16                                                  Hearing Date: March 24, 2022
                                                    Hearing Time: 1:30 pm
17                                                  Courtroom:    5
                                                    Judge: Judge Edward Chen
18

19

20

21

22

23

24

25

26

27

28

## NOTICE OF MOTION AND MOTION

**TO DEFENDANTS AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT** on March 24, 2022, at 1:30 p.m., in Courtroom 5 of this Court, located at 450 Golden Gate Avenue, 17th Floor, San Francisco, California, Plaintiffs Christopher James, Spencer Verhines, and Kent Hassell, individually and on behalf of all others similarly situated, will, and hereby do, move the Court pursuant to Federal Rule of Civil Procedure 23 and 29 U.S.C. § 216(b) for an order:

(1) Preliminarily approving the Settlement Agreement between Defendant Uber Technologies, Inc. and Plaintiffs (attached as Exhibit 1 to the Declaration of Shannon Liss-Riordan, filed concurrently herewith), on the grounds that its terms are sufficiently fair, reasonable, and adequate for notice to be issued to the settlement class;

(2) Certifying the proposed settlement class for settlement purposes only, pursuant to Federal Rule of Civil Procedure 23(c);

(3) Approving the form and content of the proposed class notice and notice plan (Exhibits B, D, F & G to the Settlement Agreement);

(4) Appointing Lichten & Liss-Riordan, P.C. to represent the settlement class as class counsel;

(5) Appointing Simpluris as Settlement Administrator;

(6) Scheduling a hearing regarding final approval of the proposed settlement, Class Counsel's request for attorneys' fees and costs, and enhancement payments to the Named Plaintiffs; and

(7) Granting such other and further relief as may be appropriate.

This Motion is based on this Notice of Motion and Motion; the Memorandum of Points and Authorities below; the Declaration of Shannon Liss-Riordan filed concurrently herewith; all supporting exhibits filed herewith; all other pleadings and papers filed in this action; and any argument or evidence that may be presented at or prior to the hearing in this matter.

# TABLE OF CONTENTS

Page

I.      INTRODUCTION ................................................................................................ 1

II.     BACKGROUND ................................................................................................. 3

        A.      Litigation History ................................................................................... 3

        B.      The Proposed Settlement ........................................................................ 6

III.    THE LEGAL STANDARD ................................................................................ 8

IV.     DISCUSSION ..................................................................................................... 9

        A.      Certification of the Settlement Class is Appropriate .............................. 9

                1.      Requirements of Fed. R. Civ. P. 23(a) ...................................... 10

                        a.      Numerosity ..................................................................... 10

                        b.      Commonality ................................................................... 10

                        c.      Typicality ........................................................................ 11

                        d.      Adequacy ......................................................................... 11

                2.      Requirements of Fed. R. Civ. P. 23(b) ...................................... 11

        B.      The Court Should Preliminarily Approve the Settlement ....................... 12

                1.      The Settlement is the Product of Informed, Non-Collusive Negotiation ........ 13

                2.      The Relief Provided for the Settlement Class Is Fair and Adequate .............. 15

                        a.      Risks of Further Litigation .............................................. 15

                        b.      Benefit to Drivers ........................................................... 17

                3.      The Settlement Has No Obvious Deficiencies ............................ 17

                4.      The Settlement Does Not Unfairly Grant Preferential Treatment to Any ...... 18

                        Settlement Class Members ........................................................... 18

V.      CONCLUSION .................................................................................................. 20

# TABLE OF AUTHORITIES
(continued)

## Cases

Page(s)

Acosta v. Trans Union, LLC
    243 F.R.D. 377 (C.D. Cal. 2007) ................................................................. 13

Alberto v. GMRI, Inc.
    252 F.R.D. 652 (E.D. Cal. 2008) ............................................................ 9, 12

Barbosa v. Cargill Meat Sols. Corp.
    297 F.R.D. 431 (E.D. Cal. 2013) .......................................................... 10, 17

Barcia v. Contain-A-Way, Inc.
    2009 WL 587844 (S.D. Cal. Mar. 6, 2009) ............................................... 14

Barnes v. The Equinox Grp., Inc.
    2013 WL 3988804 (N.D. Cal. Aug. 2, 2013) ............................................. 18

Bellinghausen v. Tractor Supply Co.
    306 F.R.D. 245 (N.D. Cal. 2015) .............................................................. 19

Benitez v. W. Milling, LLC
    No. 1:18-CV-01484-SKO, 2020 WL 3412725 (E.D. Cal. June 22, 2020) ................................. 18

Chu v. Wells Fargo Investments, LLC
    2011 WL 672645 (N.D. Cal. Feb. 16, 2011) .............................................. 19

Class Plaintiffs v. City of Seattle
    955 F.2d 1268 (9th Cir. 1992) .................................................................... 9

Cotter v. Lyft
    3:13-cv-04065-VC (N.D. Cal.) .................................................................... 7

Cotter v. Lyft, Inc.
    176 F. Supp. 3d 930 (N.D. Cal. 2016) ......................................................... 2

Cotter v. Lyft, Inc.
    193 F.Supp.3d 1030 (N.D. Cal. 2016) ......................................................... 2

Covillo v. Specialtys Cafe
    2014 WL 954516 (N.D. Cal. Mar. 6, 2014) ............................................... 19

Custom LED, LLC v. eBay, Inc.
    2013 WL 6114379 (N.D. Cal. Nov. 20, 2013) ........................................... 17

Dalton v. Lee Publications, Inc.
    270 F.R.D. 555 (S.D. Cal. 2010) ............................................................... 11

# TABLE OF AUTHORITIES
(continued)

Page(s)

Deaver v. Compass Bank
    2015 WL 4999953 (N.D. Cal. Aug. 21, 2015).............................................................. 9, 13, 15, 17

Estrella v. Freedom Fin'l Network
    2010 U.S. Dist. LEXIS 61236 (N.D. Cal. 2010)................................................................... 11

Garcia v. Border Transp. Group, LLC
    28 Cal. App. 5th 558 (2018)................................................................................................ 16

Groves v. Maplebear Inc. dba Instacart
    BC695401 (L.A. Sup. Ct.) .................................................................................................... 7

Hanlon v. Chrysler Corp.
    150 F.3d 1011 (9th Cir.1998).......................................................................................... 9, 10, 11

Hassell v. Uber Technologies Inc.
    Case No. 4:20-cv-04062-PJH (N.D. Cal.) ......................................................................... 1, 4

Hassell v. Uber Techs., Inc.
    2020 WL 7173218 (N.D. Cal. Dec. 7, 2020) ......................................................................... 4

Hassell v. Uber Techs., Inc.
    2021 WL 2531076 (N.D. Cal. June 21, 2021) ....................................................................... 4

Hefler v. Wells Fargo & Co.
    2018 WL 6619983 (N.D. Cal. Dec. 18, 2018). ............................................................. 13, 15, 18

Hendricks v. StarKist Co.
    2015 WL 4498083 (N.D. Cal. July 23, 2015)....................................................................... 18

Hernandez v. Dutton Ranch Corp.
    No. 19-CV-00817-EMC, 2021 WL 5053476 (N.D. Cal. Sept. 10, 2021) ................................... 18

In re Activision Sec. Litig.
    723 F. Supp. 1373 (N.D.Cal.1989) ..................................................................................... 17

In re Heritage Bond Litig.
    2005 WL 1594403 (C.D. Cal. June 10, 2005) ........................................................................ 9

In re Tableware Antitrust Litig.,
    484 F. Supp. 2d 1078 (N.D. Cal. 2007) ........................................................................... 3, 9, 18

James v. Uber
    Ninth Cir. No. 21-80006 (9th Cir. April 13, 2021) ............................................................... 5, 12

1
2

# TABLE OF AUTHORITIES
(continued)

3

Page(s)

4
5

James v. Uber Techs. Inc.
   338 F.R.D. 123 (N.D. Cal. 2021) ................................................................. 10, 11, 12

6

Johnson v. VCG-IS, LLC
   Case No. 30-2015-00802813 (Super. Ct. Cal. July 18, 2018) .................................... 16

7
8

Karl v. Zimmer Biomet Holdings Inc.
   2018 WL 5809428 (N.D. Cal. Nov. 6, 2018) ............................................................ 16

9
10

Lusby v. GameStop Inc.
   2015 WL 1501095 (N.D. Cal. Mar. 31, 2015) .......................................................... 18

11

Marciano v. DoorDash ("Marciano I")
   Case No. CGC-15-548101(Cal. Sup. Ct. July 12, 2018) ............................................ 7

12
13

Marciano v. DoorDash Inc.
   CGC-15-548102 (Kahn, J.) (Cal. Sup. Ct. July 12, 2018) ......................................... 2

14
15

Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.
   221 F.R.D. 523 (C.D. Cal. 2004) ............................................................................ 8

16

Nielson v. The Sports Authority
   2013 WL 3957764 (N.D. Cal. July 29, 2013) .......................................................... 14

17
18

Noll v. eBay, Inc.
   309 F.R.D. 593 (N.D. Cal. 2015) ............................................................................ 12

19
20

O'Connor v. Uber
   Civ. A. No. 13-3826-EMC (N.D. Cal.) .................................................................... 3

21

O'Connor v. Uber Techs., Inc.
   201 F. Supp. 3d 1110 (N.D. Cal. 2016) ................................................................... 2

22
23

O'Connor v. Uber Techs., Inc.
   82 F. Supp. 3d 1133 (N.D. Cal. 2015) .................................................................... 16

24
25

O'Connor v. Uber Techs., Inc.
   No. 13-CV-03826-EMC, 2019 WL 4394401 (N.D. Cal. Sept. 13, 2019), aff'd, No.
   19-17073, 2019 WL 7602362 (9th Cir. Dec. 20, 2019)...................................... 1, 3, 7

26
27

Oppenlander v. Standard Oil Co. (Ind.)
   64 F.R.D. 597 (D.Colo.1974).................................................................................. 15

28

# TABLE OF AUTHORITIES
(continued)

Page(s)

People v. Uber Techs., Inc.
56 Cal. App. 5th 266, 270 Cal. Rptr. 3d 290 (2020), as modified on denial of reh'g
(Nov. 20, 2020), review denied (Feb. 10, 2021) ............................................................ 15

Satchell v. Fed. Express Corp.
2007 WL 1114010 (N.D. Cal. Apr. 13, 2007) ............................................................... 14

Singer v. Postmates
4:15-cv-01284-JSW (N.D. Cal.) ..................................................................................... 7

Smith v. Cardinal Logistics Mgmt. Corp.
2008 WL 4156364 (N.D. Cal. Sept. 5, 2008) ............................................................... 10

Spann v. J.C. Penney Corp.
2016 WL 297399 (C.D. Cal. Jan. 25, 2016) ................................................................. 12

Van Vranken v. Atl. Richfield Co.
901 F. Supp. 294 (N.D. Cal. 1995) ............................................................................... 19

Vasquez v. Coast Valley Roofing, Inc.
266 F.R.D. 482 (E.D. Cal. 2010) ............................................................... 12, 14, 15, 18

Verhines v. Uber Techs. Inc.
Civ. A. No. 3:20-cv-01886 (N.D. Cal.) .......................................................................... 3

Villalpando v. Exel Direct, Inc.
303 F.R.D. 588 (N.D. Ca. 2014) ................................................................................... 10

Villegas v. J.P. Morgan Chase & Co.
2012 WL 5878390 (N.D. Cal. Nov. 21, 2012) ............................................................. 13

Vinh Nguyen v. Radient Pharm. Corp.
2014 WL 1802293 (C.D. Cal. May 6, 2014) ................................................................ 18

Zolkos v. Scriptfleet, Inc.
2014 WL 7011819 (N.D. Ill. Dec. 12, 2014) ............................................................... 14

**TABLE OF AUTHORITIES**
(continued)

Page(s)

**Statutes**

29 U.S.C. § 216 ................................................................................................................ 1

Cal. Lab. Code §2802 ...................................................................................................... 16

Class Action Fairness Act (CAFA)
   28 U.S.C. § 1715 ........................................................................................................ 9

**Rules**

Fed. R. Civ. P. 23 ..................................................................................................... passim

## I.   INTRODUCTION

Pursuant to Federal Rule of Procedure Rule 23, Plaintiffs Christopher James, Spencer Verhines, and Kent Hassell ("Plaintiffs") move this Court for an order preliminarily approving a proposed class action settlement agreement entered into by Plaintiffs and Defendant Uber Technologies, Inc. ("Defendant" or "Uber").[1]   The Settlement follows more than two years of extremely active and highly contested litigation and was achieved with the assistance of Mediator Martin Scheinman, who oversaw a mediation session and continued ongoing discussions after the mediation session for several weeks.  The Settlement Agreement is attached as Exhibit 1 to the Declaration of Shannon Liss-Riordan (filed herewith) ("Liss-Riordan Decl.").

This Court previously considered and approved a $20 million settlement on behalf of roughly 15,000 California and Massachusetts drivers who were not bound by Uber's arbitration clause. O'Connor v. Uber Techs., Inc., No. 13-CV-03826-EMC, 2019 WL 4394401, at *6 (N.D. Cal. Sept. 13, 2019), aff'd, 2019 WL 7602362 (9th Cir. Dec. 20, 2019).  This settlement covers a much smaller class of roughly 1,322 California Uber drivers who have continued to opt out of Uber's arbitration clause with each new contract.  The class period picks up where the O'Connor class settlement left off on February 28, 2019, and it goes up to the date of Proposition 22's enactment, December 17, 2020, for Uber drivers who transported passengers.[2]  Thus, it also covers a much shorter period of time than the O'Connor settlement: 22 months, as compared to the O'Connor settlement which covered a class period of 114

---

[1]      Kent Hassell filed a separate action on behalf of Uber Eats drivers who opted out of arbitration, Hassell v. Uber Technologies Inc., Case No. 4:20-cv-04062-PJH (N.D. Cal.).  There is substantial overlap between the classes of drivers who drove on the Uber Driver App (covered by the James case) and the Uber Eats App (covered by the Hassell case), and the claims are substantively identical.  This proposed settlement will cover both Uber passenger drivers and Uber Eats drivers. Plaintiffs seek to add Mr. Hassell to this case for settlement purposes, and this proposed settlement will resolve this action and the pending Hassell case, which the Parties will seek to stay pending settlement approval here.

[2]      Drivers who drove exclusively for Uber EATS and were not part of the earlier O'Connor settlement will release claims from March 18, 2016 through October 7, 2021.  These drivers comprise less than 10% of the overall Settlement Class.  See Liss-Riordan Decl. at ¶ 9.

months.  For this much smaller class and shorter time period, Plaintiffs have secured a recovery for these drivers of $8.43 million.

Thus, this settlement amount (which is non-reversionary) will provide class members with higher settlement amounts (on a per mile basis) than those already approved as fair and adequate by this Court in O'Connor.[3]  Although this settlement (once again) does not resolve the question of whether Uber drivers are employees under California law, it is nonetheless of significant value to class members. Given the passage of Proposition 22, the import of that determination has been blunted, as it is unclear whether the answer to the question of whether Uber can satisfy the ABC test will determine drivers' status going forward.  Furthermore, this settlement provides an immediate benefit for these drivers and achieves a significant award for members of the class. This Court and others have recognized that a settlement of misclassification claims like this one need not resolve the ultimate misclassification question. See O'Connor v. Uber Techs., Inc., 201 F. Supp. 3d 1110, 1132 (N.D. Cal. 2016) (indicating that this Court likely would have approved the 2016 settlement were it not for the PAGA portion of the settlement, notwithstanding the fact that it did not declare drivers to be employees going forward)[4]; see also Cotter v. Lyft, Inc., 176 F. Supp. 3d 930, 936-37 (N.D. Cal. 2016) (approving class settlement that did not resolve the classification question and expressly rejecting argument that settlement should not be approved because it did not reclassify drivers as employees). The agreement submitted here is eminently fair, adequate, and reasonable and should be approved by this Court.

The settlement satisfies the standard for preliminary approval—it is undoubtedly within the range of possible approval to justify sending notice to settlement class members and scheduling final

---

[3]     In the past, courts have approved settlements for amounts in the range of 15 to 20% of reimbursement expenses.  See, e.g., Cotter v. Lyft, Inc., 193 F.Supp.3d 1030, 1039 (N.D. Cal. 2016) (approving class action settlement of Lyft drivers' misclassification claims that provided 17% recovery on drivers' expense reimbursement claim); Marciano v. DoorDash Inc. CGC-15-548102 (Kahn, J.) (Cal. Sup. Ct. July 12, 2018) (approving settlement of between 21% and 31% of the estimated value of the most valuable expense reimbursement claim depending on whether contingency was triggered).  Here, the figure is 100% of the estimated value of the vehicle and telephone expense reimbursement claim.

[4]     Notably, there has been no PAGA claim raised in this case, and this settlement contains no release of PAGA claims.

approval proceedings; moreover, Plaintiffs submit that the proposed settlement (which is higher than the 2019 settlement approved by this Court) is likely to earn final approval. See Fed. R. Civ. P. 23 (e); In re Tableware Antitrust Litig., 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007). Thus, the Court should: (1) grant preliminary approval of the settlement; (2) certify, for settlement purposes only, a settlement class of Uber drivers in California who are not bound by an arbitration clause; (3) approve the manner and forms of notice; (4) appoint Lichten & Liss-Riordan, P.C. to represent the settlement class as class counsel; (5) appoint Simpluris as Settlement Administrator; and (6) schedule a hearing for final approval in June 2022.

## II.     BACKGROUND

### A.     Litigation History

On October 8, 2019, Plaintiff Thomas Colopy filed a class action complaint in this case, alleging that Uber drivers were misclassified as independent contractors under California law, and, as a result of their misclassification, drivers were owed expense reimbursement, minimum wage, overtime, and had not received itemized wage statements as required by California law. See Dkt. 1. The case was intended to bring claims that post-dated the prior settlement of misclassification and wage claims on behalf of California Uber drivers not bound by Uber's arbitration agreement in O'Connor v. Uber, Civ. A. No. 13-3826-EMC (N.D. Cal.). That settlement resolved claims on behalf of drivers not bound to arbitrate with Uber from the start of Uber's operations in California until February 28, 2019. O'Connor v. Uber Techs., Inc., 2019 WL 4394401, at *1 (N.D. Cal. Sept. 13, 2019), aff'd, 2019 WL 7602362 (9th Cir. Dec. 20, 2019).

On January 3, 2020, Plaintiffs Thomas Colopy, Christopher James, and Spencer Verhines filed a First Amended Complaint asserting the same claims. See Dkt. 33. On April 16, 2020, Plaintiffs filed an amended consolidated complaint, with only Christopher James and Spencer Verhines serving as named plaintiffs and adding allegations regarding Uber's failure to provide paid sick leave during the

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

pandemic. <u>See</u> Dkt. 47.[5]  Meanwhile, on June 18, 2020, Plaintiff Kent Hassell filed a class action complaint in the United States District Court for the Northern District of California asserting similar claims against Uber on behalf of himself and a proposed class of Uber Eats drivers who opted out of arbitration.  <u>See</u> <u>Hassell</u>, Civ. A. No. 4:20-cv-04062-PJH, Dkt. 1.  There, the Parties litigated Uber's two hotly contested Motions to Dismiss, <u>see</u> <u>Hassell v. Uber Techs., Inc.</u>, 2020 WL 7173218 (N.D. Cal. Dec. 7, 2020); <u>Hassell v. Uber Techs., Inc.</u>, 2021 WL 2531076, at *14 (N.D. Cal. June 21, 2021), and Plaintiffs filed an Amended Complaint in January 2021. <u>See</u> <u>Hassell</u>, Civ. A. No. 4:20-cv-04062-PJH, Dkt. 33.

The parties in this case engaged in extensive discovery.  Plaintiffs propounded multiple sets of written discovery (totaling more than 50 requests) and received and reviewed more than 19,550 pages of documents produced by Uber. <u>See</u> Liss-Riordan Decl. at ¶ 3. Uber likewise propounded multiple sets of written discovery (totaling more than 180 requests) and reviewed nearly 1,500 pages of documents produced by the two Named Plaintiffs, Verhines and James. <u>Id.</u>  Uber deposed Christopher James and Spencer Verhines, and Plaintiffs deposed a Rule 30(b)(6) witness from Uber. The parties engaged in a protracted meet and confer process regarding various discovery disputes and planned to engage in more discovery. <u>Id.</u>

The parties also briefed and argued a Motion to Dismiss filed by Uber and multiple Motions for Preliminary Injunction filed by Plaintiffs. <u>Id.</u> at ¶ 4.[6]  Thereafter, the parties briefed and argued class certification. <u>Id.</u> at ¶ 6.  On January 26, 2021, the Court issued an order certifying a class of "Uber drivers who drove for Uber in the State of California between February 28, 2019 and December 16,

---

[5]     On March 12, 2020, Plaintiff Spencer Verhines filed a separate complaint in California state court, which was subsequently removed to this court and captioned <u>Verhines v. Uber Techs. Inc.</u>, Civ. A. No. 3:20-cv-01886 (N.D. Cal.).  This complaint focused on Uber's failure to provide paid sick leave during the pandemic.  This case was consolidated with this case as part of the amended consolidated complaint.  <u>See</u> Liss-Riordan Decl. at ¶ 2, n. 1.

[6]     That injunction motion ultimately ended in a settlement of Plaintiffs' claims for pandemic-related sick pay for 2020, which provided substantial relief to a number of California Uber drivers.  <u>See</u> <u>id.</u> The amount of relief paid under that settlement is not included in the settlement value quoted here.

2020, and who opted out of Uber's arbitration agreement," on their misclassification claims and on their claims for expense reimbursement pay statements, but not on their claims for minimum wage, overtime, and paid sick leave. <u>See</u> Dkt. 143.  Uber filed a petition for review to the Ninth Circuit Court of Appeals pursuant to Fed. R. Civ. P. 23(f), which Plaintiffs opposed. <u>See</u> <u>James v. Uber</u>, Ninth Cir. No. 21-80006, Dkt. No. 1, Dkt. No. 2. That petition was subsequently denied. <u>James v. Uber</u>, Ninth Cir. No. 21-80006, Dkt. No. 4 (9th Cir. April 13, 2021).

The parties moved on to briefing summary judgment. <u>See</u> Liss-Riordan Decl. at ¶ 7. On August 12, 2021, Plaintiffs filed a motion for summary judgment against Uber "on its affirmative defense that the certified class members are properly classified as independent contractors." <u>See</u> Dkt. 174. Uber requested and was granted an extension of time to file its response, and the parties were scheduled to complete briefing and argue summary judgment before the Court on February 3, 2022. <u>See</u> Liss-Riordan Decl. at ¶ 7.

Prior to this settlement being reached, the parties engaged in extensive negotiations before Judge Spero (spanning nine mediation sessions and many hours) in connection with the <u>Verhines</u> sick pay case, ultimately resulting in Uber's rollout of a program to provide certain benefits to drivers during the pandemic.[7] <u>Id.</u> at ¶ 5.  Plaintiffs' counsel received no attorneys' fees in connection with negotiating this extremely hard-fought settlement and performed extensive work to make sure Uber followed through on its commitment and to make sure drivers were able to easily access the benefits she obtained for them through that negotiation.  <u>Id.</u>

The parties mediated the remaining claims in the case in October 2021, pursuant to the Court's order. <u>See</u> Liss-Riordan Decl. at ¶ 8.  The parties met virtually with professional mediator Martin Scheinman on October 4, 2021. <u>Id.</u> Following that session and extensive further discussions following

---

[7]     These negotiations resulted in a financial assistance program for individuals who used Uber's Apps in the state of California to drive for at least 20 hours each workweek for any non-consecutive eight workweeks between November 4, 2019, and March 2, 2020, and who drove at least 360 hours across the 52 workweeks preceding March 2, 2020.  Drivers meeting these criteria were eligible for up to $360 (24 hours of leave at $15/hour) to allow them to self-quarantine during the pandemic.

the mediation, the parties ultimately agreed to settle the misclassification and related wage-and-hour claims of California Uber drivers who are not bound by Uber's arbitration clause for $8,435,800.  Id.

### B.    The Proposed Settlement

The Settlement provides for a non-reversionary Settlement Fund in the amount of $8,435,800. See Ex. 1 (Settlement Agreement) at ¶ 75.  This Settlement Fund, less costs of claims administration (totaling an estimated $29,000), requested attorneys' fees (totaling one quarter of the settlement, or $2,108,950), and settlement class representative enhancements (totaling $30,000), will be distributed to class members pursuant to a plan of allocation summarized here.  Id. at ¶¶ 98, 105, 106.  This allocation to settlement class members is based on the number of miles drivers have driven to pick up passengers who placed ride requests using the Uber App and number of miles drivers have driven transporting those passengers, as well as the number of miles these drivers have driven to pick up food orders and delivery food to customers. Id. at ¶¶ 61, 110-11.

The parties have selected Simpluris to administer the settlement.[8]  Liss-Riordan Decl. at ¶¶13-14. The parties had previously engaged Simpluris to serve as the notice administrator in sending the class notice in this case.  Id.  Plaintiffs' counsel has also worked with Simpluris in many cases over the last several years, including several other large settlements in other similar cases.  Id.[9]  Simpluris has managed the class notice process in these cases with diligence and care.  Id.

The settlement provides that notice will be distributed to settlement class members via email and text message, with follow-up mailed notice for those settlement class members for whom email is returned as undeliverable.  See Ex. 1 to Liss-Riordan Decl. ("Settlement Agreement") at ¶¶ 122, 123. Settlement payments will be mailed by check to settlement class members who submit claims to

---

[8]     Plaintiffs obtained proposals from two other prospective administrators (using the same methods of notice and claims payment).  Liss-Riordan Decl. at ¶ 13.

[9]     Both Plaintiffs' counsel and defense counsel have worked with Simpluris in recent years, including on similar gig economy settlements for companies such as Caviar, Postmates, and DoorDash, and they believe this administrator will offer excellent service in carrying out notice and distribution duties and conscientiously tracking down class members and responding to their inquiries.

participate in the settlement (or by digital payment such as Venmo, Zelle, or Paypal for those settlement class members who elect this option).  Id. at ¶¶ 109, 126.  In order to obtain a payment, settlement class members will be able to make a claim electronically or send in a simple form.  Id.; Ex. B to the Settlement Agreement (Claim Form).  At least four reminder emails will be sent to settlement class members who have not yet submitted claims via email before the final approval hearing in addition to one reminder via text message (and the parties may agree on further reminder notices, if warranted). Id. at ¶¶ 114; 127. The Settlement Administrator will make particular additional efforts to locate and encourage the filing of later claims by settlement class members who have not yet submitted claims whose settlement shares are likely to be greater than $200 (for instance, by mailing notice or placing phone calls in addition to emailing notice).  Id.

Plaintiffs' counsel anticipates a claim rate of at least 50% for this settlement, based on counsel's experience in other similar settlements. These settlements include other cases which used a similar notice and distribution process to that included here: O'Connor, No. 13-CV-03826-EMC, 2019 WL 4394401, at *3 (claim rate of 67.3% of the fund claimed); Groves v. Maplebear Inc. dba Instacart, BC695401 (L.A. Sup. Ct.) (final settlement approval granted on September 2, 2020) (claim rate of 59% of the fund claimed in settlement involving California Instacart drivers); Marciano v. DoorDash, Case No. CGC-15-548101 (Cal. Sup. Ct. July 12, 2018) (claim rate of 46% of the fund claimed in settlement involving California DoorDash delivery drivers); Cotter v. Lyft, 3:13-cv-04065-VC (N.D. Cal.) (claim rate of 64%); Singer v. Postmates, 4:15-cv-01284-JSW (N.D. Cal.) (claim rate of 48%).  See Liss-Riordan Decl. at ¶ 12. Plaintiffs' counsel believe that these cases provide a useful proxy for this case because they also involved misclassification claims against other companies that Plaintiffs contend utilize a similar business model to Uber, and the settlement class here is made up of individuals who Plaintiffs believe fit a similar profile. Id. These cases utilized a similar notice and claims process, allowing individuals to submit claims via an online portal or by paper. Id. Those settlements included similar follow-up reminders to those that would be used in this case. Plaintiffs will work closely with the Settlement Administrator to ensure appropriate and repeated reminders are sent to ensure that as many settlement class members as possible may be located and encouraged to submit claims.

Following the initial distribution of funds, the Settlement Administrator will make reasonable, good faith efforts to remind settlement class members whose shares are more than $200 but who have not cashed their checks to do so, and it will work with settlement class members to reissue checks as needed. Ex. 1 (Settlement Agreement) at ¶ 113. After an estimated 180 days, there will be a second distribution of all uncashed checks (and any remaining portion of a dispute fund that has not been used) to those settlement class members who did submit claims and cashed their checks and whose residual shares would be at least $100. Id. at ¶ 119, 143. If, following the second distribution, there are any remaining funds that have not been distributed, such funds will be distributed to the parties' agreed-upon *cy pres* beneficiary, Legal Aid at Work. Id. This settlement is non-reversionary, meaning that no funds from the settlement, including unclaimed funds, will revert to Uber; the full amount of the net settlement fund, other than a small portion that may go to *cy pres*, will be paid to settlement class members. Id.

In exchange for their settlement share, settlement class members will release all wage-and-hour claims that have been brought against Uber, as described in the Settlement Agreement. Id. at ¶ 78. Except for the named plaintiffs, the release does not provide for release of claims unrelated to the core misclassification allegation, *e.g.,* claims for discrimination, wrongful termination, personal injury, etc. Id. at ¶¶ 78, 56.

## III.    THE LEGAL STANDARD

Federal Rule of Civil Procedure 23 (e) provides that any compromise of a class action must receive Court approval. "Approval under 23(e) involves a two-step process in which the Court first determines whether a proposed class action settlement deserves preliminary approval and then, after notice is given to class members, whether final approval is warranted." Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc., 221 F.R.D. 523, 525 (C.D. Cal. 2004) citing Manual for Complex Litig., Third, § 30.41 (1995). Pursuant to Rule 23, preliminary approval of proposed class action settlement is appropriate where the parties make a "showing that the court will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23 (e)(1). As set forth infra, Part IV(A), the settlement class will likely be certified. Moreover, as set forth further infra, Part IV(B), all of the requirements of Rule 23(e)(2) have been met as well. Specifically, the

8

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT AND
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF – CASE NO. CV 19-cv-06462-EMC

class representatives and class counsel have adequately represented the class, the proposed settlement was negotiated at arm's length, the relief is more than adequate given the costs, risks, and delay of further litigation and the contours of the proposed settlement, and the proposal treats all members of the Settlement Class equitably relative to one another. Fed. R. Civ. P. 23(e)(2); <u>see also</u> <u>In re Tableware Antitrust Litig.</u>, 484 F.Supp.2d 1078, 1079 (N.D. Cal. 2007) (a court should grant preliminary approval if the parties' settlement "appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval."); <u>Deaver v. Compass Bank</u>, 2015 WL 4999953, *4 (N.D. Cal. Aug. 21, 2015).  "Moreover, "a presumption of fairness arises where: (1) counsel is experienced in similar litigation; (2) settlement was reached through arm's length negotiations; (3) investigation and discovery are sufficient to allow counsel and the court to act intelligently." <u>In re Heritage Bond Litig.</u>, 2005 WL 1594403, *2 (C.D. Cal. June 10, 2005).

"In deciding whether to approve a proposed settlement, the Ninth Circuit has a 'strong judicial policy that favors settlements, particularly where complex class action litigation is concerned.'" <u>Id.</u> at *2 (citing <u>Class Plaintiffs v. City of Seattle</u>, 955 F.2d 1268, 1276 (9th Cir. 1992)). "Generally, the district court's review of a class action settlement is 'extremely limited.'" <u>Harris</u>, 2011 WL 1627973, *7 (<u>citing Hanlon v. Chrysler Corp.</u>, 150 F.3d 1011, 1026 (9th Cir.1998)). "The Court considers the settlement as a whole, rather than its components, and lacks the authority to delete, modify or substitute certain provision." <u>Id.</u> (internal citation omitted).[10]

## IV.   DISCUSSION

### A.   Certification of the Settlement Class is Appropriate

The Court must confirm the propriety of the settlement class by determining "if it meets the four prerequisites identified in Federal Rule of Civil Procedure 23(a) and additionally fits within one of the three subdivisions of Federal Rule of Civil Procedure 23 (b)." <u>Alberto v. GMRI, Inc.</u>, 252 F.R.D. 652,

---

[10]   Pursuant to the Class Action Fairness Act (CAFA), 28 U.S.C. § 1715, Defendant Uber will send CAFA notices within 10 (ten) days of the filing of this Motion for Preliminary Approval to the appropriate federal and state officials.

659 (E.D. Cal. 2008). Here, this Court has already found that the requirements for class certification have been met and has already certified Plaintiffs' claims under California Labor Code §§ 2802 and 226(a), including the predicate issue of misclassification. <u>James v. Uber Techs. Inc.</u>, 338 F.R.D. 123, 140 (N.D. Cal. 2021). Because the proposed settlement class now includes only those individuals who are already part of the certified class in this case, the Court's prior conclusion that a class was appropriate supports class certification here for purposes of this settlement. Thus, Plaintiffs now ask that the Court certify, for settlement purposes, a class consisting of "all Drivers who have used the Uber Rides App in California to transport passengers between February 28, 2019 and December 16, 2020, or who used the Uber EATS App in California to deliver items or food between March 18, 2016 and October 7, 2021, and who validly opted out of Uber's arbitration agreement." Ex. 1 (Settlement Agreement) at ¶ 76.

### 1.    Requirements of Fed. R. Civ. P. 23(a)

Rule 23(a) requires that the Plaintiffs demonstrate: "(1) numerosity of plaintiffs; (2) common questions of law or fact predominate; (3) the named plaintiff's claims and defenses are typical; and (4) the named plaintiff can adequately protect the interests of the class." <u>Barbosa v. Cargill Meat Sols. Corp.</u>, 297 F.R.D. 431, 441 (E.D. Cal. 2013). Here, as this Court already determined in its Class Certification Order, all criteria are met.

### a.    Numerosity

A plaintiff will satisfy the numerosity requirement if "the class is so large that joinder of all members is impracticable." <u>Hanlon v. Chrysler Corp.</u>, 150 F.3d 1011, 1019 (9th Cir.1998). "Although the requirement is not tied to any fixed numerical threshold, courts have routinely found the numerosity requirement satisfied when the class comprises 40 or more members." <u>Villalpando v. Exel Direct, Inc.</u>, 303 F.R.D. 588, 605-06 (N.D. Ca. 2014). Here, the total settlement class consists of approximately 1,322 Uber drivers. <u>See</u> Liss-Riordan Decl. at ¶ 9. Thus, the numerosity requirement is easily satisfied.

### b.    Commonality

Courts have found that "[t]he existence of shared legal issues with divergent factual predicates is sufficient, [to satisfy commonality under Rule 23] as is a common core of salient facts coupled with

disparate legal remedies within the class." Smith v. Cardinal Logistics Mgmt. Corp., 2008 WL 4156364, *5 (N.D. Cal. Sept. 5, 2008). The "commonality requirement has been 'construed permissively,' and its requirements deemed minimal." Estrella v. Freedom Fin'l Network, 2010 U.S. Dist. LEXIS 61236 (N.D. Cal. 2010) (quoting Hanlon v. Chrysler Corp., 150 F.3d 1011, 1019-1020 (9th Cir. 1998)). Here, all settlement class members share the key question of whether they have been improperly classified as independent contractors and also share common questions of law with respect to their substantive claims. This Court has already recognized as much in certifying a class in this case. James v. Uber Techs. Inc., 338 F.R.D. 123, 132, 139-40 (N.D. Cal. 2021).

### c.        Typicality

"Typicality is a permissive standard, and only requires that the named plaintiffs' claims are 'reasonably coextensive' with those of the class." Dalton v. Lee Publications, Inc., 270 F.R.D. 555, 560 (S.D. Cal. 2010). Thus, "[i]n examining this condition, courts consider whether the injury allegedly suffered by the named plaintiffs and the rest of the class resulted from the same alleged common practice." Id. (internal quotation omitted). Here, as the Court recognized in its prior class certification order, there are no factual differences between Plaintiffs' claims and those of the settlement class members; all drivers allegedly have suffered the same misclassification and resulting wage and hour violations. James, 338 F.R.D. at 132-33.

### d.        Adequacy

"Resolution of two questions determines legal adequacy: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members, and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" Hanlon, 150 F.3d at 1020. Here, the Court has already determined that class counsel will adequately represent the certified class and that named plaintiffs Christopher James and Spencer Verhines would adequately represent the interests of the class in certifying them as lead plaintiffs for the certified class. James, 338 F.R.D. at 132-33.

### 2.        Requirements of Fed. R. Civ. P. 23(b)

Rule 23(b)(3) requires the Court to find that: (1) "the questions of law or fact common to class members predominate over any questions affecting only individual members," and (2) "a class action is

---

11

superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ.

P. 23(b)(3). Some of the factors that are part of the Rule 23(b)(3) analysis are rendered irrelevant in the

settlement context, such as "the likely difficulties in managing a class action."  Vasquez v. Coast Valley

Roofing, Inc., 266 F.R.D. 482, 488 (E.D. Cal. 2010) (noting that this factor is "essentially irrelevant" in

"the context of settlement"); see also Alberto v. GMRI, Inc., 252 F.R.D. 652, 664 (E.D. Cal. 2008);

Spann v. J.C. Penney Corp., 2016 WL 297399, *3 (C.D. Cal. Jan. 25, 2016) ("[C]ourts need not consider

the Rule 23(b)(3) considerations regarding manageability of the class action, as settlement obviates the

need for a manageable trial.").

Here, this Court has already determined that common questions predominate, both with respect

to drivers' status under the ABC test and the underlying substantive expense reimbursement and pay

statement claims. Specifically, the Court found that both Prongs A and B of the conjunctive "ABC" test

for employee status were capable of determination on a class-wide basis for all drivers, and because

either prong could prove dispositive here, class certification was appropriate.  James, 338 F.R.D. at 136-

139.  The Ninth Circuit denied Uber's Rule 23(f) Petition, seeking review of this conclusion.  See James

v. Uber, Ninth Cir. No. 21-80006, Dkt. No. 4 (9th Cir. April 13, 2021).

 As this Court already recognized in its class certification order, these misclassification claims

predominate, and a class action to resolve them is superior than individual actions.  Further, it has been

well-recognized that "[w]here recovery on an individual basis would be dwarfed by the cost of litigating

on an individual basis, this factor weighs in favor of class certification."  Noll v. eBay, Inc., 309 F.R.D.

593, 604 (N.D. Cal. 2015).

### B.    The Court Should Preliminarily Approve the Settlement

Under Fed. R. Civ. P. 23(e)(2), the Court must consider whether:

(A) the class representatives and class counsel have adequately represented the class;

(B) the proposal was negotiated at arm's length;

(C) the relief provided for the class is adequate, taking into account:

        (i) the costs, risks, and delay of trial and appeal;

(ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

(iii) the terms of any proposed award of attorney's fees, including timing of payment; and

(iv) any agreement required to be identified under Rule 23(e)(3); and

(D) the proposal treats class members equitably relative to each other.

See Fed. R. Civ. P. 23(e)(2). "In the notes accompanying these amendments, the Advisory Committee acknowledged that '[c]ourts have generated lists of factors' to determine the fairness, reasonableness, and adequacy of a settlement" such that "adding these specific factors to Rule 23(e)(2) was not designed 'to displace any factor, but rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal.'" Hefler v. Wells Fargo & Co., 2018 WL 6619983, at *4 (N.D. Cal. Dec. 18, 2018). Courts in the Ninth Circuit have typically found preliminary approval of a settlement and notice to the class is appropriate if it: (1) falls within the range of possible approval; (2) is the product of serious, informed, non-collusive negotiations, (3) has no obvious deficiencies; and (4) does not improperly grant preferential treatment to class representatives or segments of the class. Deaver v. Compass Bank, 2015 WL 4999953, *4 (N.D. Cal. Aug. 21, 2015). Here, both under the factors enumerated in Rule 23(e)(2) and the factors traditionally considered by the Ninth Circuit, the proposed settlement clearly warrants preliminary approval.

### 1.    The Settlement is the Product of Informed, Non-Collusive Negotiation

Under Fed. R. Civ. P. 23(e)(2)(A)-(B), "[t]he Court must consider whether 'the class representatives and class counsel have adequately represented the class' and whether 'the proposal was negotiated at arm's length', [which] [] the Advisory Committee notes suggest, [] are 'matters that might be described as procedural concerns, looking to the conduct of the litigation and of the negotiations leading up to the proposed settlement.'" Hefler, 2018 WL 6619983, at *6.  Courts in this Circuit have likewise found that for the parties "to have brokered a fair settlement, they must have been armed with sufficient information about the case to have been able to reasonably assess its strengths and value." Acosta v. Trans Union, LLC, 243 F.R.D. 377, 396 (C.D. Cal. 2007).  Thus, adequate discovery and the

use of an experienced mediator support a finding that settlement negotiations were both informed and non-collusive.  See Villegas v. J.P. Morgan Chase & Co., 2012 WL 5878390, *6 (N.D. Cal. Nov. 21, 2012); Deaver, 2015 WL 4999953, *7; Satchell v. Fed. Express Corp., 2007 WL 1114010, *4 (N.D. Cal. Apr. 13, 2007) ("The assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive").

Here, "[b]y the time the settlement was reached, the litigation had proceeded to a point in which both plaintiffs and defendants had a clear view of the strengths and weaknesses of their cases." Vasquez v. Coast Valley Roofing, Inc., 266 F.R.D. 482, 489 (E.D. Cal. 2010) (internal citations omitted).  The parties exchanged extensive discovery prior to conducting a mediation, and they received data that allowed them to value the claims at issue in this case. See Liss-Riordan Decl. at ¶¶ 3, 22.  Likewise, the parties have litigated the merits of their claims very extensively; Plaintiffs had filed their Motion for Summary Judgment and Uber was preparing its response.  Id. at ¶ 7. The parties also litigated class certification, both before this Court and in briefing Uber's Rule 23(f) petition to the Ninth Circuit Court of Appeals.  Id. at ¶ 6.  The parties met on October 4, 2021, with professional mediator Martin Scheinman and continued these discussions well beyond that mediation session.  Id. at ¶ 8. In these negotiations, Class counsel was informed by her prior experience negotiating the O'Connor settlement and many other gig economy settlements.  See Liss-Riordan Decl. at ¶ 22. The settlement the parties have reached was the result of thorough and passionate negotiations by experienced counsel familiar with the applicable law, class action litigation, and the facts of this case.  See Nielson v. The Sports Authority, 2013 WL 3957764, *4–5 (N.D. Cal. July 29, 2013) ("[T]he settlement resulted from non-collusive negotiations, i.e., a mediation before Mark Rudy, a respected employment attorney and mediator."); Barcia v. Contain-A-Way, Inc., 2009 WL 587844, *1 (S.D. Cal. Mar. 6, 2009) (granting final settlement approval and finding that Mark Rudy is a "nationally recognized labor mediator"); Zolkos v. Scriptfleet, Inc., 2014 WL 7011819, *2 (N.D. Ill. Dec. 12, 2014) ("Two experienced class action employment mediators, [including] Mark Rudy . . . assisted the Parties with the settlement negotiations and presided over two full-day mediations.  This reinforces the non-collusive nature of the

settlement.").  Thus, the parties had ample information, expert guidance from an experienced mediator, and intimate familiarity with the strengths and weaknesses of the case.

### 2.    The Relief Provided for the Settlement Class Is Fair and Adequate

"Rule 23(e)(2)(C) and (D) set forth factors for conducting a 'substantive' review of the terms of the proposed settlement." Hefler, 2018 WL 6619983 , at *7 (citing Fed. R. Civ. P. 23(e)(2)(C)-(D) advisory committee's note to 2018 amendment). "In determining whether 'the relief provided for the class is adequate,' the Court must consider '(i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3).'" Id. (citing Rule 23(e)(2)).  Similarly, courts in the Ninth Circuit have evaluated "the range of possible approval criterion, which focuses on substantive fairness and adequacy, [] primarily [by] consider[ing] plaintiff's expected recovery balanced against the value of the settlement offer." Deaver v. Compass Bank, 2015 WL 4999953, *9 (N.D. Cal. Aug. 21, 2015).

#### a.    Risks of Further Litigation

A "relevant factor" that courts must consider in contemplating a potential settlement is "the risk of continued litigation balanced against the certainty and immediacy of recovery from the Settlement." Vasquez, 266 F.R.D. at 489.  Thus, courts "consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation." Id. (citing Oppenlander v. Standard Oil Co. (Ind.), 64 F.R.D. 597, 624 (D.Colo.1974)). Here, Plaintiffs recognized the delay that was sure to transpire in going forward. Plaintiffs were extremely confident in their ability to prove that Plaintiffs were Uber's employees under the "ABC" test, particularly in light of the decision in People v. Uber Techs., Inc., 56 Cal. App. 5th 266, 270 Cal. Rptr. 3d 290 (2020), as modified on denial of reh'g (Nov. 20, 2020), review denied (Feb. 10, 2021). However, Uber was likely to argue that People v. Uber was only a decision reviewing the grant of an injunction and did not decide the ultimate question.  Furthermore, even if Plaintiffs succeeded in proving that Uber could not satisfy all three parts of the ABC test, Uber would

certainly appeal any decision against it, resulting in lengthy delays for the class. See Liss-Riordan Decl.

at ¶ 20.  Even putting aside the further delay, there remains uncertainty as to whether the ABC test

would apply to the expense reimbursement claim prior to the enactment of AB5 in January 2020 (which

broadened Dynamex's holding to unambiguously include all Labor Code claims).  Compare Johnson v.

VCG-IS, LLC, Case No. 30-2015-00802813, Ruling on Motion in Limine (Super. Ct. Cal. July 18,

2018) at *4-5 (holding that Dynamex applies to a variety of Labor Code claims, including expense

reimbursement claims under Cal. Lab. Code §2802); with Garcia v. Border Transp. Group, LLC, 28 Cal.

App. 5th 558 (2018) (stating that Dynamex would not apply to "non-wage order" claims under the

Labor Code, which the Court stated would include expense reimbursement claims); Karl v. Zimmer

Biomet Holdings Inc., 2018 WL 5809428 *3 (N.D. Cal. Nov. 6, 2018) (summarily concluding that

expense reimbursement claim does not arise under the Wage Orders and thus Dynamex would not

apply).  Were Dynamex not to apply to the expense reimbursement claim for a portion of the class

period, Plaintiffs recognized that, under the multi-factor Borello test (which the California Supreme

Court recognized in Dynamex has led to uncertainty regarding the employee status question), there is a

serious risk that a unanimous jury would not find Uber drivers to be employees for purposes of the

expense reimbursement claim, pre-AB5. As this Court has explained, "numerous [Borello] factors point

in opposing directions" on the issue of employment classification, such that the employment

misclassification test "does not yield an unambiguous result."  O'Connor v. Uber Techs., Inc., 82 F.

Supp. 3d 1133, 1153 (N.D. Cal. 2015).

Plaintiffs also recognized that Uber planned to contend that, even if Plaintiffs prevailed on

liability, the IRS mileage reimbursement rate was not the proper measure of reimbursement damages.

Uber would have advocated for the use of the IRS variable rate, rather than the fixed rate, which could

have reduced the reimbursement damages by more than 50%.  See Liss-Riordan Decl. at ¶¶ 19, 28-29, n.

3.

In sum, after carefully considering these risks and the potential benefits of proceeding further

with this case, Plaintiffs concluded that the significant monetary relief obtained here for the drivers not

covered by Uber's arbitration clause – providing 100% of the drivers calculated expense reimbursement damages (both for mileage and phone expenses) -- is in the best interests of the settlement class.

### b.   Benefit to Drivers

Plaintiffs have analyzed the potential monetary value of their claims if they were to succeed in proving their misclassification and reimbursement claims.  As described above, the settlement awards Plaintiffs significant monetary benefit.  See Liss-Riordan Declaration at ¶¶ 24-54.  In view of the ongoing legal issues and uncertainties that Plaintiffs continued to face, discussed above and in the Liss-Riordan Declaration at ¶¶ 18-20, there can be no doubt that this is an excellent result for the class.

### 3.   The Settlement Has No Obvious Deficiencies

A court should also consider possible deficiencies in a settlement including an overly broad release of claims, an insufficient timeframe for notice, an inadequate form of payment, an unrelated *cy pres* designee, or an unreasonable request for attorneys' fees, among other things. See Custom LED, LLC v. eBay, Inc, 2013 WL 6114379, *7-8 (N.D. Cal. Nov. 20, 2013); Deaver, 2015 WL 4999953, *7. Here, settlement class members will release only wage-and-hour claims, such as those that could arise from their alleged misclassification as independent contractors, and will not release claims for discrimination, wrongful termination, personal injury, or pay issues not related to misclassification.  See Ex. 1 (Settlement Agreement) at ¶ 78. The timeframe for notice is adequate, and settlement class members will be given ample opportunity to submit claims.  Id. at ¶¶ 35, 88.  Likewise, the distribution will compensate drivers fairly, as discussed above.  No unclaimed funds will revert to Uber; rather they will be redistributed amongst settlement class members, and, if necessary, given to the *cy pres* designees.

Further, the attorneys' fee provision is fair and does not give rise to any deficiency.  Plaintiffs' counsel intends to apply for fees not to exceed 25% of the gross settlement fund (totaling just over $2 million).  See Liss-Riordan Decl. at ¶ 16. The settlement is not contingent upon the Court approving counsel's application.  "The typical range of acceptable attorneys' fees in the Ninth Circuit is 20 percent to 33.3 percent of the total settlement value, with 25 percent considered a benchmark percentage." Barbosa v. Cargill Meat Sols. Corp., 297 F.R.D. 431, 448 (E.D. Cal. 2013). However, "in most common

17

fund cases, the award exceeds that benchmark percentage." Id.; In re Activision Sec. Litig., 723 F. Supp.

1373, 1377 (N.D.Cal.1989) ("nearly all common fund awards range around 30%"). Thus, here, a 25%

fee is eminently reasonable.[11]  Further, Plaintiffs negotiated a meaningful settlement of the sick leave

claim earlier in the case that did not include any attorneys' fees whatsoever.  For all of these reasons, the

settlement has no obvious deficiencies and should be preliminarily approved.

### 4.   The Settlement Does Not Unfairly Grant Preferential Treatment to Any Settlement Class Members

"Consistent with Rule 23's instruction to consider whether 'the proposal treats class members

equitably relative to each other,' Fed. R. Civ. P. 23(e)(2)(C)(i), the Court considers whether the

Settlement 'improperly grant[s] preferential treatment to class representatives or segments of the class.'"

Hefler, 2018 WL 6619983, at *8 (citing In re Tableware Antitrust Litig., 484 F. Supp. 2d 1078, 1079

(N.D. Cal. 2007). "[T]o the extent feasible, the plan should provide class members who suffered greater

harm and who have stronger claims a larger share of the distributable settlement amount." Hendricks v.

StarKist Co., 2015 WL 4498083, *7 (N.D. Cal. July 23, 2015) (citing cases). However, "courts

recognize that an allocation formula need only have a reasonable, rational basis, particularly if

recommended by experienced and competent counsel." Id. citing Vinh Nguyen v. Radient Pharm.

Corp., 2014 WL 1802293, *5 (C.D. Cal. May 6, 2014). Here, the settlement will result in payment of a

fair and reasonable award to settlement class members, particularly in light of the litigation risks. Here,

---

[11]     Moreover, this percentage fee recovery is a lower percentage than many fee awards in other
California federal district courts.  See, e.g., Hernandez v. Dutton Ranch Corp., No. 19-CV-00817-EMC,
2021 WL 5053476, at *6 (N.D. Cal. Sept. 10, 2021) ("District courts within this circuit, including this
Court, routinely award attorneys' fees that are one-third of the total settlement fund."); Benitez v. W.
Milling, LLC, No. 1:18-CV-01484-SKO, 2020 WL 3412725, at *9 (E.D. Cal. June 22, 2020) (approving
one-third fee award) (collecting cases); Vasquez, 266 F.R.D. at 492 (E.D. Cal. 2010) (collecting recent
wage and hour cases in which counsel received fee awards in the range of 30% to 33.3% of the common
fund; Lusby v. GameStop Inc., 2015 WL 1501095, *9 (N.D. Cal. Mar. 31, 2015) (finding a one-third
fee award appropriate because to the results achieved, the risk of litigation, the skill required and the
quality of work, and the contingent nature of the fee and the financial burden carried by the plaintiffs);
Barnes v. The Equinox Grp., Inc., 2013 WL 3988804, *4 (N.D. Cal. Aug. 2, 2013) (awarding one-third
of gross settlement in fees and costs because counsel assumed substantial risk and litigated on a
contingency fee-basis).

settlement class members will receive settlement shares based on the number of miles they drove to pick up passengers (or food items) and transported passengers (or items) using the Uber application (as calculated by Uber's mileage data).

Likewise, the proposed enhancements for the named plaintiffs in this settlement are eminently reasonable. Plaintiffs will request enhancements of $10,000 for each of the three named plaintiffs who have brought this case.  See Liss-Riordan Decl. at ¶ 17.  Plaintiffs James and Verhines were each deposed and responded to extensive discovery and have been closely involved with the negotiations for this exceptional settlement. Likewise, Plaintiff Kent Hassell has provided extremely detailed records and documents related to his work for Uber (as reflected by the level of detail required by the court in the amended complaint in that cases) and has worked with counsel to prepare filings in the Hassell matter and has likewise been extensively involved in negotiations leading up to this settlement.

The requested amounts are in line with many awards in other cases in the federal district courts in California.  See, e.g., Covillo v. Specialtys Cafe, 2014 WL 954516, *8 (N.D. Cal. Mar. 6, 2014) (awarding $8,000 to class representatives from $2,000,000 fund); Van Vranken v. Atl. Richfield Co., 901 F. Supp. 294, 300 (N.D. Cal. 1995) (awarding $50,000 to named plaintiff out of $76 million settlement fund); Chu v. Wells Fargo Investments, LLC, 2011 WL 672645, *2 (N.D. Cal. Feb. 16, 2011) (awarding $10,000 incentive awards to two named plaintiffs).

Particularly given that the named plaintiffs have placed their names in the public eye as part of this high-profile litigation, these modest incentive payments are more than reasonable.  See Van Vranken, 901 F. Supp. at 299 (noting that in evaluating incentive awards, courts may consider "the notoriety and personal difficulties encountered by the class representative" and "the amount of time and effort spent by the class representative" among other factors); see also Bellinghausen v. Tractor Supply Co., 306 F.R.D. 245, 267 (N.D. Cal. 2015) ("Incentive awards are particularly appropriate in wage-and-hour actions where plaintiffs undertake a significant "reputational risk" by bringing suit against their former employers").

## V.    CONCLUSION

For the foregoing reasons, Plaintiffs' Motion for Preliminary Approval should be granted.  The Court should allow the Settlement Administrator to proceed with the issuance of notice and should schedule the case for a final settlement approval hearing in June 2022.

Date: February 17, 2022

Respectfully submitted,

CHRISTOPHER JAMES, SPENCER VERHINES, and KENT HASSELL, individually and on behalf of all others similarly situated,

By their attorneys,

_/s/ Shannon Liss-Riordan_____

Shannon Liss-Riordan, SBN 310719
Anne Kramer, SBN 315131
LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, MA 02116
(617) 994-5800
Email:  sliss@llrlaw.com; akramer@llrlaw.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing document was served by electronic filing on February 17, 2022, on all counsel of record.

_/s/ Shannon Liss-Riordan_
Shannon Liss-Riordan, Esq.