SHANNON LISS-RIORDAN, SBN 310719
(sliss@llrlaw.com)
ANNE KRAMER, SBN 315131
(akramer@llrlaw.com)
LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, MA 02116
Telephone:   (617) 994-5800
Facsimile:   (617) 994-5801

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTOPHER JAMES, et al., individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>UBER TECHNOLOGIES, INC.,<br><br>Defendant. | CASE NO. 19-cv-06462-EMC<br><br>**SUPPLEMENTAL BRIEF IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Hon. Edward M. Chen<br><br>Hearing:    March 24, 2022<br>Time:        1:30 p.m.<br>Courtroom: 5 |

Pursuant to the Court's Order of March 21, 2022 (Dkt. 190), Plaintiffs submit the following Supplemental Brief in support of their Motion for Preliminary Approval of Class Action Settlement.

**1. Verdict Value of Claims**

As set forth in the Declaration of Shannon Liss-Riordan in support of Preliminary Approval (Dkt. 189-3), Plaintiffs calculated the maximum verdict value of the certified claims at approximately $12.76 million.

This total is comprised of $7.95 million for vehicle-related expense reimbursement (which was calculated by taking class members' total mileage, both to pick up a passenger and with a passenger in the car, and multiplying it by the full IRS reimbursement rate during the relevant period); $475,740 for telephone reimbursement (which was calculated by multiplying the total number of pay periods worked by each settlement class member by $10 per pay period per class member); and $3.75 million for the pay statement claim (which was calculated by multiplying the total number of workweeks for each driver by $100[1], capped at $4,000 per driver).[2]

---

[1] Plaintiffs assumed a $50 violation for the first week and $100 for every week thereafter (with no class member exceeding $4,000 in damages).

[2] The other claims released in the settlement were not certified by the Court; however, the parties could only reach agreement to settle if the settlement encompassed global relief for the class, as discussed further *infra*, Part 3. In any case, Plaintiffs considered the value of the other claims being released, as detailed in the previously-filed Liss-Riordan Declaration ISO Preliminary Approval. Plaintiffs calculated the value of the sick leave claim at $600,000 (which was calculated by taking the portion of the class entitled to paid sick leave because they worked more than three months during the class period, and assuming three days of paid leave per driver at a rate of $20/hour). Given that the Parties already achieved a partial recovery on this claim through their earlier settlement in the *Verhines* case, the amount of damages should be discounted accordingly. Plaintiffs considered the other wage-and-hour claims at issue as having negligible value, for the reasons explained in the Liss-Riordan Declaration. The minimum wage and overtime claims in particular were not a focus of the parties' negotiations, as those claims were not certified by the Court in its Class Certification Order. However, Plaintiffs note that they had calculated overtime claims to be worth approximately $232,000 in the *O'Connor* settlement (based upon the time providing rides), and the class here and time period covered are much smaller than in that case. *See O'Connor*, Civ. A. No. 13-3826, Dkt. 916 at ¶ 56.

Thus, the settlement represents 100% of the estimated maximum verdict value of the most valuable claim in the case, expense reimbursement. Given that other courts have approved recoveries of much lower percentages of the value of the expense reimbursement claim (for example, 42% in *O'Connor*[3] and 17% in *Cotter v. Lyft, Inc.*, 193 F. Supp. 3d 1030, 1039 (N.D. Cal. 2016)), the settlement here, representing 100% of the value of the expense reimbursement claim, is unprecedented. The settlement also represents 69% of the estimated maximum verdict value of the expense reimbursement and the pay statement claim, the two claims that were certified in this case.[4] Plaintiffs' counsel considers this the best recovery she has obtained to date on behalf of gig economy workers in a class action.

### 2. Litigation Risks

As set forth in the Declaration of Shannon Liss-Riordan in support of Preliminary Approval at ¶¶18-20, there are several specific risks that particularly warrant approval of this settlement.

**First**, Plaintiffs believe their claims are very strong on the merits and that they were likely to succeed in proving that Uber's drivers were employees under an ABC test for employee status, at least for the pre-December 2020 time period (when Proposition 22 went into effect). However, uncertainty remains regarding the precise scope of the *Dynamex* decision, including most importantly whether it applies to the principal claim in this case, expense reimbursement, for the period prior to the adoption of AB 5, which went into effect on January 1, 2020. *See Lawson v. Grubhub, Inc.*, 13 F. 4th 908, 917 (9th Cir. 2021) ("Neither *Dynamex* nor AB 5 clearly settles whether the ABC test should be applied to [plaintiff's] expense reimbursement claim."); *compare Johnson v. VCG-IS, LLC, et al.*, Case No. 30-2015-

---

[3] "The $ 20 million monetary settlement [in *O'Connor*] amount[ed] to 37% of the $ 54 million verdict value of Plaintiffs' claims" for expense reimbursement and gratuities and 42% of the expense reimbursement claim on its own. *O'Connor v. Uber Techs., Inc.*, No. 13-CV-03826-EMC, 2019 WL 1437101, at *11 (N.D. Cal. Mar. 29, 2019).

[4] For the reasons set forth below and in the Liss-Riordan Declaration ISO Preliminary Approval, Plaintiffs submit that the pay statement claim faces significant challenges and is entitled to a substantial discount. *See* Liss-Riordan Decl. ISO Prelim. App. at ¶¶ 31-35.

00802813, Ruling on Motion in Limine (Orange County Super. Ct. July 18, 2018) (finding expense reimbursement claims under § 2802 covered by the *Dynamex* decision), *Gonzales v. San Gabriel Transit, Inc.*, 40 Cal. App. 5th 1131, 1157 (2019) (same); with *Garcia v. Border Transportation Group, LLC*, 28 Cal. App. 5th 558 (2018) (assuming that § 2802 claims are not covered by the "ABC" test even though there was no § 2802 claim at issue in that case); *Haitayan v. 7-Eleven, Inc.*, No. CV 17-7454 DSF (ASX), 2021 WL 757024, at *5 (C.D. Cal. Feb. 8, 2021) (holding *Borello* standard applied to § 2802 claim rather than ABC test, for period prior to January 1, 2020), *appeal pending*, Ninth Cir. Appeal No. 21-56144, 21-56145; *Karl v. Zimmer Biomet Holdings Inc.*, 2018 WL 5809428 *3 (N.D. Cal. Nov. 6, 2018) (finding plaintiff's claim for expense reimbursement did not arise under the Wage Orders and therefore *Dynamex* did not apply). Were the *Borello* test to apply to the expense reimbursement claim, Plaintiffs faced risk in bringing the employee status question before a jury, since the most important factor of whether a worker is an employee under *Borello* is whether Uber has "the right to control the manner and means" of drivers' work. *S.G. Borello & Sons, Inc. v. Dep't of Indus. Relations*, 48 Cal. 3d 341, 350 (1989). Though Plaintiffs vigorously contend that they should have been classified as employees under either the *Borello* or the *Dynamex* test, there is certainly more risk to the drivers under the *Borello* test.

**Second**, even if Plaintiffs won on liability, the damages award could be sharply reduced if the full IRS reimbursement rate were not ultimately utilized to measure expenses for vehicle reimbursement. If Uber's preferred variable rate were used to measure damages, then expense reimbursement would be decreased by ***more than*** 50%. As Plaintiffs' counsel has set forth before, the costs of owning and operating a vehicle fall into two categories: fixed and variable. Fixed expenses are those that do not vary over time from month to month, including depreciation and insurance, whereas variable expenses are costs that fluctuate month to month, such as the costs of gas, maintenance, and tires. Plaintiffs' use of the IRS fixed rates (which are actually called the IRS "Fixed and Variable Rates", but Plaintiffs refer to them here as the

"fixed rates" for convenience) would compensate drivers for both types of costs. However, Uber intended to argue at trial (had Plaintiffs succeeded on liability) that only variable costs attributable to driving for Uber should be used because drivers would have incurred the fixed expenses even if they did not use their cars for Uber.  In other words, a driver using his own car would have had to pay for insurance and depreciation regardless of whether he drove for Uber, whereas variable costs like gas and wear and tear could be more directly attributable to driving for Uber. Plaintiffs would have disputed Uber's reasoning because drivers cannot perform their job without a car, and Uber requires them to have cars of a certain make and model and to have insurance, meaning that they cannot do the job without having to pay these fixed expenses. Furthermore, many drivers do upgrade their cars or even buy a brand-new car in order to meet Uber's standards, so Plaintiffs do not agree that all drivers were paying only these fixed costs regardless.

Although Plaintiffs would have vigorously disputed Uber's argument, they recognize that there was a serious risk that Uber's argument could gain traction with the jury, and that if the variable rate were applied, the expense reimbursement claim would be worth far less than Plaintiffs had estimated.  Plaintiffs believe this settlement to be a huge achievement, as it provides for 100% of expense reimbursement, measured at the *full IRS reimbursement rate*.

**Third**, Plaintiffs faced significant risks on the pay statement under Cal. Lab. Code § 226. Although Plaintiffs moved for summary judgment on this claim, it would have been difficult for Plaintiffs to show injury here, including because Uber would argue that its pay statements set forth the information required by law insofar as they provide detailed information for each and every ride, including the duration and time of the ride and compensation for the ride. Uber would argue that the statements are sufficient to allow drivers to "quickly verify earnings when looking at the wage statements." *Holak v. K Mart Corp.*, 2014 WL 4930762, at *7 (E.D. Cal. Sept. 30, 2014). Moreover, even assuming that Plaintiffs could show injury arising from a violation of § 226, such a violation of § 226 is actionable only

if it is "knowing and intentional," and therefore courts have permitted employers to assert a good faith defense to the claim at or after trial. *Dalton v. Lee Publications, Inc.*, 2011 WL 1045107, at *5 (S.D. Cal. Mar. 22, 2011) (finding that good faith dispute as to whether plaintiffs were independent contractors exempt from Section 226 precludes a finding that defendant acted "with the requisite scienter" of knowing and intentional); *Hurst v. Buczek Enterprises, LLC*, 870 F. Supp. 2d 810, 829 (N.D. Cal. 2012) ("when a party makes a good faith claim that a worker [has been properly classified as exempt], its failure to provide accurate wage statements is not knowing and intentional."). Accordingly, Plaintiffs recognize they would face a challenge in overcoming Uber's defenses to this claim.

**Finally**, Plaintiffs took into account the delay associated with proceeding with this case on the merits. Plaintiffs were extremely confident in their ability to prove that Plaintiffs were Uber's employees under the "ABC" test, particularly in light of the decision in *People v. Uber Techs., Inc.*, 56 Cal. App. 5th 266, 270 Cal. Rptr. 3d 290 (2020), *as modified on denial of reh'g* (Nov. 20, 2020), *review denied* (Feb. 10, 2021). However, Uber was expected to argue that *People v. Uber* was only a decision reviewing the grant of an injunction and did not decide the ultimate question of whether drivers are misclassified.

Furthermore, even if Plaintiffs succeeded in proving that Uber could not satisfy all three parts of the ABC test, Uber would certainly appeal any decision against it, delaying any relief for drivers by as much as several years.  A settlement that will get money into drivers' pockets now, without further delay, is what drivers sorely need and make clear to counsel on a daily basis.

**3. Differences in Class Definition**

The Court asked the Parties to explain why differences between the class definition certified by this Court in its Class Certification Order and the Parties' proposed definition of the Settlement Class are appropriate. *See* Dkt. No. 190 at p. 1. The Settlement Class in this case is comprised of two groups of drivers: (1) the vast majority of drivers -- approximately 1,240

drivers who are part of the class previously certified by this Court (and whose release ends as of the date Proposition 22 became effective); and (2) an additional very small group of 97 drivers are part of the putative class in a separate case, *Hassell v. Uber Technologies Inc.*, Civ. A. No. 4:20-cv-04062-PJH (N.D. Cal.), which was brought on behalf of drivers who drove exclusively for Uber EATS.[5] The Parties agreed to settle both actions as part of this combined settlement and to seek approval from this Court.

The Court previously certified a class of Uber drivers who transported passengers and "who have driven for Uber in the state of California since February 28, 2019 and [] opted out of Uber's arbitration agreement." *James v. Uber Techs. Inc.*, 338 F.R.D. 123, 130 (N.D. Cal. 2021). The release period for these drivers (i.e. those who transported passengers) is identical to the class previously certified by this Court -- namely, February 28, 2019 through December 17, 2020. *See id.* By contrast, a small number of drivers in the Settlement Class drove exclusively for Uber EATS and made food deliveries rather than transporting passengers. These drivers are the subject of a parallel class action, *Hassell v. Uber Technologies Inc.*, Civ. A. No. 4:20-cv-04062-PJH (N.D. Cal.), which has yet to be certified. The release period in the *Hassell* case is different because these drivers were not part of the previous *O'Connor* settlement and therefore did not release claims dating back prior to February 28, 2019. Further, the Plaintiffs in *Hassell* expressly reserved their right to bring claims after the passage of Proposition 22, based on the possibility that Uber has failed to comply with the mandates of Proposition 22 (and the court ruling holding it to be unconstitutional, *see Castellanos v. State*

---

[5]   Drivers who drove passengers and also made deliveries for Uber EATS were included in the prior *O'Connor* settlement as well as the Court's certified class in this case. In other words, any driver who drove passengers, would have *all* of their mileage credited, including mileage driving for Uber EATS.  Thus, this case (and the *O'Connor* settlement that preceded it) account for the vast majority of Uber drivers who opted out of the arbitration clause. There were just 97 drivers who consistently opted out of Uber's arbitration agreement and drove exclusively for Uber EATS. The Parties agreed that it made sense to include these drivers in this settlement rather than separately seeking approval of a settlement of their claims in the *Hassell* case for such a small number of drivers.

*of California*, RG21088725 (Alameda Sup. Ct. Aug. 20, 2021)).[6] As such, the parties agreed that the release period for these 97 drivers would be extended back to four years prior to the filing of the Complaint and forward into early 2021, just before the settlement was reached in this case. These drivers are being fully compensated for all miles driven throughout this period, at the same rate as the drivers in the *James* class.

Plaintiffs submit that it is appropriate to certify the *Hassell* sub-class in addition to the *James* class that this Court has already certified for all of the same reasons that the Court cited in its prior Class Certification Order. See *James*, 338 F.R.D. at 130-40. Indeed, the legal issues and claims in the *Hassell* case are materially identical to those in the *James* case; the main differences are that the *Hassell* drivers transported food rather than passengers and that their class covers a longer timeframe.[7] As such, Plaintiffs submit that the proposed Settlement Class definition is appropriate and should be approved by the Court.

The Court also asked Plaintiffs to address why it is appropriate to include a release of claims for minimum wage, overtime, and paid sick leave, when the Court declined to certify these claims in its prior Class Certification Order. *See* Dkt. 190 at pp. 1-2. As an initial matter, it is commonplace in wage-and-hour class settlements to release all claims reasonably related to the action in recognition of the fact that a settling defendant wants to achieve a global peace. *Wal-Mart Stores, Inc. v. Visa USA, Inc.*, 396 F.3d 96, 106 (2d Cir. 2005) ("Broad class action settlements are common, since defendants and their cohorts would otherwise face nearly limitless liability from related lawsuits in jurisdictions throughout the country. Practically

---

[6] *See* Dkt. 1 at n. 2 ("On December 17, 2020, Proposition 22 went into effect in California, which exempts certain app-based companies from A.B. 5. While it is possible that, as of December 17, 2020, Proposition 22 may relieve Uber Eats of its liability as alleged in this Amended Complaint, it is yet to be determined whether Uber Eats is in compliance with its requirements, and, thus, whether it may claim a defense under Proposition 22.").

[7] Particularly given that drivers in the certified class in this case would have their delivery miles credited (in addition to their miles driving passengers), it only makes sense to include these additional 97 drivers who drove exclusively for Uber EATS.

speaking, class action settlements simply will not occur if the parties cannot set definitive limits on defendants' liability." (citations and internal quotation marks omitted)). Thus, a settlement release in cases such as this one frequently includes *all* claims that are reasonably related to those pled in the Complaint, including other wage-and-hour claims stemming from the drivers' alleged misclassification.[8] Conversely, an overbroad release in the wage and hour context might, for example, release *all* claims that class members could have against the defendant, *e.g.* claims for discrimination. *See Ambrosino v. Home Depot U.S.A, Inc.*, 2014 WL 1671489, *3 (S.D. Cal. Apr. 28, 2014).

Here, the Parties modeled the release on the release previously approved by this Court in the *O'Connor* settlement, which included all wage-and-hour related claims against Uber. As the Court previously concluded in *O'Connor*, the Court is well within its authority to certify this somewhat broader class for settlement purposes. *See In re TRS Recovery Servs., Inc. & Telecheck Servs., Inc., FDCPA Litig.*, 2016 WL 543137, at *2-3 (D. Me. Feb. 10, 2016) (holding that certification of a settlement class that included individuals whom the court "formerly declined" to include in the originally certified class was appropriate, because the

---

[8] *See O'Connor v. Uber Techs., Inc.*, No. 13-CV-03826-EMC, 2019 WL 4394401, at *1 (N.D. Cal. Sept. 13, 2019), *aff'd,* No. 19-17073, 2019 WL 7602362 (9th Cir. Dec. 20, 2019) (approving settlement with "an expansive release provision, requiring Class Members to release 'any and all' claims 'based on or reasonably related to the claims asserted in' *O'Connor* and *Yucesoy*"); *Cotter* 193 F. Supp. 3d at 1038 (N.D. Cal. 2016) (approving same scope of release contemplated here and noting that "[w]hat matters is whether the released claims arise from the same facts as those alleged in the lawsuit, and whether the settlement as a whole is reasonable in light of the strength and value of all the claims being released"); *Marciano v. DoorDash Inc.*, Case No. CGC-15-548101(San Francisco Cty. Sup. Ct. July 12, 2018) (approving settlement with same breadth of release contemplated here); *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 957 (9th Cir. 2009) (affirming settlement that provided for "release of all claims…related to the conduct alleged in the complaint"); *see also Nen Thio v. Genji, LLC*, 14 F. Supp. 3d 1324, 1334 (N.D. Cal. 2014) ("while the scope of the release in the proposed settlement is broad, it is acceptable because the claims released are limited to those based upon the facts set forth in the First Amended Complaint."); *Greko v. Diesel U.S.A., Inc.*, 2013 WL 1789602, *6 (N.D. Cal. Apr. 26, 2013) (approving release of claims "arising from, or related to, the same facts alleged in or that reasonably could have been included" in the complaint); *Bond v. Ferguson Enterprises, Inc.*, 2011 WL 2648879, *3 (E.D. Cal. June 30, 2011) (approving release of "All claims, demands, rights, liabilities, and causes of action, whether brought directly, representatively, or in any capacity, that were or could have been asserted in the Lawsuit based upon the facts alleged therein").

"plaintiffs could [have] appeal[ed]" the prior certification order and the defendants were accordingly entitled to "demand compromise of that nationwide claim . . . as part of their willingness to settle with the plaintiffs"); *In re New Motor Vehicles Canadian Exp. Antitrust Litig.*, 236 F.R.D. 53, 56 (D. Me. 2006) (noting that "there may be some value for settlement purposes even to substantive claims that I have rejected, because the plaintiffs have preserved their rights of appeal and could persuade the First Circuit that I was wrong."). Indeed, the Supreme Court has advised that when "[c]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, for the proposal is that there be no trial." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 620 (1997); *accord* William B. Rubenstein, Newberg on Class Actions § 4:63 (5th ed. 2011) (noting that "in settlement class actions, because manageability need not be a concern, predominance—the main focus of manageability—recedes in importance," and "many courts have held that individualized issues may bar certification for adjudication because of predominance related manageability concerns but that these same problems do not bar certification for settlement"); *see also In re Am. Int'l Grp., Inc. Sec. Litig.*, 689 F.3d 229, 240 (2d Cir. 2012) (finding "[m]anageability concerns posed by numerous individual questions . . . disappear[ed]" for settlement class); *Sullivan v. DB Investments, Inc.*, 667 F.3d 273, 302-303 (3d Cir. 2011) (finding "no need to inquire" into whether variations in state law undermined predominance requirement as to certification for settlement class). As such, to the extent the Court's refusal to certify and minimum wage and overtime claims in its prior Class Certification Order was premised on manageability concerns in discerning whether individual drivers' "on-call" time was compensable, these concerns are not an issue in the settlement context.

For example, in *In Re: Mid–Atlantic Toyota Antitrust Litigation*, 93 F.R.D. 485 (D.Md.1982), the court initially denied class certification, but later approved a settlement class that included claims it had previously declined to certify. *In re Mid-Atl. Toyota Antitrust Litig.*,

564 F. Supp. 1379, 1390-91 (D. Md. 1983); *accord In re Pharm. Indus. Average Wholesale Price Litig.*, 588 F.3d 24, 40-41 (1st Cir. 2009) (affirming certification of settlement class that included individuals who were excluded from the previously certified litigation class on predominance grounds, underscoring that the defendant had "bargained for 'total peace' to resolve all remaining claims against it" as part of the settlement). Here, the Court can do the same and should approve the same scope of release it previously approved in *O'Connor*, which includes minimum wage and overtime claims.

Date: March 23, 2022

                                                   Respectfully submitted,

                                                   CHRISTOPHER JAMES and SPENCER VERHINES, individually and on behalf of all others similarly situated,

                                                   By their attorneys,

                                                 /s/ Shannon Liss-Riordan
                                                 Shannon Liss-Riordan, SBN 310719
                                                 LICHTEN & LISS-RIORDAN, P.C.
                                                 729 Boylston Street, Suite 2000
                                                 Boston, MA 02116
                                                 (617) 994-5800
                                                 Email:  sliss@llrlaw.com