SHANNON LISS-RIORDAN, SBN 310719
(sliss@llrlaw.com)
ANNE KRAMER, SBN  315131
(akramer@llrlaw.com)
LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, MA 02116
Telephone:     (617) 994-5800
Facsimile:     (617) 994-5801

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTOPHER JAMES, et al., individually and on behalf of all others similarly situated, Plaintiffs, <br><br> v. <br><br> UBER TECHNOLOGIES, INC., Defendant. | CASE NO. 19-cv-06462-EMC <br><br> **NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES, COSTS, EXPENSES, AND SERVICE AWARDS AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** <br><br> Hearing Date: July 14, 2022 <br> Hearing Time: 2:30 pm <br> Courtroom:     5 <br> Judge: Judge Edward Chen |

1

## NOTICE OF MOTION AND MOTION

2

**TO DEFENDANTS AND THEIR ATTORNEYS OF RECORD:**

3

**PLEASE TAKE NOTICE THAT** on July 14, 2022, at 2:30 p.m., or as soon thereafter

4

as the matter can be heard before the Honorable Edward M. Chen, in Courtroom 5, 17th Floor,

5

U.S. District Court, Northern District of California, located at 450 Golden Gate Avenue, San

6

Francisco, CA, 94102, Plaintiffs will and hereby do move the Court pursuant to Federal Rule

7

of Civil Procedure 23 for an Order granting Plaintiffs' request for attorneys' fees and costs and

8

class representative service awards.

9

This Motion is based on this Notice of Motion and Motion; the Memorandum of Points

10

and Authorities below; the Declaration of Shannon Liss-Riordan filed concurrently herewith;

11

the Declarations of Spencer Verhines, Christopher James, and Kent Hassell filed concurrently

12

herewith; all supporting exhibits filed herewith; all other pleadings and papers filed in this action;

13

and any argument or evidence that may be presented at the hearing in this matter.

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

Page

I.    INTRODUCTION ................................................................................................ 1

II.   LEGAL STANDARD ........................................................................................ 2

III.  DISCUSSION .................................................................................................... 5

      A.   Counsel's Fee Request is Fair and Reasonable and In Line With the Ninth
           Circuit's 25% Benchmark ...................................................................... 5

      B.   Other Factors Support Plaintiffs' Request for Fees ................................ 6

           1.   Counsel Has Achieved Exceptional Results. .................................. 6

           2.   The Degree of Risk in This Litigation Was High. .......................... 7

           3.   Counsel's Efforts Have Generated Substantial Benefits.................. 9

           4.   The Requested Percentage of the Fund of 25% Is In Line With Or
                Below The Market Rate. ............................................................... 9

           5.   Counsel Has Spent Several Years Representing the Class On a
                Contingent Basis. ...................................................................... 10

           6.   Class Counsel Is Highly Experienced and Skilled........................ 11

           7.   The Issues In This Case Are Both Novel and Complex................. 13

           8.   The Reaction of the Class ............................................................ 13

           9.   The Lodestar Cross-Check Confirms That Plaintiffs' Request Is
                Reasonable ................................................................................ 14

                a.   Counsel's Hours Worked are Reasonable........................... 15

                b.   Counsel's Hourly Rates are Reasonable ............................ 18

      C.   Plaintiffs' Request for Class Representative Service Enhancements is
           Reasonable .......................................................................................... 23

IV.   CONCLUSION ................................................................................................ 25

NOTICE OF MOTION AND MOTION FOR PLAINTIFFS' MOTION FOR ATTORNEYS' FEES, COSTS,
EXPENSES, AND SERVICE AWARDS– CASE NO. CV 19-cv-06462-EMC

# TABLE OF AUTHORITIES
(continued)

**Cases**                <u>Page(s)</u>

<u>700 Valencia St. LLC v. Farina Focaccia & Cucina Italiana, LLC</u>
    2018 WL 783930 (N.D. Cal. Feb. 8, 2018)................................................................... 22

<u>Ackerman v. W. Elec. Co.</u>
    643 F. Supp. 836, 863-64 (N.D. Cal. 1986), <u>aff'd,</u> 860 F.2d 1514 (9th Cir. 1988)...................... 15

<u>AdTrader, Inc. v. Google LLC</u>
    2020 WL 1921774 (N.D. Cal., Mar. 24, 2020) <u>appeal dismissed</u> 7 F.4th 803 (9th
    Cir. 2021) ............................................................................................................ 21

<u>Aichele v. City of Los Angeles</u>
    2015 WL 5286028 (C.D. Cal. Sept. 9, 2015)............................................................... 2

<u>Alvarado v. FedEx Corp.</u>
    2011 WL 4708133 (N.D. Cal. 2011)........................................................................... 16

<u>Barbosa v. Cargill Meat Sols. Corp.</u>
    297 F.R.D. 431 (E.D. Cal. 2013) ............................................................................ 5, 9

<u>Barnes v. The Equinox Grp., Inc.</u>
    2013 WL 3988804 (N.D. Cal. Aug. 2, 2013)............................................................... 10

<u>Beckman v. KeyBank, N.A.</u>
    293 F.R.D. 467 (S.D.N.Y. 2013) ............................................................................ 14

<u>Bellinghausen v. Tractor Supply Co.</u>
    306 F.R.D. 245 (N.D. Cal. 2015)............................................................................. 8

<u>Betancourt v. Advantage Hum. Resourcing, Inc.</u>
    No. 14-CV-01788-JST, 2016 WL 344532 (N.D. Cal.,. Jan. 28, 2016) ................................. 20, 22

<u>Blum v. Stenson</u>
    465 U.S 886 (1984) ............................................................................................... 3

<u>Boeing Co. v. Van Gemert</u>
    444 U.S. 472 (1980) ............................................................................................. 3

<u>Brawner v. Bank of Am. Nat'l Ass'n</u>
    2016 WL 161295 (N.D. Cal. Jan. 14, 2016) ................................................................ 6

<u>Brinskele v. United States</u>
    2014 WL 4832263 (N.D. Cal. May 22, 2014) <u>report and recommendation adopted,</u>
    2014 WL 4826153 (N.D. Cal. Sept. 29, 2014) ............................................................ 15

**TABLE OF AUTHORITIES**
(continued)

Page(s)

Broomfield v. Craft Brew All., Inc.
  2020 WL 1972505 (N.D. Cal. Feb. 5, 2020)........................................................ 22

Buccellato v. AT & T Operations, Inc.
  No. 10 Civ. 463, 2011 WL 3348055 (N.D. Cal. Jun. 30, 2011) ............................ 14

Camden I Condominium Association v. Dunkle
  946 F.2d 768 (11th Cir.1991)................................................................................. 3

Campbell v. Best Buy Stores, L.P.
  2015 U.S. Dist. LEXIS 186976 (C.D. Cal. June 23, 2015).............................. 21, 22

Chaudhry v. City of Los Angeles
  751 F.3d 1096 (9th Cir.), cert. denied sub nom. City of Los Angeles, Cal. v.
  Chaudhry, 135 S. Ct. 295 (2014) ......................................................................... 17

City National Bank v. American Com. Financial Corp.
  657 F. Supp. 817 (W.D.N.C. 1987) ...................................................................... 10

Civil Rights Educ. & Enf't Ctr. v. Ashford Hosp. Tr., Inc.
  2016 WL 1177950 (N.D. Cal. Mar. 22, 2016)...................................................... 19

Contreras v. Zūm Services, Inc.
  19STCV43062 (L.A. Super. Ct. Mar. 25, 2022)....................................... 19, 21, 22

Cotter v. Lyft Inc.
  2017 WL 1033527 (N.D. Cal. Mar. 16, 2017) ...................................................... 19

Cotton v. City of Eureka, Cal.
  889 F. Supp. 2d 1154 (N.D. Cal. 2012) ................................................................ 15

Covillo v. Specialtys Cafe
  2014 WL 954516 (N.D. Cal. Mar. 6, 2014)........................................................... 24

Cuviello v. Feld Entm't, Inc.
  2015 WL 154197 (N.D. Cal. Jan. 12, 2015) ......................................................... 22

Davis v. J.P. Morgan Chase & Co.
  827 F.Supp.2d 172 (W.D.N.Y.2011) .................................................................... 14

Defenbaugh v. JBC & Associates, Inc.
  2004 WL 1874978 (N.D. Cal. Aug. 10, 2004)...................................................... 16

Dimry v. Bert Bell/Pete Rozelle NFL Player Ret. Plan
  No. 3:16-CV-01413-JD, 2018 WL 6726963 (N.D. Cal. Dec. 22, 2018) ................ 19

# TABLE OF AUTHORITIES
(continued)

Page(s)

Dixon v. City of Oakland
   2014 WL 6951260 (N.D. Cal. Dec. 8, 2014) ............................................................................ 21

Dmuchowsky v. Sky Chefs, Inc.
   2019 WL 1934480 (N.D. Cal. May 1, 2019) ........................................................................... 21

EK Vathana v. Everbank
   2016 WL 3951334 (N.D. Cal. July 20, 2016) ......................................................................... 23

Fernandez v. Victoria Secret Stores, LLC
   2008 WL 8150856 (C.D. Cal. July 21, 2008) ......................................................................... 10

Fleury v. Richemont N. Am., Inc.
   2009 WL 1010514 (N.D. Cal. Apr. 14, 2009) ....................................................................... 3, 4

Garcia v. Border Transp. Group, LLC
   28 Cal. App. 5th 558 (2018) ....................................................................................................... 7

Garcia v. Resurgent Capital Services, L.P.
   2012 WL 3778852 (N.D. Cal. 2012) ................................................................................... 16, 17

Garner v. State Farm Mut. Auto. Ins. Co.
   2010 WL 1687829 (N.D. Cal. Apr. 22, 2010) .................................................................. 8, 11, 23

Gauchat-Hargis v. Forest River, Inc.
   2013 WL 4828594 (E.D. Cal. Sept. 9, 2013) ......................................................................... 16

Gong- Chun v. Aetna Inc.
   2012 WL 2872788 (E.D. Cal. July 12, 2012) ......................................................................... 18

Gonzales v. San Gabriel Transit, Inc.
   40 Cal. App. 5th 1131 (2019) ..................................................................................................... 7

Gonzalez v. City of Maywood
   729 F.3d 1196 (9th Cir. 2013) .................................................................................................. 20

Gutierrez v. Wells Fargo Bank, N.A.
   2015 WL 2438274 (N.D. Cal. May 21, 2015) ....................................................................... 19

Hendricks v. Starkist Co.
   2016 WL 5462423 (N.D. Cal., 2016) .................................................................................... 2, 5

Henry v. Cent. Freight Lines, Inc.
   No. 2:16-cv-00280-JAM-EFB, 2019 WL 2465330 (E.D. Cal. June 13, 2019) ............................ 8

**TABLE OF AUTHORITIES**
(continued)

Page(s)

Hensley v. Eckerhart
     461 U.S. 424 (1983) ............................................................................. 9

Hernandez v. Erin Capital Mgmt., LLC
     2011 WL 4595802 (C.D. Cal. Oct. 3, 2011) ...................................... 16

Hickcox-Huffman v. US Airways, Inc
     2019 WL 1571877 (N.D. Cal., Apr. 11, 2019) ................................... 23

Hightower v. JPMorgan Chase Bank, N.A.
     2015 WL 9664959 (C.D. Cal. 2015).................................................... 8

Horsford v. Bd. of Trustees of Cal. State Univ.
     132 Cal.App.4th 359 (2005)............................................................... 17

Hwang v. Smith Corona Corp.
     B.89-450 (D. Conn. Mar. 12, 1992) .................................................. 10

In re Activision Sec. Litig.
     723 F. Supp. 1373 (N.D. Cal. 1989) ............................................... 3, 9

In re Bluetooth Headset Products Liab. Litig., 654 F.3d 935 (9th Cir. 2011) ..................................... 2

In re Butler
     A139411, 2015 WL 3658409 (Cal. App. 1st Dist. June 15, 2015)............................................. 22

In re Consumer Privacy Cases
     175 Cal. App. 4th 545 (2009)............................................................... 5

In re Continental Ill. Sec. Litig.
     962 F.2d 566 (7th Cir. 1992)................................................................ 4

In re Crazy Eddie Securities Litig.
     824 F. Supp. 320 (E.D.N.Y. 1993) ................................................... 10

In re Franklin Nat'l Bank
     [1980 Transfer Binder] Fed. Sec. L. Rep. (CCH) &97,571 (E.D.N.Y. 1980) ............................ 10

In re Mercury Interactive Corp. Securities Litigation
     618 F.3d 988 (9th Cir. 2010)............................................................. 13

In re Nuvelo, Inc. Sec. Litig.
     2011 WL 2650592 (N.D. Cal. July 6, 2011) .................................... 6, 8

# TABLE OF AUTHORITIES
### (continued)

Page(s)

In re Rossco Holdings, Inc.
    2014 WL 2611385 (C.D. Cal. May 30, 2014) ................................................................ 15

In re Thirteen Appeals Arising Out of the San Juan Dupont Plaza Hotel Fire Litig.
    56 F.3d 295 (1st Cir. 1995) ........................................................................................ 3, 4

In Re: Lithotripsy Antitrust Litigation
    No. 98 C 8394, 2000 U.S. Dist. LEXIS 8143 (N.D. Ill. June 12, 2000)...................... 10

In re: Medical X-Ray Film Antitrust Litigation
    1998 U.S. Dist. LEXIS 14888 (E.D.N.Y. Aug. 7, 1998) ............................................. 10

Independent Living Center of S. Cal. v. Kent
    2020 U.S. Dist. LEXIS 13019 (C.D. Cal. 2020)......................................................... 21

Independent Living Center of S. Cal. v. Kent
    2020 U.S.Dist. LEXIS 13019 (C.D. Cal. 2020)......................................................... 19

James v. Uber
    Ninth Cir. No. 21-80006, Dkt. No. 4 (9th Cir. April 13, 2021) ............................. 13, 22

Johnson v. Brennan
    2011 WL 4357376 (S.D.N.Y. 2011) ........................................................................ 14

Johnson v. VCG-IS, LLC
    Case No. 30-2015-0080281 (Super. Ct. Cal. July 18, 2018) ........................................ 7

Johnson v. VGC-IS, LLC
    Case No. 30-2015-00802813 (Cal. Sup., July 18, 2018) ............................................ 13

Kanawi v. Bechtel Corp.
    2011 WL 782244 (N.D. Cal. Mar. 1, 2011).................................................................. 8

Karl v. Zimmer Biomet Holdings Inc.
    2018 WL 5809428 (N.D. Cal. Nov. 6, 2018).............................................................. 8

Kilopass Tech., Inc. v. Sidense Corp.
    82 F. Supp. 3d 1154 (N.D. Cal. 2015) ...................................................................... 15

Knight v. Red Door Salons, Inc.
    2009 WL 248367 (N.D. Cal. 2009)............................................................................ 3

Kries v. City of San Diego
    2021 U.S. Dist. LEXIS 6826 (S.D. Cal. Jan. 13, 2021) .............................................. 21

**TABLE OF AUTHORITIES**
(continued)

Page(s)

Laffitte v. Robert Half Intern. Inc.
376 P.3d 672  (Cal. 2016) ............................................................................................. 2

Lawson v. Grubhub, Inc.
302 F.Supp.3d 1071 (N.D. Cal. 2018), vacated and remanded No. 18-15386, 2021
WL 4258826 (9th Cir., Sept. 20, 2021) ...................................................................... 12

Lema v. Comfort Inn Merced
2014 WL 1577042 (E.D. Cal. Apr. 17, 2014) ............................................................ 16

Lota by Lota v. Home Depot U.S.A., Inc.
2013 WL 6870006 (N.D. Cal. Dec. 31, 2013) ........................................................... 16

Luna v. Universal City Studios, LLC
2016 WL 10646310 (C.D. Cal. Sept. 13, 2016) .......................................................... 21

Lusby v. GameStop Inc.
2015 WL 1501095 (N.D. Cal. Mar. 31, 2015) ..................................................... 10, 24

Maley v. Del Global Techs. Corp.
186 F.Supp.2d 358 (S.D.N.Y.2002) ........................................................................... 14

Marko v. DoorDash Inc.
BC659841 (Jan. 13, 2022) .................................................................................... 19, 20

McKenzie v. Federal Exp. Corp.
2012 WL 2930201 (C.D. Cal. July 2, 2012) .............................................................. 14

McKibben v. McMahon
2019 WL 1109683 (C.D. Cal., Feb. 28, 2019) ............................................... 21, 22, 23

Medina v. Equilon Enterprises, LLC
2021 WL 4128882 (Cal. Ct. App., Sept. 10, 2021) .................................................... 12

Meewes v. ICI Dulux Paints
No. BC265880 (L.A. Cnty. Super. Ct. Sept. 19, 2003) .............................................. 23

Monterrubio v. Best Buy Stores, L.P.
291 F.R.D. 443 (E.D. Cal. 2013) ............................................................................... 25

Morales v. Conopco, Inc.
2016 WL 6094504 (E.D. Cal. 2016) ............................................................................ 3

Moralez v. Whole Foods Mkt., Inc.
2013 WL 3967639 (N.D. Cal. July 31, 2013) ............................................................ 17

**TABLE OF AUTHORITIES**
(continued)

Page(s)

Moreno v. City of Sacramento
    534 F.3d 1106 (9th Cir. 2008)....................................................................... 17

Moreno v. JCT Logistics, Inc.
    2019 WL 3858999 (C.D. Cal. May 29, 2019) .................................................. 8

Morgret v. Applus Technologies, Inc.
    2015 WL 3466389 (E.D.Cal. 2015)................................................................ 14

MSC Mediterranean Shipping Co. Holding S.A. v. Forsyth Kownacki LLC
    2017 WL 1194372 (S.D.N.Y. Mar. 30, 2017) ............................................... 19

Murillo v. Pacific Gas & Elec. Co.
    2010 WL 2889728 (E.D. Cal., July 21, 2010) ............................................... 23

Nat'l Fed'n of the Blind of Cal. v. Uber Techs., Inc.
    No. 14–cv–4086–NC (N.D. Cal. Dec. 6, 2016) .............................................. 19

Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.
    221 F.R.D. 523 (C.D.Cal.2004) ..................................................................... 13

Nitsch v. DreamWorks Animation SKG Inc.
    2017 WL 2423161 (N.D. Cal. June 5, 2017) ................................................. 22

Noroma v. Home Point Financial Corporation
    2019 WL 5788658 (N.D. Cal., Nov. 6, 2019).................................................. 23

O'Connor v. Uber Technologies, Inc.
    311 F.R.D. 547 (N.D. Cal. 2015), rev'd and remanded on other grounds 904 F.3d
    1087 (9th Cir. 2018)........................................................................................ 12

O'Connor v. Uber Technologies, Inc.
    No. C-13-3826 EMC, 2015 WL 5138097 (N.D. Cal., Sept. 1, 2015)................ 1, 11, 12

O'Connor v. Uber Techs., Inc.
    2019 WL 4394401 (N.D. Cal. Sept. 13, 2019) ............................................... 19

Parkinson v. Hyundai Motor Am.
    796 F. Supp. 2d 1160 (C.D. Cal. 2010)........................................................... 8

Perfect 10, Inc. v. Giganews, Inc.
    2015 WL 1746484 (C.D. Cal. Mar. 24, 2015) ............................................... 21

Pointer v. Bank of America, N.A.
    2016 WL 7404759 (E.D. Cal., Dec. 21, 2016).............................................. 23

**TABLE OF AUTHORITIES**
(continued)

Page(s)

Ramirez v. Lovin' Oven Catering Suffolk, Inc
   No. 11 Civ. 520, 2012 WL 651640 (S.D.N.Y. Feb. 24, 2012) ..................................................... 14

Rausch v. Hartford Financial Servs. Group
   No. 01–CV–1529–BR, 2007 WL 671334 (D. Or. Feb.26, 2007) ................................................ 24

Razilov v. Nationwide Mut. Ins. Co.
   2006 WL 3312024 (D. Or. Nov.13, 2006) ................................................................................... 24

Real v. Cont'l Grp., Inc.
   116 F.R.D. 211 (N.D. Cal. 1986) ................................................................................................ 18

Reiter v. Sonotone Corp.
   442 U.S. 330 (1979) ...................................................................................................................... 9

Retta v. Millennium Products, Inc.
   2017 WL 5479637 (C.D. Cal., Aug. 22, 2017) ........................................................................... 21

Riker v. Distillery
   2009 WL 2486196 (E.D. Cal. Aug. 12, 2009) ............................................................................ 18

Rodgers v. Claim Jumper Rest., LLC
   2015 WL 1886708  (N.D. Cal. Apr. 24, 2015) ........................................................................... 15

Rodriguez v. Barrita, Inc.
   2014 WL 2967925 (N.D. Cal. July 1, 2014) .............................................................................. 17

Rodriguez v. Cty. of Los Angeles
   96 F. Supp. 3d 1012 (C.D. Cal. 2014) ....................................................................................... 17

Russell v. EF International Language Schools, Inc.
   2016 WL 6304628 (Cal. App. 2 Dist., Oct. 27, 2016) ................................................................. 2

S. Bank N.A. v. Dexia Real Estate Capital Mkts.
   2016 WL 6996176 (S.D.N.Y. Nov. 30, 2016) ........................................................................... 19

San Francisco Baykeeper v. W. Bay Sanitary Dist.
   2011 WL 6012936 (N.D. Cal. Dec. 1, 2011) ............................................................................. 22

Santiago v. Equable Ascent Fin.
   2013 WL 3498079 (N.D. Cal. July 12, 2013) ............................................................................ 16

Schiller v. David's Bridal, Inc.
   2012 WL 2117001 (E.D. Cal. June 11, 2012) .............................................................................. 5

# TABLE OF AUTHORITIES
(continued)

Page(s)

Sierra Club v. U.S. E.P.A.
  625 F. Supp. 2d 863 (N.D. Cal. 2007) ................................................................. 16, 17

Slimfold Mfg. Co. v. Kinkead Indus., Inc.
  932 F.2d 1453 (Fed.Cir.1991)................................................................................. 15

Superior Consulting Servs., Inc. v. Steeves-Kiss
  2018 WL 2183295 (N.D. Cal. May 11, 2018) ......................................................... 21

Swedish Hospital Corp. v. Shalala
  1 F.3d 1261 (D.C.Cir.1993) ....................................................................................... 3

Taylor v. Meadowbrook Meat Company, Inc.
  2016 WL 4916955 (N.D. Cal., 2016).................................................................... 6, 9

Vasquez v. Coast Valley Roofing, Inc.
  266 F.R.D. 482 (E.D. Cal. 2010) ............................................................................... 9

Vazquez v. Jan-Pro Franchising International, Inc.
  10 Cal.5th 944, 273 Cal.Rptr.3d 741, 478 P.3d 1207 (2021) ................................. 12

Vazquez v. Jan-Pro Franchising International, Inc.
  986 F.3d 1106 (9th Cir. 2021).................................................................................. 12

Villalpando v. Exel Direct Inc.
  Case No. 3:12-cv-04137-JCS, Dkt. No. 344-1 ....................................................... 23

Vizcaino v. Microsoft Corp.
  290 F.3d 1043 (9th Cir.2002)............................................................................ passim

WB Music Corp. v. Royce Int'l Broad. Corp.
  2018 WL 6177237 (C.D. Cal. July 9, 2018) ........................................................... 22

Wershba v. Apple Comput., Inc.
  91 Cal. App. 4th 224 (2001)....................................................................................... 2

Wershba v. Apple Computer, Inc.
  110 Cal.Rptr.2d 145 (Cal. App. 6 Dist. 2001) ....................................................... 14

Wilcox v. City of Reno,
  42 F.3d 550 (9th Cir. 1994)...................................................................................... 15

Willner v. Manpower Inc.
  2015 WL 3863625 (N.D. Cal. June 22, 2015) ........................................................... 6

**TABLE OF AUTHORITIES**
(continued)

Page(s)

Wixon v. Wyndham Resort Dev. Corp.
    2011 WL 3443650 (N.D. Cal. Aug. 8, 2011) .................................................................. 23

Wren v. RGIS Inventory Specialists
    2011 WL 1230826 (N.D. Cal. 2011) .......................................................................... 17

Yeager v. Bowlin
    2010 WL 2303273 (E.D. Cal. June 7, 2010) aff'd, 495F. App'x 780 (9th Cir. 2012) ................. 16

Zeltser v. Merrill Lynch & Co., Inc.
    2014 WL 4816134 (S.D.N.Y.,2014) ............................................................................ 14

Zoom Elec., Inc.v. Int'l Bhd of Elec.Workers Local 595
    2013 WL 2297037 (N.D. Cal. May 24, 2013) ............................................................ 23

**Other Authorities**

Aebra Coe, What Do The Highest-Paid Lawyers Make An Hour?
    Law360 (May 11, 2016) .......................................................................................... 18

**Rules**

Fed. R. Civ. P. 23 ....................................................................................................... 2

## I. INTRODUCTION

Plaintiffs hereby request Court approval of this application for attorneys' fees, costs, and class representative service awards. As described in their preliminary approval motion, Plaintiffs are seeking $2,108,950 in attorneys' fees and costs, which is consistent with the Ninth Circuit's "benchmark" award of 25% of the common fund.  As discussed herein and in the Declarations submitted herewith, this fee request is more than justified by the skill with which counsel litigated the issues, and the extremely significant monetary relief obtained for Settlement Class Members.  Indeed, this settlement of $8,435,800 for a group of just 1,329 drivers is extraordinary in that it provides the equivalent of full phone and vehicle reimbursement (at the full IRS rate), for miles driven with passengers in the car *and* to go pick up passengers. The instant settlement significantly improves upon the result that this Court already approved in O'Connor v. Uber Technologies, Inc., No. C-13-3826 EMC, 2015 WL 5138097, at *1 (N.D. Cal., Sept. 1, 2015), and as in that case, the Court should approve Plaintiffs' request for 25% of the common fund. Moreover, Plaintiffs previously resolved claims at issue in the Verhines case, which is part of this consolidated action, leading to the establishment of a program providing financial assistance to thousands of Uber drivers during the pandemic. See Verhines v. Uber Techs. Inc., Civ. A No. 20-01886-EMC (N. D. Cal.).  The establishment of this financial assistance program was the culmination of *nine* mediation sessions with Judge Spero and required considerable time and resources on the part of Plaintiffs' counsel, for which they received no fees. See Declaration of Shannon Liss-Riordan (hereinafter "Liss-Riordan Decl.") at ¶ 21, filed herewith.

Plaintiffs further request $10,000 service awards for Plaintiffs James, Verhines, and Hassell for their work in representing the class in this litigation.  These awards are reasonable and well within the range of approved incentive payments in class action litigation.  These particular plaintiffs have gone above and beyond what is required of many class action plaintiffs by submitting multiple declarations, often on an emergency basis, responding to multiple rounds of discovery, sitting for deposition, and keeping in close contact with counsel.  They have also assiduously opted out of Uber's arbitration clause repeatedly over a period of years in order to preserve their right to bring these claims in court and on behalf of their fellow drivers.  Merely associating their names with these high-profile lawsuits has

created a risk to future employment prospects as potential employers will likely find reference to their respective cases. In light of all of these facts and the substantial contributions they made to litigating these cases at every step in the process, the requested awards are reasonable and should be approved.

## II.    LEGAL STANDARD

In a class action settlement, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement. Fed. R. Civ. P. 23(h). Courts have the power to award reasonable attorneys' fees and costs where, as here, a litigant proceeding in a representative capacity secures a "substantial benefit" for a class of persons. See e.g., Hendricks v. Starkist Co., 2016 WL 5462423, at *10 (N.D. Cal., 2016) citing Serrano v. Priest, 20 Cal. 3d 25, 38 (1977). Where "a settlement produces a common fund for the benefit of the entire class, courts have discretion to employ either the lodestar method or the percentage-of-the-fund method." In re Bluetooth Headset Products Liab. Litig., 654 F.3d 935, 944 (9th Cir. 2011); see also Hendricks, 2016 WL 546523, at *10, citing Wershba v. Apple Comput., Inc., 91 Cal. App. 4th 224, 254 (2001).

The California Supreme Court has endorsed the use of the percentage method of awarding attorneys' fees, citing the method's relative ease of calculation, alignment of incentives between counsel and the class, a better approximation of market conditions in a contingency case, and the encouragement it provides counsel to seek an early settlement and avoid unnecessarily prolonging the litigation. Laffitte v. Robert Half Intern. Inc., 376 P.3d 672, 686 (Cal. 2016) (approving attorneys' fee award in the amount of one-third of gross settlement); see also Russell v. EF International Language Schools, Inc., 2016 WL 6304628, at *9 (Cal. App. 2 Dist., Oct. 27, 2016) (affirming one-third fee award over objection and noting that "[s]ome appellate courts have questioned whether the percentage-of-the-benefit method is a valid justification for an award of attorneys' fees in a class action settlement. Our Supreme Court recently resolved the issue.") (internal citation omitted).

The vast majority of Ninth Circuit and other federal courts are in accord. See Aichele v. City of Los Angeles, 2015 WL 5286028, *5 (C.D. Cal. Sept. 9, 2015) ("Many courts and commentators have recognized that the percentage of the available fund analysis is the preferred approach in class action fee requests because it more closely aligns the interests of the counsel and the class, i.e., class counsel

directly benefit from increasing the size of the class fund and working in the most efficient manner.");
see also Knight v. Red Door Salons, Inc., 2009 WL 248367, at *5 (N.D. Cal. 2009) ("use of the
percentage method in common fund cases appears to be dominant") citing Vizcaino v. Microsoft Corp.,
290 F.3d 1043, 1047 (9th Cir.2002); In re Activision Sec. Litig., 723 F. Supp. 1373, 1374–77 (N.D. Cal.
1989) (collecting authority and describing benefits of the percentage method over the lodestar method);
Morales v. Conopco, Inc., 2016 WL 6094504, at *7 (E.D. Cal. 2016) ("Because of the ease of
calculation and the pervasive use of the percentage-of- recovery method in common fund cases, the
court thus adopts this method.").  As the Supreme Court has explained, courts favor the percentage-of-
the-fund approach of awarding fees from a common fund because "[j]urisdiction over the fund involved
in the litigation allows a Court to prevent . . . inequity by assessing attorney's fees against the entire
fund, thus spreading fees proportionately among those benefited by the suit." See Boeing Co. v. Van
Gemert, 444 U.S. 472, 478 (1980) (citations omitted); Blum v. Stenson, 465 U.S 886, 900 n.16 (1984).[1]

Plaintiffs emphasize the importance of contingency fee awards in encouraging plaintiffs'
attorneys to file and litigate – efficiently – cases of importance, particularly those on behalf of lower-
wage workers, and particularly those cases that are risky and uncertain.  Because not every such case
results in a fee award, fees that are awarded on a contingency basis from common fund settlements are
essential for the continued prosecution of cases like this one and the ability of firms to maintain a
practice representing low wage workers on contingency who are not able to afford paying attorneys'
fees. See Fleury v. Richemont N. Am., Inc., 2009 WL 1010514, *3 (N.D. Cal. Apr. 14, 2009)
("Contingent fees that may far exceed the market value of the services if rendered on a non-contingent
basis are accepted in the legal profession as a legitimate way of assuring competent representation for
plaintiffs who could not afford to pay on an hourly basis regardless whether they win or lose.... [i]f this

---

[1]    See also In re Thirteen Appeals Arising Out of the San Juan Dupont Plaza Hotel Fire Litig., 56
F.3d 295 (1st Cir. 1995); Swedish Hospital Corp. v. Shalala, 1 F.3d 1261, 1271 (D.C.Cir.1993) ("a
percentage of the fund method is the appropriate mechanism for determining the attorney fees award in
common fund cases"); Camden I Condominium Association v. Dunkle, 946 F.2d 768, 774 (11th
Cir.1991) ("we believe that the percentage of the fund approach is the better reasoned in a common fund
case").

NOTICE OF MOTION AND MOTION FOR PLAINTIFFS' MOTION FOR ATTORNEYS' FEES, COSTS, EXPENSES,
AND SERVICE AWARDS– CASE NO. CV 19-cv-06462-EMC

'bonus' methodology did not exist, very few lawyers could take on the representation of a class client given the investment of substantial time, effort, and money, especially in light of the risks of recovering nothing") (internal citation omitted). As set forth at length in the accompanying Declaration of Shannon Liss-Riordan, it is through the award of contingency fees from cases that have succeeded, or resolved at an early stage successfully, that have made possible Plaintiffs' counsel's practice on behalf of low wage workers.

One of the principal advantages of the percentage approach for awarding fees in class action litigation is the fact that it is result-oriented, thereby promoting the more efficient use of attorney time and resources, rather than encouraging attorneys to prolong litigation in order to inflate their recoverable hours. See Thirteen Appeals, 56 F.3d at 307 ("[U]sing the [percentage of fund] method . . . enhances efficiency, or, put in the reverse, using the lodestar method in such a case encourages inefficiency. Under the latter approach, attorneys not only have a monetary incentive to spend as many hours as possible (and bill for them) but also face a strong disincentive to early settlement"); see also Vizcaino, 290 F.3d at1050, n. 5 ("The lodestar method is merely a cross-check on the reasonableness of a percentage figure, and it is widely recognized that the lodestar method creates incentives for counsel to expend more hours than may be necessary on litigating a case so as to recover a reasonable fee, since the lodestar method does not reward early settlement"). Similarly, the percentage method better approximates the workings of the marketplace by ensuring that attorneys receive compensation for the true value of their services and skills. Thirteen Appeals, 56 F.3d at 307 ("Another point is worth making: because the [percentage of fund] technique is result-oriented rather than process-oriented, it better approximates the workings of the marketplace. . . . the market pays for the result achieved") (quoting In re Continental Ill. Sec. Litig., 962 F.2d 566, 572 (7th Cir. 1992); see also Fleury v. Richemont N. Am., Inc., 2009 WL 1010514, *3 (N.D. Cal. Apr. 14, 2009) (Chen, J.) ("Contingent fees that may far exceed the market value of the services if rendered on a non-contingent basis are accepted in the legal profession as a legitimate way of assuring competent representation for plaintiffs who could not afford to pay on an hourly basis regardless whether they win or lose.... [i]f this 'bonus' methodology did not exist, very few lawyers could take on the representation of a class client given the investment of

substantial time, effort, and money, especially in light of the risks of recovering nothing.") (internal citation omitted).

Here, counsel have aggressively litigated this case and succeeded in obtaining class certification, including fending off Defendant's quest for Rule 23(f) review. Plaintiffs also filed their Motion for Summary Judgment and were poised to have that issue decided by the court when they were instead able to negotiate this settlement, which provides full expense reimbursement damages for the class for all miles driven, both to pick up a passenger and with a passenger in the car.  The settlement is unprecedented in that it essentially represents full damages on this central claim.  Only counsel's substantial experience and reputation in this area, and her known willingness to fight cases all the way to decision (and on appeal thereafter), allowed Plaintiffs to leverage such a substantial settlement.

For these reasons, and given the precedent in this Circuit of approving a 25% benchmark recovery for attorneys' fees in class action cases like this one[2], should the settlement be approved, the Court should approve the requested fee recovery in this case as well.

## III.   DISCUSSION

### A.   Counsel's Fee Request is Fair and Reasonable and In Line With the Ninth Circuit's 25% Benchmark

In the Ninth Circuit, a fee award of 25% of the total recovery is the benchmark percentage fee award. Vizcaino, 290 F.3d at 1050.  This percentage may be adjusted depending on analysis of certain relevant factors (discussed infra).  Federal courts applying California law on a motion for fees have used this 25% benchmark as a starting point in evaluating a request for attorneys' fees.  See Hendricks, 2016 WL 546523, at *10 citing Schiller v. David's Bridal, Inc., 2012 WL 2117001, at *17 (E.D. Cal. June 11, 2012); see also In re Consumer Privacy Cases, 175 Cal. App. 4th 545, 558 n.13 (2009) (recognizing that most fee awards in California are based on percentage calculations ranging from 25% to 33%).  Here,

---

[2]   See Barbosa v. Cargill Meat Sols. Corp., 297 F.R.D. 431, 448 (E.D. Cal. 2013) ("The typical range of acceptable attorneys' fees in the Ninth Circuit is 20 percent to 33.3 percent of the total settlement value, with 25 percent considered a benchmark percentage").

Plaintiffs' request for a fee award of $2,108,950 of the $8,435,800 million settlement fund is precisely in line with the 25% benchmark, which supports approval of the fee request.

**B.      Other Factors Support Plaintiffs' Request for Fees**

Typically, courts will consider various factors to determine whether an upward (or, less often, a downward) adjustment from the 25% benchmark is warranted.  Specifically, the Ninth Circuit has identified the following factors that affect the Court's assessment of an appropriate fee:

> (1) whether counsel achieved exceptional results; (2) the degree of risk assumed by counsel; (3) whether counsel's performance generated benefits beyond the cash settlement fund; (4) whether the fee lies above or below the market rate; and (5) the length of time counsel represented the class on a contingency basis. Additional factors may include (6) counsel's experience and skill, (7) the complexity of the issues, (8) the reaction of the class, and (9) a comparison with counsel's loadstar.

In re Nuvelo, Inc. Sec. Litig., 2011 WL 2650592, at *1 (N.D. Cal. July 6, 2011) (citing Vizcaino, 290 F.3d at 1048-1051).

As set forth below, these factors support the requested fee award in this case.

**1.      Counsel Has Achieved Exceptional Results.**

"Ninth Circuit precedent requires courts to award class counsel fees based on the total benefits being made available to class members," including the benefits of non-monetary relief. Brawner v. Bank of Am. Nat'l Ass'n, 2016 WL 161295, at *5 (N.D. Cal. Jan. 14, 2016); Vizcaino, 290 F.3d at 1049 ("Incidental or non-monetary benefits conferred by the litigation are a relevant circumstance" in assessing the results achieved by a settlement); Taylor v. Meadowbrook Meat Company, Inc., 2016 WL 4916955, at *5 (N.D. Cal., 2016) ("When determining the value of a settlement, courts consider the monetary and non-monetary benefits that the settlement confers."); Willner v. Manpower Inc., 2015 WL 3863625, at *7 (N.D. Cal. June 22, 2015) (a change in policy, even if it cannot be specifically valued, must factor into courts' analysis of the degree of success achieved by a settlement).

Here, Plaintiffs' counsel has achieved "exceptional results."  This settlement is compensating drivers for their *full expense reimbursement damages* for the use of both their vehicles and their phones and for miles spent driving passengers as well as driving to pick them up.  This relief is in addition to the excellent result already achieved in the Verhines sick pay settlement, for which the firm received no

compensation. Indeed, Plaintiffs calculated the maximum verdict value of the certified claims at approximately $12.76 million, comprised of $7.95 million for vehicle-related expense reimbursement (which was calculated by taking class members' total mileage, both to pick up a passenger and with a passenger in the car, and multiplying it by the full IRS reimbursement rate during the relevant period); $475,740 for telephone reimbursement (which was calculated by multiplying the total number of pay periods worked by each settlement class member by $10 per pay period per class member); and $3.75 million for the pay statement claim. See Liss-Riordan Decl. at ¶ 39. The settlement also represents 69% of the estimated maximum verdict value of the expense reimbursement and the pay statement claim, the two claims that were certified in this case, and 100% of the more certain expense reimbursement claim. Id. To Class Counsel's knowledge, this is the best recovery in a "gig economy" settlement. Id. Plaintiffs estimate that the Plaintiffs estimate that the average payment to class members, assuming a 100% claim rate, would be $4,750. Id. In sum, the settlement will provide thousands of dollars each to these drivers. Accordingly, this factor weighs very strongly in favor of Plaintiffs' fee request.

### 2. The Degree of Risk in This Litigation Was High.

Second, the risk undertaken by Plaintiffs' counsel in taking on this case was significant, as is the case in most contingency cases where payment is never guaranteed. There are many litigation risks inherent in pursuing a class action case like this one. Class certification, a decision on the merits, and potential appeals are all issues that can result in no recovery whatsoever to class members or class counsel. In this case, Plaintiffs faced complicated and novel issues in the Ninth Circuit regarding the propriety of certifying a class on fewer than all three prongs of the ABC test. And although Plaintiffs were confident of their chances of prevailing in proving that Plaintiffs were Uber's employees under the ABC test, questions remained regarding whether that test would apply to the expense reimbursement claim for the pre-AB 5 portion of the class period.[3] Further, questions regarding how to measure

---

[3]   Compare Gonzales v. San Gabriel Transit, Inc., 40 Cal. App. 5th 1131, 1157 (2019) (holding that the ABC test set forth in _Dynamex_ _does_ apply to expense reimbursement claims) and Johnson v. VCG-IS, LLC, Case No. 30-2015-00802813, Ruling on Motion in Limine (Super. Ct. Cal. July 18, 2018) at *4-5 (same); with Garcia v. Border Transp. Group, LLC, 28 Cal. App. 5th 558 (2018) (stating that _Dynamex_ would not apply to "non-wage order" claims under the Labor Code, which the Court stated

_(Cont'd on next page)_

NOTICE OF MOTION AND MOTION FOR PLAINTIFFS' MOTION FOR ATTORNEYS' FEES, COSTS, EXPENSES, AND SERVICE AWARDS– CASE NO. CV 19-cv-06462-EMC

damages and what time is compensable could have led to a recovery significantly lower than the full

IRS rate or for fewer miles.  See Dkt. 189-3 (Liss-Riordan Decl. ISO Prelim. Approval) at ¶ 19, 28-29.

Moreover, as with virtually all work handled by Plaintiffs' counsel's firm, counsel accepted this

case on a fully contingent arrangement, with no payment up front, and have borne the expenses, costs,

and risks associated with litigating this case.  Plaintiffs' attorneys who accept cases on contingency often

spend years litigating cases (typically while incurring significant out-of-pocket expenses for experts,

transcripts, document production, and so forth), without receiving any ongoing payment for their work.

Sometimes fees and expenses are recovered; other times, nothing is recovered.  Hightower v. JPMorgan

Chase Bank, N.A., 2015 WL 9664959, at *11 (C.D. Cal. 2015) (approving 30% fee request in part

because "the risk of no recovery for Plaintiffs, as well as for Class Counsel, if they continued to litigate,

were very real"); Bellinghausen v. Tractor Supply Co., 306 F.R.D. 245, 261 (N.D. Cal. 2015) (noting

that "when counsel takes cases on a contingency fee basis, and litigation is protracted, the risk of non-

payment after years of litigation justifies a significant fee award"); In re Nuvelo, Inc. Sec. Litig., 2011

WL 2650592, at *2 (N.D. Cal. July 6, 2011) ("It is an established practice to reward attorneys who

assume representation on a contingent basis with an enhanced fee to compensate them for the risk that

they might be paid nothing at all"); Kanawi v. Bechtel Corp., 2011 WL 782244, *2 (N.D. Cal. Mar. 1,

2011) (noting that "[s]uch a practice encourages the legal profession to assume such a risk and promotes

competent representation for plaintiffs who could not otherwise hire an attorney"); Parkinson v. Hyundai

Motor Am., 796 F. Supp. 2d 1160, 1166 (C.D. Cal. 2010) ("The most important factor is the risk of

nonpayment, which was significant in this contingency class action"); Garner v. State Farm Mut. Auto.

Ins. Co., 2010 WL 1687829, *2 (N.D. Cal. Apr. 22, 2010) ("Class Counsel prosecuted this case on a

*(Cont'd from previous page)*

would include expense reimbursement claims); Henry v. Cent. Freight Lines, Inc., No. 2:16-cv-00280-
JAM-EFB, 2019 WL 2465330, at *7–8 (E.D. Cal. June 13, 2019) (plaintiff's claims for expense
reimbursement under § 2802 were "not grounded in the wage orders" and were therefore governed by
Borello); Moreno v. JCT Logistics, Inc., 2019 WL 3858999, at *12 (C.D. Cal. May 29, 2019) (same);
Karl v. Zimmer Biomet Holdings Inc., 2018 WL 5809428 at *3 (N.D. Cal. Nov. 6, 2018) (summarily
concluding that expense reimbursement claim does not arise under the Wage Orders and thus Dynamex
would not apply).

purely contingent basis, agreeing to advance all necessary expenses, knowing that they would only receive a fee if there were a recovery"); <u>Hensley v. Eckerhart</u>, 461 U.S. 424, 448 (1983) (noting that "[a]ttorneys who take cases on contingency, thus deferring payment of their fees until the case has ended and taking upon themselves the risk that they will receive no payment at all, generally receive far more in winning cases than they would if they charged an hourly rate").

By permitting clients to obtain attorneys without having to pay hourly fees, this system provides critical access to the courts for people who otherwise would be unable to find competent counsel to represent them. That access is particularly important for the effective enforcement of public protection statutes, such as the wage laws at issue here. Thus, "private suits provide a significant supplement to the limited resources available to [government enforcement agencies] for enforcing [public protection] laws and deterring violations." <u>Reiter v. Sonotone Corp.</u>, 442 U.S. 330, 344 (1979) (addressing anti-trust laws). This factor, therefore, supports Plaintiffs' request.

### 3. Counsel's Efforts Have Generated Substantial Benefits

"When determining the value of a settlement, courts consider the monetary and non-monetary benefits that the settlement confers." <u>Taylor v. Meadowbrook Meat Company, Inc.</u>, 2016 WL 4916955, at *5 (N.D. Cal., 2016). Here, although the primary benefits in this case are monetary, Plaintiffs' counsel's zealous advocacy in this case has raised continued attention to the issue of the use of independent contractors in the "gig economy", and it has created a precedent for extracting full expense reimbursement damages from defendants like Uber.

### 4. The Requested Percentage of the Fund of 25% Is In Line With Or Below The Market Rate.

The requested percentage of 25% lies at or below the market rate. <u>See</u> <u>Barbosa</u>, 297 F.R.D. at 448 ("The typical range of acceptable attorneys' fees in the Ninth Circuit is 20 percent to 33.3 percent of the total settlement value, with 25 percent considered a benchmark percentage"). Indeed, "in most common fund cases, the award exceeds that benchmark percentage." <u>Id.</u>; <u>In re Activision Sec. Litig.</u>, 723 F. Supp. 1373, 1377 (N.D. Cal.1989) ("nearly all common fund awards range around 30%"); <u>see also</u> <u>Vasquez v. Coast Valley Roofing, Inc.</u>, 266 F.R.D. 482, 492 (E.D. Cal. 2010) (collecting recent

wage and hour cases in which counsel received fee awards in the range of 33.3% to 30% of the common fund); Fernandez v. Victoria Secret Stores, LLC, 2008 WL 8150856, at *2 (C.D. Cal. July 21, 2008) (awarding 34% of common fund in attorneys' fees in wage and hour class action settlement of $10 million); Lusby v. GameStop Inc., 2015 WL 1501095, at *9 (N.D. Cal. Mar. 31, 2015) (finding a one-third fee award appropriate); Barnes v. The Equinox Grp., Inc., 2013 WL 3988804, at *4 (N.D. Cal. Aug. 2, 2013) (awarding one-third of gross settlement).[4] Thus, because here Plaintiffs are only requesting 25% of the fund, this factor also weighs in favor of preliminarily approving Plaintiffs' requested fee award.

### 5. Counsel Has Spent Several Years Representing the Class On a Contingent Basis.

Fifth, Plaintiffs' counsel have represented the class on a contingency basis for 2.5 years. Furthermore, throughout this timeframe, Plaintiffs have actively litigated the case, briefing numerous substantive motions (including motions to dismiss, for preliminary injunction, for class certification and for summary judgment). See Liss-Riordan Decl. at ¶ 22 (describing work performed on the case). The Parties have also engaged in extensive discovery, with Uber producing almost 20,000 pages of documents and both sides taking depositions. See Dkt. 189-3 (Liss-Riordan Decl. ISO Prelim. Approval) at ¶ 3. As the judge overseeing the James case, the Court has the best possible insight into the quality of the briefing and the active efforts of counsel, including *nine* mediation sessions before Judge Spero, which culminated in a separate settlement that provided benefits to drivers during the pandemic (for which counsel received no fees). Id. at ¶ 5. In sum, the amount of time spent on this contingent matter also cuts in favor of the Court's preliminary approval of the requested fee.

---

[4]     See also In Re: Lithotripsy Antitrust Litigation, No. 98 C 8394, 2000 U.S. Dist. LEXIS 8143 at *6-7 (N.D. Ill. June 12, 2000) (noting that 33.3% of the fund plus expenses is well within the generally accepted range of the attorneys fee awards in class-action lawsuits); Fernandez v. Victoria Secret Stores, LLC, 2008 WL 8150856 (C.D.Cal.2008) (awarding 34% in attorneys' fees from $10 million settlement fund in wage and hour class action settlement); In re: Medical X-Ray Film Antitrust Litigation, 1998 U.S. Dist. LEXIS 14888, *21 (E.D.N.Y. Aug. 7, 1998) (awarding a fee of $13 million out of approximately $40 million common fund, which represented one-third of the settlement); In re Crazy Eddie Securities Litig., 824 F. Supp. 320, 325-26 (E.D.N.Y. 1993) (awarding 34% of a $42 million settlement fund); City National Bank v. American Com. Financial Corp., 657 F. Supp. 817 (W.D.N.C. 1987); In re Franklin Nat'l Bank, [1980 Transfer Binder] Fed. Sec. L. Rep. (CCH) &97,571 (E.D.N.Y. 1980) (34% of settlement fund); Hwang v. Smith Corona Corp., B.89-450 (D. Conn. Mar. 12, 1992) (awarding one-third of $24 million fund).

NOTICE OF MOTION AND MOTION FOR PLAINTIFFS' MOTION FOR ATTORNEYS' FEES, COSTS, EXPENSES, AND SERVICE AWARDS– CASE NO. CV 19-cv-06462-EMC

### 6.      Class Counsel Is Highly Experienced and Skilled

Prosecuting class actions requires an "extraordinary commitment of time, resources, and energy from Class Counsel," and, many times, settlements "simply [are not] possible but for the commitment and skill of Class Counsel." <u>Garner</u>, 2010 WL 1687829, at *2.This is particularly so where a "case was wholly without precedent, raised numerous novel and complex issues of both law and fact, and required a considerable effort from Class Counsel simply to be in a position to file suit, let alone to litigate this case successfully." <u>Id.</u>

Here, as set forth in more detail in the Declaration of Shannon Liss-Riordan filed herewith ¶¶ 3-7, the proposed settlement class is represented by highly experienced counsel who focus on wage-hour class actions, with a particular specialty in cases involving independent contractor misclassification. Plaintiffs' counsel, Attorney Liss-Riordan, has been widely recognized as one of the leading plaintiffs' lawyers nationally for her work on behalf of employees (particularly low-wage workers) in wage and hour litigation, and her firm is well known as one of the preeminent employee-side firms engaged nationwide in this area of practice. <u>Id.</u> at ¶¶ 3-7.  Attorney Liss-Riordan has prosecuted many dozens of such cases, including successful jury verdicts, appeals, and class certification proceedings. <u>Id.</u> at ¶¶ 8-18. Last year, she was recognized by Benchmark Litigation as the nation's top Employment Attorney.  <u>Id.</u> at ¶ 7. As described in her Declaration, Attorney Liss-Riordan has been featured by many major publications for her accomplishments representing low wage workers in a variety of industries.[5]

In particular, Attorney Liss-Riordan has gained a reputation as the preeminent lawyer across the country challenging the use of independent contractors in the so-called gig economy. <u>Id.</u> at ¶¶ 8-16.  She brought the first lawsuit nationally challenging misclassification in the gig economy industry in the landmark case that proceeded before this very court, <u>O'Connor v. Uber</u>, Civ. A. No. 13-3826 (N.D. Cal.). <u>Id.</u> at ¶ 8. Since filing that case in 2013, Liss-Riordan has litigated against every major gig

---

[5]      These publications include: <u>San Francisco Magazine</u> (**Exhibit A**), the <u>Los Angeles Times</u> (**Exhibit B**), the <u>Wall Street Journal</u> (**Exhibit C**), the <u>ABA Journal</u> (**Exhibit D**), the <u>Recorder</u> (**Exhibit E**), <u>Mother Jones</u> (**Exhibit F**), Politico (**Exhibit G**), the <u>Boston Globe</u> (**Exhibits H** and **I**), and <u>Law360</u> (**Exhibit J**).

economy company (Uber, Lyft, GrubHub, DoorDash, Postmates, Instacart, Handy, and others) in states around the country (including California, Massachusetts, New York, Illinois, and Pennsylvania). Id.  She has pursued these cases vigorously, through frequent appeals and using creative tactics, and has obtained landmark rulings that have developed the law in this area.  Class counsel's firm was the first to obtain class certification in these "gig economy" cases, both in O'Connor v. Uber Technologies, Inc., No. C-13-3826 EMC, 2015 WL 5138097, at *1 (N.D. Cal., Sept. 1, 2015); O'Connor v. Uber Technologies, Inc., 311 F.R.D. 547 (N.D. Cal. 2015), rev'd and remanded on other grounds 904 F.3d 1087 (9th Cir. 2018), and in the instant case. See Liss-Riordan Decl. at ¶ 9.  Class counsel were also the first firm (and only, to date) to take a gig economy misclassification case to trial.  That case, Lawson v. Grubhub, Inc., 302 F.Supp.3d 1071 (N.D. Cal. 2018), vacated and remanded No. 18-15386, 2021 WL 4258826 (9th Cir., Sept. 20, 2021), was filed in 2015, tried in 2017, appealed in 2018, and recently reversed and remanded with an order for the district court to apply the ABC test to the plaintiff's claims. See Lawson v. Grubhub, Inc., No. 18-15386, 2021 WL 4258826 (9th Cir., Sept. 20, 2021). See Liss-Riordan Decl. at ¶ 9.

Class counsel also has unique familiarity with the ABC test, having litigated under an identical test in Massachusetts for many years before the same test was adopted in California.  Class counsel obtained the ruling from the California Supreme Court declaring the Dynamex decision retroactive in Vazquez v. Jan-Pro Franchising International, Inc., 10 Cal.5th 944, 273 Cal.Rptr.3d 741, 478 P.3d 1207 (2021). See Liss-Riordan Decl. at ¶ 10.  There, the Ninth Circuit held that the ABC test would apply to an alleged franchisor and emphasized the strength of the ABC test. See Vazquez v. Jan-Pro Franchising International, Inc., 986 F.3d 1106 (9th Cir. 2021). Class counsel has also obtained a number of other significant appellate rulings in California in this area of law. See Liss-Riordan Decl. at ¶ 11.  For example, counsel recently prevailed in Medina v. Equilon Enterprises, LLC, 2021 WL 4128882 (Cal. Ct. App., Sept. 10, 2021), reversing the trial court's grant of summary judgment to the defendant and recognizing Shell to be a joint employer of employees working in service stations run by smaller intermediary franchise-like entities.  Counsel also obtained the first ruling on summary judgment in favor of plaintiffs under the Dynamex ABC test in Johnson v. VGC-IS, LLC, Case No. 30-2015-

00802813 (Cal. Sup., July 18, 2018), which held that a California strip club misclassified dancers under this test and applied the ABC test to a variety of claims, including claims for expense reimbursement (a hotly disputed issue in this area of law). See Liss-Riordan Decl. at ¶ 11.

### 7.   The Issues In This Case Are Both Novel and Complex

Seventh, the complexity of the issues presented by this case also well justifies approval of the requested fee.  Here, counsel filed a case that raised novel and complex issues, including the application of the relatively new "ABC" test announced in <u>Dynamex</u> to Uber drivers as well as the correct framework for certifying a class action brought under the three-part, conjunctive test.  Indeed, Uber sought to have the Court's class certification order in this case reviewed by the Ninth Circuit, arguing that the court erred by certifying a class on fewer than all three prongs, but the Ninth Circuit ultimately declined review. See <u>James v. Uber</u>, Ninth Cir. No. 21-80006, Dkt. No. 4 (9th Cir. April 13, 2021).  The case also presented questions about the retroactivity of Assembly Bill 5 and whether the "ABC" test applies to claims for expense reimbursement for some or all of the class period, see supra, n. 4, as well as complex questions regarding the effect of the ballot initiative Proposition 22, on the claims at issue. Given the complexity of the issues in this case, the fees requested in this case are well warranted.

### 8.   The Reaction of the Class

"It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members." <u>Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.</u>, 221 F.R.D. 523, 528–29 (C.D.Cal.2004).  Here, Plaintiffs' counsel submits that the reaction of the class to the settlement (and to the efforts of counsel on their behalf) has been positive so far, which is supported by the fact that no objections have been filed to date and the claim rate already exceeds 60%.[6]  See Liss-Riordan Decl. at ¶

---

[6]    The class notice informed Class Members that counsel intended to request 25% of the gross Settlement Fund in fees and $30,000 in incentive payments for the named plaintiffs. See Dkt. No. 189-8 at ¶ 15. In addition, this motion for fees is being filed thirty-five days before the final approval hearing and posted on the settlement website so that Class Members will have an opportunity to comment or object to it. See In re Mercury Interactive Corp. Securities Litigation, 618 F.3d 988 (9th Cir. 2010).

39. Plaintiffs will continue to keep the Court apprised of the reaction to the settlement in the coming weeks leading up to the final approval hearing.

### 9.  The Lodestar Cross-Check Confirms That Plaintiffs' Request Is Reasonable

The lodestar cross-check in this case supports Plaintiffs' requested fees.  As set forth further below, the lodestar cross-check in this case shows that Plaintiffs' fees were $803,477 and their expenses came to approximately $24,152, not counting any future costs or fees.  Indeed, these fees and costs are only likely to climb as Plaintiffs continue to work on finalizing this settlement and overseeing its execution should it be approved by the Court.  Courts frequently approve settlements with large multipliers[7], and here, the multiplier would be a relatively modest 2.62.  As such, the lodestar multiplier strongly supports the reasonableness of the requested fees of $2,108,950.  Moreover, this Court has supervised this litigation and is in the best position to understand the amount and quality of work that has been put into this case by Plaintiffs' counsel. See Wilcox v. City of Reno, 42 F.3d 550, 555 (9th Cir.

---

[7]      See Vizcaino, 290 F.3d at 1051, n. 6 (affirming district court's percentage-based fee award that represented multiplier of 3.65 and noting that "most" multipliers in common fund cases range from 1.0 to 4.0); McKenzie v. Federal Exp. Corp., 2012 WL 2930201 at *10 (C.D. Cal. July 2, 2012) (in wage and hour action, approving percentage-based fee award that represented multiplier of 3.2); Morgret v. Applus Technologies, Inc., 2015 WL 3466389, at *17 (E.D.Cal.,2015) (in wage and hour action, approving percentage-based fee award that represented multiplier of 3.9); Buccellato v. AT & T Operations, Inc., No. 10 Civ. 463, 2011 WL 3348055, at *2 (N.D. Cal. Jun. 30, 2011) (in wage and hour action, approving percentage-based fee award that represented multiplier of 4.3); Wershba v. Apple Computer, Inc., 110 Cal.Rptr.2d 145, 170 (Cal. App. 6 Dist. 2001) ("Multipliers can range from 2 to 4 or even higher."); See Johnson v. Brennan, 2011 WL 4357376, at *20 (S.D.N.Y. 2011) (in wage and hour action, noting that "[c]ourts regularly award lodestar multipliers from two to six times lodestar"); Beckman v. KeyBank, N.A., 293 F.R.D. 467, 481–82 (S.D.N.Y. 2013) (in wage and hour action, approving of 6.3 multiplier in lodestar cross-check analysis); citing Ramirez v. Lovin' Oven Catering Suffolk, Inc., No. 11 Civ. 520, 2012 WL 651640, at *4 (S.D.N.Y. Feb. 24, 2012) (in wage and hour action, approving of 6.8 multiplier in lodestar cross-check analysis); Davis v. J.P. Morgan Chase & Co., 827 F.Supp.2d 172, 184–86 (W.D.N.Y.2011) (in wage and hour action, approving of 5.3 multiplier in lodestar cross-check analysis); see also Zeltzer v. Merrill Lynch & Co., Inc., 2014 WL 4816134, at *10 (S.D.N.Y.,2014) (in wage and hour action, approving of 5.1 multiplier in lodestar cross-check analysis and noting "[w]hile this multiplier is near the higher end of the range of multipliers that courts have allowed, this should not result in penalizing Plaintiffs' counsel for achieving an early settlement, particular where, as here, the settlement amount is substantial."); Maley v. Del Global Techs. Corp., 186 F.Supp.2d 358, 371 (S.D.N.Y.2002) ("modest multiplier" of 4.65 in wage and hour class action was "fair and reasonable").

14

1994) ("The district court is in the best position to ascribe a reasonable value to the lawyering it has witnessed and the results that lawyering has achieved"); Brinskele v. United States, 2014 WL 4832263, *2 (N.D. Cal. May 22, 2014) report and recommendation adopted, 2014 WL 4826153 (N.D. Cal. Sept. 29, 2014) ("Based upon the court's familiarity with this litigation and counsel's work, the court is able to assess the reasonableness of the hours claimed by counsel…").

### a.    Counsel's Hours Worked are Reasonable

Plaintiffs have submitted contemporaneous time records for the attorneys who have worked on this case, as well as declarations attesting to the estimated number of hours that the firm's paralegal staff and lead counsel Shannon Liss-Riordan have spent on this litigation,[8] as well as a list of out-of-pocket costs incurred by Plaintiffs' counsel's firm in the prosecution of this case. See Declaration of Shannon Liss-Riordan (filed in support of this Memorandum) and attachments thereto.  The following shows a summary of the hours worked by attorneys and staff on this case and the costs:

---

[8]    Plaintiffs note that Attorney Liss-Riordan (as well as the firm's paralegal staff) have not kept contemporaneous billing records.  See Declaration of Shannon Liss-Riordan at ¶ 22, n. 3 (explaining that she has focused her energies on litigating and has not kept records of her time, but that she has spent substantial time on this litigation as this Court is well aware).  Courts in this Circuit have awarded fees based upon reasonable estimates of time spent, even without contemporaneous records. See Brinskele, 2014 WL 4832263, *2 ("Based upon the court's familiarity with this litigation and counsel's work, the court is able to assess the reasonableness of the hours claimed by counsel without the need to inspect contemporaneous time records."); see also Kilopass Tech., Inc. v. Sidense Corp., 82 F. Supp. 3d 1154, 1169 (N.D. Cal. 2015) ("[T]he party seeking fees need not provide comprehensive documentation to prevail"); Rodgers v. Claim Jumper Rest., LLC, 2015 WL 1886708, *10 (N.D. Cal. Apr. 24, 2015) ("Plaintiff's counsel is not required to record in great detail how each minute of his time was expended" and can instead "meet his burden of justifying his fees by simply listing his hours and "identifying the general subject matter of his time expenditures"); In re Rossco Holdings, Inc., 2014 WL 2611385, *8 (C.D. Cal. May 30, 2014) ("In California, an attorney need not submit contemporaneous time records in order to recover attorney fees"); Cotton v. City of Eureka, Cal., 889 F. Supp. 2d 1154, 1177 (N.D. Cal. 2012) ("The lack of contemporaneous records does not justify an automatic reduction in the hours claimed, but such hours should be credited only if reasonable under the circumstances and supported by other evidence such as testimony or secondary documentation"); Ackerman v. W. Elec. Co., 643 F. Supp. 836, 863-64 (N.D. Cal. 1986), aff'd, 860 F.2d 1514 (9th Cir. 1988) (noting that "the Ninth Circuit requires only that the affidavits be sufficient to enable the court to consider all the factors necessary to determine a reasonable attorney's fee award …California law is in accord with the Ninth Circuit view."); Slimfold Mfg. Co. v. Kinkead Indus., Inc., 932 F.2d 1453, 1459 (Fed.Cir.1991) ("[A] district court itself has experience in determining what are reasonable hours and reasonable fees, and should rely on that experience and knowledge if the documentation is considered inadequate").

| Attorney | Hours | Rate | Fees |
|---|---|---|---|
| Shannon Liss-Riordan | 400 | $950 | $380,000 |
| Adelaide Pagano | 206.5 | $600 | $123,900 |
| Anne Kramer | 152.5 | $425 | $64,812 |
| Anastasia Doherty | 223.5 | $375 | $83,813 |
| Law Clerks | 52 | $275 | $14,300 |
| Paralegal Staff | 500 | $225 | $112,500 |
| Costs | | | $24,152 |
| **TOTAL:** | | | **$803,477** |

Counsel's time spent on this case can be generally divided into several categories of activity, all of which is recoverable under well-established case law:

- Pre-litigation investigation: see, e.g., Sierra Club v. U.S. E.P.A., 625 F. Supp. 2d 863, 870 (N.D. Cal. 2007); see also Lema v. Comfort Inn Merced, 2014 WL 1577042 (E.D. Cal. Apr. 17, 2014) (approving of pre-litigation work "reasonably necessary to secure information, evaluate Plaintiff's case, and prepare the complaint for filing");

- Legal research and drafting: See Santiago v. Equable Ascent Fin., 2013 WL 3498079, at *6 (N.D. Cal. July 12, 2013);

- Propounding and responding to discovery: See, e.g., Yeager v. Bowlin, 2010 WL 2303273, at *7 (E.D. Cal. June 7, 2010) aff'd, 495F. App'x 780 (9th Cir. 2012) (drafting discovery); Gauchat-Hargis v. Forest River, Inc., 2013 WL 4828594, at *4 (E.D. Cal. Sept. 9, 2013) (responding to discovery);

- Depositions: E.g., Garcia v. Resurgent Capital Services, L.P., 2012 WL 3778852, at *6 (N.D. Cal. 2012);

- Communication between co-counsel: E.g., Defenbaugh v. JBC & Associates, Inc., 2004 WL 1874978 (N.D. Cal. Aug. 10, 2004);

- Communication with opposing counsel: E.g., Hernandez v. Erin Capital Mgmt., LLC, 2011 WL 4595802, at *3 (C.D. Cal. Oct. 3, 2011);

- Settlement conferences: E.g., Lota by Lota v. Home Depot U.S.A., Inc., 2013 WL 6870006, at *10 (N.D. Cal. Dec. 31, 2013)

- Court appearances: E.g., Alvarado v. FedEx Corp., 2011 WL 4708133, at *28 (N.D. Cal. 2011);

- Settlement administration: <u>E.g.</u>, <u>Wren v. RGIS Inventory Specialists</u>, 2011 WL 1230826, at *30 (N.D. Cal. 2011).

 "By and large, the [district] court should defer to the winning lawyer's professional judgment as to how much time he was required to spend on the case." <u>Chaudhry v. City of Los Angeles</u>, 751 F.3d 1096, 1111 (9th Cir.), <u>cert. denied sub nom. City of Los Angeles, Cal. v. Chaudhry</u>, 135 S. Ct. 295, (2014), <u>see</u> <u>also</u> <u>Rodriguez v. Cty. of Los Angeles</u>, 96 F. Supp. 3d 1012, 1023-24 (C.D. Cal. 2014) ("Courts generally accept the reasonableness of hours supported by declarations of counsel."); <u>Horsford v. Bd. of Trustees of Cal. State Univ.</u>, 132 Cal.App.4th 359, 396 (2005) ("[T]he verified time statements of the attorneys, as officers of the court, are entitled to credence in the absence of a clear indication the records are erroneous.").  Likewise, courts should not second-guess staffing decisions or attempt to micro-manage a law firm's practices in assessing the reasonableness of a fee request. <u>See</u> <u>Moreno v. City of Sacramento</u>, 534 F.3d 1106, 1115 (9th Cir. 2008) ("The court may permissibly look to the hourly rates charged by comparable attorneys for similar work, but may not attempt to impose its own judgment regarding the best way to operate a law firm, nor to determine if different staffing decisions might have led to different fee requests"); <u>Moralez v. Whole Foods Mkt., Inc.</u>, 2013 WL 3967639, *4 (N.D. Cal. July 31, 2013) ("The Court is reluctant to second-guess the staffing decisions of Plaintiff's counsel").

Because this case has been efficiently litigated, there is no need for the Court to comb through records of numerous attorneys and staff to eliminate duplicative billing, nor could there be a reasonable argument that this case was overstaffed.  Notably, collaboration and coordination of efforts is *not* the same as impermissible double billing. <u>Sierra Club</u>, 625 F. Supp. 2d at 868.  This is specifically so with respect to work on, for example, legal research or a motion where attorneys may be given discrete tasks, <u>Garcia v. Resurgent Capital Servs., L.P.</u>, 2012 WL 3778852, at *7 (N.D. Cal. Aug. 30, 2012), or where there is reason for multiple persons to attend depositions or court hearings. <u>Rodriguez v. Barrita, Inc.</u>, 2014 WL 2967925, at *6 (N.D. Cal. July 1, 2014).  Indeed, it would be uncommon for a single attorney to litigate a complex class action.  Additionally, as noted above, Plaintiffs' estimates do not take into

account work finalizing these papers and time that will be spent finishing the administration of the settlement.

Because the requested hours are eminently reasonable given the duration and intensity of this litigation, and the excellent result obtained, Plaintiffs' counsel submits that they support the requested attorneys' fees.

### b.    Counsel's Hourly Rates are Reasonable

In addition, the requested hourly rates set forth below are reasonable and should be approved. To determine a reasonable hourly rate, courts look to the rates for comparable legal services in the local community, in this case the Northern District of California. E.g., Gong- Chun v. Aetna Inc., 2012 WL 2872788, at *21 (E.D. Cal. July 12, 2012).  Also relevant is a comparison of plaintiffs' counsel's asserted rates to defense counsel's rates charged to their clients. Real v. Cont'l Grp., Inc., 116 F.R.D. 211, 213 (N.D. Cal. 1986) (noting that "Defendant's counsel's hours and rates are relevant" to the determining the reasonableness of the hourly rate and hours requested by plaintiff's counsel in their fee petition).  Attorneys' fees for highly specialized and sought after attorneys continue to rise, with hourly rates now reaching $2000 per hour at the highest levels.[9] See Real v. Cont'l Grp., Inc., 116 F.R.D. 211, 213 (N.D. Cal. 1986) (noting that "Defendant's counsel's hours and rates are relevant" to the determining the reasonableness of the hourly rate and hours requested by plaintiff's counsel in their fee petition); Riker v. Distillery, 2009 WL 2486196, *1 (E.D. Cal. Aug. 12, 2009) ("This court finds that defendants' billing records may be relevant to assist the court in determining the reasonableness of plaintiff's request for attorney's fees").

In light of the rate charged by Uber's lead counsel, the rate used for the lodestar analysis here for Attorney Liss-Riordan, $950 per hour, is reasonable and should be approved.  Indeed, the Los Angeles Superior Court recently approved the rate of $950 per hour for Ms. Liss-Riordan in two other settlements involving gig economy company DoorDash Inc. See Marko v. DoorDash Inc., BC659841

---

[9] See Aebra Coe, What Do The Highest-Paid Lawyers Make An Hour? Law360 (May 11, 2016), available at: http://www.law360.com/articles/794929/what-do-the-highest-paid-lawyers-make-an-hour.

(Jan. 13, 2022); Contreras v. Zūm Services, Inc., 19STCV43062 (L.A. Super. Ct. Mar. 25, 2022), and an arbitrator approved $900 per hour in a lodestar analysis for a fee petition for a New York arbitration case Attorney Liss-Riordan won at hearing in early 2021. See Liss-Riordan Decl. at ₱ 24.  Furthermore, this Court previously approved a rate of $850 per hour in performing its lodestar cross-check in the O'Connor settlement, and several years have passed since that time. See O'Connor v. Uber Techs., Inc., 2019 WL 4394401, at *11 (N.D. Cal. Sept. 13, 2019). (approving settlement with my rate calculated at $850/hour for lodestar cross-check).  Indeed, given that last year Attorney Liss-Riordan was named the top employment lawyer in the country by Benchmark Litigation, she clearly merits a rate that courts have recognized for top-tier litigators, which has exceeded $1,000 per hour in recent years.[10]  This rate is also well in line with, if not lower, than the rates that have been approved in this district for other top lawyers. See, e.g., Independent Living Center of S. Cal. v. Kent, 2020 U.S.Dist. LEXIS 13019 (C.D. Cal. 2020) (approving rates for senior partners between $965 and $1,025); Gutierrez v. Wells Fargo Bank, N.A., 2015 WL 2438274, *5 (N.D. Cal. May 21, 2015) (in consumer class action, finding reasonable rates for Bay Area attorneys of between $475-$975 for partners); Dimry v. Bert Bell/Pete Rozelle NFL Player Ret. Plan, No. 3:16-CV-01413-JD, 2018 WL 6726963, at *1 (N.D. Cal. Dec. 22, 2018) (approving the requested hourly rate of $900 for partner in ERISA case); Civil Rights Educ. & Enf't Ctr. v. Ashford Hosp. Tr., Inc., 2016 WL 1177950, at *5 (N.D. Cal. Mar. 22, 2016) (approving an hourly rate of $900 for highly experienced partner); Cotter v. Lyft Inc., 2017 WL 1033527 (N.D. Cal. Mar. 16, 2017) Order Granting Final Approval of Settlement Agreement (Dkt. No. 310) (approving hourly rate of $800 for Ms. Liss-Riordan several years ago); Nat'l Fed'n of the Blind of Cal. v. Uber Techs., Inc., No. 14–cv–4086–NC (N.D. Cal. Dec. 6, 2016) Order Granting Final Approval and Attorneys' Fees (Dkt. No. 139) (approving hourly rates of $900 and $895 for senior partners).

---

[10]   See, e.g., MSC Mediterranean Shipping Co. Holding S.A. v. Forsyth Kownacki LLC, 2017 WL 1194372, at *3 (S.D.N.Y. Mar. 30, 2017) (finding reasonable the rate of $1,048.47 charged by partners at Gibson Dunn, which represents Defendant DoorDash in this matter); S. Bank N.A. v. Dexia Real Estate Capital Mkts., 2016 WL 6996176, at *8 (S.D.N.Y. Nov. 30, 2016) (approving rates of up to $1,055 per hour).

Moreover, Ms. Liss-Riordan's work warrants this rate because of her exceptional qualifications. As noted above, and described further in her Declaration, Attorney Liss-Riordan has received substantial recognition over the years as a national expert on wage and hour litigation.  She is especially well known for successfully representing low wage workers in scores of cases that include precedent-setting trials and appeal. See Liss-Riordan Decl. at ¶¶ 8-18.  In this case, Attorney Liss-Riordan, along with the other attorneys working with her and under her direction, were able to draw from the wealth of experience that she and her firm have developed over the last decades in the area of wage law, including from her prior hard-fought cases against Uber before this very court.  Further, Attorney Liss-Riordan's extensive knowledge of the "ABC" test utilized in Massachusetts for years, where she is based, allowed her to apply that experience to the "ABC" test now utilized in California following the Dynamex decision and the passage of AB 5.  In analyzing the lodestar cross-check, Attorney Liss-Riordan's national prominence in this field, breadth of experience, and success in litigating employment misclassification cases in new and emerging industries well justifies an hourly rate of $950, if not higher.

With respect to the other attorneys who have worked on the cases, "[t]he reasonable hourly rate for computing the lodestar amount is based on the 'prevailing market rates in the relevant community.'" Betancourt v. Advantage Hum. Resourcing, Inc., No. 14-CV-01788-JST, 2016 WL 344532, at *8 (N.D. Cal.,. Jan. 28, 2016) (quoting Gonzalez v. City of Maywood, 729 F.3d 1196, 1205 (9th Cir. 2013).  In Betancourt the court noted (six years ago) that in the Northern District of California, "reasonable rates for partners range from $560 to $800, associates range from $285 to $510, and paralegals and litigation support staff range from $150 to $240." Id. Thus, Plaintiffs have included in their lodestar calculation a rate of $600 for Adelaide Pagano, who is a partner at Lichten & Liss-Riordan and assisted Attorney Liss-Riordan in overseeing the litigation. See Liss-Riordan Decl. at ¶¶ 26-28. She oversaw the discovery process, performed extensive briefing in connection with the Motion for Class Certification and Motion for Summary Judgment, attended mediation and prepared materials for the mediation, and oversaw the drafting of the settlement documents and settlement implementation. Id. This rate is well warranted for the lodestar cross-check. See, e.g., Marko v. DoorDash Inc., BC659841 (Jan. 13, 2022) (approving

20

hourly rate of $600 for Attorney Pagano); Contreras v. Zūm Services, Inc., 19STCV43062 (L.A. Super. Ct. Mar. 25, 2022) (same); AdTrader, Inc. v. Google LLC, 2020 WL 1921774, at *8, (N.D. Cal., Mar. 24, 2020) appeal dismissed 7 F.4th 803 (9th Cir. 2021) (approving "hourly rate of $855 per hour for junior partners and of counsel attorneys" in class action for breach of contract); Superior Consulting Servs., Inc. v. Steeves-Kiss, 2018 WL 2183295, at *5 (N.D. Cal. May 11, 2018) ("[D]istrict courts in Northern California have found that rates of $475 to $975 per hour for partners... are reasonable."); Perfect 10, Inc. v. Giganews, Inc., 2015 WL 1746484, at *15-*20 (C.D. Cal. Mar. 24, 2015) (approving billing rates of $610-$750 for junior partner as reasonable), aff'd, (9th Cir. 2017) 847 F.3d 657; Independent Living Center of S. Cal. v. Kent, 2020 U.S. Dist. LEXIS 13019 (C.D. Cal. 2020) (approving rates of $640 per hour for 2015 graduate).

Plaintiffs have also requested a rate of $425 for fifth year associate Anne Kramer performed substantive research and drafting in the Hassell case and attended numerous mediations of the Verhines settlement of sick leave claims and oversaw implementation of that settlement. See Liss-Riordan Decl. at ¶¶ 29-30. See, e.g., Contreras v. Zūm Services, Inc., 19STCV43062 (Mar. 25, 2022) (approving hourly rate of $425 for Attorney Kramer); McKibben v. McMahon, 2019 WL 1109683, at *14 (C.D. Cal., Feb. 28, 2019) (approving $480/hour for attorney with six years of experience); Luna v. Universal City Studios, LLC, 2016 WL 10646310, at *9 (C.D. Cal. Sept. 13, 2016) (adopting hourly rate of $410 for associates with three to seven years' experience in wage-and-hour class action); Dmuchowsky v. Sky Chefs, Inc., 2019 WL 1934480, at *12 (N.D. Cal. May 1, 2019) (approving hourly rate of $400 for graduate of law school class of 2014); Dixon v. City of Oakland, 2014 WL 6951260, *7 (N.D. Cal. Dec. 8, 2014) (approving hourly rates in an individual civil rights case of $400 for associates with 5 years of experience); Campbell v. Best Buy Stores, L.P., 2015 U.S. Dist. LEXIS 186976, at *27 (C.D. Cal. June 23, 2015) (assigning hourly rates from $450-$475 to attorneys with 5.5-6.5 years of experience in its lodestar analysis for a class action); Retta v. Millennium Products, Inc., 2017 WL 5479637, at *12 (C.D. Cal., Aug. 22, 2017) (assigning hourly rates from $400-$425 to attorneys with 5-7 years of experience in its lodestar analysis for a class action); Kries v. City of San Diego, 2021 U.S. Dist. LEXIS 6826, at *27 (S.D. Cal. Jan. 13, 2021) (assigning a $400 hourly rate to an attorney with 6 years of experience in its

lodestar analysis for a Fair Labor Standard Act case).  Additionally, Plaintiffs request an hourly rate of $375 for third year associate Anastasia Doherty who was the primary associate on the James case and assisted extensively with client communication, discovery, legal research, and drafting. See, e.g., Campbell v. Best Buy Stores, L.P., 2015 U.S. Dist. LEXIS 186976, at *27 (C.D. Cal. June 23, 2015) (assigning a $375 hourly rate for an associate with 1.5 years of experience); WB Music Corp. v. Royce Int'l Broad. Corp., 2018 WL 6177237, at *5 (C.D. Cal. July 9, 2018) (finding reasonable hourly rates of $400-$495 for an associate "right out of law school"); 700 Valencia St. LLC v. Farina Focaccia & Cucina Italiana, LLC, 2018 WL 783930, at *3 (N.D. Cal. Feb. 8, 2018) (finding reasonable a $420 hourly rate for a first-year associate); see also Cuviello v. Feld Entm't, Inc., 2015 WL 154197, *2 (N.D. Cal. Jan. 12, 2015) (awarding fees of $325 per hour to an associate with 2 years' experience seven years ago); San Francisco Baykeeper v. W. Bay Sanitary Dist., 2011 WL 6012936, *7 (N.D. Cal. Dec. 1, 2011) (Chen, J.) (awarding rate of $300 for attorney with 2 years' experience over a decade ago).  A brief discussion of these attorneys' experience is included in the Liss-Riordan Declaration at ¶¶ 26-31.

Finally, Plaintiffs have included an hourly rate of $275 for work performed by student law clerks and $225 for their paralegal staff (comprised of paralegals Emily Verrill, Alexandra Andrade, Maria Cedeno, and Tristan Davis). See Liss-Riordan Decl. at ¶¶ 32-35. Similar hourly rates have been approved by other court decisions in this district for paralegal staff. See Contreras v. Zūm Services, Inc., 19STCV43062 (Mar. 25, 2022) (approving hourly rate of $275 for student law clerks and $225 for paralegal staff); McKibben v. McMahon 2019 WL 1109683, at *14 (C.D. Cal., Feb. 28, 2019) (approving rates ranging from $335 for senior paralegals to $175 for junior paralegals); Broomfield v. Craft Brew All., Inc., 2020 WL 1972505, at *12 (N.D. Cal. Feb. 5, 2020) (assigning a $250 hourly rate to paralegals in its lodestar analysis for a class action); Betancourt, 2016 WL 344532, *8 (reasonable rates and paralegals and litigation support staff range from $150 to $240); In re Butler, A139411, 2015 WL 3658409 at *2 (Cal. App. 1st Dist. June 15, 2015) (noting that defense counsel's firm charged $260 per hour for paralegal work); Nitsch v. DreamWorks Animation SKG Inc., 2017 WL 2423161, at *9 (N.D. Cal. June 5, 2017) (finding reasonable hourly rates up to $290 for paralegals in its lodestar analysis for a class action) Zoom Elec., Inc.v. Int'l Bhd of Elec.Workers Local 595, 2013 WL 2297037,

*4 (N.D. Cal. May 24, 2013) (quoting market rates of "between $180 and $225 per hour for law clerks and paralegals" and awarding those rates as of 2013); see also Villalpando v. Exel Direct Inc., Case No. 3:12-cv-04137-JCS, Dkt. No. 344-1 at ¶ 74 (asserting up to $250 hourly rate for plaintiffs-side wage and hour paralegals); McKibben, 2019 WL 1109683, at *14 (approving rate of $225/hour for law clerks in 2019).

### C.    Plaintiffs' Request for Class Representative Service Enhancements is Reasonable

Under both federal and California law, named plaintiffs are generally entitled to a service award for initiating the litigation on behalf of absent class members, taking time to prosecute the case, and incurring financial and personal risk. Wixon v. Wyndham Resort Dev. Corp., 2011 WL 3443650, at *6 (N.D. Cal. Aug. 8, 2011) (An incentive award is designed to "compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general.").  Numerous federal and state courts in California have approved service awards of $10,000 or even much higher, including where the payments represent a proportionally larger share of the overall settlement than is the case here. E.g., Garner v. State Farm Mut. Auto. Ins. Co., 2010 WL 1687832, at *17 n.8 (N.D. Cal. 2010) ("Numerous courts in the Ninth Circuit and elsewhere have approved Service awards of $20,000 or more where, as here, the class representative has demonstrated a strong commitment to the class") (collecting cases); Meewes v. ICI Dulux Paints, No. BC265880 (L.A. Cnty. Super. Ct. Sept. 19, 2003) (approving service awards of $50,000, $25,000 and $10,000 to the named Plaintiffs); Hickcox-Huffman v. US Airways, Inc., 2019 WL 1571877, at *2 (N.D. Cal., Apr. 11, 2019) (approving $10,000 incentive payment for class action representative plaintiff as "fair and reasonable"); Noroma v. Home Point Financial Corporation, 2019 WL 5788658, at *10 (N.D. Cal., Nov. 6, 2019) (awarding incentive payments of $10,000 and $5,000 respectively to named plaintiffs); Pointer v. Bank of America, N.A., 2016 WL 7404759, at *20 (E.D. Cal., Dec. 21, 2016) (approving $10,000 incentive payment); Murillo v. Pacific Gas & Elec. Co., 2010 WL 2889728, at *12 (E.D. Cal., July 21, 2010) (same); EK Vathana v. Everbank, 2016 WL 3951334, at *4 (N.D. Cal. July 20, 2016) (approving incentive award of $12,500 where lead plaintiff "has been an active participant in this litigation for the past seven years"); Lusby,

2015 WL 1501095, at *5 (awarding $7,500 to each of the four class representatives from $750,000 fund); Covillo v. Specialtys Cafe, 2014 WL 954516, *8 (N.D. Cal. Mar. 6, 2014) (awarding $8,000 to class representatives from $2,000,000 fund); Rausch v. Hartford Financial Servs. Group, No. 01–CV–1529–BR, 2007 WL 671334, at *3 (D. Or. Feb.26, 2007) (approving $10,000 as a reasonable incentive award); Razilov v. Nationwide Mut. Ins. Co., 2006 WL 3312024, at *1 (D. Or. Nov.13, 2006) ("The Court also awards ... incentive awards in the amounts of $10,000 to class representative Ruslan Razilov…").

Here, Plaintiffs request awards of $10,000 for each of the three named plaintiffs James, Verhines, and Hassell.  These enhancement payments, totaling $30,000 out of a $8.43 million settlement fund, are warranted by their work on this case and the risk undertaken by them on behalf of the class. Both Plaintiff James and Plaintiff Verhines sat for lengthy, adversarial depositions in this case, for which they missed work and devoted considerable time preparing, and both responded to more than 100 document requests and to Uber's Interrogatories. See James Decl. at ¶¶ 6-7; Verhines Decl. at ¶¶ 4-5. Both executed various declarations in support of Plaintiffs' filings and provided documents that were used as exhibits in the case. See James Decl. at ¶¶ 4-5; Verhines Decl. at ¶ 4.  Additionally, both Plaintiffs were heavily involved in the negotiation of this settlement as well as the prior sick leave settlement in the Verhines case. See James Decl. at ¶ 9; Verhines Decl. at ¶¶ 6-7.  Likewise, Plaintiff Hassell provided voluminous documents to his counsel and worked with counsel to craft the First Amended Complaint, which required extremely detailed allegations, per Judge Hamilton's Order in that case. See Hassell Decl. at ¶¶ 5-7.  Mr. Hassell also embraced his role as class representative, documenting his experience with Uber's Global Financial Assistance Program during the pandemic while sick with Covid-19 in order to inform his attorneys how the program was working on the ground for putative class members like himself. Id. at ¶ 8. Mr. Hassell spent many hours carefully reviewing the settlement agreement in this case, and communicating with his attorneys. Id. at ¶¶ 9-10.

All three named plaintiffs have worked for Uber during the pendency of the case and all three have had their names on the publicly-filed pleadings in this case. See James Decl. at ¶ 11; Verhines Decl. at ¶¶ 2, 9; Hassell Decl. at ¶¶ 2, 11 Potential employers have seen, and undoubtedly will see,

Plaintiffs' names associated with this litigation – a fact not helpful to Plaintiffs' potential employment prospects, particularly with "gig economy" companies. Id.

Furthermore, all of the plaintiffs have been active in helping to assist the attorneys in this case, provide documents and information, and spread the word about the case and Uber's arbitration clause among their fellow drivers.  See James Decl. at ¶¶ 8, 10; Verhines Decl. at ¶¶ 6, 8; Hassell Decl. at ¶¶ 9-11. Moreover, these three drivers have been involved with the litigation for several years, and their steadfast, unflagging support for the case and the class they represent has been laudable.  Under these circumstances, the requested enhancements are reasonable, if not low.

Notably, the requested service enhancements, totaling $30,000, comprise less than half a percent of the overall settlement amount – just 0.35%.  See, e.g., Monterrubio v. Best Buy Stores, L.P., 291 F.R.D. 443, 462 (E.D. Cal. 2013) (finding total incentive payment of .62% of settlement reasonable).  Likewise, there is no "drastic disparity" in the size of each payment relative to the settlement shares of class members, some of whom will be receiving many thousands of dollars in their settlement payment.  For these reasons, the requested service enhancements should be approved.

## IV.   CONCLUSION

As set forth above, Plaintiffs' counsel has achieved an excellent result for the plaintiff class. Plaintiffs have shown that they have worked diligently and efficiently on this case, and their requested fee, which is line with the 25% benchmark in the Ninth Circuit, results in a modest lodestar multiplier of 2.62, which is more than justified by the excellent financial results obtained here (to say nothing of the financial assistance program that provided relief to thousands of drivers during the pandemic, for which the firm received no fees).  Moreover, because of the significant task ahead of administering and enforcing this settlement, Plaintiffs' counsel will likely be devoting additional hours to this litigation in the months and years to come.  For all of these reasons, the Court should approve the requested fees.

Date: May 23, 2022

Respectfully submitted,

CHRISTOPHER JAMES, SPENCER VERHINES, and
KENT HASSELL, individually and on behalf of all others
similarly situated,

By their attorneys,


_/s/ Shannon Liss-Riordan_____

Shannon Liss-Riordan, SBN 310719
Anne Kramer, SBN 315131
LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, MA 02116
(617) 994-5800
Email:  sliss@llrlaw.com; akramer@llrlaw.com

NOTICE OF MOTION AND MOTION FOR PLAINTIFFS' MOTION FOR ATTORNEYS' FEES, COSTS, EXPENSES,
AND SERVICE AWARDS– CASE NO. CV 19-cv-06462-EMC

1

2

## **CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing document was served by electronic filing on May 23, 2022, on all counsel of record.

         */s/ Shannon Liss-Riordan*
         Shannon Liss-Riordan, Esq.

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT AND
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF – CASE NO. CV 19-cv-06462-EMC