1   SHANNON LISS-RIORDAN, SBN 310719
    (sliss@llrlaw.com)
2   ANNE KRAMER, SBN 315131
    (akramer@llrlaw.com)
3   LICHTEN & LISS-RIORDAN, P.C.
    729 Boylston Street, Suite 2000
4   Boston, MA 02116
    Telephone:    (617) 994-5800
5   Facsimile:    (617) 994-5801

6   Attorneys for Plaintiffs and the Class

7

8                   UNITED STATES DISTRICT COURT

9                   NORTHERN DISTRICT OF CALIFORNIA

10

11  CHRISTOPHER JAMES, et al., individually          CASE NO. 19-cv-06462-EMC
    and on behalf of all others similarly situated,
12                                   Plaintiffs,
                                                     **NOTICE OF MOTION AND MOTION FOR**
13          v.                                       **FINAL APPROVAL OF CLASS**
                                                     **SETTLEMENT AND MEMORANDUM OF**
14                                                   **POINTS AND AUTHORITIES IN SUPPORT**
    UBER TECHNOLOGIES, INC.,                         **THEREOF**
15                                   Defendant.

16
                                                     Hearing Date: July 14, 2022
17                                                   Hearing Time: 2:30 pm
                                                     Courtroom:    5
18                                                   Judge: Judge Edward Chen

19

20

21

22

23

24

25

26

27

28

## <u>NOTICE OF MOTION AND MOTION</u>

**TO DEFENDANTS AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT** on July 14, 2022, at 2:30 p.m., or as soon thereafter as the matter can be heard before the Honorable Edward M. Chen, in Courtroom 5, 17th Floor, U.S. District Court, Northern District of California, located at 450 Golden Gate Avenue, San Francisco, CA, 94102, Plaintiffs will and hereby do move the Court for an Order granting Plaintiffs' motion for final approval of the proposed class action settlement reached in this case.

This Motion is based on this Notice of Motion and Motion; the Memorandum of Points and Authorities below; the Declaration of Christina Fowler filed concurrently herewith; all supporting exhibits filed herewith; all other pleadings and papers filed in this action; and any argument or evidence that may be presented at the hearing in this matter.

.

# TABLE OF CONTENTS

Page

I.      INTRODUCTION ................................................................................................. 1

II.     RESULTS OF THE NOTICE PROCESS / DISTRIBUTION PLAN ...................... 2

III.    LEGAL STANDARD ........................................................................................... 4

IV.     DISCUSSION ...................................................................................................... 5

        a.      The Factors Set Forth in Rule 23(e)(2) Overwhelmingly Favor Granting Final
                Approval of The Proposed Settlement. ........................................................ 6

                i.      Class Counsel and the Class Representatives Have Adequately
                        Represented the Class under Rule 23(e)(2)(A). ................................... 6

                ii.     The Proposed Settlement Was Clearly Negotiated at Arm's Length
                        under Rule 23(e)(2)(B) With the Assistance of an Experienced Wage-
                        and-Hour Mediator. ............................................................................ 6

                iii.    The Relief Provided By The Settlement Is Fair and Adequate under
                        Rule 23(e)(2)(C)(i) in Light of the Risks of Proceeding to Trial. .................... 7

                iv.     The Notice Process Was Effective, and the Method for Distributing
                        Relief is Likewise Effective under Rule 23(e)(2)(C)(ii). ................................. 9

                v.      The Requested Attorneys' Fees are Reasonable under Rule
                        23(e)(2)(C)(iii). ................................................................................ 10

                vi.     The Settlement Treats Class Members Equitably under Rule
                        23(e)(2)(D). ...................................................................................... 11

        b.      The Hanlon Factors Likewise Favor Final Approval.................................... 13

                1.      The Positive Reaction of the Class Weighs in Favor of Final Approval ........ 13

                i.      The Strength of Plaintiffs' Case................................................................ 14

                ii.     The Risk, Expense, Complexity, and Likely Duration of Continued
                        Litigation ......................................................................................... 16

                iii.    The Risk of Maintaining Class Action Status ................................................. 16

                iv.     The Amount Offered in Settlement ............................................................. 17

                v.      The Extent of Discovery Completed............................................................ 17

                vi.     The Experience and Views of Counsel ........................................................ 19

i

# TABLE OF CONTENTS
(continued)

Page

vii.    Presence of a Governmental Participant ........................................................... 20

V.    RESPONSE TO OBJECTIONS ........................................................................... 20

VI.    CONCLUSION ..................................................................................................... 25

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF AUTHORITIES
(continued)

**Cases**                                                                            Page(s)

Acosta v. Trans Union, LLC,
    243 F.R.D. 377 (C.D. Cal. 2007) ................................................. 17

Alexander v. FedEx Ground Package Sys., Inc.,
    2016 WL 3351017 (N.D. Cal. June 15, 2016) ............................. 22

Barcia v. Contain-A-Way, Inc.,
    2009 WL 587844 (S.D. Cal., Mar. 6, 2009) ................................ 14

Barnes v. FleetBoston Fin. Corp
    2006 U.S. Dist. LEXIS 71072 (D. Mass. Aug. 22, 2006).............. 21

Bautista v. Harvest Management Sub LLC,
    2014 WL 12579822 (C.D. Cal., July 14, 2014) .......................... 14

Bellinghausen v. Tractor Supply Co.,
    306 F.R.D. 245 (N.D. Cal. 2015) ............................................... 12

Boyd v. Bechtel Corp.,
    485 F. Supp. 610 (N.D. Cal. 1979) ............................................ 13

Castellanos v. State of California
    2021 WL 3730951 (Cal. Super. Ct. Aug. 20, 2021) .................... 23

Chun-Hoon v. McKee Foods Corp.,
    716 F. Supp. 2d 848 (N.D. Cal. 2010) ....................................... 22

Churchill Village, LLC. v. Gen. Elec.,
    361 F.3d 566 (9th Cir. 2004)................................................ 5, 13, 20

Class Plaintiffs v. City of Seattle,
    955 F.2d 1268 (9th Cir. 1992).................................................... 5

Conroy v. 3M Corp.
    2006 U.S. Dist. LEXIS 96169 (N.D. Cal. Aug. 10, 2006).......... 21

Costello v. BeavEx, Inc.
    810 F.3d 1045 (7th Cir. 2016).................................................... 16

Cotter v. Lyft, Inc.,
    193 F. Supp. 3d 1030 (N.D. Cal. 2016) .......................... 2, 6, 17, 22

# TABLE OF AUTHORITIES
(continued)

Page(s)

Cotter v. Lyft, Inc.,
2017 WL 1033527 (N.D. Cal. Mar. 16, 2017) ................................................................... 10

Cotter v. Lyft, Inc.,
176 F. Supp. 3d 930 (N.D. Cal. 2016) .............................................................................. 22

Cotter v. Page
2017 WL 4535961 (9th Cir., Sept. 15, 2017, No. 17-15648) ............................................ 22

Dalton v. Lee Publications, Inc.,
2011 WL 1045107 (S.D. Cal. Mar. 22, 2011) ..................................................................... 8

Fernandez v. Victoria Secret Stores, LLC,
2008 WL 8150856 (C.D. Cal. July 21, 2008) ................................................................... 14

Franco v. Ruiz Food Prod., Inc.,
2012 WL 5941801 (E.D. Cal. Nov. 27, 2012) ........................................................ 14, 15, 16

Garcia v. Border Transportation Grp., LLC
28 Cal. App. 5th 558 (2018), as modified on denial of reh'g (Nov. 13, 2018) ................. 8

Garner v. State Farm Mut. Auto. Ins. Co.
2010 WL 1687832 (N.D. Cal. 2010) ................................................................................. 12

Gonzales v. San Gabriel Transit, Inc.
40 Cal. App. 5th 1131 (2019) ............................................................................................ 7

Gribble v. Cool Transports Inc.,
2008 WL 5281665 (C.D. Cal., Dec. 15, 2008) ................................................................. 10

Hanlon v. Chrysler Corp.,
150 F.3d 1011 (9th Cir. 1998) ............................................................................. 4, 5, 6, 14

Hefler v. Wells Fargo & Company,
2018 WL 6619983 (Dec. 18, 2018) ................................................................................... 11

Henry v. Central Freight Lines Inc.
2021 WL 3187257 (E.D. Cal. July 28, 2021) ..................................................................... 8

Hickcox-Huffman v. US Airways, Inc.
2019 WL 1571877 (N.D. Cal., Apr. 11, 2019) ................................................................. 12

Holak v. K Mart Corp.,
2014 WL 4930762 (E.D. Cal. Sept. 30, 2014) ................................................................... 8

**TABLE OF AUTHORITIES**
(continued)

Page(s)

Hurst v. Buczek Enterprises, LLC,
  870 F. Supp. 2d 810 (N.D. Cal. 2012) ............................................................... 8

In re Bluetooth Headset Prod. Liab. Litig.
  654 F.3d 935 (9th Cir. 2011) ............................................................................. 7

In re FedEx Ground Package Sys., Inc. Employment Practices Litig.
  273 F.R.D. 516 (N.D. Ind. 2010) ..................................................................... 17

In re Mego Fin. Corp. Sec. Litig.,
  213 F.3d 454 (9th Cir. 2000) ............................................................................. 6

In re Syncor ERISA Litig.,
  516 F.3d 1095 (9th Cir. 2008) ........................................................................... 5

In re Tableware Antitrust Litig.,
  484 F. Supp. 2d 1078 (N.D. Cal. 2007) .......................................................... 11

In re Warfarin Sodium Antitrust Litig.
  212 F.R.D. 231 (D. Del. 2002), aff'd, 391 F.3d 516 (3d Cir. 2004) ................ 16

Isby v. Bayh,
  75 F.3d 1191 (7th Cir. 1996) ........................................................................... 19

Janik v. Rudy, Exelrod & Zieff
  119 Cal. App. 4th 930 (2004), as modified on denial of reh'g (July 22, 2004) .......................... 23

Keller v. Elec. Arts, Inc.,
  2015 WL 5005057 (N.D. Cal. Aug. 18, 2015) ................................................. 10

Klee v. Nissan N. Am., Inc.,
  2015 WL 4538426 (C.D. Cal. July 7, 2015) .................................................... 14

Koumoulis v. LPL Financial Corp.,
  2010 WL 4868044 (S.D. Cal., Nov. 19, 2010) ................................................ 10

Lane v. Facebook, Inc.,
  696 F.3d 811 (9th Cir. 2012) ............................................................................. 4

Lawson v. Grubhub, Inc.,
  302 F. Supp. 3d 1071 (N.D. Cal. 2018) ........................................................... 19

Manibusan v. Specter
  No. C 05-04868 WHA, 2007 WL 4557791 (N.D. Cal. Dec. 21, 2007) ........... 23

**TABLE OF AUTHORITIES**
(continued)

Page(s)

Meewes v. ICI Dulux Paints
    No. BC265880 (L.A. Cnty. Super. Ct. Sept. 19, 2003) .................................................. 12

Mendel v. Chao, et al.
    Civ. A. No. 4:19-cv-3244 (N.D. Cal. May 24, 2021) .................................................. 21

Mendel v. Uber Techs. Inc.
    207 L. Ed. 2d 147 (May 26, 2020) .................................................. 21

Mendel v. UBER Techs., Inc.
    140 S. Ct. 2812 (2020) .................................................. 21

Monterrubio v. Best Buy Stores, L.P.,
    291 F.R.D. 443 (E.D. Cal. 2013) .................................................. 13

Moore v. PetSmart, Inc.,
    2015 WL 5439000 (N.D. Cal. Aug. 4, 2015) .................................................. 15

Moreno v. JCT Logistics, Inc.
    2019 WL 3858999 (C.D. Cal. May 29, 2019) .................................................. 8

Murillo v. Pacific Gas & Elec. Co.
    2010 WL 2889728 (E.D. Cal., July 21, 2010) .................................................. 13

Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.
    221 F.R.D. 523 (C.D. Cal. 2004) .................................................. 4, 13, 16, 17

Noroma v. Home Point Financial Corporation
    2019 WL 5788658 (N.D. Cal., Nov. 6, 2019) .................................................. 12

O'Connor v. Uber Techs., Inc.
    2019 WL 4394401 (N.D. Cal. Sept. 13, 2019), aff'd, No. 19-17073, 2019 WL
    7602362 (9th Cir. Dec. 20, 2019), cert denied .................................................. 21, 22

O'Connor v. Uber Techs., Inc.,
    No. 13-CV-03826-EMC, 2019 WL 1437101 (N.D. Cal. Mar. 29, 2019) .................................................. passim

O'Connor v. Uber Techs., Inc.,
    82 F. Supp. 3d 1133 (N.D. Cal. 2015) .................................................. 19

Officers for Justice v. Civil Serv. Comm'n of S.F.,
    688 F.2d 615 (9th Cir. 1982) .................................................. 5, 15, 17

Pointer v. Bank of America, N.A.
    2016 WL 7404759 (E.D. Cal., Dec. 21, 2016) .................................................. 13

**TABLE OF AUTHORITIES**
(continued)

Page(s)

Redante v. Yockelson
    112 Cal. App. 4th 1351 (2003)...................................................................................23

Reid v. SuperShuttle Int'l, Inc.,
    2012 WL 3288816 (E.D.N.Y. Aug. 10, 2012)...........................................................22

Rittmann v. Amazon.com, Inc.,
    971 F.3d 904 (9th Cir. 2020)...................................................................................19

Rodriguez v. D.M. Camp & Sons,
    2013 WL 2146927 (E.D. Cal. 2013).........................................................................14

Salter v. Quality Carriers, Inc.
    2021 WL 5049054 (C.D. Cal. Oct. 27, 2021), appeal pending, No. 21-56921 ...........8

Scovil v. FedEx Ground Package Sys., Inc.
    No. 1:10-CV-515-DBH, 2014 WL 1057079 (D. Me. Mar. 14, 2014).........................13

Staton v. Boeing Co.,
    327 F.3d 938 (9th Cir. 2003)...................................................................................11

Talbot v. Lyft Inc.
    CGC-18-566392 (S.F. Sup. Ct. Oct. 19, 2018).........................................................19

The People v. Uber Techs., Inc., et al.
    CGC-20-584402 (Cal. Sup. Ct. Aug. 10, 2020)........................................................24

Tri-Star Pictures, Inc. v. Unger
    32 F.Supp.2d 144 (S.D.N.Y. 1999), aff'd  198 F.3d 235 (2d Cir. 1999).....................21

Vasquez v. Coast Valley Roofing, Inc.,
    266 F.R.D. 482 (E.D. Cal. 2010) .............................................................................14

Vaughn v. Am. Honda Motor Co.
    627 F.Supp.2d 738 (E.D. Tex. 2007) .......................................................................21

Vizcaino v. Microsoft Corp.
    290 F.3d 1043 (9th Cir.2002)..................................................................................10

Waithaka v. Amazon.com, Inc.
    966 F.3d 10 (1st Cir. 2020) .....................................................................................19

Williams v. SuperShuttle Int'l, Inc.
    2015 WL 685994 (N.D. Cal. Feb. 12, 2015)............................................................14

**TABLE OF AUTHORITIES**
(continued)

Page(s)

**Statutes**

Federal Motor Carrier Act ("FMCA")
    49 U.S.C. § 13506(b)(2) ........................................................................................................... 21

**Rules**

Fed. R. Civ. P. 23 .......................................................................................................... 4, 5, 11

## I.     INTRODUCTION

Plaintiffs seek final approval of a $8,435,800 million class settlement that will resolve wage and hour claims related to the alleged misclassification of 1,329 California drivers as independent contractors by Defendant Uber Technologies, Inc. ("Defendant" or "Uber").[1] The Court previously granted preliminary approval of the settlement terms, finding that "[t]he named plaintiffs have adequately represented the class, the Settlement Agreement was negotiated at arm's length by a private mediator, and the amount of recovery is favorable compared to the maximum verdict value" and that on balance, "[t]he benefits of settlement outweigh the litigation risks." Dkt. No. 195 at 2.

The Court reached this conclusion after entertaining supplemental briefing it had requested concerning several questions related to the settlement. See Dkt. No. 190 (Supp. Briefing Order); Dkt. No. 191 (Supp. Brief). Furthermore, the Court has already carefully considered a prior proposed settlement that released the same claims for an earlier timeframe (for less consideration per class member), which the Court previously approved. See O'Connor v. Uber Techs., Inc., 2019 WL 1437101, at *12 (N.D. Cal. Mar. 29, 2019). The Court has also already considered the parties' voluminous briefing on class certification and determined that class treatment of the misclassification, expense reimbursement, and pay statement claims is appropriate.[2] See James v. Uber Techs. Inc., 338 F.R.D. 123 (N.D. Cal. 2021). Thus, the Court has thoroughly reviewed the proposed settlement at the preliminary stage with the same rigor applicable at the final approval stage. See Cotter v. Lyft, Inc., 193 F. Supp. 3d

---

[1]     The settlement releases claims from the date the O'Connor class settlement left off on February 28, 2019, through the date of Proposition 22's enactment, December 17, 2020, for Uber drivers who transported passengers and will release claims from June 28, 2016 through October 7, 2021 for 97 drivers who drove exclusively for Uber Eats.

[2]     As the Court noted in its Preliminary Approval Order, "the Ninth Circuit reversed [the class certification orders in this case] on the rationale that Uber's arbitration provision is enforceable, and therefore that drivers subject to the provision could only pursue their claims in individual arbitration rather than as members of the class. The ruling did not otherwise disturb this Court's findings that the California drivers had established numerosity, commonality, typicality, and adequacy with respect to their expense reimbursement and gratuities claims." O'Connor v. Uber Techs., Inc., 2019 WL 1437101, at *5 (N.D. Cal. Mar. 29, 2019) (internal citation omitted).

1030, 1037 (N.D. Cal. 2016) ("courts should review class action settlements just as carefully at the initial stage as they do at the final stage…rather than kicking the can down the road.").

As described below, nothing has happened since preliminary approval and during the notice process that should alter the Court's conclusion that the settlement is "fair, reasonable, and adequate." Indeed, the results of the notice and claims process show that the entire settlement class successfully received notice of the settlement, roughly 56% of the settlement class has already submitted claims, and only one driver has objected to the settlement and no drivers have opted out. Particularly in view of the risks of going forward, including the risk that Plaintiffs would not be awarded the full IRS reimbursement rate for their expense reimbursement claim, the proposed settlement provides a tremendous benefit to the class. Indeed, the settlement provides 100% of projected telephone and vehicle expense reimbursement damages for the class, at the full IRS rate, for both on-trip miles *and* miles to pick up passengers (or food deliveries) for all those drivers who opted out of every version of Uber's arbitration agreement and drove during the relevant period. Based on the current claim rate, the average settlement award is over $8,000, and some drivers stand to receive more than $50,000 in the settlement. See Fowler Decl. at ¶ 18.[3] Accordingly, the Court should grant final approval of this excellent settlement.[4]

## II.   RESULTS OF THE NOTICE PROCESS / DISTRIBUTION PLAN

On April 26, 2022, in accordance with the post-preliminary approval schedule set by the Court, the Settlement Administrator, Simpluris, distributed the initial Notice of settlement to members of the Settlement Class by email and text message. Fowler Decl. at ¶¶ 8-9. Of the emailed notices, only seven (7) bounced back as undeliverable. Id. at ¶ 10. For these class members whose emails were invalid,

---

[3]     Some drivers who opted out of Uber's arbitration clause but did not do so within 30 days or failed to do so every time they were presented with a new agreement were also sent notice that they are not part of the settlement class so that they can take individual action to pursue their claims in arbitration if they choose. See Fowler Decl. at ¶¶ 11-12, Ex. C.

[4]     Plaintiffs will provide a Proposed Order granting final approval closer to the July 14, 2022 hearing in order to provide the Court with the most up-to-date figures regarding the settlement and the final list of opt outs, if any.

Simpluris undertook to mail notices to class members, working to obtain current addresses. Simpluris was ultimately able to locate mailing addresses for all 7 settlement class members. Fowler Decl. at ¶ 7. Thus, the overall "reach rate" for the notice was 100%. Id.

On May 27, 2022, Simpluris distributed the first reminder Notice to individuals who had not yet submitted claims. Id. at ¶ 13. On June 6, 2022, Simpluris distributed a second reminder notice to all individuals who had not yet submitted claims. Id. at ¶ 14. Simpluris will send out a third and fourth reminder email blast to class members who had yet to submit claims on June 13 and June 20, 2022 and will send an additional text reminder on June 13, 2022. Id. at ¶ 15. Thus, to date, Settlement Class members have received multiple notices of the settlement, including by both text and email.

Pursuant to the Preliminary Approval Order, members of the Settlement Class were given 60 days to exclude themselves or object to the settlement or to submit a claim for their settlement share. See Dkt. No. 195 at ¶¶ 12-14. Out of a class of approximately 1,329 Settlement Class members, the administrator has received no opt-outs to date. Fowler Decl. at ¶ 19. Further, the administrator and/or the Court have received just one objection to the settlement, by an unrepresented driver (who is a serial litigant whose prior objections have been rejected by this Court and the Ninth Circuit Court of Appeals). Id. at ¶ 20; see also Liss-Riordan Decl. ISO Final Approval at ¶ 3; see also Dkt. Nos. 204, 205.[5] As of June 8, 2022, the administrator has received 749 valid claims, representing 56% of the settlement class (and 59% of the settlement fund, assuming 100% participation). See Fowler Decl. at ¶ 17. Because the settlement is non-reversionary, all unclaimed funds will be distributed to class members who do submit claims.

Pursuant to the Settlement, the initial distribution of funds will be made within 30 days of the Settlement becoming final. See Dkt. No. 189-4 (Settlement Agreement) at ¶ 98. Payments will be made by electronic means for those Settlement Class Members who elected to receive payment digitally (such as by Zelle, Paypal, or Venmo) and by check via first-class mail to anyone who did not elect a digital payment. Distribution shares will be calculated based on the number of miles drivers have transported

---

[5]      Plaintiffs address the objection infra, § V.

passengers who placed ride requests using the Uber App as well as miles driven to pick up passengers (i.e. "Occupied Time"). See Dkt. No. 189-4 (Settlement Agreement) at ¶¶ 61, 111-112. Following the initial distribution of funds, the Settlement Administrator will make reasonable, good-faith effort to remind settlement class members whose shares are more than $200 but who have not cashed their checks to do so and will work with settlement class members to reissue checks as needed. Id. at ¶ 127.

After 180 days, there will be a second distribution of all uncashed checks to those settlement class members who did submit claims and cashed their checks and whose residual shares would be at least $100. Id. at ¶ 119. If, following the second distribution, there are any remaining funds that cannot reasonably be distributed, such funds will be distributed to the parties' agreed-upon *cy pres* beneficiaries, Legal Aid at Work. Id.[6] Thus, the full proceeds of the settlement (less incentive payments for the Named Plaintiffs, attorneys' fees, and administrator expenses[7]) will be paid; no portion of the settlement funds will revert to Uber. Id.

## III.   LEGAL STANDARD

A class action may be settled only with the court's approval. Fed. R. Civ. P. 23(e). "Approval under 23(e) involves a two-step process in which the Court first determines whether a proposed class action settlement deserves preliminary approval and then, after notice is given to class members, whether final approval is warranted." Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc., 221 F.R.D. 523, 525 (C.D. Cal. 2004). At the final approval stage, the primary inquiry is whether the proposed settlement "is fundamentally fair, adequate, and reasonable." Lane v. Facebook, Inc., 696 F.3d 811, 818 (9th Cir. 2012); Hanlon v. Chrysler Corp., 150 F.3d 1011, 1026 (9th Cir. 1998). "It is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness." Hanlon,

---

[6]     Thus, very little of the funds will go to *cy pres*, as these will only be funds that are paid by check but not cashed (despite reasonable efforts to encourage class members to cash their checks).

[7]     The administrator has informed counsel that its anticipated expenses have increased slightly from $29,000 to $33,000 because of additional costs associated with sending notice to non-class members, as provided for by the Parties' Settlement Agreement. See Fowler Decl. at ¶ 21, 11-12.

NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT
CASE NO. CV 19-cv-06462-EMC

150 F.3d at 1026 (citing <u>Officers for Justice v. Civil Serv. Comm'n of S.F.</u>, 688 F.2d 615, 628 (9th Cir. 1982)).

In making the inquiry, the court must be mindful that the law favors the compromise and settlement of class action suits. <u>See, e.g.</u>, <u>In re Syncor ERISA Litig.</u>, 516 F.3d 1095, 1101 (9th Cir. 2008); <u>Churchill Village, LLC. v. Gen. Elec.</u>, 361 F.3d 566, 576 (9th Cir. 2004); <u>Class Plaintiffs v. City of Seattle</u>, 955 F.2d 1268, 1276 (9th Cir. 1992); <u>Officers for Justice v. Civil Serv. Comm'n</u>, 688 F.2d 615, 625 (9th Cir. 1982).

## IV.   DISCUSSION

Evaluating a settlement proposal at the final approval stage requires the district court to analyze a number of factors: (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; (8) and the reaction of the class members to the proposed settlement. <u>Hanlon</u>, 150 F.3d at 1026.  Moreover, amendments to Rule 23, which became effective on December 1, 2018, now provide additional guidance regarding how to evaluate class action settlements. <u>See</u> Fed. R. Civ. P. 23(e)(2) (listing factors to be considered in settlement approval, including (1) whether "the class representatives and class counsel have adequately represented the class;" (2) whether the proposal was negotiated at arm's length"; (3) whether "the relief provided for the class is adequate, taking into account the costs, risks, and delay of trial and appeal"; (4) "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;" (5) "the terms of any proposed award of attorney's fees, including timing of payment;" and (6) whether "the proposal treats class members equitably relative to each other.").

This Court has previously held that, particularly in light of the amendments to Rule 23(e)(2), "preliminary approval is more robust" and accordingly, the Court must "consider the factors informing final approval" even at the preliminary approval stage. <u>O'Connor v. Uber Techs., Inc.</u>, 2019 WL 1437101, at *4 (N.D. Cal. Mar. 29, 2019); <u>see also</u> <u>Cotter v. Lyft, Inc.</u>, 193 F. Supp. 3d 1030, 1037

(N.D. Cal. 2016) ("courts should review class action settlements just as carefully at the initial stage as they do at the final stage…rather than kicking the can down the road."). Thus, the Court has already thoroughly evaluated the proposed settlement at the preliminary approval stage. Nonetheless, Plaintiffs briefly discuss here all of the Rule 23(e)(2) factors, as well as the <u>Hanlon</u> factors.

**a.   The Factors Set Forth in Rule 23(e)(2) Overwhelmingly Favor Granting Final Approval of The Proposed Settlement.**

**i.   Class Counsel and the Class Representatives Have Adequately Represented the Class under Rule 23(e)(2)(A).**

"The resolution of the adequacy of representation issue requires two questions to be addressed: "(a) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (b) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" <u>In re Mego Fin. Corp. Sec. Litig.</u>, 213 F.3d 454, 462 (9th Cir. 2000) (citing <u>Hanlon</u>, 150 F.3d at 1020). Here, there is no conflict between Named Plaintiffs and the other Class Members as to their misclassification and related Labor Code claims, and the Plaintiffs have litigated the case vigorously from the outset, opposing motions to dismiss, filing a motion for preliminary injunction, and winning class certification. Thus, this factor weighs in favor of granting final approval of the Settlement.

**ii.   The Proposed Settlement Was Clearly Negotiated at Arm's Length under Rule 23(e)(2)(B) With the Assistance of an Experienced Wage-and-Hour Mediator.**

As the Court already concluded in evaluating preliminary approval, "the Settlement Agreement was negotiated at arm's length by a private mediator." Dkt. No. 195 at 2. Specifically, the parties met with highly experienced mediator Martin F. Scheinman on October 4, 2021. Dkt. No. 189-3 (Liss-Riordan Decl. in Support of Prelim. Approval) at ¶ 8. These negotiations took place following two years of aggressive litigation, in which the parties exchanged voluminous discovery totaling roughly 20,000 pages and exhaustively briefed and argued motions to dismiss, class certification, and motions for preliminary injunction across the two cases at issue, <u>Hassell</u> and <u>James</u>. <u>Id.</u> at ¶¶ 2-6. Plaintiffs filed their Summary Judgment Motion in August 2021, and Uber was poised to respond prior to the negotiations

NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT
CASE NO. CV 19-cv-06462-EMC

that led to this Settlement. Id. at ¶ 7. Thus, the parties had ample information, expert guidance from an experienced mediator, and intimate familiarity with the strengths and weaknesses of the claims at issue.

Additionally, none of the signs that would indicate collusion are present in this case.  Plaintiffs' counsel are not requesting a "disproportionate distribution of the settlement" as they are requesting the 25% benchmark of the settlement fund, the agreement is in no way contingent on Plaintiffs' counsel receiving the requested fees, and any amount of the fee request that is not ultimately awarded would go to the class, not to Uber. In re Bluetooth Headset Prod. Liab. Litig., 654 F.3d 935, 946-47 (9th Cir. 2011). Thus, for all these reasons, as the Court already concluded, this factor likewise favors granting final approval.

### iii.    The Relief Provided By The Settlement Is Fair and Adequate under Rule 23(e)(2)(C)(i) in Light of the Risks of Proceeding to Trial.

At the preliminary approval stage, this Court undertook an analysis of the costs, risks, and delay associated with proceeding in this case as well as the value of the claims being released and the consideration being offered. Plaintiffs submitted supplemental briefing on these points, noting that the settlement represents 100% of the estimated maximum verdict value of the most valuable claim in the case, expense reimbursement (and 69% of the combined verdict value of the certified expense reimbursement and pay statement claims). See Dkt. No. 191 at 3. Plaintiffs calculated the value of the sick leave claim at $600,000, and the remaining claims such as minimum wage and overtime to have negligible value. Id. at n. 2. Thus, the settlement represents significant relief in view of the value of the underlying claims.

Further, there are several major risks to proceeding to trial, which underscore the excellent value of the settlement. First, there is a serious question about whether Dynamex will apply to the claims in this case for expense reimbursement. Some courts have found that the Dynamex ABC test does apply to expense reimbursement claims. See, e.g., Gonzales v. San Gabriel Transit, Inc., 40 Cal. App. 5th 1131, 1158-59 (2019). See also Goro v. Flowers Foods, Inc., 2021 WL 4295294, at *9 (S.D. Cal. Sept. 21, 2021); Johnson v. VCG-IS, LLC, 2018 WL 3953771, at *3 (Cal. Super. July 18, 2018).  However, a number of other courts have reached the opposite conclusion. See, e.g., Garcia v. Border Transportation

Grp., LLC, 28 Cal. App. 5th 558, 571, (2018), <u>as modified on denial of reh'g</u> (Nov. 13, 2018); <u>Moreno</u> <u>v. JCT Logistics, Inc.</u>, 2019 WL 3858999, at *12 (C.D. Cal. May 29, 2019); <u>Salter v. Quality Carriers,</u> <u>Inc.</u>, 2021 WL 5049054, at *7 (C.D. Cal. Oct. 27, 2021), <u>appeal pending</u>, No. 21-56921; <u>Henry v.</u> <u>Central Freight Lines Inc.</u>, 2021 WL 3187257, at *3 (E.D. Cal. July 28, 2021).  Thus, the outcome of this issue remains uncertain. If the multi-factor <u>Borello</u> test applied instead of the ABC test, Plaintiffs would face a much more difficult path to proving Uber's liability for misclassification.

Second, even if Plaintiffs won on liability, the damages award could be sharply reduced if the full IRS reimbursement rate were not ultimately utilized to measure expenses for vehicle reimbursement. <u>See</u> Dkt. 191 at 4; <u>see also</u> <u>O'Connor v. Uber Techs., Inc.</u>, 2019 WL 1437101, at *8 (N.D. Cal. Mar. 29, 2019) ("[W]ith respect to the expense reimbursement claim, there was a "risk as to which IRS mileage reimbursement rate would apply" which could have reduced expense reimbursement damages by approximately 60%). That Plaintiffs obtained a settlement that equates to the *full IRS reimbursement* *rate* for miles driven -- both to pick up passengers or deliveries and with passengers or deliveries in the car -- is particularly impressive given this risk.

Third, Plaintiffs faced major hurdles on the pay statement claim. Dkt. 191 at 4-5. Uber was prepared to argue that its pay statements set forth the information required by law insofar as they provide detailed information for each and every ride, including the duration and time of the ride and compensation for the ride. Uber would argue that the statements are sufficient to allow drivers to "quickly verify earnings when looking at the wage statements." <u>Holak v. K Mart Corp.</u>, 2014 WL 4930762, at *7 (E.D. Cal. Sept. 30, 2014). Moreover, Uber would almost certainly assert a good faith defense to liability. <u>Dalton v. Lee Publications, Inc.</u>, 2011 WL 1045107, at *5 (S.D. Cal. Mar. 22, 2011); <u>Hurst v. Buczek Enterprises, LLC</u>, 870 F. Supp. 2d 810, 829 (N.D. Cal. 2012). Thus, Plaintiffs viewed recovery on this claim as very uncertain.

Finally, even if Plaintiffs succeeded on the merits, there was the risk of significant delay in actually achieving a recovery if Plaintiffs had gone forward with litigation on the merits (which was almost certain to involve lengthy appeals, regardless of the outcome). As this Court has previously

acknowledged in assessing the earlier O'Connor settlement, "[c]ompared with other class action settlements generally, a 37% recovery of the verdict value is robust." O'Connor, 2019 WL 1437101, at *11 n. 7.  Here, the recovery of 100% of the potential recovery on the expense reimbursement claim (and 69% of the expense reimbursement and pay statement claim) is plainly excellent. Thus, the risks of proceeding to trial compared to the monetary benefits achieved by this settlement demonstrate that the settlement is fair and adequate in light of the risks.

### iv.  The Notice Process Was Effective, and the Method for Distributing Relief is Likewise Effective under Rule 23(e)(2)(C)(ii).

The notice process has proven to be highly effective and successful.  Upon receiving preliminary approval of the settlement from the Court on April 5, 2022, see Dkt. No. 195, the Settlement Administrator, Simpluris promptly began preparing the notice and settlement website. See Fowler Decl. at ¶¶ 5-7. On April 26, 2022, settlement class members were emailed a court-approved notice, with an explanation of the settlement terms, in the form approved by the Court and were sent a court-approved text message notice to the phone number associated with their Uber account. Id.  at ¶¶ 8-9; Ex. A & B thereto. The long-form notice described the lawsuit, described the total settlement value and the anticipated payments for attorney's fees and service awards, explained the steps the settlement class members should take to exclude themselves from or object to the settlement, explained that settlement class members must submit a claim form (either online or through the mail) in order to recover a settlement payment, and explained that all settlement class members other than those who exclude themselves are bound by the release of claims. See Ex. A to Fowler Decl.

When a notice was returned as undeliverable, Simpluris undertook diligent efforts to locate an updated mailing address for the settlement class member. Fowler Decl. at ¶¶ 7, 10. Ultimately, the administrator and parties were able to locate updated mailing addresses for all seven settlement class members whose emails were invalid. Id. at ¶ 10. Thus, 100% of the settlement class successfully

NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT
CASE NO. CV 19-cv-06462-EMC

received the notice. Id. Plaintiffs note that this 100% "reach rate" in this case is excellent and unquestionably comports with due process.[8]

In addition to the initial notice process, two reminder notices were emailed (or mailed to class members who did not have valid email addresses) on May 27, 2022, and again on June 6, 2022, and two more reminders will be emailed on June 13 and 20, 2022 in additional to a texted reminder on June 13, 2022. Fowler Decl. at ¶¶ 13-15. Additionally, Simpluris staffed a toll-free hotline that received more than 200 calls regarding the settlement. Id. at ¶ 4. Plaintiffs' counsel's firm has also actively engaged with class members, fielding calls and emails from class members to answer questions and assist with the notice process. See Liss-Riordan Decl. ISO Final Approval at ¶ 2.

The results of the notice process were extremely successful. To date, (i) one (unrepresented) settlement class members has objected; (ii) no settlement class members have validly excluded themselves; and (iii) 749 settlement class members have submitted valid claims, representing 59% of the settlement fund. Fowler Decl. at ¶¶ 17, 19-20. The Parties will update the Court regarding any changes to these numbers prior to the Final Approval Hearing on July 14, 2022, and will submit a proposed final approval order reflecting the final results of the claims process. See Liss-Riordan Decl. ISO Final Approval at ¶ 4.

> **v.      The Requested Attorneys' Fees are Reasonable under Rule 23(e)(2)(C)(iii).**

Plaintiffs' request for 25% of the common fund for attorneys' fees is reasonable and aligns with the Ninth Circuit's 25% benchmark. Vizcaino v. Microsoft Corp., 290 F.3d 1043, 1050 (9th Cir.2002). As Plaintiffs set forth in greater detail in their Motion for Attorneys' Fees (Dkt. No. 197), a lodestar

---

[8]     Compare Cotter v. Lyft, Inc., 2017 WL 1033527, *5 (N.D. Cal. Mar. 16, 2017) (granting final approval and stating notice process with 99.6% reach rate provided "due and adequate notice to the Class"); Keller v. Elec. Arts, Inc., 2015 WL 5005057, *5 (N.D. Cal. Aug. 18, 2015) (granting final approval and stating notice process with "almost 95%" reach rate provided "due and adequate notice to the Class"); Gribble v. Cool Transports Inc., 2008 WL 5281665, *1 (C.D. Cal., Dec. 15, 2008) (granting final approval and describing notice process as "adequate" where plaintiff "put forth a reasonable effort" to deliver notice to 98% of the class); Koumoulis v. LPL Financial Corp., 2010 WL 4868044, *3 (S.D. Cal., Nov. 19, 2010) (granting final approval where notice was delivered to 98% of the class)

cross-check confirms the reasonableness of this request. Dkt. No. 197 at 14-22. In light of the reasonableness of this request, and the excellent results achieved here on behalf of the class, the requested fees are plainly justified and have now been amply supported by Plaintiffs' Motion for Attorneys' Fees and supporting declarations.[9]

### vi.    The Settlement Treats Class Members Equitably under Rule 23(e)(2)(D).

"Consistent with Rule 23's instruction to consider whether 'the proposal treats class members equitably relative to each other,' Fed. R. Civ. P. 23(e)(2)(C)(i), the Court considers whether the Settlement 'improperly grant[s] preferential treatment to class representatives or segments of the class.'" Hefler v. Wells Fargo & Company, 2018 WL 6619983, at *8 (Dec. 18, 2018) (citing In re Tableware Antitrust Litig., 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007)). Here, as the Court already concluded at the preliminary approval stage, "[t]here is equity within the class and to the class." See Dkt. No. 195 at p. 2.

Likewise, the proposed enhancements for the named plaintiffs in this settlement are reasonable under the factors set forth in Staton v. Boeing Co., 327 F.3d 938, 977 (9th Cir. 2003). These factors include "the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, ... the amount of time and effort the plaintiff expended in pursuing the litigation ... and reasonabl[e] fear[s of] workplace retaliation." Id. Here, as set forth at greater length in Plaintiffs' Motion for Attorneys' Fees (Dkt. No. 197), and the supporting declarations of the named plaintiffs (Dkt. No. 199 through 201), the named plaintiffs should receive the requested incentive payments based on their tremendous contributions to this high-profile litigation. All of these plaintiffs have lent their names to the publicly filed documents in this case, which created "reasonable fears of workplace retaliation" both by Uber and by prospective future employers. Staton, 327 F.3d at 977; see also Van Vranken, 901 F. Supp. at 299 (noting that in evaluating incentive awards, courts may

---

[9]      These materials have been available to Settlement Class Members as well via the settlement website.

consider "the notoriety and personal difficulties encountered by the class representative" and "the amount of time and effort spent by the class representative" among other factors); see also Bellinghausen v. Tractor Supply Co., 306 F.R.D. 245, 267 (N.D. Cal. 2015) ("Incentive awards are particularly appropriate in wage-and-hour actions where plaintiffs undertake a significant "reputational risk" by bringing suit against their former employers").  As for the Plaintiffs' actions and efforts on behalf of the class, there can be no question that all of the named plaintiffs have greatly benefited the settlement class through their actions. Plaintiffs James and Verhines sat for full-day (extremely adversarial) depositions, which required them to miss work, and they each responded to numerous document requests, interrogatories, and requests for admission. See Dkt. 199 (James Decl.) at ¶¶ 4-7; Dkt. 200 (Verhines Decl.) at ¶¶ 4-5. Their documents and testimony were used as evidence in support of Plaintiffs' Motion for summary judgment and class certification briefing. Id. Moreover, James, Verhines, and Hassell have all been intimately involved in the prosecution of their respective cases and the negotiations that led to this settlement (as well as a prior settlement of sick leave claims in the Verhines case, which was consolidated into this action). See Dkt. 199 (James Decl.) at ¶¶ 8-10; Dkt. 200 (Verhines Decl.) at ¶¶ 6-8; Dkt. 201 (Hassell Decl.) at ¶¶ 5, 8-10. Because of their unflagging support for the case, drivers who might not otherwise have known about the ability to opt out of the arbitration clause can now participate in this settlement.

Indeed, courts have approved incentive awards of $10,000 or more in many settlements where the plaintiffs have shown particular dedication to the case and achieved excellent results, as is the case here. See, e.g., Garner v. State Farm Mut. Auto. Ins. Co., 2010 WL 1687832, at *17 n.8 (N.D. Cal. 2010) ("Numerous courts in the Ninth Circuit and elsewhere have approved Service awards of $20,000 or more where, as here, the class representative has demonstrated a strong commitment to the class") (collecting cases); Meewes v. ICI Dulux Paints, No. BC265880 (L.A. Cnty. Super. Ct. Sept. 19, 2003) (approving service awards of $50,000, $25,000 and $10,000 to the named Plaintiffs); Hickcox-Huffman v. US Airways, Inc., 2019 WL 1571877, at *2 (N.D. Cal., Apr. 11, 2019) (approving $10,000 incentive payment for class action representative plaintiff as "fair and reasonable"); Noroma v. Home Point Financial Corporation, 2019 WL 5788658, at *10 (N.D. Cal., Nov. 6, 2019) (awarding incentive

12

payments of $10,000 and $5,000 respectively to named plaintiffs); <u>Pointer v. Bank of America, N.A.</u>, 2016 WL 7404759, at *20 (E.D. Cal., Dec. 21, 2016) (approving $10,000 incentive payment); <u>Murillo v. Pacific Gas & Elec. Co.</u>, 2010 WL 2889728, at *12 (E.D. Cal., July 21, 2010) (same). Additionally, the requested service enhancements, totaling $30,000, comprise less than half a percent of the overall settlement amount – just 0.35%. <u>See, e.g.</u>, <u>Monterrubio v. Best Buy Stores, L.P.</u>, 291 F.R.D. 443, 462 (E.D. Cal. 2013) (finding total incentive payment of .62% of settlement reasonable). Likewise, there is no disparity in the size of each payment relative to the settlement shares of class members, some of whom will be receiving many thousands of dollars in their settlement payment. For all of these reasons, the requested incentive payments are justified and do not undercut the equitable treatment of the class.

### b.    The <u>Hanlon</u> Factors Likewise Favor Final Approval

### 1.    The Positive Reaction of the Class Weighs in Favor of Final Approval

"It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members." <u>Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.</u>, 221 F.R.D. 523, 528–29 (C.D.Cal.2004).

Here, just one unrepresented drivers out of 1,329 Settlement Class members has objected to the settlement – a miniscule 0.07%. By any standard, this lack of objections favors approval of the Settlement. <u>See, e.g.</u>, <u>Churchill Village LLC</u>, 361 F.3d at 577 (affirming settlement with 45 objections out of 90,000 notices sent); <u>Scovil v. FedEx Ground Package Sys., Inc.</u>, No. 1:10-CV-515-DBH, 2014 WL 1057079, *1 (D. Me. Mar. 14, 2014) (granting final approval where "13 of 141 plaintiffs (9.2%) did file objections").[10]

---

[10]    As set forth in more detail <u>infra</u>, Section V, the lone objection to the settlement generally lacks substance and should be overruled. Moreover, a "settlement is not unfair simply because a large number or a certain percentage of class members oppose it, as long as it is otherwise fair, adequate, and reasonable." <u>Boyd v. Bechtel Corp.</u>, 485 F. Supp. 610, 616, 624 (N.D. Cal. 1979) (approving class settlement over the objection of 160 class members representing approximately 16 percent of the class). "To hold otherwise would put too much power in the hands of a few persons having no right to a preferred position in settlement, to thwart a result that might be in the best interests of the class." <u>Id.</u> at 624.

Moreover, the fact that not a single settlement class member has elected to opt out of the settlement supports final approval. Compare Klee v. Nissan N. Am., Inc., 2015 WL 4538426, *9 (C.D. Cal. July 7, 2015), aff'd (Dec. 9, 2015) (finding .62% opt out rate a "small number" and approving settlement); Hanlon, 150 F.3d at 1025 (affirming settlement approval where 971 class members (.1% of the class) opted out); Wren, 2011 WL 1230826, *29 (approving settlement where 33 of 62,594 class members (.052%) had opted out and noting "overwhelming participation in the settlement"); Fernandez v. Victoria Secret Stores, LLC, 2008 WL 8150856, *8 (C.D. Cal. July 21, 2008) (.04% opt out rate showed that "class members have reacted in an overwhelmingly positive fashion to the proposed settlement").

Additionally, the participation rate to date (56.4 % of the class) is robust. Compare Williams v. SuperShuttle Int'l, Inc., 2015 WL 685994, *1 (N.D. Cal. Feb. 12, 2015) (in wage and hour action, finding the "participation rate of the class in this settlement of 40% is robust."); Barcia v. Contain-A-Way, Inc., 2009 WL 587844, *5 (S.D. Cal., Mar. 6, 2009) (25.3% claims rate); Vasquez v. Coast Valley Roofing, Inc., 266 F.R.D. 482, 485 (E.D. Cal. 2010) (31% claims rate).[11] Again, because the settlement is non-reversionary, all unclaimed funds will be distributed to class members who do submit claims.

Given the tiny number of objections and requests for exclusion, and the strong participation rate, this factor clearly weighs in favor of final approval. Hanlon, 150 F.3d at 1027 ("the fact that the overwhelming majority of the class willingly approved the offer and stayed in the class presents at least some objective positive commentary as to its fairness.").

### i.      The Strength of Plaintiffs' Case

"[This] factor addresses Plaintiffs' likelihood of success on the merits and the range of possible recovery." Franco v. Ruiz Food Prod., Inc., 2012 WL 5941801, at *11 (E.D. Cal. Nov. 27, 2012). "There

---

[11]      Other courts have approved wage and hour settlements with lower (at times even significantly lower) claims rates. See Bautista v. Harvest Management Sub LLC, 2014 WL 12579822, *9 (C.D. Cal., July 14, 2014) (approving settlement with claims rate of 25.01% and noting that the rate is "within the range of other wage and hour cases in which the courts have approved settlements") (citing cases); Fernandez, 2008 WL 8150856, at *3 (10% claims rate); Rodriguez v. D.M. Camp & Sons, 2013 WL 2146927, *4 (E.D. Cal. 2013) (15.05% claims rate).

is no particular formula by which that outcome must be tested." Moore v. PetSmart, Inc., 2015 WL 5439000, *5 (N.D. Cal. Aug. 4, 2015), appeal dismissed (July 27, 2016). Indeed, "determining the probability and likelihood of a plaintiff's success on the merits of a class action litigation, 'the district court's determination is [often] nothing more than an amalgam of delicate balancing, gross approximations and rough justice.'" Id. quoting Officers for Justice, 688 F.2d at 625.

Here, Plaintiffs have submitted to the Court a good faith valuation of claims. See Dkt. No. 189-3 (Liss-Riordan Decl. in Support of Prelim. Approval) at ¶¶ 24-54 (valuing claims); Dkt. No. 191 (Suppl. Br.) at pp. 2-3. The Court has concluded that the settlement is reasonable in light of this valuation. See Dkt. No. 195 (granting preliminary approval). Of course, evaluating the "strengths" of Plaintiffs' claims is not solely an assessment of the raw amount of money that could be recovered assuming a clean sweep at trial; it must also consider Plaintiffs' likelihood of succeeding on the merits. See Franco, 2012 WL 5941801, at *11. First and foremost, there is no guarantee that Plaintiffs would prevail on the misclassification issue . While Plaintiffs believe that the California Supreme Court's decision in Dynamex Operations W. v. Superior Court, 4 Cal. 5th 903, 955, 416 P.3d 1, 34 (2018), reh'g denied (June 20, 2018), should apply to all of drivers' claims, instead of the Borello test, there is also a significant risk regarding "whether the ABC test applies to expense reimbursement claims, which comprise Plaintiffs' primary claim for damages," as this Court previously recognized in evaluating an earlier settlement against the same defendant. O'Connor, 2019 WL 1437101, at *10; see also infra, p. 7 (collecting cases on both sides of this issue). There is also uncertainty regarding the proper measure of damages and whether Plaintiffs would be entitled to the full IRS reimbursement rate for all miles driven for Uber or a lower, variable rate (as well as questions about which miles are compensable, as previous settlements have generally only compensated for "on-trip" miles with a passenger in the car). See Dkt. 191 at 4; see also O'Connor, 2019 WL 1437101, at *8 ("[W]ith respect to the expense reimbursement claim, there was a "risk as to which IRS mileage reimbursement rate would apply" which could have reduced expense reimbursement damages by approximately 60%). In sum, there was and remains uncertainty about the ultimate success and value of Plaintiffs' claims. Thus, although Plaintiffs believe

they have a very strong case on the merits of their misclassification claim under the ABC test, sufficient uncertainty remains that they were by no means assured a full recovery.

### ii.        The Risk, Expense, Complexity, and Likely Duration of Continued Litigation

This factor considers "'the probable costs, in both time and money, of continued litigation.'" Ching, 2014 WL 2926210, at *4 (citing In re Warfarin Sodium Antitrust Litig., 212 F.R.D. 231, 254 (D. Del. 2002), aff'd, 391 F.3d 516 (3d Cir. 2004)).[12] "[U]nless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." Franco v. Ruiz Food Prod., Inc., 2012 WL 5941801, at *12 (E.D. Cal. Nov. 27, 2012) citing DIRECTV, Inc., 221 F.R.D. at 526.

Here, had this settlement not been reached, there remained extensive, costly, and complex litigation to follow. For example, the parties would have had to finish briefing summary judgment, and depending on the outcome, proceed to trial. Uber was likely to seek interlocutory review of any unfavorable summary judgment decision or to appeal any adverse final decision on the merits. Additionally, had the parties reached the trial stage, this case may have presented a costly and complicated trial, which would also necessitate extensive pre-trial preparation, the results of which were not assured. The length, expense, and uncertainty surrounding future litigation weigh in favor of final approval.

### iii.       The Risk of Maintaining Class Action Status

As discussed above, Plaintiffs faced some risk in maintaining class action status through trial. While Plaintiffs believe the Court's class certification order was sound, and the Ninth Circuit agreed insofar as it denied Uber's Rule 23(f) appeal, Uber would likely have still attempted to appeal or undermine the Court's Class Certification Order by arguing that class certification is inappropriate unless common questions predominate as to *all three prongs* of the ABC test. Compare Costello v. BeavEx, Inc., 810 F.3d 1045, 1060 (7th Cir. 2016), with In re FedEx Ground Package Sys., Inc.

---

[12]        To the extent this factor overlaps with the risk considerations discussed above, Plaintiffs incorporate their previous analysis into this discussion.

Employment Practices Litig., 273 F.R.D. 516, 523 (N.D. Ind. 2010).  Other courts have recognized that this risk weighs in favor of granting final approval to class action settlements. See, e.g., Rodriguez, 563 F.3d at 966 (noting that "[a] district court may decertify a class at any time" such that even after class certification, "the risk remained that the nationwide class might be decertified" and this factor therefore weighed in favor of settlement); Moore, 2015 WL 5439000, at *6 ("the notion that a district court could decertify a class at any time is an inescapable and weighty risk that weighs in favor of a settlement").

### iv.        The Amount Offered in Settlement

A settlement is, of course, a compromise. See Officers for Justice, 688 F.2d at 628 ("It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery will not per se render the settlement inadequate or unfair."); see also id. at 624 (("the very essence of a settlement is compromise, "a yielding of absolutes and an abandoning of highest hopes.").

Here, the $8.435 million non-reversionary cash payment, which represents 100% of the maximum expense reimbursement damages (and 69% of the potential damages, including the pay statement claim) is an extremely favorable result for the Settlement Class. The recovery here – in which the average class member share is $8,362 based on the current claim rate – significantly exceeds recoveries on a per-class member basis in other large-scale gig economy cases, including the prior Uber settlement approved by this Court in O'Connor. See O'Connor, 2019 WL 1437101, at *11 (average recovery was projected to be $1,103); Cotter, 193 F. Supp. 3d at 1039 (approving settlement representing approximately 17% of potential expense reimbursement damages). In sum, Plaintiffs believe this factor overwhelmingly supports final approval of the Settlement and that the settlement here represents an unprecedented and truly excellent result.

### v.         The Extent of Discovery Completed

For the parties "to have brokered a fair settlement, they must have been armed with sufficient information about the case to have been able to reasonably assess its strengths and value." Acosta v. Trans Union, LLC, 243 F.R.D. 377, 396 (C.D. Cal. 2007). "A settlement following sufficient discovery and genuine arms-length negotiation is presumed fair." Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc., 221 F.R.D. 523, 528 (C.D. Cal. 2004).

17

Here, the parties have exchanged extensive information necessary to make an informed evaluation of the case.  Plaintiffs propounded multiple sets of written discovery (totaling more than 50 requests) and received and reviewed nearly 20,000 pages of documents produced by Uber. See Dkt. No. 189-3 (Liss-Riordan Decl. ISO Prelim. App.) at ¶ 3. Uber likewise propounded multiple sets of written discovery (totaling more than 180 requests) and deposed Christopher James and Spencer Verhines, while Plaintiffs deposed a Rule 30(b)(6) witness from Uber. Id. The parties engaged in a protracted meet and confer process regarding various discovery disputes and planned to engage in more discovery. Id. The parties also briefed and argued a Motion to Dismiss filed by Uber, multiple Motions for Preliminary Injunction filed by Plaintiffs, and Plaintiffs' Motion for class certification. Id. at ¶¶ 4, 6.  On August 12, 2021, Plaintiffs filed a motion for summary judgment against Uber "on its affirmative defense that the certified class members are properly classified as independent contractors." See Dkt. 174. Uber requested and was granted an extension of time to file its response.  Thus, the Parties had the opportunity to fully explore the facts and legal theories undergirding the claims in this case. Moreover, Plaintiffs' counsel previously litigated the O'Connor v. Uber case before this Court for six years, beginning in August 2013.  Plaintiffs' counsel are no strangers to the intricacies of Uber's operations and litigation tactics.

In addition to the discovery and case investigation and aggressive motion practice in this case and in the O'Connor case before it, the Parties also exchanged extensive information as part of their settlement negotiations. Plaintiffs received detailed data regarding the class in order to verify its composition (including details of when drivers accepted agreements and when they submitted requests to opt out). See Dkt. No. 198 (Liss-Riordan Decl. ISO Attny's Fees) at ¶ 34. Plaintiffs also received data regarding mileage driven by the class and number of workweeks worked by individual drivers. See Dkt. No. 189-3 (Liss-Riordan Decl. ISO Prelim. App.) at ¶¶ 8; 27; 30. This detailed data regarding the mileage and workweeks of individual class members during the relevant period allowed Plaintiffs to accurately assess the value of the claims at issue

Put simply, Plaintiffs were well-armed with the information – and experience from similar cases – necessary to reach a reasonable compromise. This factor, therefore, favors final approval.

### vi.        The Experience and Views of Counsel

The Ninth Circuit has noted that "[p]arties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation." Rodriguez, 563 F.3d at 967. As such, "[a] district court is 'entitled to give consideration to the opinion of competent counsel that the settlement [is] fair, reasonable, and adequate.'" Ching, 2014 WL 2926210, at *5, quoting Isby v. Bayh, 75 F.3d 1191, 1200 (7th Cir. 1996).

Here, counsel with substantial experience in this field believe the settlement is in the best interests of the drivers and provides substantial monetary benefits. The qualifications of Plaintiffs' counsel have been set forth at great length in Plaintiffs' supporting declaration in support of their Motion for Attorneys' Fees. See Dkt. No. 198 (Liss-Riordan Decl. ISO Attnys' Fees) at ¶¶ 3-18. As explained in those papers, Attorney Liss-Riordan, a nationally recognized lawyer for her many prominent successes on behalf of low-wage workers, has gained a reputation as the preeminent counsel challenging the use of independent contractors in the so-called "gig economy." Plaintiffs' counsel has defeated summary judgment motions against a number of "gig economy" companies. See, e.g., O'Connor v. Uber Techs., Inc., 82 F. Supp. 3d 1133 (N.D. Cal. 2015); Cotter v. Lyft, Inc., 60 F. Supp. 3d 1067 (N.D. Cal. 2015); Lawson v. Grubhub, Inc., 2017 WL 2951608, at *1 (N.D. Cal. July 10, 2017). Plaintiffs' counsel was also the first firm to litigate the status of a "gig economy" delivery driver all the way to trial (and on appeal obtained a reversal of the adverse verdict below). Lawson v. Grubhub, Inc., 302 F. Supp. 3d 1071 (N.D. Cal. 2018), vacated and remanded, Ninth Cir. Appeal No. 18-15386, 2021 WL 4258826 (9th Cir., Sept. 20, 2021). The firm has litigated against numerous gig economy companies, see Dkt. No. 198 (Liss-Riordan Decl. ISO Attnys' Fees) at ¶¶ 14-15, and has achieved class-wide settlements and favorable decisions on a range of issues, including the FAA transportation worker exemption and contract formation issues involving arbitration clauses. See Waithaka v. Amazon.com, Inc.,966 F.3d 10 (1st Cir. 2020), cert. denied, 2021 WL 2519107 (U.S., June 21, 2021), reh'g denied 2021 WL 3275777(U.S., Aug. 2, 2021); Rittmann v. Amazon.com, Inc.,971 F.3d 904 (9th Cir. 2020), cert. denied,141 S.Ct. 1374, 209 L.Ed.2d 121(2021); Talbot v. Lyft Inc., CGC-18-566392 (S.F. Sup. Ct. Oct. 19, 2018).  In light of counsel's extensive experience in this area, Plaintiffs' counsel belief that this

settlement is in the best interests of the drivers and provides substantial monetary benefits is entitled to great weight. Accordingly, this factor weighs in favor of final approval.

### vii.    Presence of a Governmental Participant

Because there is no PAGA claim being settled as part of this case, there is no governmental participant whose opinion would affect approval of the settlement one way or another.

## V.    RESPONSE TO OBJECTIONS

Plaintiffs also hereby respond to the one objection that has been filed to the settlement in this case, by a serial objector who delayed the distribution of the O'Connor settlement by almost a year with his frivolous objection and appeals that he took all the way to the U.S. Supreme Court.  Plaintiffs note that the objector, who is unrepresented, is just _one_ out of 1,329 members of the Settlement Class. The result is an overwhelmingly positive reaction to the settlement so far. See, e.g., In re Omnivision Technologies, Inc., 559 F.Supp.2d at 1043 (stating that objections from 3 out of 57,630 Class Members favors approval of the Settlement "by any standard"); Churchill Village LLC, 361 F.3d at 577 (affirming settlement with 45 objections out of 90,000 notices sent).

- **Mendel Objection (Dkt. No. 204)**

Although not even labeled as an "objection", Plaintiffs construe S. Patrick Mendel's Emergency Motion for Injunction (Dkt. No. 204) as an objection to the Settlement.  Mendel's objection lacks merit for numerous reasons as set forth below, and Plaintiffs urge the Court to reject Mendel's objection in the strongest possible terms and to require Mendel to post a bond, should he choose to pursue this objection on appeal.[13]

---

[13]    Plaintiffs do not make this request lightly. Mendel's conduct at this juncture, after having attempted to object to the O'Connor settlement on the same grounds as he objects here, and subsequently filing and litigating a wholly frivolous suit against Class Counsel for malpractice, is a gross misuse of the judicial system and has devolved into a campaign of harassment. If Mr. Mendel disagrees with Class Counsel's prosecution of this case, he could have opted out. Instead, he has made a conscious decision to file a frivolous objection, re-raising arguments that he already knows lack merit in an attempt to hold the class hostage over his own personal grievances. It is proper to require an appeal bond when a party has engaged in bad faith or vexatious conduct or where the appeal lacks merit. See Tri-Star Pictures, Inc. v. Unger, 32 F.Supp.2d 144, 148-49 (S.D.N.Y. 1999), aff'd  198 F.3d 235 (2d Cir.
*(Cont'd on next page)*

First, most if not all of the issues raised by Mendel in his Objection have already been decided against him in other cases (all of them involving Mr. Mendel himself), and as such, he should be precluded from continuing to attempt to endlessly relitigate these questions. Indeed, Mendel raised many of these same arguments in the O'Connor settlement three years ago, and for the same reasons they were rejected then, they should be rejected again now. See O'Connor v. Uber Techs., Inc., 2019 WL 4394401, at *5 (N.D. Cal. Sept. 13, 2019), aff'd, No. 19-17073, 2019 WL 7602362 (9th Cir. Dec. 20, 2019), cert denied, Mendel v. UBER Techs., Inc., 140 S. Ct. 2812 (2020).

Likewise, Mendel argued in Overton v. Uber Techs., Inc., 333 F. Supp. 3d 927, 934 (N.D. Cal. 2018), that Uber's business model violated the Federal Motor Carrier Act, 49 U.S.C. § 13506(b)(2) ("FMCA") and that the state's licensing scheme for "rideshare" companies, like Uber and Lyft, was unlawful and unconstitutional. Mendel's claims in Overton were dismissed *with prejudice*.  See Overton v. Uber Techs., Inc., 333 F. Supp. 3d 927, 947 (N.D. Cal. 2018), aff'd, 805 F. App'x 485 (9th Cir. 2020), cert. denied sub nom. Mendel v. Uber Techs. Inc., 207 L. Ed. 2d 147 (May 26, 2020). He raises the same arguments here at length, which are barred by *res judicata*.  Most recently, Mendel filed a case, Mendel v. Chao, et al., Civ. A. No. 4:19-cv-3244 (N.D. Cal.), which brought claims against Class Counsel and a number of other defendants. There, Mendel alleged Class Counsel had breached their fiduciary duty and committed malpractice by failing to raise Mendel's preferred claims and arguments in the O'Connor class action. That case was likewise dismissed. See Mendel v. Chao, et al., Civ. A. No. 4:19-cv-3244 (N.D. Cal. May 24, 2021), Dkt. No. 209. To date, Mr. Mendel has been afforded ***numerous chances*** to litigate his theories of Uber's alleged violations of state and federal law. He should not be permitted to derail (or delay) what is by any measure an extremely favorable settlement

---

*(Cont'd from previous page)*

1999) (requiring posting of a $50,000 bond); see also Vaughn v. Am. Honda Motor Co., 627 F.Supp.2d 738, 751 (E.D. Tex. 2007) (requiring objector to post $150,000 bond); Barnes v. FleetBoston Fin. Corp. 2006 U.S. Dist. LEXIS 71072, at *8-9 (D. Mass. Aug. 22, 2006) (requiring objector to post $645,000 bond); Conroy v. 3M Corp. 2006 U.S. Dist. LEXIS 96169, at *11 (N.D. Cal. Aug. 10, 2006) (requiring objector to post $431,167 bond).

for more than a thousand other Uber drivers based on arguments that have already been universally rejected by the courts.

Second, Mendel's frivolous objection asserts that "[t]he Settlement, if approved by the Court, would constitute a federal court sanction of Uber's unlawful brokering as legal." Dkt. 204 at 2. Not so. As this Court and others have previously recognized, there is no requirement that a settlement of a misclassification case result in the reclassification of the workers at issue. See, e.g., Cotter v. Lyft, Inc., 176 F. Supp. 3d 930, 936 (N.D. Cal. 2016) (rejecting argument that settlement of case alleging Lyft misclassified drivers as independent contractors must result in the reclassification of drivers as employees and noting "[t]he Court's job is not to decide whether it would be better for society if Lyft drivers were classified as employees. The Court's job is to assess whether the settlement falls within a range of fair outcomes for the class members, considering the risks they would face if they took the case to trial.'"), final approval order summarily affirmed, Cotter v. Page, 2017 WL 4535961 (9th Cir., Sept. 15, 2017, No. 17-15648); See O'Connor, 2019 WL 4394401, at *5 ("[T]o the extent that objectors raised issues pertaining to alleged harms they had suffered while working for Uber, *concerns that Uber Technologies is operating in violation of state and federal laws*, and the fact that the settlement does not resolve the key issue of whether drivers are properly classified as independent contractors or employees, the Court finds those objections to be outside the scope of the Settlement Agreement. The settlement does not preclude future and other actions seeking to adjudicate these issues going forward.").[14] Whether Uber's business was unlawful in the past under California law remains a disputed issue. However, the passage of Proposition 22 has raised serious question as to whether Uber drivers

---

[14]   Indeed, the vast majority of settlements in misclassification cases do not address the underlying misclassification issue, and merely because a settlement does not resolve the issue does not mean it cannot be a fair, adequate, and reasonable compromise. Id.; see also Cotter v. Lyft, Inc., 193 F. Supp. 3d 1030 (N.D. Cal. 2016); Singer v. Postmates Inc., 4:15-cv-01284-JSW, Dkt. 98 (N.D. Cal. April 25, 2018); Alexander v. FedEx Ground Package Sys., Inc., 2016 WL 3351017 (N.D. Cal. June 15, 2016); Reid v. SuperShuttle Int'l, Inc., 2012 WL 3288816, *1 (E.D.N.Y. Aug. 10, 2012); Chun-Hoon v. McKee Foods Corp., 716 F. Supp. 2d 848, 851 (N.D. Cal. 2010).

would be able to establish they are employees on a going-forward basis.[15] But nothing in the Settlement Agreement purports to decide that question one way or the other; instead, the settlement merely represents the resolution of past disputed claims.[16] The Court's approval of the settlement does not equate to an approval of Uber's conduct to date, nor does it preclude future challenges to Uber's business model. For all these reasons, Mendel's objection must be rejected.

Third, Mr. Mendel raises alleged violations of the Sherman Anti-trust Act. See Dkt. No. 204 at 6-7. However, this is not an anti-trust case (nor is it a case under the FMCA); it is a misclassification case, alleging violations of the Labor Code by Uber stemming from its failure to classify drivers as its employees. Plaintiffs had no obligation to include anti-trust claims in this case. Indeed, it would be a serious problem if class counsel could be liable for not raising each and every claim and issue that an individual class member would prefer them to raise. See Manibusan v. Specter, 2007 WL 4557791, at *3 (N.D. Cal. Dec. 21, 2007) (noting that class counsel's "duty to the class does not require the counsel to argue every issue, or litigate every claim, that individual members of the class might propose."); Redante v. Yockelson, 112 Cal. App. 4th 1351, 1357 (2003) ("Yockelson had no duty to argue every issue Redante wanted to raise, but rather was entitled to assess which issues were potentially meritorious."); cf. Janik v. Rudy, Exelrod & Zieff, 119 Cal. App. 4th 930, 942-93 (2004), as modified on denial of reh'g (July 22, 2004) (finding that a duty existed "to consider the advantages and disadvantages to the class of seeking to add a UCL cause of action to their complaint" where the unasserted "cause of action under the UCL would have been based on precisely the same practice, and subject to much the same legal analysis, as the certified cause of action under the Labor Code") (emphasis added). Mendel's objection in this regard is wholly frivolous and should be rejected. To the extent Mendel wants to raise Uber's compliance with the anti-trust laws or the FMCA, he may file his own case to pursue these

---

[15]     Proposition 22 has been held unconstitutional in Castellanos v. State of California 2021 WL 3730951 (Cal. Super. Ct. Aug. 20, 2021), a decision that is now on appeal.

[16]     Notably, the settlement period for Uber passenger drivers ends the day that Proposition 22 went into effect. See Dkt. No. 189-4 (Settlement Agreement) at ⁋ 76.

issues; this case is not the proper forum for him to raise these claims (which in any case, are already barred by *res judicata*).

Fourth, Mendel contends that Plaintiffs' counsel has deliberately omitted facts by failing to raise the California Attorney General's state court action against Uber and Lyft with the court "in a coordinated effort to reduce Uber's pending liabilities by the California Attorney General's State Court legal action." Dkt. No. 204 at 9-10. This accusation is baseless and entirely unsupported. The settlement here was extremely hard-fought and was presided over by a professional and respected neutral, Martin Scheinman. See Dkt. No. 189-3 (Liss-Riordan Decl. ISO Prelim. App.) at ¶ 8. More importantly, the Court is well-aware of the Attorney Generals' pending action, and nothing has been omitted or concealed. Indeed, this Court *sua sponte* raised the question of whether this case should be stayed pending the Attorney General's action. See Dkt. No. 70 (ordering parties to prepare arguments on the Colorado River abstention doctrine's application to this case, in light of the Attorney General's filing). After discussion with the Parties at a conference held on June 25, 2020, the Court held that this action could and should proceed in parallel with the People's case. See Dkt. No. 73.

Furthermore, the only real substantive order issued by Judge Schulman in the Superior Court granted relief to the State *on a preliminary basis* and was limited to *forward-looking*, *injunctive* relief, which has not been implemented due to the passage of Proposition 22. See The People v. Uber Techs., Inc., et al., CGC-20-584402, "Order for People's Motion on Preliminary Injunction and Related Motions", at *13-14, *32-33 (Cal. Sup. Ct. Aug. 10, 2020). Since that time, the litigation has proceeded slowly, and there is no prospect of any immediate recovery on the horizon.[17] Indeed, for class members to receive any actual recovery in the People's case will undoubtedly take many years, and the notion that

---

[17] At a case management conference in February of this year in the People's case, the Court identified three threshold issues that would need to be decided before the Court could even reach "other issues that you have raised, whether they relate to discovery…including, for example, protective order, ESI protocols, repositories, and the like, whether they relate to dispositive or partially dispositive motions, striking jury trial demands and on and on and on. There's no end of issues to be dealt with here." See Ex. A to Liss-Riordan Decl. ISO Final Approval at pp. 10:20-11:17, 12:21- 13:9.

Settlement Class members would do better there than in this settlement – which is equal to the equivalent of <u>full</u> IRS expense reimbursement for both on-trip miles *and* miles to pick up passengers plus weekly phone reimbursement –  is pure speculation.  This case is allowing those few drivers who consistently opted out of Uber's arbitration agreement to receive recovery now, without having to await the outcome of the People's case.

In sum, the Court's prior decision to let this case go forward in parallel with the state's action was sound when it was made, and it remains sound today. The mere presence of a parallel action – one that is likely years away from any speculative recovery – is not grounds for refusing to approve this excellent settlement, which provides full expense reimbursement damages to drivers now, with certainty and without delay. That more than half of the class have submitted claims to date is evidence that most drivers recognize the excellent result obtained here and want to participate. Mr. Mendel's objections should be overruled, and he should be required to post a bond if he wants to appeal the ruling.  <u>See</u> note 12 <u>supra</u>.

## VI.   CONCLUSION

Based upon the foregoing, the papers filed in support of this Motion and Plaintiffs' Motion for Preliminary Approval, and all other submissions made in the case, this settlement should be finally approved and all objections to the settlement rejected. Plaintiffs respectfully request that the Court grant this Motion, enter the proposed order of final approval[18], and permit class members to obtain the benefits of the settlement.

---

[18]   Plaintiffs will submit a proposed order of final approval prior to the final approval hearing. Because some of the data may still change until the deadline for claims, objections, and requests for exclusion has passed, Plaintiffs will submit the proposed order shortly before the hearing. <u>See</u> Liss-Riordan Decl. ISO Final Approval at ¶ 4.

Date: June 9, 2022

Respectfully submitted,

CHRISTOPHER JAMES, SPENCER VERHINES, and
KENT HASSELL, individually and on behalf of all others
similarly situated,

By their attorneys,


_/s/ Shannon Liss-Riordan_____

Shannon Liss-Riordan, SBN 310719
Anne Kramer, SBN 315131
LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, MA 02116
(617) 994-5800
Email:  sliss@llrlaw.com; akramer@llrlaw.com

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## **CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing document was served by electronic filing on June 9, 2022, on all counsel of record.

_/s/ Shannon Liss-Riordan_
Shannon Liss-Riordan, Esq.