FILED

JUL 05 2022

CLERK, U.S. DISTRICT COURT
NORTH DISTRICT OF CALIFORNIA

S. Patrick Mendel
1319 Washington Ave, #163
San Leandro, CA  94577
Carpartners1@gmail.com
Ph. 415-812-8507

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **CHRISTOPHER JAMES** et al., individually and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>vs.<br><br>**UBER TECHNOLOGIES INC.,**<br><br>        Defendant | **CASE NO. 19-CV-06462-EMC**<br><br>PLAINTIFF MENDEL'S NOTICE OF MOTION AND MOTION TO DISMISS, RULE 12(b)(1); 12(b)(6) OF THE FEDERAL RULES OF CIVIL PROCEDURE<br><br>MEMORANDUM; REQUEST FOR JUDICIAL NOTICE AND AFFIDAVIT IN SUPPORT THEREOF<br><br>**PLAINTIFF REQUEST'S ORAL ARGUMENT**<br><br>Hon. Edward M. Chen<br><br>Hearing: July 14, 2022<br>Time: 2:30pm<br>Courtroom 5 |

### PLAINTIFF MENDEL'S NOTICE OF MOTION AND MOTION TO DISMISS

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on July 14, 2022, or as soon as the matter may be heard, in the above entitled Court, Plaintiff Mendel, a class member, will move under the Federal Rules

**Motion to Dismiss**

of Civil Procedure, Rule 12(b)(1) and/or Rule 12(b)(6), move the court to dismiss this case as required by law and U.S. Supreme Court authority under the *Younger* doctrine.

The motion is supported by a Memorandum of Points and Authorities, Requests for Judicial Notice and Affidavit/Declaration of S. Patrick Mendel in support thereof.

The Motion seeks immediate relief to prevent continuing irreparable harm against the Plaintiff and fellow drivers and citizen passengers, and to prevent a serious miscarriage of justice by the unlawful conduct of Uber Technologies Inc., including Rasier-CA LLC and UberUSA LLC, and their agents, directors, officers and employees.

**NOTICE:**   The Settlement Agreement IF this Court grants final settlement approval would constitute a federal court approval of an unlawful, illegal business and occupation violating the plain language of federal transportation law prohibitions.

The result is Uber would continue its unlawful, federally prohibited brokering of prearranged passenger transportation to private motor vehicles as an occupation as a brokering business in direct defiance of Federal law 49 U.S.C. §13506(b)(2) and Federal Regulation 49 CFR §372.101, and 49 U.S.C. §13904(f) and 49 U.S.C. §13904(d).  Uber drivers would continue their prohibited conduct as drivers providing unlawful, illegal passenger transportation in their private motor vehicles in direct defiance of federal law prohibitions.

"A] federal court has a duty to determine whether a contract violates federal law before enforcing it."[1]  The Settlement, if approved by the Court, would constitute a federal court condoning Uber's unlawful brokering as legal, allowing them to continue operating, in defiance of federal law preemptions AND the authorities of the U.S. Supreme Court.[2]

Because the Attorney General of California is prosecuting the labor violations of Uber and Lyft, the subject of the dispute and Settlement here, in State Court, this Court is required to dismiss under *Younger*, rather than grant the pending Settlement which would be contrary to U.S.

---

[1] *Costello v. Grundon*, 651 F. 3d 614 (7th Cir. 2011)

[2] See: *Kaiser Steel Corp., v. Mullins*, 455 U.S. 72 (1982) and *California v. Zook* 336 U.S. 725 (1949).

**Motion to Dismiss**

1    Supreme Court *Younger* authority. Counsel for both sides here are well aware of the actions of

2    the Attorney General and should have raised this issue much earlier in this case.

3       *Younger* abstention however does not apply to preemption of Uber's use of California's

4    federally preempted Transportation Network Company brokering laws which violate federal

5    transportation law preemptions. The Supreme Court has indicated that a "facially conclusive

6    claim" of pre-emption is "[p]erhaps" such an exception to the *Younger* doctrine. The First Circuit

7    has held that a claim of preemption is a valid exception to *Younger*. See: *Massachusetts Delivery*

8    *Ass'n v. Coakley*, 671 F. 3d 33 (1st Circuit 2012).

9       This Motion is based on this Notice of Motion and Motion, the accompanying

10   Memorandum of Points and Authorities, the Declaration of S. Patrick Mendel filed herewith, all

11   papers and pleadings from this case on file with the Court, all other matters of which the Court

12   may take judicial notice, any further evidence or argument offered to the Court at the hearing on

13   this Motion, and any other matters that the Court may consider.

14          Respectfully submitted;

15

16      Dated: June 12th, 2022

17

18

19      S. Patrick Mendel

20

21

22

23

24

25

26

27

28

**Motion to Dismiss**

Case No. 19-06462                                              - 3

1
2

## **MOTION TO DISMISS**

3

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO
DISMISS

4
5

The Plaintiff S. Patrick, submits the following Motion to Dismiss and Memorandum of

6

Points and Authorities in support of the motion to dismiss or abstain the lawsuit of Plaintiffs,

7

pursuant to Rules 12(b)(1) and 12(b)(6) under the Younger doctrine.

8
9

## I.   INTRODUCTION

10

**This Court on May 27, 2022, denied Mendel's TRO/Preliminary Injunctive motion**

11

**seeking to enforce federal law, and now, as of June 6th, 2022, another driver has**

12

**been murdered!    A mother of 6 children! Now there are at least 53 murdered!**

13
14

1.  Under the doctrine announced in *Younger v. Harris*, 401 U.S. 37 (1971), this

15

Court should comply with U. S. Supreme Court and Ninth Circuit authority and

16

abstain from exercising jurisdiction in this case as required and dismiss the

17

matter.

18

2.  In Mendel's Request for Judicial Notice No 2, in Support of this motion are

documents this Court should take notice of.

19

3.  A Copy of the Letter of Congress sent to Uber seeking answers to their questions

20

regarding the safety of the Uber drivers and the continuing murders, which are

21

occurring at the rate of 1 every other week. These are not car accident deaths, they

22

are criminal murders. Murders the federal courts could have stopped by simply

23

enforcing the federal transportation laws.

24

4.  At some point the consequences of the failure of government officials to enforce

25

the laws and do their jobs and comply with their oaths of office usually roll

26

downhill.

27
28

**Motion to Dismiss**

## II. STATEMENT OF FACTS

1.  Plaintiff Mendel on May 27, 2022, filed and served an Emergency Motion for TRO/Preliminary Injunctive Relief and Stay of Proceedings Objecting to Final Settlement.

2.  This Court, on May 27, 2022 issued an ORDER denying "non-party's Motion for Temporary Restraining Order. This Court stated:

    > "As an initial matter, there is insufficient information to find that Mendel has standing to intervene in this action to seek the relief he requests. Even if Mendel does have standing, he has not raised a "serious question[] going to the merits" of his claims nor shown a likelihood of success to warrant the relief he requests."

By choosing to only address the *TRO* aspect of Mendel's Motion this Court "by the procedural rules for appeal," has only delayed an immediate appeal.

What this Court cannot delay, is the fact that because this Court choose to avoid the federal law and U.S. Supreme Court authority Mendel cited and quoted to this Court, of Uber's unlawful, illegal conduct of brokering of passenger transportation to private motor vehicles....the Court instead also avoiding U.S. Supreme Court authority regarding liberally construing a pro se litigant's complaint and to consider its substance, the Court erroneously put formalities ahead of substance which was clear error and ***it must now assume the burden and result of its decision.***

**ANOTHER RIDESHARE DRIVER HAS BEEN MURDERED - Total now 53 murdered DATE: JUNE 6, 2022:**

**A mother of six (6) was shot and killed while she was just doing her job. Dushaundra Lee Ward, just started driving "rideshare" weeks ago, her passengers were the intended targets of the gun fire and they ran out of the car and escaped any harm.  Ms. Lee however suffered the full on ambush of gun fire Friday afternoon about 3:00pm [EST][3]**

---

[3] SEE MEDIA REPORT:  Fox13 Memphis TN: available on the web at:
https://www.fox13memphis.com/news/local/lyft-driver-mother-6-killed-ambush-family-says/BM4WWOFNGRAW3C5O3Q7YJ4T5GA/
SEE FOLLOW UP STORY AT:

**Motion to Dismiss**

This Court related this case to the *O'Connor v. Uber* case upon the motion of Plaintiff's attorneys Lichten-Liss-Riordan P.C.  This Court knows or should have known from that case, that Mendel had standing there and just as well has standing here, because he opted-out of Uber's arbitration agreement.  Mendel is entitled as a member of the class to object to the Final Settlement and does not have to file a motion to intervene.

In <u>*Overton v. Uber*</u>, Uber's then counsel, submitted an affidavit of an Uber employee in support of their Motion to Dismiss and compel arbitration.  Counsel withdrew that lying Declaration and unethical motion on threat of sanctions by Mendel for lying to this Court!  The opposition here IF the Court had allowed a response, could not, and cannot refute Mendel's opt-out from arbitration and membership in the class in this case.

Additionally, Mendel did not just submit a Motion he "Verified" his Motion, and there was no opposition to defeat or challenge either his Verification or his Declaration of Facts, especially Facts #1 and #2, of the Declaration. See: Docket #'s 204 and 205.

FACT #1.

> "I am an unnamed member of the class of Plaintiffs' in the James v. Uber Technologies Inc. Case No. 19-CV-06462-EMC."

FACT #2.

> "I have provided a true and correct copy of the email notice that I am a member of the class action and presented to the Court in the Request for Judicial Notice I provided."

SEE ALSO: Unimpeachable Evidence at Docket # 205, Request for Judicial Notice #1 True and correct copy of email notice as a member of the class of *James v. Uber*.

It remains clear error that this Court has ignored so far with impunity the undisputed evidence placed before it.  A betting man would not place a wager on Mendel's executing his right to appeal. When the facts and the law are on your side you pound both.

When you find yourself in a hole, stop digging!

---

https://www.fox13memphis.com/news/local/rideshare-drivers-high-alert-after-lyft-driver-killed/KVZO5CK2UVC5PPAPDS7TOVLJ4I/

**Motion to Dismiss**

**Case No. 19-06462**                                                    - 6

If the Clerks of this Court have misconstrued Mendel's pleading, to this Court, that led to these gross errors of law and ignoring the superior authority of the U.S. Supreme Court, this Court ought to correct the problem.

3. The California Attorney General has been and is currently prosecuting Uber's California Labor law violations and driver claims and State penalties against Uber for violations of California Labor laws, in the Superior Court of California. This direct State action by the California Attorney General, not private parties, require this Court to abstain and dismiss this entire action, under correct application of the abstention doctrine announced by the Supreme Court in *Younger v. Harris, 401 U.S. 37, 45 (1971)*. See Evidence: Request for Judicial Notice No. 1, of Joint Case Management Conference Statement, addressing the California Labor Law violations alleged by the Attorney General against defendant Uber Technologies, Inc., which are the same as the allegations in private party Plaintiffs' case here.

4. Counsel for Plaintiffs' is participating in the UBER consolidated cases in the California Superior Court, San Francisco, SEE: UBER **TECHNOLOGIES WAGE AND HOUR CASES, Case** No. CJC-21-005179.

5. On April 30, 2022, she last filed Oppositions to Lyft's actions and Proofs of Service in the Uber Technologies Wage and Hour case, for her client Million Seifu.

6. The People of California filed originally their action against Uber on May 5, 2020, in Case No. CGC20584402.

7. On August, 12, 2021, the Judicial Council of California assigned a Judge after consolidating the cases, as complex litigation, as requested by The People.

8. On May 24, a Joint Case Management Conference Statement was filed by the Plaintiff, the People of the State of California.

9. A true and correct copy of the Joint Statement, which clearly describes the issues there as identical here, for Regular Wages, Overtime Wages, Sick Pay, Break Time, Expense Reimbursement, as well as State penalties being sought by the California Attorney General, Rob Bonta.

**Motion to Dismiss**

10. This is all the evidence and proof this Court needs to abstain under the Younger Doctrine, and to dismiss this case.

11. This Court on its own ORDERED the parties to explain their deviation from the findings of this Court in the formulation of their Settlement Agreement. Their responses do not acknowledge or inform this Court of the California Attorney General's actions.

12. It would be completely unfair for this Court to approve a Final Settlement here, which admits to discounting the claims of drivers, including Mendel, where the Attorney General has the same claims for all Uber drivers throughout the State of California, as arbitration agreements do not limit the actions of the Attorney General in enforcing California's Labor laws.

13. Additionally, the "Notice to Members of the Class, does not explain how much Mendel or any other driver would actually receive, or how to construct any amount of settlement fee in return for surrendering or opting out of this suit.

14. There is nothing fair about the Settlement when the class members cannot even estimate what they will receive for surrendering their rights to opt-out or accept whatever might fall from the sky in the pending Final Settlement being offered here.

15. Counsel for both parties have known for at least 2 years of the prosecuting action of the California Attorney General, and should have brought this action to this Court's attention long before this day.

## III. ARGUMENT

1. *Younger* Abstention - This Court Should Dismiss Plaintiff's Complaint under the *Younger v. Harris* Abstention Doctrine

**Motion to Dismiss**

The Court should dismiss Plaintiff's Complaint based on the abstention principles first articulated in *Younger v. Harris*, 401 U.S. 37, 49-53 (1971).[4] The Younger doctrine holds that principles of equity, comity, and federalism limit the exercise of federal jurisdiction over matters being litigated in an ongoing state proceeding. Id.

This doctrine further dictates that the federal matter be dismissed rather than stayed, as may be appropriate under some other forms of abstention, such as the "Pullman" abstention doctrine. *Gibson v. Berryhill*, 411 U.S. 564, 577 (1973); *Gilbertson v. Albright*, 381 F.3d 965, 981 (9th Cir. 2004) (en banc).

Younger abstention is required under the following three conditions: (1) there is an ongoing state judicial proceeding; (2) the state judicial proceeding implicates important state interests; and (3) there is an adequate opportunity in the state judicial proceeding to raise the federal claims. *Middlesex County Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 431 (1982); *H.C. ex rel Gordon v. Koppel*, 203 F.3d 610, 613 (9th Cir. 2000). Each of these conditions is present in this case.

### 2.   There is an Ongoing State Judicial Proceeding

As Stated above, The State of California has an ongoing judicial proceeding against Defendant Uber Technologies Inc. in the California Superior Court, County of San Francisco. SEE: RJN UBER TECHNOLOGIES WAGE AND HOUR CASES - JOINT CASE MANAGEMENT CONFERENCE STATEMENT, Case No. CJC-21-005179.

In short, the State's action was filed over the same issues and claims as the Plaintiffs' here.

The State of California is the plaintiff in the state court action and Uber Technologies Inc., is the defendant. The essential facts in the state case are substantially identical to those in the

---

[4] Although Younger was a criminal case, its rule of abstention and deference has been extended to state civil enforcement actions that are judicial in nature. See *Ohio Civil Rights Commission v. Dayton Christian Schools, Inc.*, 477 U.S. 619, 627 (1986).

**Motion to Dismiss**

present case; however, the issues involved in the state case arise exclusively under state law. For purpose of applying the Younger abstention doctrine, ***it makes no difference that the federal action was filed first***. In *Hicks v. Miranda*, 422 U.S. 332, 349 (1975), overruled on other grounds, *Mandel v. Bradley*, 432 U.S. 173 (1977) (per curium), the Court held that the Younger doctrine applies "in full force" even when the state proceedings are begun after the federal complaint is filed, as long as no proceedings of substance on the merits have taken place in federal court. See also *Hawaii Housing Authority v. Midkiff*, 467 U.S. 229, 238 (1984). To date, no proceedings of substance have occurred in this federal action. Therefore, the first prong of the Younger abstention test is satisfied.[5]

### 3. The State's Proceeding Against Defendant Uber Involves Significant State Interests

The second basis for Younger abstention—if the state court proceedings implicate an important state interest—is broadly applied to a variety of state issues. See *Mission Oaks Mobile Home Park v. City of Hollister*, 989 F.2d 359, 361 (9th Cir. 1993), cert. denied 510 U.S. 1110 (1994). See: RJN UBER TECHNOLOGIES WAGE AND HOUR CASES - JOINT CASE MANAGEMENT CONFERENCE STATEMENT, *supra*.

The types of interests referred to are "those interests that the Constitution and our traditions assign primarily to the states." *Harper v. Public Service Commission of West Virginia*, 396 F.3d 348, 352 (4th Cir. 2005) and include matters relating to labor laws.

---

[5] It is clear that briefing and denial of a motion for a temporary restraining order does not constitute a "proceeding of substance on the merits." See *Polykoff v. Collins*, 816 F.2d 1326, 1332 (9th Cir. 1987). Also the mere filing of a motion for a preliminary injunction does not preclude application of Younger to a later-filed state action. See *M&A Gabaee v. Community Redevelopment Agency*, 419 F.3d 1036, 1041 (9th Cir. 2005) ("mere motions for an injunction do not qualify as 'proceedings of substance' in federal court"); *Franza v. Abrams*, 695 F.Supp. 747, 749 (S.D.N.Y. 1988) (stage in proceeding where "plaintiff has moved this court for a preliminary injunction restraining the defendants from transferring, disposing, or forfeiting any of plaintiff's property, or seeking to do any such acts. . . and defendants have cross-moved for dismissal of the complaint on abstention grounds and for failure to state a cause of action" still sufficiently embryonic to permit *Younger* abstention).

**Motion to Dismiss**

The Supreme Court has emphasized that federal courts' should not weigh the importance of any federal interests, such as federal preemption or the state law's possible constitutional infirmities, in determining the relevant state interest and applying the Younger abstention test. *New Orleans Public Service, Inc. v. Council of New Orleans*, 491 U.S. 350, 364-66 (1989). Rather, the Court stated that federal courts must assess the state's interest in a more general way: [W]hen we inquire into the substantiality of the State's interest in its proceedings we do not look narrowly to its interest in the outcome of the particular case— which could arguably be offset by a substantial federal interest in the opposite outcome. Rather, what we look to is the importance of the generic proceedings to the State. Id. at 365 (emphasis in original)

Thus, the appropriate focus of the Court's inquiry here is the State's interest in the its labor laws and enforcement of its laws on recalcitrant businesses harming California's labor force, its citizens.. As spelled out below, these are important interests to the State of California.

There is no question that the State of California has a vital public interest in regulating its labor and employment laws.

Younger abstention is appropriate here because the State of California has a substantial, legitimate and long-term interest in regulating its employment and labor laws. The second prong of the Younger abstention test is therefore satisfied.

### 4. The State Judicial Proceedings Offer defendant Uber and Plaintiff drivers' an Adequate Opportunity to Raise Constitutional Issues

Plaintiff's Complaint does not allege violations of federal or constitutional law. Each of the those assertions, if any they may have however, may be raised in the state court action. Thus, the third test for applying Younger abstention is met.

**Motion to Dismiss**

It makes no difference, for purposes of applying the Younger abstention test, that Plaintiff is seeking declaratory and or injunctive relief in the present action. See *Samuels v. Mackell*, 401 U.S. 66, 72-73 (1971) (declaratory judgments result in same interference with and disruption of state proceedings as injunctions); *Partington v. Gedan*, 961 F.2d 852, 861 (9th Cir. 1992), cert. denied 506 U.S. 999 (Younger doctrine precludes not only federal injunctive relief against pending state enforcement proceedings, but also declaratory proceedings); *Beltran v. State of California*, 871 F.2d 777, 782 (9th Cir. 1988) (Younger abstention applies to suits seeking declaratory relief on constitutional issues before state court in pending proceeding). As the Supreme Court stated, "abstention is appropriate unless state law clearly bars the interposition of constitutional claims . . . .The burden on this point rests on the federal plaintiff to show that state procedural law barred presentation of claims." *Moore v. Sims*, 442 U.S. 415, 425-26 (1979).

Plaintiff cannot show that it is procedurally barred from raising any of its real or potential federal law and constitutional claims or any other Uber Technologies Inc., defenses in the state court proceeding. California state Superior Courts, are courts of original jurisdiction, Article 6, §§ 1-23, California Constitution, authorized and created "for the purpose of hearing and determining all matters and causes arising under the laws of this state." .

It should also be pointed out that if the state court proceeding raises federal questions, it will be reviewable by the United States Supreme Court. As that Court has stated:

> "A civil litigant may, of course, seek review in this Court of any federal claim properly asserted in and rejected by state courts. Moreover, where a final decision of a state court has sustained the validity of a state statute challenged on federal constitutional grounds, an appeal to this Court lies as a matter of right. . . . But quite apart from appellee's right to appeal had it remained in state court, we conclude that it should not be permitted the luxury of federal litigation of issues presented by ongoing state proceedings, a luxury which . . . is quite costly in terms of the interests which Younger seeks to protect."

**Motion to Dismiss**

1

2

3    *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 605-06 (1975).

4

5        Therefore, the third, and final, prong of the Younger abstention test is satisfied. In

6    conclusion, Plaintiff Mendel has met the three requirements of the Younger abstention

7    doctrine. Therefore, this Court should abstain from involving itself in the State's case and

8    dismiss Plaintiff's Complaint. *Baffert v. California Horse Racing Bd.*, 332 F.3d 613, 617 (9th

9    Cir. 2003) cert. denied 540 U.S. 1075 ("If the circumstances giving rise to Younger

10   abstention apply, the district court must dismiss the [federal] action.").

11

12   **IV. CONCLUSION**

13

14       The Court should grant Mendel's motion and dismiss Plaintiff's Complaint under the

15   Younger abstention doctrine. Dismissal will provide respect for the integrity of the California

16   state court system, and because there is an on-going state judicial proceeding, Plaintiffs' and

17   defendant Uber Technologies Inc., will be afforded every opportunity to raise its

18   constitutional and federal law issues in that forum.

19

20   Respectfully submitted

21

22

23   June 12, 2022

24                                                            S. Patrick Mendel

25

26

27

28

**Motion to Dismiss**

**Case No. 19-06462**                                      - 13

S. Patrick Mendel
1319 Washington Ave, #163
San Leandro, CA  94577
Carpartners1@gmail.com
Ph. 415-812-8507

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

**CHRISTOPHER JAMES** et al., individually and on behalf of all others similarly situated,

        Plaintiff,

vs.

**UBER TECHNOLOGIES INC.,**

      Defendant

**CASE NO. 19-CV-06462-EMC**

PLAINTIFF CLASS MEMBER MENDEL'S REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF MOTION TO DISMISS NOTICE OF MOTION AND MOTION TO DISMISS, RULE 12(B)(1); 12(B)(6) OF THE FEDERAL RULES OF CIVIL PROCEDURE OBJECTING TO JURISDICTION TO APPROVE FINAL SETTLEMENT;

**PLAINTIFF MENDEL REQUESTS ORAL ARGUMENT**

Hon. Edward M. Chen

Hearing: July 14, 2022
Time: 2:30pm
Courtroom 5

**PLAINTIFF'S MENDEL'S REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF MOTION TO DISMISS AND OBJECTING TO JURISDICTION OVER FINAL SETTLEMENT**

**Motion to Dismiss**

## REQUEST FOR JUDICIAL NOTICE

**PLEASE TAKE NOTICE** that, pursuant to Federal Rules of Evidence, Rule 201, Plaintiff Mendel hereby requests that the Court take Judicial Notice of the following in support of his motion to dismiss this case under the Younger abstention doctrine:

**REQUEST #1**

A true and correct copy of the UBER TECHNOLOGIES WAGE AND HOUR CASES - Case No. CJC-21-005179 JUDICIAL COUNCIL COORDINATION PROCEEDING NO. 5179 - JOINT CASE MANAGEMENT CONFERENCE STATEMENT, WHICH EXPLAINS the actions the  California Attorney General is prosecuting in the California Superior Court in the County of San Francisco against Uber Technologies Inc. the defendant in this case..

**REQUEST #2**

A true and correct copy of the Congressional Letter to Uber Technologies Inc., CEO seeking answers to questions regarding the safety of Uber drivers and their concern of the murders of at least 50 drivers.

Respectfully submitted;

Date June 12, 2022

_____

S. Patrick Mendel

**Motion to Dismiss**

1  ROB BONTA
   Attorney General of California
2  SATOSHI YANAI
   Senior Assistant Attorney General
3  JOANNA HULL (SBN 227153)
   Supervising Deputy Attorney General
4  MINSU D. LONGIARU (SBN 298599)
   LILLIAN Y. TABE (SBN 207338)
5  MANA BARARI (SBN 275328)
   Deputy Attorneys General
6   1515 Clay Street, 20th Floor
    P.O. Box 70550
7   Oakland, CA 94612-0550
    Telephone: (510) 879-1300
8   Fax: (510) 622-2270
    E-mail: Minsu.Longiaru@doj.ca.gov
9  *Attorneys for the People of the State of California*
   *(Additional Counsel on Signature Page)*
10

*[EXEMPT FROM FILING FEES -*
*Pursuant to Government Code*
*Section 6103]*ELECTRONICALLY

**F I L E D**
Superior Court of California,
County of San Francisco

**05/24/2022**
Clerk of the Court
BY: JUDITH NUNEZ
Deputy Clerk

11          SUPERIOR COURT OF THE STATE OF CALIFORNIA

12              COUNTY OF SAN FRANCISCO

13

14

15  COORDINATION PROCEEDING
    SPECIAL TITLE [RULE 3.550]
16
    **UBER TECHNOLOGIES WAGE AND**
17  **HOUR CASES**

18

19

20

21

Case No. CJC-21-005179
JUDICIAL COUNCIL COORDINATION
PROCEEDING NO. 5179

**JOINT CASE MANAGEMENT**
**CONFERENCE STATEMENT**

Date:  June 1, 2022
Time:  11:00 am
Dept:  304
Judge:  Hon. Ethan P. Schulman

22

23

24

25

26

27

28

1

The Parties submit the following Joint Case Management Conference Statement in the above-entitled action. The Statement is submitted pursuant to this Court's February 4, 2022, Order After Initial Case Management Conference, in advance of the June 1, 2022, Case Management Conference ("CMC").

## I.   SUMMARY OF THE CASE

Plaintiffs as used herein, refers to Plaintiffs in the nine currently coordinated actions, who consist of: (1) the People of the State of California ("the People"); (2) the Labor Commissioner of the State of California and Chief of the Division of Labor Standards Enforcement ("Labor Commissioner"); and (3) plaintiffs Tabola, Olson, Rosales, Adolph, Gregg, and Seifu (collectively, "PAGA Plaintiffs").[1] Plaintiffs allege that Defendants Uber and Lyft ("Defendants," collectively with Plaintiffs, "the Parties") have misclassified passenger drivers and/or food delivery drivers as independent contractors in the State of California ("Drivers"). Plaintiffs allege that, by doing so, Uber and Lyft failed to provide Drivers with wages, minimum wages, overtime premium pay, reimbursement for business expenses, paid rest periods, accurate itemized wage statements, workers' compensation coverage for on-the-job injuries, paid sick leave, and wage replacement programs like disability insurance and paid family leave, among other worker protections. Plaintiffs variously allege these practices have violated California's Unfair Competition Law ("UCL," Bus. & Prof. Code § 17200 et seq.), the Industrial Welfare Commission ("IWC") orders, numerous provisions of the California Labor Code, including Assembly Bill 5 ("AB 5," Lab. Code § 2775 et seq.), and local law. Plaintiffs seek all applicable, available remedies stemming from these practices, including restitution, statutory and civil penalties based on violations of the Labor Code, the UCL, and the Private Attorneys General Act ("PAGA," Lab. Code § 2698 et seq.), as well as injunctive relief.

Uber and Lyft each dispute Plaintiffs' allegations and dispute that Plaintiffs are entitled to any relief. Uber and Lyft also each dispute that they can be or should be subject to multiple cases filed on behalf of the State of California for the same alleged violations. Uber and Lyft also each dispute that the PAGA Plaintiffs may proceed with their claims against Defendants in court and

---

[1] Section II.A., *infra,* contains a complete listing of the nine currently coordinated actions.

1  also dispute that the People or the Labor Commissioner can proceed with their claims for

2  restitution, damages and/or other individualized relief in court.  Defendants also contend that

3  injunctive relief is foreclosed by the passage of Proposition 22.

4  The Parties agree that there are common legal issues that will arise in the course of this

5  coordinated proceeding.  For example, the Court may need to address the applicability of

6  Proposition 22 to Plaintiffs' claims.  In addition, the Court will need to evaluate which

7  classification test applies to each of Plaintiffs' claims at which point in time:  AB 5; the "ABC"

8  test as codified in Labor Code section 2775 *et seq.* [effective 1/1/2020]; the "ABC" test set forth

9  in *Dynamex Operations West, Inc. v. Super. Ct.* (2018) 4 Cal.5th 903, 954 ("*Dynamex*") [issued

10  4/30/2018]; the test set forth in *S.G. Borello & Sons, Inc. v. Dep't. of Industr. Relations* (1989) 48

11  Cal.3d 341 ("*Borello*"); or potentially Proposition 22 [effective 12/16/2020].

12  **II.   BRIEF HISTORY OF INCLUDED ACTIONS AND JCCP PROCEEDINGS**

13  **A.  <u>Included Actions</u>**

14  The nine actions currently included in this coordinated proceeding are:

15  (1–2) Labor Commissioner actions against Uber and Lyft separately filed in Alameda

16  County Superior Court on August 5, 2020 (*García-Brower v. Uber Techs., Inc.,* Case No.

17  RG20070281; *García-Brower v. Lyft, Inc.,* Case No. RG20070283);

18  (3) People of the State of California action against both Uber and Lyft filed in San

19  Francisco Superior Court on May 5, 2020 (*People of the State of California et al. v. Uber Techs.,*

20  *Inc. and Lyft, Inc.,* Case No. CGC-20-584402);

21  (4–7)  Private PAGA actions against Uber filed in: (a) San Francisco County Superior

22  Court on March 16, 2016 (*Tabola v. Uber Techs., Inc.,* Case No. CGC-16-550992 (*Tabola*)); (b)

23  Orange County Superior Court on October 10, 2019 (*Adolph v. Uber Techs., Inc.,* Case No. 30-

24  2019-01103801-CU-OE-CXC (*Adolph*)); and (c) Los Angeles County Superior Court on

25  December 4, 2017 (*Rosales v. Uber Techs., Inc.,* Case No. BC685555 (*Rosales*)) and August 29,

26  2018 (*Gregg v. Uber Techs., Inc.,* Case No. BC719085 (*Gregg*));

27

28

(8–9) Private PAGA actions against Lyft filed in: (a) San Francisco County Superior Court on May 25, 2018 (*Olson et al. v. Lyft*, Inc., Case No. CGC-18- 566788 (*Olson*));[2] and (b) Los Angeles County Superior Court on July 5, 2018 (*Seifu v. Lyft*, Case No. BC7129590 (*Seifu*)).

**B. JCCP Proceedings**

On April 30, 2021, the Labor Commissioner filed a petition to coordinate its action against Uber, its action against Lyft, the People's action, *Tabola*, and *Olson*. On September 7, 2021, Uber provided notice of Potential Add-on Cases identifying five additional cases—*Adolph*, *Rosales*, *Gregg*, and *Sherman v. Uber Techs.*, *Inc.*, Case No. BC656880 (L.A. Super. Ct.) (filed Apr. 6, 2017)—as well as one more case for which Uber subsequently withdrew its notice.[3]

On September 16, 2021, the Labor Commissioner's petition was granted. The Order reserved for the coordination trial judge the question of which add-on cases ought to be coordinated in this proceeding. On December 21, 2021, the Honorable Ethan P. Schulman was reassigned as the Coordination Trial Judge. On December 23, 2021, Lyft submitted a request to coordinate one additional add-on case, *Seifu*. An initial CMC was held on February 4, 2022, for which an Order After Initial Case Management Conference was issued that same day.

On February 14, 2022, Uber's and Lyft's requests to coordinate *Adolph*, *Sherman*, *Rosales*, *Gregg*, and *Seifu* were granted. On February 28, 2022, Olson and Tabola submitted a request to coordinate ten add-on cases,[4] and identified an additional nine actions to the Court.[5] That same

---

[2] The *Olson* case has previously been dismissed and is currently stayed.

[3] The additional case was *Rowe v. Rasier-CA LLC* (Orange Cty. Super. Ct. Case No. 2018-00989673) (filed May 1, 2018). At the February 4, 2022, CMC, Uber's counsel represented that it was withdrawing its notice because *Rowe* had been dismissed.

[4] The ten cases were: (1) *Azhar v. Uber Technologies*, No. 20NWCV00114 (L.A. Super. Ct.) (filed Feb. 14, 2020); (2) *Barragan v. Raiser, LLC*, No. 21STCV29907 (L.A. Super. Ct.) (filed Aug. 12, 2021); (3) *Becker v. Uber Techs.*, *Inc.*, No. 21STCV46602 (filed Dec. 22, 2021); (4) *Moreira et al. v. Uber Techs.*, *Inc.*, No. CGC-21-596441 (S.F. Super. Ct.) No. CGC-21-596441 (filed Nov. 2, 2021); (5) *Qassimyar v. Uber Techs.*, *Inc.*, No. 37-2020-00044749-CU-BC-CTL (S.D. Super. Ct.) (filed Dec. 4, 2020); (6) *Toyserkani v. Rasier LLC*, No. BC660915 (L.A. Super. Ct.) (filed May 10, 2017); (7) *Becerra v. Lyft, Inc.*, No. 21STCV32696 (L.A. Super. Ct.) (filed Sept. 3, 2021); (8) *Biggs v. Lyft, Inc.*, No 20CV366831 (L.A. Super. Ct.) (filed Jun. 4, 2020); (9) *Liner v. Lyft, Inc.*, No 22 STCV00103 (L.A. Super. Ct.) (filed Jan. 3, 2022); and (10) *Turrieta v. Lyft, Inc.*, No. BC714153 (L.A. Super. Ct.) (filed Jul. 13, 2018).

[5] The nine additional cases were: (1) *Adri v. Uber Techs.*, *Inc.*, No. 19STCV00739 (L.A.

4

1  day, Uber also submitted a request to coordinate one more case.[6]

2       On March 1, 2022, Uber filed a Motion for Judgment on the Pleadings, and in the

3  Alternative, a Stay, in favor of Uber and against the included private (non-governmental) PAGA

4  Plaintiffs' actions, *Adolph*, *Gregg*, *Rosales*, *Sherman* and *Tabola*, as well as against the requested

5  PAGA Plaintiff add-on in *Alamas*.   On March 9, 2022, Lyft filed a Demurrer to plaintiff Seifu's

6  Third Amended Complaint along with a Motion to Stay *Seifu*.

7       On April 26, 2022, the Court held a hearing on the requests to add on various cases, Uber's

8  Motion for Judgment on the Pleadings, and on the Labor Code section 2699(h)-based portion of

9  Lyft's Demurrer and Motion to Stay *Seifu*.   At the April 26, 2022, hearing, the Court declined to

10  hear argument on the non-Labor Code section 2699(h)-based portions of Lyft's Demurrer

11  regarding *Seifu*, and stated that Lyft's right to bring additional demurrer arguments was reserved.

12  The Court said it would discuss a schedule for a hearing date on Lyft's additional demurrer

13  arguments at the June 1, 2022, CMC.

14       Following the hearing, on April 27, 2022, the Court denied Olson's, Tabola's, and Uber's

15  add-on requests, and rejected Olson's and Tabola's suggestion to coordinate the nine additional

16  cases.   That same day, this Court entered a Stipulation of Voluntary Dismissal Without Prejudice

17  as to the Representative Group in the *Sherman* PAGA Plaintiff action.   As a result, *Sherman* is no

18  longer included in this coordinated proceeding.

19       On May 13, 2022, the Court issued an order denying:  (1) Uber's Motion for Judgment on

20  the Pleadings, and in the Alternative, a Stay; (2) those portions of Lyft's Demurrer and Motion to

21  Stay that sought to dismiss or stay *Seifu* under Labor Code section 2699(h); and (3) Defendants'

22  Super. Ct.) (filed Jan. 8, 2019); (2) *Alamas et al. v. Uber Techs., Inc. et al.*, No. 19STCV29939
(L.A. Super. Ct.) (filed Aug. 12, 2019); (3) *Brower v. Uber Techs., Inc.*, No. CGC-20-582262
23  (S.F. Super. Ct.) (filed Jan. 17, 2020); (4) *Gupta v. Uber Techs., Inc.*, No. 30-2020-01121607
(Orange County Super. Ct.) (filed Jan. 3, 2020); (5) *Howard v. Uber Techs., Inc.*, No. CGC-18-
24  572443 (S.F. Super. Ct.) (filed Dec. 31, 2018); (6) *Mora v. Uber Techs., Inc.*, No. CGC-21-
590410 (S.F. Super. Ct.) (filed Mar. 25, 2021); (7) *Smith v. Postmates, Inc., et al.*, No.
25  21STCV23777 (L.A. Super. Ct.) (filed Jun. 25, 2021); (8) *Rogers v. Lyft, Inc.*, No. CGC-20-
583685 (S.F. Super. Ct.) (filed Mar. 12, 2020); and (9) *Kunda v. Lyft* (L.A. Super. Ct.) No.
26  20STCV46208 (filed Dec. 3, 2020).

27      [6] The additional case requested by Uber was *Alamas et al. v. Uber Techs., Inc. et al.*, No.
19STCV29939 (L.A. Super. Ct.) (filed Aug. 23, 2019), a case also suggested by Plaintiffs Olson
28  and Tabola.

1    requests to stay the PAGA Plaintiff actions, including pending the United States Supreme Court's

2    decision in *Viking River Cruises, Inc. v. Moriana* (No. 20-1573) ("*Viking River*").

3    **III.   PROPOSED ISSUES FOR THE CMC**

4           Pursuant to paragraph 6 of this Court's February 4, 2022, Order After Initial Case

5    Management Conference, the Parties submit the following issues for consideration at the June 1,

6    2022, CMC: "(1) any amended pleadings; (2) a timeline for filing amended pleadings; and (3) a

7    briefing schedule for Defendants' motions to compel arbitration" and related stay motions.  The

8    Parties also respectfully include their agreements and/or positions regarding the following other

9    topics: (1) a meet-and-confer schedule related to any additional Motions to Compel Arbitration

10   and Stay that are necessary or appropriate to be filed in this Court after the *Viking River* decision

11   issues; (2) a briefing schedule for whether the stay in *Olson* should be lifted; (3) the schedule to

12   hear the remaining demurrer issues in *Seifu*; and (4) the ESI protocol and protective order, the

13   File & ServeXpress/list of counsel, and reporting on related cases.

14       **A.   Amended Pleadings and Filing Timelines**

15              **1.  People's Amended Pleading and Filing Timeline**

16                  **a.   *Joint Statement***

17           The People seek leave to amend its Complaint filed on May 5, 2020 ("People's Original

18   Complaint"). The People provided Defendants with its proposed First Amended Complaint

19   ("FAC") on May 9, 2022, and followed up with a redline showing the proposed changes to the

20   People's Original Complaint on May 10, 2022.  Procedurally, the People will seek leave from the

21   Court at the June 1, 2022, CMC to file its FAC without the need to do so via noticed motion or a

22   stipulation.  If the Court wishes to require either a noticed motion or stipulation regarding the

23   FAC, then the People and Defendants will seek the Court's guidance on its preferred procedures

24   at the June 1, 2022, CMC.

25           The proposed amendments the People intend to include in its FAC, as shown in the May 10,

26   2022, redline provided to Defendants, include: (1) naming Doe Defendants 1, 2, and 3 as Rasier,

27   LLC, Rasier-CA, LLC, and Uber USA, LLC (collectively, "Uber Subsidiaries"); (2) alleging that

28   Uber Subsidiaries and/or Uber Technologies, Inc., through Uber Subsidiaries, may be liable for

6

1   the alleged violations of California state and local law asserted in the People's Original

2   Complaint; (3) updating the names of government officials that have changed; (4) updating

3   references from "AB 5" to "Labor Code"; (5) adding an allegation related to COVID tolling of

4   the statute of limitations pursuant to Emergency Rule 9; and (6) adding references to Proposition

5   22.

6           Uber, Lyft, and Uber Subsidiaries (collectively, "FAC Defendants") do not oppose the

7   People making the proposed amendments to its pending Complaint without filing a motion to

8   obtain Court permission to do so, as long as such amendments are limited to those previously

9   identified to Uber and Lyft in the May 10, 2022, redline provided by the People (and described

10  *supra* at pp. 6:19–20).[7]  If the Court grants the People leave to amend its Complaint, the People

11  intend to file as the FAC a "clean" version of the document provided to Defendants in redline on

12  May 10, 2022.

13          The People and Defendants have agreed that, if the Court grants the People leave to file its

14  FAC, the FAC will be filed with the Court no later than June 30, 2022.  This will be prior to the

15  August hearing date jointly proposed in Section III.B.3, *infra,* by the People, Labor

16  Commissioner, and Defendants on Uber's and Lyft's pending motions to compel arbitration (as

17  well as the related motions to stay those claims) in the People's and Labor Commissioner's

18  actions.[8]  The People and Defendants have also agreed that, if the Court grants the People's

19  _____

20          [7] Defendants' willingness to agree to the filing of this amended complaint, without need
    for a motion, does not waive or limit Defendants' ability to argue, at the appropriate time, that it
21  is improper for Plaintiffs to maintain this multiplicity of actions against each of the Defendants,
    especially as these are all actions on behalf of the State of California. *See infra* at Section III.A.3
22  note 10.  Likewise, Plaintiffs reserve all rights to argue, at the appropriate time, that their actions
    are properly brought against each Defendant independent of any other Plaintiff's pending action
23  against each Defendant, and, if necessary, to oppose consolidation of the complaints in this
    coordinated proceeding.

24          [8] The Labor Commissioner does not intend to amend its pending First Amended
25  Complaints in its two actions.  Defendants reserve all rights regarding this position. *See infra* at
    Section III.A.3 and note 9.  Before coordination, the Alameda County Superior Court decided,
26  and deferred decision on, several of Defendants' challenges to the Labor Commissioner's
    complaints. Specifically, on April 7, 2021, the Court: (1) overruled Lyft's demurrer based on a
27  plea in abatement and exclusive concurrent jurisdiction; (2) overruled Uber's demurrer based on
    exclusive concurrent jurisdiction; (3) sustained Lyft's and Uber's demurrers based on stay issues;

28

                                                    7

1  request, Defendants' pending arbitration-related motions will apply equally to the People's FAC

2  as they currently do to the People's Original Complaint.

3      The People and Defendants jointly propose that Defendants, including new FAC

4  Defendants, do not need to file an answer to the People's FAC until a date that can be set by the

5  Court at a future CMC, after the Court has issued a decision on the motions to compel arbitration

6  in the People's action.  The Parties jointly request that the Court agree to set a future CMC at

7  which this issue can be discussed no later than approximately forty-five (45) days after the Court

8  issues its decision on the pending motions to compel arbitration (and related motions to stay those

9  claims).

10      The People and the FAC Defendants have met and conferred on whether they could agree

11  that the People's FAC would relate back to the People's Original Complaint, but have not been

12  able to agree on this issue.  Specifically, the People proposed to FAC Defendants that the

13  People's FAC will relate back to the People's Original Complaint for any and all applicable

14  statutes of limitations, so long as the amendments are limited to those previously identified to

15  Uber and Lyft in the May 10, 2022, redline.  FAC Defendants declined the People's proposal,

16  including because they do not believe that an agreement regarding relation back is appropriate at

17  this stage, especially given Defendants' agreement that the People may file its FAC without a

18  motion as described above.  At the June 1, 2022, CMC, the People will seek the Court's guidance

19  on this issue, as described further in Section III.A.1.b, immediately below.

20      **b.  *People's Statement***

21      At the June 1, 2022, CMC, the People plan to request that a briefing schedule be set on the

22  issue of whether the People's FAC will relate back to the People's Original Complaint for any

23  and all applicable statutes of limitations.  The People believe the issue of the relation back of the

24  FAC is ripe and there is no reason to delay the scheduling of briefing on this issue.  The People

25  will seek to meet-and-confer with FAC Defendants on a potential briefing schedule on this issue

26  ————————————

27  and (4) dropped, without prejudice, Uber's and Lyft's motions to compel arbitration, motion to strike prayers for relief and stay pending arbitration.

28

and to update the Court on the results of these discussions at the June 1, 2022, CMC.  Contrary to Defendants' suggestion in Section III.A.1.c, immediately below, neither the People nor the other Plaintiffs have agreed that any further amendments to their complaints apart from those raised by Plaintiffs in this CMS are appropriate.

### c.   FAC Defendants' Statement

Any briefing schedule on whether the People's FAC should relate back to the People's Original Complaint is premature at this point.  Plaintiffs agree that the question of whether there will be further amendments to their complaints after filing the FAC, such as Plaintiffs realigning or consolidating their complaints, should be deferred until a later CMC.  *See* Section III.A.3, *infra*. And whether the People's FAC relates back to the Original Complaint concerns the relief they can seek against the FAC Defendants.  Thus, the Court should defer setting any briefing schedule on whether the People's FAC relates back to the Original Complaint until a future CMC.

### 2.   Olson Amended Pleading

#### a.   Plaintiff Olson's Statement

*Olson* plaintiffs plan to amend their complaint to dismiss Plaintiff David Melnicoe's claims, as he passed away in 2021, and his estate elected not to pursue arbitration.  This simplification of *Olson* will allow the case to proceed in parallel with the substantially similar sister cases in this coordinated proceeding.

*Olson* plaintiffs are meeting and conferring with Lyft regarding a stipulation to amend the *Olson* complaint.

#### b.   Lyft's Statement

On May 17, 2022, Lyft was informed that Mr. Melnicoe passed away in 2021 and that the remaining *Olson* plaintiff was interested in filing an amended complaint.  Lyft was provided a copy of the remaining *Olson* plaintiff's proposed amended complaint on May 19, 2022.  The *Olson* plaintiffs' proposed amended complaint is procedurally improper at this time.  As discussed further in Section III.D.2 *infra*, Judge Cheng of the San Francisco Superior Court previously dismissed the *Olson* complaint under Labor Code 2699(h), with leave to amend, but

9

then stayed the entire action.  Thus, the existing stay must first be lifted before any amended complaint can be considered and/or filed.  Moreover, as with other cases in this JCCP, the upcoming U.S. Supreme Court decision in *Viking River* may create additional motion practice in *Olson*, if the stay is lifted.

### 3.  Other Amended Pleadings and Filing Timeline

#### a.  *Plaintiffs' Statement*

As described above, the People and *Olson* plaintiffs intend to amend their respective complaints.  The remaining Plaintiffs do not intend to amend their pending complaints.

To the extent that Defendants' proposal immediately below suggests that after the initial pleadings have been resolved, the Parties and the Court should determine whether any of the relevant complaints should be realigned, Plaintiffs reserve their rights to address these issues at a later CMC.  This includes addressing at a later CMC whether any specific forms of "realignment" that may be proposed by Defendants in the future will be presented to the Court via a noticed motion and accompanying briefing.  (See 12/2/2021 Case Management Statement (CMS), Plaintiffs' Statement, at p. 5:17–20 [requesting any motion(s) by Defendants to consolidate the complaints of any Plaintiff be addressed via noticed motion and briefing].)  As Plaintiffs have also previously stated, while Plaintiffs' actions share enough similarities to warrant coordination, they also differ significantly; each Plaintiff group represents distinct interests,[9] brings claims under distinct statutory schemes, challenges distinct conduct, and seeks differing relief.

---

[9] Contrary to Defendants' suggestions at p. 2:25–26, *supra,* and at p. 11:9–13 and note 10, *infra,* the Attorney General, City Attorneys, Labor Commissioner, and PAGA Plaintiffs, do not represent a single "State of California" interest. (See 2/1/2022 CMS, Plaintiffs' Statement, at pp. 7:18–8:8 [highlighting that the People represent the sovereign's interest, the Labor Commissioner represents a specific state agency's interest, and that PAGA Plaintiffs are both specific aggrieved employees and proxies for the Labor & Workforce Development Agency ("LWDA") for periods for which the agency does not assert exclusive jurisdiction pursuant to PAGA].)

10

(12/2/2021 CMS, Plaintiffs' Statement, at pp. 4:13–17, 5:10–16, 5:22–7:3; 2/1/2022 CMS, Plaintiffs' Statement, at pp. 7:10–9:9.)

### b. *Defendants' Statement*

Defendants also believe that the question of whether any additional realignments of the complaints are necessary should be addressed at a future CMC, after June 1st. Among other things, Defendants believe this question should be addressed following the resolution of: (i) Lyft's still pending Demurrer regarding the *Seifu* action; (ii) Defendants' Motions to Compel Arbitration and Motions to Stay in the Government Actions; (iii) any motions triggered by the *Viking River* decision; and (iv) the stay and pleading issues in *Olson*. After all initial pleading issues have been resolved in each individual case, and the Court and the Parties know which cases and claims are proceedings, the parties and the Court can consider how to address the fact that each case in this JCCP is being pursued on behalf of the State of California against the same defendants and that each allege the same, or similar, claims.[10] Addressing such issues might require consolidation of certain claims or cases, or may require other procedures to eliminate the unfairness to Defendants from such duplication.[11]

### B. Briefing Schedule for Defendants' Pending Motions to Compel Arbitration and Motions to Stay

As described in Section III.B.1, below, Defendants filed motions to compel arbitration, and related stay requests, that are currently pending in the People's case and in the Labor Commissioner's two actions against Uber and Lyft. The People's, Labor Commissioner's, and Defendants' proposals for the supplemental briefing, and hearing, schedule for these pending motions is described in Section III.B.3.a–b, below.

---

[10] Defendants disagree with Plaintiffs' attempt to avoid the fact that they all represent the State of California by claiming that they represent different State "interests" here. *See* footnote 9 *supra*. Plaintiffs cannot ignore the fact that all these claims, whether brought by the Labor Commissioner, the Attorney General or the PAGA Plaintiffs, are claim brought on behalf of the State of California.

[11] At the appropriate time, Lyft or Uber may also need to further respond to the complaints in the *Seifu, Olson*, the People's and/or the Labor Commissioner's cases. However, the question of what complaint(s) should be answered, and when this should occur, is an issue that should be addressed after the hearings on all pleadings-related matters are completed.

11

**1. Joint Statement re: Status of Arbitration-Related Motions in People's Case**

In the People's case, Defendants' pending arbitration motions are: (1) Uber's Motion to Compel Arbitration of Plaintiff's Claim for Restitution under the UCL or to Strike, which includes a request to stay the remaining portion of Plaintiff's UCL cause of action unless or until any arbitration has concluded (filed on July 15, 2020); (2) Lyft's Motion to Compel Individual Arbitration of Restitution Claim, or, in the Alternative, to Strike Restitution Claim Subject to Arbitration (filed July 15, 2020); and (3) Lyft's Motion to Stay Proceedings if the Court Orders Arbitration (filed April 14, 2021). Original briefing on the first two motions listed above has been completed. With respect to the third motion, the People have not yet filed an Opposition to Lyft's Motion to Stay Proceedings if the Court Orders Arbitration ("Stay Opposition"). A joint schedule for that additional briefing, including the People's filing of its Stay Opposition, is proposed in Sections III.B.2 and III.B.3, immediately below.

The Parties understand that all papers previously filed relating to Defendants' motions to compel arbitration and stay, because they were filed in San Francisco Superior Court, are fully available to the Court, and that these previously filed papers do not need to be re-filed in this coordinated proceeding. (2/4/2022 Initial CMC Tr. at pp. 11:25–12:6.)

**2.  Joint Statement re: Status of Arbitration-Related Motions in Labor Commissioner's Cases**

In the Labor Commissioner's cases, pursuant to an April 7, 2021 order by the Alameda County Superior Court, Uber's and Lyft's motions related to their requests to compel arbitration of the Labor Commissioner's claims for individualized relief on behalf of Drivers who had agreed to arbitrate their claims were "drop[ped] … without prejudice to re-filing … in any coordinated proceeding if a petition for coordination is granted." (Order (1) Staying Cases and (2) Dropping Motions to Compel Arbitration and to Strike Prayer for Injunctive Relief (Alameda Super. Ct. Apr. 7, 2021), p. 15.) The Labor Commissioner's actions were also stayed in the same order, pursuant to Defendants' demurrers. Uber and Lyft's motions to compel arbitration had been filed in Alameda County Superior Court on December 9, 2020 and October 23, 2020, respectively.

1    Original briefing on the motions related to the Labor Commissioner's cases was completed

2    before the cases were stayed.  Based on the Court's instructions at the February 4, 2022, CMC

3    (2/4/2022 Initial CMC Tr. at pp. 12:7–18), the Labor Commissioner and Defendants propose that

4    papers previously filed in the Labor Commissioner's Alameda County actions, including the

5    papers previously filed on the arbitration-related motions, be re-filed in this coordinated

6    proceeding without change.  The Labor Commissioner and Defendants intend to submit these

7    documents in separate, chronologically listed indexes, no later than five (5) court days after the

8    June 1, 2022, CMC, or by June 8, 2022.

9         **3.      Joint Statement re: Proposed Briefing and Hearing Schedule for
                 Arbitration-Related Motions in People's and Labor Commissioner's Cases**

10

11   The People, Labor Commissioner, and Defendants jointly request that the Court schedule a

12   hearing in late August 2022 on Defendants' motions to compel arbitration and related stay

13   motions in both the People's case and the Labor Commissioner's case.  Dates when counsel for

14   the People, Labor Commissioner, and Defendants are all available for such a hearing are: August

15   23, 24, 25, 26, 29, and 30.

16   As noted above, original briefing on Lyft's Motion to Stay Proceedings in the People's case

17   has not yet been completed because the People's Stay Opposition has not yet been filed.  If the

18   Court's hearing on the Motions to Compel Arbitration and Motion to Stay are held in July or

19   later, the People and Lyft jointly propose that the People's Stay Opposition be filed no later than

20   fifteen (15) court days before the hearing, and that Lyft's Reply on the Motion to Stay be filed by

21   no later than five (5) court days before the hearing.

22   For Defendants' pending Motions to Compel Arbitration and Motions to Stay in both the

23   Labor Commissioner's case and the People's case, the People, Labor Commissioner, and

24   Defendants jointly propose that if any party wishes to submit any notices of new authority to the

25   Court prior to the late July or August hearing, that any notice be filed as a letter to the Court, with

26   form and content in conformance with California Rules of Court, 8.254, subdivisions (a) and (b).

27

28

1    For Defendants' pending Motions to Compel Arbitration and Motions to Stay in both the

2    Labor Commissioner's case and the People's case, the People, Labor Commissioner, and

3    Defendants also jointly recognize that, given the length of time that the previously filed Motions

4    to Compel Arbitration and Motions to Stay have now been pending, there may be a need to

5    provide the Court with supplemental briefing regarding such motions prior to the hearing date on

6    such motions.  Thus, the People, Labor Commissioner, and Defendants jointly propose that any

7    additional requests for supplemental briefing on these motions be made to the Court during the

8    June 1, 2022, CMC so that a schedule for supplemental briefing can be set based on the hearing

9    date for such motions.

10   In addition, the People, the Labor Commissioner, and Defendants propose supplemental

11   briefing on the Supreme Court's expected decision in *Viking River*.  Each party's respective

12   briefing proposal is described further, immediately below.

13   **a. *People's and Labor Commissioner's Statement***

14   The People and Labor Commissioner propose that, if the *Viking River* decision is issued by

15   the United States Supreme Court before July 1, 2022, then: (a) on July 12, 2022, the People, the

16   Labor Commissioner, Uber, and Lyft may each file a supplemental brief (i.e., four supplemental

17   briefs total for the four parties) of no more than 5 pages, addressing whether the *Viking River*

18   decision has any impact on Defendants' pending Motions to Compel Arbitration, or Motions to

19   Stay in the Labor Commissioner's and/or the People's case; and (b) on July 26, 2022, the People,

20   the Labor Commissioner, Uber, and Lyft may each file a single reply brief (i.e., four reply briefs

21   total for the four parties) of no more than 5 pages, responding to any or all of the supplemental

22   briefs filed on July 12, 2022.  The People and Labor Commissioner further propose that after the

23   *Viking River* decision is issued, any of the four parties may seek additional pages on these

24   supplemental briefs and replies on application to the Court and for good cause.

25   **b. *Defendants' Statement***

26   The People and the Labor Commissioner claim above that their individual cases have

27   "distinct" claims and "differ significantly" from each other (*see supra* at 10:2–11).  Despite such

28   claims, their proposal for *Viking River* briefing set forth immediately above tries to conflate their

14

1   allegedly "differ[ent]" cases, at least when imposing a single brief requirement on Lyft and Uber.

2   Plaintiffs' briefing proposal also ignores the fact that Lyft and Uber have each filed separate

3   arbitration-related motions in each of the *two* cases brought against each Defendant—one set of

4   each Defendant's motions was filed in the People's case and another set of each Defendant's

5   motions was filed in the particular Labor Commissioner case brought against that Defendant.

6   Indeed, Plaintiffs' briefing proposal essentially gives the People and the Labor Commissioner

7   each a right to file separate briefs related to each of their separate cases, but then limits Lyft and

8   Uber to each having to file a single opening and a single reply brief that must jointly address both

9   motions they each brought in two different cases.  Plaintiffs' proposal makes no sense in light of

10  the fact that there are separate motions pending in different cases.  It is one-sided and unfair to

11  Lyft and Uber.

12          Defendants should be provided enough pages to address both pending motions in one brief.

13  Thus, if the *Viking River* decision is issued by the United States Supreme Court before July 1,

14  2022, then: (a) on July 12, 2022, the People and the Labor Commissioner may each file a

15  supplemental brief of no more than 5 pages, and Uber and Lyft may each file a supplemental brief

16  of no more than 7 pages, each addressing whether the *Viking River* decision has any impact on

17  Defendants' pending Motions to Compel Arbitration, or Motions to Stay in the Labor

18  Commissioner's and/or the People's case; and (b) on July 26, 2022, the People and the Labor

19  Commissioner may each file a single reply brief of not more than 5 pages, and Uber and Lyft may

20  each file a single reply brief of no more than 7 pages, responding to any or all of the supplemental

21  briefs filed on July 12, 2022.

22          Defendants further propose that after the *Viking River* decision is issued, any of the four

23  parties may seek additional pages on these supplemental briefs and replies on application to the

24  Court and for good cause.

25  **C. Joint Proposal on Potential Future Motions to Compel Arbitration and Stay**

26          Although there are no other Motions to Compel Arbitration currently pending in the trial

27  court by Defendants in any of the Private PAGA actions, Defendants believe that additional

28

15

1    Motions to Compel Arbitration may become appropriate after the United States Supreme Court

2    rules in *Viking River*.[12]  The Parties agree to meet and confer on a proposed schedule for filing

3    any such motions after the *Viking River* decision is issued.

4       **D.  Whether the Stay in *Olson* Should Be Lifted**

5           **1.  *Plaintiff Olson's Statement***

6           Consistent with the Court's statement that it "[i]n its next case management conference

7    order, the Court will address whether [the *Olson*] stay should be lifted" in footnote 20 of its May

8    13, 2022 Order Denying Uber's Motion for Judgment on the Pleadings and for a Stay and Lyft's

9    Demurrer ("May 2022 Order"), Plaintiff Olson requests that the Court exercise its discretion to

10   lift the stay[13] of his action and reconsider the July 2021 Order granting Lyft's (earlier) motion for

11   judgment on the pleadings under Labor Code section 2699(h).  (*See Le Francois v. Goel* (2005)

12   35 Cal.4th 1094, 1107-08 ("*Le Francois*") [finding that courts have inherent power to reconsider

13   prior rulings on their own motion, that it is appropriate for a party to request the court exercise

14   that authority at a status conference, and if the court wishes to exercise that authority, best

15   practice is to allow for supplemental briefing].)[14]

16          Reconsideration of the prior order is appropriate because the July 2021 Order is

17   inconsistent with the May 2022 Order.  The May 2022 Order correctly held that Labor Code

---

18          [12]Among other reasons, Defendants note that Lyft's appeal of the prior denial of its
19   Motion to Compel Arbitration in the *Seifu* matter is currently pending on appeal before the United
     States Supreme Court and appellate action on the *Seifu* matter is expected after the *Viking River*
20   matter is resolved by the United States Supreme Court. Defendants also note that Uber also has
     multiple cases coordinated in this action that may be affected by *Viking River*. For instance, Uber
21   has petitions for writ of certiorari pending with the United States Supreme Court in *Gregg* and
     *Rosales*. And *Adolph* is working its way through appeals in California state court.

22          [13] Contrary to Lyft's assertions below, *Olson* was never dismissed. Rather, Lyft's motion
23   for judgment on the pleadings was granted and the action was immediately stayed. (See July 19,
     2021 Order on Lyft's Motion for Judgment on the Pleadings ("July 2021 Order") at 6.)  No
24   dismissal ever occurred. Most importantly, because the July 2021 Order is inconsistent with the
     Court's subsequent May 2022 Order, reconsideration is appropriate.

25          [14] Below, Lyft misreads *Le Francois* by substituting "judge" for "Court." Surely, the
26   "Court may reconsider prior rulings," in the Supreme Court's words, even if the prior rulings
     occurred when a different judge was assigned to the case. *Le Francois, supra,* 35 Cal.4th at 1109.
27   All orders are an order of the Court, and they cannot be parsed by an individual judge in the way
     Lyft requests. Reconsideration will allow the Court to ensure that the section 2699(h) issue is
28   dealt with consistently, preserving coherent law of the case.

section 2699(h) applies only when the Labor Commissioner acts within the timeframes set forth in Labor Code section 2699, and in *Olson*, as in the other PAGA actions included within the JCCP, the Labor Commissioner acted more than two years after Olson filed his claims. The July 2021 Order held the opposite. The logic of the May 2022 Order requires that *Olson* be treated the same as *Seifu*, *Tabola*, and the other cases against which Defendants brought their Labor Code section 2699(h) motions.

Plaintiff Olson proposes that the parties submit simultaneous briefing by June 23, 2022, on the issue of reconsideration and that a hearing be held at the late July or August hearing on the pending Motions to Compel Arbitration and Motion to Stay. Proceeding with simultaneous briefing on the issue of reconsideration will be more efficient that Lyft's proposal, which appears to contemplate an unnecessary delay through seriatim briefing of three straightforward issues: (a) lifting the *Olson* stay, (b) reconsidering the July 2021 Order on section 2699(h) to bring it into harmony with the May 2022 Order, and (c) amendment of the *Olson* complaint to dismiss the deceased plaintiff. Further, Plaintiff Olson proposes that if Lyft intends to challenge the amended complaint in *Olson*, that any such motion be heard at the same time as the *Seifu* demurrer.[15]

### 2. *Lyft's Statement*[16]

The current complaint in *Olson* is a Second Amended Complaint jointly pled on behalf of two named plaintiffs, David Melnicoe and Brandon Olson – Mr. Melnicoe asserts Labor Code and unfair competition claims on behalf of a putative class and Mr. Olson asserts PAGA-based claims.[17] During the pendency of the *Olson* action, Judge Cheng denied several requests and

---

[15] Below, Lyft misleadingly describes the temporal scope of the *Olson* and *Seifu* cases and the Labor Commissioner's lawsuit. As the Labor Commissioner explained in her August 2020 letter to the parties and in subsequent representations to the Court, her action against Lyft reaches back to March 31, 2020. This leaves the period of January 1 to March 30, 2020, for *Olson* and *Seifu*.

[16] Nothing stated in this CMC statement regarding upcoming matters in either *Olson* or *Seifu* is intended to waive Lyft's consistent position that both Seifu and Olson must arbitrate their claims against Lyft.

[17] As Lyft has stated previously, the previously approved settlement in the *Turrieta* action will resolve all PAGA liability at issue in *Olson* (and *Seifu*) before January 1, 2020. Thus, once *Turrieta* is final, neither *Olson* nor *Seifu* will involve PAGA liability that is not also covered by

1    motions to sever these claims, including most recently on July 8, 2021, when Judge Cheng denied

2    Plaintiff David Melnicoe's motion to sever his claims from Brandon Olson's claims as moot in

3    light of the fact that the *Olson* case was already stayed in light of the pending actions filed by the

4    Labor Commissioner and the Attorney General as well as the pending *Seifu* action. *See* July 8,

5    2021 Order Denying David Melnicoe's Motion to Sever. On July 19, 2021, Judge Cheng granted

6    Lyft's Motion for Judgment on the Pleadings regarding Plaintiff Olson's PAGA claim, but

7    provided leave to amend this PAGA claim if the current stay of his action was ever lifted.[18] *See*

8    July 19, 2021 Order on Lyft's Motion for Judgment on the Pleadings. On July 21, 2021, Judge

9    Cheng of San Francisco Superior Court granted Lyft's motion to compel Mr. Melnicoe's claims

10   against Lyft to arbitration and stayed "the action in its entirety pending arbitration." *See* July 21,

11   2021 Order Granting Lyft Inc.'s Petition to Compel Plaintiff David Melnicoe to Individual

12   Arbitration and to Stay Action in its Entirety. Plaintiffs Olson and Melnicoe did not seek

13   reconsideration of these orders when they were made.

14           In light of the joint nature of the *Olson* action and its complicated procedural history, if

15   the Olson plaintiffs want to ask this Court to lift the existing stay of the *Olson* action, the *Olson*

16   plaintiffs should file a formal motion making that request and their motion should be formally

17   briefed and argued before this Court. The *Olson* plaintiffs' citation to the *Le Francois* case above

18   (35 Cal. 4th 1094), does not justify a different procedure because the discussion cited in *Le*

19   _____

     the Labor Commissioner's lawsuit, as pled.

20           [18] The *Olson* plaintiffs claim above that Lyft "misleadingly describes the temporal scope
     of the *Olson* and *Seifu* cases...", claiming that the Labor Commissioner's action only "reaches

21   back to March 31, 2020". *See supra* at note 15. This is incorrect, at least as to how the *Olson*,
     *Seifu* and the Labor Commissioner's complaints are all currently pled. As Judge Cheng found

22   when granting Lyft's Motion for Judgment on the Pleadings as to the *Olson* complaint, "[t]he
     LWDA complaint seeks relief without any temporal restrictions. Accordingly, the Labor

23   Commissioner appears to seek the same relief on the same facts and theories as Olson, including
     for the time period of January 1, 2020 to March 31, 2020. Olson does not dispute that the LWDA

24   complaint covers that time period on its face...The LWDA letter cannot change the temporal
     scope of the Labor Commissioner's complaint". Like *Olson*, the *Seifu* complaint is also currently

25   pled without any temporal litigation (as Lyft explained in its demurrer), as is the Labor
     Commissioner's complaint. The Court denied Lyft's demurrer-based request to require Seifu to

26   amend to address this overlap, and thus the *Olson, Seifu* and Labor Commissioner complaints are
     all still currently pled as covering the time period of January 1, 2020 to March 31, 2020 (as well

27   as other overlapping time periods).

28

1   *Francois* addresses a court's inherent power to reconsider a court's own prior rulings made in a

2   case. *See Le Francois*, 35 Cal. 4th at 1109 ("nothing prohibits the court from reconsidering *its*

3   *previous ruling* on its own motion" (emphasis in original)).  Here, of course, the *Olson* plaintiffs

4   are asking this Court to do something quite different – they are asking this Court to unilaterally

5   reconsider a *different* judge's (Judge Cheng's) prior stay ruling made in the *Olson* case without

6   briefing, even though Judge Cheng's ruling was made after considerable prior briefing, made in

7   light of the history of the *Olson* case, and even though the *Olson* plaintiffs never sought

8   reconsideration of this order from Judge Cheng at the time. *Le Francois,* and California law, does

9   not allow the *Olson* plaintiffs to sidestep the need to file a formal motion if they wish to ask this

10   Court to consider lifting Judge Cheng's prior stay order.[19]

11         Additionally, Plaintiff Olson's request for "simultaneous briefing" both makes no sense

12   procedurally and is not "more efficient," as Olson claims.  Instead, his request for simultaneous

13   briefing appears designed to hide the basis of his reconsideration motion, and to make Lyft have

14   to guess at what facts or law Olson might argue justifies lifting Judge Cheng's prior stay.  That is

15   not "efficient," it is gamesmanship.  If Plaintiff Olson believes that the facts and law now warrant

16   reconsideration of Judge Cheng's prior order, he should present those facts and law to the Court

17   (and Lyft) on a noticed motion to lift the stay.  Lyft will then be able to respond to Olson's

18   arguments, making the briefing process clear and efficient for the parties and the Court.[20]

19         Thus, if Plaintiff Olson wishes to move this Court to lift the stay in the *Olson* action, or if

20   the Court decides that it may reconsider judge Cheng's prior orders based on supplemental

21   briefing instead of a noticed motion (which Defendants argue it cannot), Lyft proposes that this

22   Court hear any such motion after the Court's hearing on the pending Motions to Compel

23   Arbitration and Motion to Stay (or, alternatively, at that same hearing date if the noticed motion

24         [19] Under Judge Cheng's prior orders regarding Lyft's Motion for Judgment on the
   Pleadings and Lyft's stay requests, an amended complaint could only be filed if the stay is lifted.
25   At that point, a schedule for Lyft's responses to the amended complaint would need to be
   determined.
26

27         [20] If Plaintiff Olson wants to limit the briefing on his noticed stay motion to his opening
   brief and Lyft's opposition brief (thereby giving up his reply brief), Lyft would be agreeable to
   that limitation.
28

19

1  briefing process allows and the Court desires it to be heard in addition to the other already

2  pending motions). Lyft also proposes that any such motion should be briefed in accordance with

3  the statutory deadlines regarding that motion, unless Lyft and the *Olson* plaintiffs can mutually

4  agree upon a different briefing schedule after a hearing date is set.

5      **E.**   **Schedule to hear remaining demurrer issues in *Seifu***

6          **1.**   *Joint Statement*

7       At the April 26, 2022, hearing on Lyft's Labor Code section 2699-based demurrer, the

8  Court stated that it would schedule a separate hearing for the non-Labor Code section 2699

9  arguments in Lyft's pending demurrer. Plaintiff Seifu and Lyft jointly request that this Court hear

10  these arguments at an upcoming hearing. Dates when counsel for Plaintiff Seifu and Lyft are

11  available for such a hearing are: July 18, 19, 20 or 21, 2022.

12      **F.**   **Parties' Meet-and-Confer Positions on Other Issues**

13          **1.**   **ESI Protocol & Protective Order**

14              **a.**   *Joint Statement*

15       The Parties agree that an omnibus protective order and an omnibus ESI protocol should

16  apply to this coordinated proceeding. To that end, the Parties have been meeting and conferring

17  on both documents and agree to make best efforts to negotiate and finalize these documents by no

18  later than July 29, 2022. The Parties reserve the right to request Court assistance on these issues

19  if needed.

20          **2.**   **File & ServeXpress/List of Counsel**

21              **a.**   *Joint Statement*

22       Counsel for all the nine coordinated actions represent that by no later than five (5) Court

23  days following the June 1, 2022, CMC, or by no later than June 8, 2022, all relevant individuals

24  for each party will have signed up to receive documents through File & ServeXpress. The Parties

25  will promptly update their information in File & ServeXpress when any changes to the service list

26  need to be made. If the Court requests any additional notification regarding updates to the service

27  list, the Parties will promptly comply with these requests.

28

20

**b. *Plaintiffs' Statement***

Plaintiffs respectfully request that for the issuance of tentative rulings, the Court deliver the tentative rulings through the service list on File & ServeXpress.[21]

**3. Reporting on Related Cases**

**a. *Plaintiffs' Statement***

In the Court's April 27, 2022, Further Order Regarding Requests to Coordinate Add-On Cases, it denied Plaintiffs Olson and Tabola's add-on requests because of its concern about its inability to exercise jurisdiction over cases in arbitration or on appeal and its inability to oversee coordinated motion practice in cases proceeding in arbitration. Recognizing that distinction, Plaintiffs make the following proposal to ensure that if the circumstances change in any of the cases identified in the add-on motions heard on April 26, 2022, or in other currently unknown cases asserting misclassification claims against Defendants (*e.g.*, if remittitur issues, if a court reassumes jurisdiction after an arbitration hearing, or if a new case is filed), then all Parties will have sufficient information to evaluate whether to make a further request to join the case with changed circumstances to this coordinated proceeding.

Specifically, Plaintiffs propose that the Court require the Parties to promptly, and within no more than two (2) business days, notify every other Party to this coordinated proceeding when they become aware of "Relevant Activity" in a "Potentially Related Case." "Relevant Activity" is defined as: service of a pleading; issuance of an order by a trial court; issuance of a remittitur; other activity by a trial court to assume jurisdiction or begin to oversee litigation; the filing of a notice of, or request for approval of, settlement of claims for anyone other than individual named plaintiffs in a Potentially Related Case; or other similar filings, events, or proceedings. "Potentially Related Case" is defined as any California state court action not already included in this coordinated proceeding that is pending against one or more Defendants alleging driver misclassification. In addition, when a Party believes Relevant Activity renders it

---

[21] Plaintiffs make this request because some of Plaintiffs' counsel did not receive the Court's tentative ruling in advance of the April 26, 2022, hearing. In addition, for the benefit of the Court and Parties, Plaintiffs attach Plaintiffs' Exhibit A, listing the following information for Plaintiffs: (1) name, (2) entity (firm or government office), (3) client/party represented, (4) case name, (5) email address, (6) mailing address, and (7) phone number.

1   appropriate for the Court to consider adding a Potentially Related Case to the coordinated

2   proceeding, the Parties will meet and confer regarding the appropriateness of presenting the Court

3   with an add-on motion to bring the action into this coordinated proceeding.

4         Plaintiffs' proposal clarifies the existing related case notification duties under the

5   California Rules of Court, to ensure that cases that should be added on do not evade the Parties'

6   or the Court's detection.[22]  This issue is of interest to Plaintiffs for two reasons.  First,

7   overlapping litigation against a Defendant will come to that Defendant's attention immediately,

8   by definition, but absent notice by the Defendant, it is possible a case can go months or more

9   without Plaintiffs learning of it.  Second, this informational asymmetry adversely impacts

10   Plaintiffs.  For example, suppose a PAGA plaintiff pursues independent contractor

11   misclassification claims outside this coordinated proceeding, and proceeds to litigate important

12   procedural or substantive questions (e.g., the contours of the ABC Test, the proper measure of

13   penalties, etc.).  Defendants could secure a favorable ruling in that one case, without Plaintiffs

14   knowing of the pendency of the action or the potential for a ruling on an important issue.  As

15   another example, Defendants could seek to settle claims with that plaintiff for an unreasonably

16   low value, with a release that purports to eliminate exposure as to PAGA or non-PAGA relief.

17         By requiring all Parties to provide notice of related cases, the Court can minimize the risk

18   of these unfair and inefficient outcomes.  Importantly, Plaintiffs' proposal, in addition to being

19   consistent with the existing requirements, imposes no undue burden on any party.  Mere provision

20   of notice and agreement to meet and confer regarding possible add-on requests constitutes no

21   meaningful burden.  And the benefit in combatting information asymmetry, minimizing

22   inconsistent rulings, and promoting judicial economy, is substantial.

23         Below, Defendants propose a partial solution.  Specifically, they propose to limit the

24   related case notice requirement to a subset of already known cases—the ten cases in footnote 4,

25   *supra.* Defendants' proposal is inadequate because (1) future developments in other known cases

26   _____

27   [22] Defendants' suggestion that this proposal requires notice of any notices of appearance
or minute orders changing the date of a hearing is a strawman.  Once Defendants provide notice

28   that a case has come to life in a Superior Court, they have satisfied their obligation and need not
provide notice of further activity.

1    (those not in the subset of ten that Defendants list) may make them candidates for add-on

2    treatment, and (2) unknown cases may emerge that are candidates for add-on treatment.  Because

3    the related case rules apply on an ongoing basis, and the landscape of litigation is dynamic,

4    Defendants' notice obligations cannot be limited to the subset of ten cases listed in footnote 4,

5    *supra.*

6                          **b.  *Defendants' Statement***

7          Plaintiffs propose that the Court order a reporting requirement regarding a broad set of

8    "Potentially Related Case[s]," and a broad set of "Relevant Activity", that is unique to this action,

9    overbroad as to its requirements, unnecessary given existing rules and burdensome on

10   Defendants.  Although Plaintiffs claim that their proposal would apply to the "Parties", in practice

11   their proposal will apply primarily to Defendants as Defendants are the ones on the dockets in

12   these other cases (and Plaintiffs could, but appear to be trying to avoid, monitoring such dockets).

13   Thus, Plaintiffs' proposal above asks the Court to require Defendants to provide notice to all

14   Parties each time *any* of the following wide range of activities occur, *i.e.,* the "service of [any]

15   pleading," the "issuance of [any] order by a trial court," or when any "other similar filings,

16   events, or proceedings" occurs.  Plaintiffs' proposal above also asks the Court to require

17   Defendants to provide such notice in a wide range of cases, *i.e.,* for *any* actions in any "California

18   state court actions not already included in this coordinated proceeding that are pending against

19   one or more Defendants alleging driver misclassification", without regard to whether the action at

20   issue is relevant or related to this JCCP in any way.  This proposal should be denied—there is no

21   reason to require Defendants to provide notice every time that a broad range of irrelevant

22   pleadings are filed in a broad range of irrelevant cases.[23]

23

24          [23] For example, Plaintiffs' request would require Defendants to provide all Parties with
     notice each time that someone filed a notice of appearance, a request to move a court set case
25   management conference or some other ministerial type document in a broad set of different cases
     outside this JCCP.  Although Plaintiffs try to dismiss this issue by claiming that it only applies
26   once a case "comes to life in a Superior Court" (*see supra* at note 21), they ignore the fact that
     ministerial types of documents can still be filed in Superior Court cases that are currently stayed
27   pending arbitration.

28

                                                    23

1        *First*, Plaintiffs provide no legal support or valid reason to impose these burdensome

2    reporting requirements on the Defendants.  For cases that are newly filed in the future, the

3    California Rules of Court already provides reporting requirements that are set forth in the related

4    case notice requirements and the potential add on case requirements of California Rules of Court

5    3.300 and 3.531.[24]  Thus, Plaintiffs are wrong that Defendants are "propos[ing] to limit the

6    related case notice requirement to a subset of already known cases."  *See supra* at 22:23–24.

7    Defendants instead believe that the existing Court rules already impose notice requirements for

8    cases that may be filed in the future and Plaintiffs have shown no reason to deviate from existing

9    rules here—whether for newly filed, or previously filed, cases.

10       *Second*, there is no reason to impose reporting requirements with respect to any of the nine

11   cases listed in footnote 5, *supra*.  This Court has already declined to add such cases into this

12   action and thus there is no reason for Defendants to continue to provide updates on such cases.

13       *Third*, even if the Court believes that some additional notifications should be provided as to

14   the ten cases that are currently stayed pending arbitration or appeal and for which the Court

15   recently denied Plaintiff Olson's and Tabola's add on request (*i.e.*, the cases listed in footnote 4,

16   *supra*), those notifications should be limited in scope.  Indeed, as the history in this JCCP shows,

17   if such actions ever return to active litigation within a California Superior Court, the reporting

18   requirements set forth in California Rules of Court 3.300 and 3.531 are sufficient to address that

19   situation (and Plaintiffs are always free to monitor the dockets in such actions as desired).

20   However, if necessary in order to provide clarity on when California Rules of Court 3.531 may

21   apply again with respect to the ten cases listed in footnote 4, *supra*, Defendants are willing to

22   agree that, for any one of the ten cases listed in footnote 4, *supra*, the Parties should notify every

23   other Party to this coordinated proceeding within five (5) business days if they learn that: (a)

24       [24] Plaintiffs mistakenly contend above that Defendants are not agreeing to provide updates
25   regarding "unknown cases may emerge that are candidates for add-on treatment."  (*See supra* at
     21).  This is incorrect.  With respect to unknown cases that might be filed in the future,
26   Defendants will provide the updates required under California Rules of Court 3.300 and 3.531.
     Defendants' point is simply that Plaintiffs provide no reason to require Defendants to provide any
27   additional updates, much less the burdensome, one-sided updates that Plaintiffs seek to impose
     above.

28

1    remittitur ever issues for that case; or (b) a trial court ever re-assumes jurisdiction after

2    completion of arbitration.  Nothing more than this should be required.

3

4    **COUNSEL FOR PLAINTIFFS**

5

     Dated:  May 24, 2022                          ROB BONTA
6                                                  Attorney General, State of California

7                                                  By:  /s/ Minsu D. Longiaru
                                                   Minsu D. Longiaru
8                                                  Deputy Attorney General

9
                                                   MICHAEL N. FEUER
10                                                 City Attorney, City of Los Angeles
                                                   Michael Bostrom (SBN 211778)
11                                                 Managing Sr. Assistant City Attorney
                                                   Lee Sherman (SBN 272271)
12                                                 Deputy City Attorney
                                                   Office of the Los Angeles City Attorney
13                                                 200 North Main Street, 6th Floor
                                                   City Hall East
14                                                 Los Angeles, California 90012
                                                   Telephone: (213) 978-1867
15                                                 E-mail: Michael.Bostrom@lacity.org

16
                                                   MARA W. ELLIOTT
17                                                 City Attorney, City of San Diego
                                                   Mark Ankcorn (SBN 166871)
18                                                 Senior Chief Deputy City Attorney
                                                   Kevin King (SBN 309397)
19                                                 Julie Rau (SBN 317658)
                                                   Deputy City Attorneys
20                                                 Office of the City Attorney
                                                   1200 Third Avenue, Suite 1100
21                                                 San Diego, California 92101-4100
                                                   Telephone: (619) 533-5800
22                                                 Fax: (619) 533-5856
                                                   E-mail: kbking@sandiego.gov
23

24
                                                   DAVID CHIU
25                                                 City Attorney, City of San Francisco
                                                   Yvonne R. Meré (SBN 173594)
26                                                 Chief Deputy City Attorney
                                                   Sara J. Eisenberg (SBN 269303)
27                                                 Chief of Complex and Affirmative Litigation

28

                                          25

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Molly J. Alarcon (SBN 315244)
Ronald H. Lee (SBN 238720)
Deputy City Attorneys
Office of the San Francisco City Attorney
1390 Market Street, Sixth Floor
San Francisco, California 94102-5408
Telephone: (415) 554-3800
E-mail: Molly.Alarcon@sfcityatty.org
***Counsel for the People of the State of California***

Dated:  May 24, 2022

DIVISION OF LABOR STANDARDS ENFORCEMENT
Department of Industrial Relations, State of California

By:  /s/ Alec L. Segarich
David M. Balter (SBN 136273)
Miles E. Locker (SBN 103510)
Alec L. Segarich (SBN 260189)
455 Golden Gate Avenue, 9th Floor
San Francisco, California 94102
Telephone:  (415) 703-4683
Fax:  (415) 703-4807
E-mail:  dbalter@dir.ca.gov
E-mail:  mlocker@dir.ca.gov
E-mail:  asegarich@dir.ca.gov

M. Colleen Ryan (SBN 258359)
1515 Clay Street, Suite 801
Oakland, California 96402
Telephone:  (510) 622-4590
E-mail:  cryan@dir.ca.gov
***Counsel for Plaintiff Lilia García-Brower,
Labor Commissioner, State of California***

Dated:  May 24, 2022

By: /s/ Patricia M. Kelly
Patricia M. Kelly (SBN 99837)
1515 Clay Street, Suite 1700
Oakland, California 94612
Telephone: (510) 286-6714
E-mail: pkelly@dir.ca.gov
***Counsel for Intervenor Division of Labor
Standards Enforcement (Tabola)***

Dated:  May 24, 2022

By:  /s/ Jahan C. Sagafi
Jahan C. Sagafi (SBN 224887)
Adam Koshkin (SBN 320152)

26

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**OUTTEN & GOLDEN LLP**
One California Street, 12th Floor
San Francisco, California 94111
Telephone: (415) 638-8800
Fax: (415) 368-8810
E-mail: jsagafi@outtengolden.com
E-mail: akoshkin@outtengolden.com

Stephen J. Schultz (SBN 91087)
Mark T. Bennett (SBN 89061)
**MERRILL, SCHULTZ & BENNETT, LTD**
2240 Fifth Avenue
San Diego, California 92101
Telephone: (619) 501-4540
E-mail: schultz@sbemp.com
E-mail: bennett@sbemp.com

William P. Klein (SBN 148867)
Alexei Kuchinsky (SBN 279405)
**KLEIN LAW GROUP LLP**
220 Montgomery Street, Suite 2100
San Francisco, California 94101
Telephone: (415) 693-9107
Fax: (415) 693-9222
E-mail: wklein@sfbizlaw.com
*Counsel for Plaintiffs Tabola and Gregg, on
behalf of the State of California and Aggrieved
Employees*

Dated: May 24, 2022

By: /s/ Jahan C. Sagafi
Jahan C. Sagafi (SBN 224887)
Adam Koshkin (SBN 320152)
**OUTTEN & GOLDEN LLP**
One California Street, 12th Floor
San Francisco, California 94111
Telephone: (415) 638-8800
Fax: (415) 368-8810
E-mail: jsagafi@outtengolden.com
E-mail: akoshkin@outtengolden.com

Rachel Bien (SBN 315886)
**OLIVIER & SCHREIBER LLP**
1149 N. Gower Street, Suite 215
Los Angeles, California 90038
Telephone: (415) 484-0980
Fax: (415) 659-7758
E-mail: rachel@os-legal.com

27

1

2        Christian Schreiber (SBN 245597)
        **OLIVIER & SCHREIBER LLP**

3        475 14th Street, Suite 250
        Oakland, California 94612

4        Telephone:  (415) 484-0980
        Fax:  (415) 658-7758

5        E-mail:  christian@os-legal.com
        *Counsel for Plaintiff Olson, on behalf of the*

6        *State of California and Aggrieved Employees*

7

8 Dated:  May 24, 2022    By: /s/ Jahan C. Sagafi
        Aashish Y. Desai (SBN 187394)

9        Adrianne De Castro (SBN 238930)
        **DESAI LAW FIRM PC**

10       3200 Bristol Ave., Suite 650
        Costa Mesa, California 92626

11       Telephone:  (949) 614-5830
        Fax:  (949) 271-4190

12       E-mail:  aashish@desai-law.com
        E-mail:  adrianne@desai-law.com

13

14       Andrew Lee (SBN 245903)

15       Mengfei Sun (SBN 328829)
        David Borgen (SBN 99354)

16       **GOLDSTEIN, BORGEN, DARDARRIAN**
        **& HO LLP**

17       155 Grand Ave., Suite 900

18       Oakland, CA 94612
        Telephone: (510) 763-9800

19       Fax: (510) 835-1417
        E-mail: alee@gbdhlegal.com

20       E-mail: msun@gbdhlegal.com
        E-mail: dborgen@gbdhlegal.com

21       *Counsel for Plaintiff Adolph, on behalf of the*
        *State of California and Aggrieved Employees*[25]

22

23

24 Dated:  May 24, 2022    By: /s/ Jahan C. Sagafi
        Michael A. Gold (SBN 236707)

25       **GOLD APLC**
        10940 Wilshire Boulevard, Suite 1600

26       Los Angeles, California 90024

27     [25] Jahan Sagafi has conferred with counsel for Plaintiff Adolph regarding the content of

28 this CMS Statement and has authorization to sign on Adolph's behalf.

28

| 1 | | Telephone: (323) 936-0540 |
|---|---|---|

1  Telephone: (323) 936-0540
E-mail: mgold@goldaplc.com

2  **Counsel for Plaintiff Rosales, on behalf of the**
**State of California and Aggrieved Employees**[26]

3

4  Dated: May 24, 2022    By: /s/ Anne Kramer
Shannon Liss-Riordan (SBN 310719)

5  Anne Kramer (SBN 315131)
**LICHTEN & LISS-RIORDAN, P.C.**

6  729 Boylston Street, Suite 2000
Boston, Massachusetts 02116

7  Telephone: (617) 994-5800
Fax: (617) 994-5801

8  E-mail: sliss@llrlaw.com
E-mail: akramer@llrlaw.com

9  **Counsel for Plaintiff Seifu, on behalf of the**
**State of California and Aggrieved Employees**

10

11

12  **COUNSEL FOR DEFENDANTS**

13  Dated: May 24, 2022    By: /s/ Theane Evangelis
Theodore J. Boutrous, Jr. (SBN 132099)

14  Theane D. Evangelis (SBN 243570)
Blaine H. Evanson (SBN 254338)

15  Heather L. Richardson (SBN 246517)
**GIBSON, DUNN & CRUTCHER LLP**

16  333 South Grand Avenue
Los Angeles, California 90071-3197

17  Telephone: (213) 229-7000
Fax: (213) 229-7520

18  E-mail: tboutrous@gibsondunn.com
E-mail: tevangelis@gibsondunn.com

19  E-mail: bevanson@gibsondunn.com
E-mail: hrichardson@gibsondunn.com

20  *Counsel for Uber*

21

22  Andrew M. Spurchise (SBN 245998)
**LITTLER MENDELSON PC**

23  900 Third Avenue
New York, New York 10022-3298

24  Telephone: (212) 583-9600
Fax: (212) 832-2719

25  E-mail: aspurchise@littler.com

26

27

28  [26] Jahan Sagafi has conferred with counsel for Plaintiff Rosales regarding the content of this CMS Statement and has authorization to sign on Rosales's behalf.

29

Anthony G. Ly (SBN 228883)
Jaime Laurent (SBN 261926)
**LITTLER MENDELSON PC**
2049 Century Park
East
5th Floor
Los Angeles, California 90067–3120
Telephone: (310) 553-0308
Fax: (310) 553-5583
E-mail: aly@littler.com
E-mail: jlaurent@littler.com

Sophia Collins (SBN 298318)
**LITTLER MENDELSON PC**
333 Bush Street, 34th Floor
San Francisco, California 94104
Telephone: (415) 433-1940
Fax: (415) 399-8490
E-mail: scollins@littler.com
*Counsel for Uber*

Dated: May 24, 2022

By: /s/ Rachael E. Meny
Rohit K. Singla (SBN 213057)
Katherine M. Forster (SBN 217609)
Miriam Kim (SBN 238230)
Jeffrey Y. Wu (SBN 248784)
Justin P. Raphael (SBN 292380)
**MUNGER, TOLLES, & OLSON LLP**
560 Mission Street, 27th Floor
San Francisco, California 94105
Telephone: (415) 512-4000
Fax: (415) 512-4077
E-mail: rohit.singla@mto.com
E-mail: katherine.forster@mto.com
E-mail: miriam.kim@mto.com
E-mail: jeffrey.wu@mto.com
E-mail: justin.raphael@mto.com
*Counsel for Lyft*

Christa M. Anderson (SBN 184325)
Rachael E. Meny (SBN 178514)
R. James Slaughter (SBN 192813)
Elizabeth K. McCloskey (SBN 268184)
**KEKER, VAN NEST & PETERS LLP**
633 Battery Street
San Francisco, California 94111-1809
Telephone: (415) 391-5400

30

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Fax: (415) 397-7188
E-mail: canderson@keker.com
E-mail: rmeny@keker.com
E-mail: rslaughter@keker.com
E-mail: emccloskey@keker.com
*Counsel for Lyft*

31

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# PLAINTIFFS'
# EXHIBIT A

**PLAINTIFFS' EXHIBIT A**

**Plaintiffs' List**

| First Name | Last Name | Entity | Client/Party Represented | Case Name | Email Address | Mailing Address | Phone Number |
|---|---|---|---|---|---|---|---|
| Satoshi | Yanai | Attorney General of California | People of the State of California | *People v. Uber Technologies, Inc., et al.* | Satoshi.Yanai @doj.ca.gov | 300 S Spring St, Ste 1702 Los Angeles, CA 90013-1256 | (213) 269-6400 |
| Joanna | Hull | Attorney General of California | People of the State of California | *People v. Uber Technologies, Inc., et al.* | Joanna.Hull @doj.ca.gov | 300 S Spring St, Ste 1702 Los Angeles, CA 90013-1256 | (213) 269-6400 |
| Minsu | Longiaru | Attorney General of California | People of the State of California | *People v. Uber Technologies, Inc., et al.* | Minsu.Longiaru @doj.ca.gov | 1515 Clay Street, 20th Floor P.O. Box 70550 Oakland, CA 94612-0550 | (510) 879-1300 |
| Lillian | Tabe | Attorney General of California | People of the State of California | *People v. Uber Technologies, Inc., et al.* | Lillian.Tabe @doj.ca.gov | 1515 Clay Street, 20th Floor P.O. Box 70550 Oakland, CA 94612-0550 | (510) 879-1300 |
| Mana | Barari | Attorney General of California | People of the State of California | *People v. Uber Technologies, Inc., et al.* | Mana.Barari @doj.ca.gov | 600 W Broadway, Ste 1800 San Diego, CA 92101-3375 | (619) 738-9000 |
| Julia | Briggs | Attorney General of California | People of the State of California | *People v. Uber Technologies, Inc., et al.* | Julia.Briggs @doj.ca.gov | 300 South Spring St, Ste 1702 Los Angeles, CA 90013 | (213) 269-6520 |
| Michael | Bostrom | City Attorney, City of Los Angeles | People of the State of California | *People v. Uber Technologies, Inc., et al.* | Michael. Bostrom @lacity.org | 200 North Main St, 6th Floor, City Hall East Los Angeles, CA 90012 | (213) 978-1867 |

33

| First Name | Last Name | Entity | Client/Party Represented | Case Name | Email Address | Mailing Address | Phone Number |
|---|---|---|---|---|---|---|---|
| Lee | Sherman | City Attorney, City of Los Angeles | People of the State of California | *People v. Uber Technologies, Inc., et al.* | Lee.Sherman @lacity.org | 200 North Main St, 6th Floor, City Hall East Los Angeles, CA 90012 | (213) 978-1867 |
| Mark | Ankcorn | San Diego City Attorney's Office | People of the State of California | *People v. Uber Technologies, Inc., et al.* | MAnkcorn @sandiego.gov | 1200 Third Avenue, Suite 1100 San Diego, CA 92101-4100 | (619) 236-6220 |
| Kevin B. | King | San Diego City Attorney's Office | People of the State of California | *People v. Uber Technologies, Inc., et al.* | Kbking @sandiego.gov | 1200 Third Avenue, Suite 1100 San Diego, CA 92101-4100 | (619) 236-6220 |
| Julie | Rau | San Diego City Attorney's Office | People of the State of California | *People v. Uber Technologies, Inc., et al.* | Jrau @sandiego. gov | 1200 Third Avenue, Suite 1100 San Diego, CA 92101-4100 | (619) 236-6220 |
| Yvonne R. | Mere | Office of the San Francisco City Attorney | People of the State of California | *People v. Uber Technologies, Inc., et al.* | Yvonne.Mere @sfcityatty.org | 1390 Market Street, Sixth Floor San Francisco, CA 94102-5408 | (415) 554-3800 |
| Sara J. | Eisenberg | Office of the San Francisco City Attorney | People of the State of California | *People v. Uber Technologies, Inc., et al.* | Sara.Eisenberg @sfcityatty.org | 1390 Market Street, Sixth Floor San Francisco, CA 94102-5408 | (415) 554-3800 |
| Molly | Alarcon | Office of the San Francisco City Attorney | People of the State of California | *People v. Uber Technologies, Inc., et al.* | Molly.Alarcon @sfcityatty.org | 1390 Market Street, Sixth Floor San Francisco, CA 94102-5408 | (415) 554-3800 |
| Ronald H. | Lee | Office of the San Francisco City Attorney | People of the State of California | *People v. Uber Technologies, Inc., et al.* | Ronald.Lee @sfcityatty.org | 1390 Market Street, Sixth Floor San Francisco, CA 94102-5408 | (415) 554-3800 |
| David M. | Balter | Division of Labor | Labor Commissioner | *Garcia-Brower v. Uber;* | DBalter @dir.ca.gov | 455 Golden Gate Avenue, 9th Floor San Francisco, CA | (415) 703-4683 |

34

| First Name | Last Name | Entity | Client/Party Represented | Case Name | Email Address | Mailing Address | Phone Number |
|---|---|---|---|---|---|---|---|
| | | Standards Enforcement | | *Garcia-Brower v. Lyft* | | 94102 | |
| Miles E. | Locker | Division of Labor Standards Enforcement | Labor Commissioner | *Garcia-Brower v. Uber; Garcia-Brower v. Lyft* | MLocker @dir.ca.gov | 455 Golden Gate Avenue, 9th Floor San Francisco, CA 94102 | (415) 703-4683 |
| Alec L. | Segarich | Division of Labor Standards Enforcement | Labor Commissioner | *Garcia-Brower v. Uber; Garcia-Brower v. Lyft* | ASegarich @dir.ca.gov | 455 Golden Gate Avenue, 9th Floor San Francisco, CA 94102 | (415) 703-4683 |
| M. Colleen | Ryan | Division of Labor Standards Enforcement | Labor Commissioner | *Garcia-Brower v. Uber; Garcia-Brower v. Lyft* | CRyan @dir.ca.gov | 1515 Clay Street, Suite 801 Oakland, CA 96402 | (510) 622-4590 |
| Patricia M. | Kelly | Division of Labor Standards Enforcement | Labor Commissioner (Intervenor) | *Tabola v. Uber* | PKelly @dir.ca.gov | 1515 Clay Street, Suite 1700 Oakland, CA 94612 | (510) 286-6714 |
| Jahan C. | Sagafi | Outten & Golden LLP | Uladzimir Tabola, Johnathon Gregg, Brandon Olson | *Tabola v. Uber, Gregg v. Uber, Olson v. Lyft* | jsagafi@outtengolden.com | One California St. 12th Floor San Francisco, CA 94111 | (415) 638-8800 |
| Adam | Koshkin | Outten & Golden LLP | Uladzimir Tabola, Johnathon Gregg, Brandon Olson | *Tabola v. Uber, Gregg v. Uber, Olson v. Lyft* | akoshkin@outtengolden.com | One California St. 12th Floor San Francisco, CA 94111 | (415) 638-8800 |
| Christian | Schreiber | Olivier & Schreiber LLP | Brandon Olson | *Olson v. Lyft* | christian@os-legal.com | 475 14th Street Suite 250 Oakland, CA 94612 | (415) 484-0980 |
| Rachel | Bien | Olivier & Schreiber LLP | Brandon Olson | *Olson v. Lyft* | rachel@os-legal.com | 1149 N. Gower Street, Suite 215 Los Angeles, CA 90038 | (415) 484-0980 |

35

| First Name | Last Name | Entity | Client/Party Represented | Case Name | Email Address | Mailing Address | Phone Number |
|---|---|---|---|---|---|---|---|
| Stephen J. | Schultz | Merrill, Shcultz & Bennett, Ltd. | Uladzimir Tabola, Johnathon Gregg | *Tabola v. Uber, Gregg v. Uber* | schultz@sbemp.com | 2240 Fifth Ave. San Diego, CA 92101 | (619) 501-4540 |
| Mark T. | Bennett | Merrill, Shcultz & Bennett, Ltd. | Uladzimir Tabola, Johnathon Gregg | *Tabola v. Uber, Gregg v. Uber* | schultz@sbemp.com | 2240 Fifth Ave. San Diego, CA 92101 | (619) 501-4540 |
| Alexei | Kuchinsky | Klein Law Group | Uladzimir Tabola, Johnathon Gregg | *Tabola v. Uber, Gregg v. Uber* | ak@kuchinskylawoffice.com | 220 Montgomery Street, Suite 2100 San Francisco, CA 94101 | (415) 693-9107 |
| William P. | Klein | Klein Law Group | Uladzimir Tabola, Johnathon Gregg | *Tabola v. Uber, Gregg v. Uber* | ak@kuchinskylawoffice.com | 220 Montgomery Street, Suite 2100 San Francisco, CA 94101 | (415) 693-9107 |
| Aashish Y. | Desai | Desai Law Firm PC | Erik Adolph | *Adolph v. Uber* | aashish@desai-law.com | 3200 Bristol Ave., Suite 650 Costa Mesa, CA 92626 | (949) 614-5830 |
| Adrianne | De Castro | Desai Law Firm PC | Erik Adolph | *Adolph v. Uber* | adrianne@desai-law.com | 3200 Bristol Ave., Suite 650 Costa Mesa, CA 92626 | (949) 614-5830 |
| Andrew | Lee | Goldstein, Borgen, Dardarrian, & Ho LLP | Erik Adolph | *Adolph v. Uber* | alee@gbdhlegal.com | 155 Grand Ave., Suite 900 Oakland, CA 94612 | (510) 763-9800 |
| Mengfei | Sun | Goldstein, Borgen, Dardarrian, & Ho LLP | Erik Adolph | *Adolph v. Uber* | msun@gbdhlegal.com | 155 Grand Ave., Suite 900 Oakland, CA 94612 | (510) 763-9800 |
| David | Borgen | Goldstein, Borgen, Dardarrian, & Ho LLP | Erik Adolph | *Adolph v. Uber* | dborgen@gbdhlegal.com | 155 Grand Ave., Suite 900 Oakland, CA 94612 | (510) 763-9800 |
| Michael | Gold | GOLD APLC | Damaris Rosales | *Rosales v. Uber* | mgold@goldaplc.com | 10940 Wilshire Blvd. Suite 1600 | (323) 936-0540 |

36

| First Name | Last Name | Entity | Client/Party Represented | Case Name | Email Address | Mailing Address | Phone Number |
|---|---|---|---|---|---|---|---|
| | | | | | | Los Angeles, CA 90024 | |
| Shannon | Liss-Riordan | Lichten & Liss-Riordan, P.C. | Million Seifu | Seifu v. Lyft | sliss@llrlaw.com | 729 Boylston St., Suite 2000 Boston, MA 02116 | (617) 994-5800 |
| Anne | Kramer | Lichten & Liss-Riordan, P.C. | Million Seifu | Seifu v. Lyft | akramer@llrlaw.com | 729 Boylston St., Suite 2000 Boston, MA 02116 | (617) 994-5800 |

1

## DECLARATION OF SERVICE BY FILE & SERVE XPRESS

2

Case Name:   **UBER TECHNOLOGIES WAGE AND HOUR CASES**

3

No:          **CJC-21-005179**

4

I, Julia Briggs, declare:

5

I am employed in the Office of the Attorney General, which is the office of a member of the
California State Bar, at which member's direction this service is made.  I am 18 years of age or
older and not a party to this matter.  My business address is 300 S. Spring Street, Suite 1702, Los
Angeles, California 90013.

6

7

8

On <u>May 24, 2022</u>, by electronic transmission via File & Serve*X*press, I served the document
described as **JOINT CASE MANAGEMENT CONFERENCE STATEMENT**, on the
following interested parties in this action who are registered for e-filing:

9

10

11

*Counsel for Defendant Uber Technologies, Inc.*
- Theodore J. Boutrous, Jr. (tboutrous@gibsondunn.com)
- Theane D. Evangelis (tevangelis@gibsondunn.com)
- Blaine H. Evanson (bevanson@gibsondunn.com)
- Heather L. Richardson (hrichardson@gibsondunn.com)
- Emily Sauer (esauer@gibsondunn.com)
- Daniel Tom (dtom@gibsondunn.com)
- Milagros Villalobos (mvillalobos@gibsondunn.com)
- Alex Harris (aharris@gibsondunn.com)
- Andrew Spurchise (ASpurchise@littler.com)
- Sophia Collins (Scollins@littler.com)
- Anthony G. Ly (aly@littler.com)
- Jaime Laurent (jlaurent@littler.com)

12

13

14

15

16

17

18

19

20

*Counsel for Defendant Lyft, Inc.*
- Christa Anderson (canderson@keker.com)
- Rachael Meny (rmeny@keker.com)
- R. James Slaughter (rslaughter@keker.com)
- Elizabeth McCloskey (emccloskey@keker.com)
- Ian Kanig (ikanig@keker.com)
- LYFTSUB@keker.com
- Rohit Singla (Rohit.Singla@mto.com)
- Katherine M. Forster (Katherine.Forster@mto.com)
- Miriam Kim (Miriam.Kim@mto.com)
- Jeffrey Wu (Jeffrey.Wu@mto.com)
- Justin P. Raphael (Justin.Raphael@mto.com)

21

22

23

24

25

26

27

28

1

*Counsel for Plaintiff People of the State of California*
- Satoshi Yanai (Satoshi.Yanai@doj.ca.gov)
- Joanna Hull (Joanna.Hull@doj.ca.gov)
- Minsu Longiaru (Minsu.Longiaru@doj.ca.gov)
- Lillian Tabe (Lillian.Tabe@doj.ca.gov)
- Mana Barari (Mana.Barari@doj.ca.gov)
- Sean Puttick (Sean.Puttick@doj.ca.gov)
- Yvonne Mere (Yvonne.Mere@sfcityatty.org)
- Sara Eisenberg (Sara.Eisenberg@sfcityatty.org)
- Molly Alarcon (Molly.Alarcon@sfcityatty.org)
- Ronald Lee (Ronald.Lee@sfcityatty.org)
- Michaela O'Rourke (Michaela.ORourke@sfcityatty.org)
- Martina.Hassett (Martina.Hassett@sfcityatty.org)
- Michael Bostrom (Michael.Bostrom@lacity.org)
- Lee Sherman (Lee.Sherman@lacity.org)
- Danitza Munoz (Danitza.Munoz@lacity.org)
- Mark Ankcorn (MAnkcorn@sandiego.gov)
- Kevin B. King (kbking@sandiego.gov)
- Julie Rau (jrau@sandiego.gov)
- Marissa Gutierrez (marissag@sandiego.gov)

*Counsel for Lilia García-Brower, State of California Labor Commissioner, Division of Labor Standards Enforcement, Department of Industrial Relations, State of California*
- David M. Balter (dbalter@dir.ca.gov)
- Miles E. Locker (mlocker@dir.ca.gov)
- Alec L. Segarich (asegarich@dir.ca.gov)
- M. Colleen Ryan (cryan@dir.ca.gov)

*Counsel for Intervenor Division of Labor Standards Enforcement (Tabola)*
- David M. Balter (dbalter@dir.ca.gov)
- Patricia M. Kelly (pkelly@dir.ca.gov)

*Counsel for Plaintiffs Uladzimir Tabola and Jonathon Gregg*
- Jahan Sagafi (jsagafi@outtengolden.com)
- Adam Koshkin (akoshkin@outtengolden.com)
- Alexei Kuchinsky (ak@kuchinskylawoffice.com)
- William P. Klein (wklein@sfbizlaw.com)
- Stephen J. Schultz (schultz@sbemp.com)
- Mark T. Bennett (bennett@sbemp.com)

*Counsel for Plaintiff Brandon Olson*
- Jahan Sagafi (jsagafi@outtengolden.com)
- Adam Koshkin (akoshkin@outtengolden.com)
- Christian Schreiber (christian@os-legal.com)

1
- Hannah Shirey (hannah@os-legal.com)
2
- Rachel Bien (rachel@os-legal.com)

3  *Counsel for Plaintiff Erik Adolph*
- Aashish Y. Desai (aashish@desai-law.com)
4
- Adrianne De Castro (adrianne@desai-law.com)
- Andrew Lee (alee@gbdhlegal.com)
5
- David Borgen (dborgen@gbdhlegal.com)
6
- Mengfei Sun (msun@gbdhlegal.com)

7  *Counsel for Plaintiff Damaris Rosales*
- Michael Gold (mgold@goldaplc.com)
8

9  *Counsel for Plaintiff Million Seifu*
- Shannon Liss-Riordan (sliss@llrlaw.com)
10
- Anne Kramer (akramer@llrlaw.com)

11

12  I declare under penalty of perjury under the laws of the State of California and the United States
13  of America the foregoing is true and correct and that this declaration was executed May 24, 2022,
14  at Los Angeles, California.

15
16      __Julia Briggs__  
        Declarant
17

18

19

20

21

22

23

24

25

26

27

28

3

# Congress of the United States
## Washington, DC 20515

May 31, 2022

Dara Khosrowshahi
Chief Executive Officer
Uber Technologies, Inc.
1515 3rd Street
San Francisco, CA 94158

Dear Mr. Khosrowshahi,

We write concerning the health and safety of Uber's app-based delivery workers. Every day, ride-share drivers repeatedly interact with strangers, leaving them vulnerable to violent assault and even death. Yet Uber's business model both penalizes those drivers for turning down rides that may be dangerous and incentivizes them to take risks in picking up passengers, all the while denying them basic employment benefits. Uber further refuses to release comprehensive data on the dangers its drivers face on the job, transparency that is sorely needed for drivers, the public, and Congress to understand the unique risks these workers face. These policies are unacceptable. We urge you to promptly change direction and start making your workers' health and safety a top priority.

App-based delivery work can pose significant dangers for drivers. During a single day, a ride-share driver may pick up dozens of strangers and travel to remote and unfamiliar locations. Delivery drivers transport goods to strangers at their homes and elsewhere, and the Uber app often directs drivers to take specific routes that pass through dangerous areas to meet strict timeliness requirements. While workers have long complained about these risks, the dangers of app-based delivery work became particularly clear after sixteen Uber drivers were murdered in Brazil in 2016,[1] leaving companies like Uber with no excuse for failing to implement new safety features to protect their workers.

Unfortunately, a recent report reveals that Uber has still failed to adequately protect its workers. According to a recent report by Gig Workers Rising, since 2017, at least fifty app-based delivery workers have been killed on the job in the United States, including twenty-five Uber drivers.[2] The true toll, however, is almost certainly higher – because of a lack of systematic information, the report researchers relied solely on publicly available data such as news articles, company press releases, and even postings from deceased workers' family members on

---

[1] *See* Mike Isaac, *How Uber Got Lost*, N.Y. TIMES (Aug. 23, 2019), https://www.nytimes.com/2019/08/23/business/how-uber-got-lost.html.
[2] *See* Gig Workers Rising, *Death and Corporate Irresponsibility in the Gig Economy: An Urgent Safety Crisis* (Apr. 6, 2022), https://www.gigsafetynow.com/_files/ugd/af5398_e1b49d831a0149a08df4be57c612ae88.pdf (hereinafter "Gig Worker Rising Report").

Mr. Dara Khosrowshahi
May 31, 2022
Page 2

crowdfunding websites like GoFundMe.[3] Notably, the report found that these safety risks disproportionately impact marginalized communities: 63 percent of the app-based delivery workers killed in the last five years were people of color.[4] The report also excludes deaths of app-based delivery workers from traffic fatalities. Even with this limited information, the evidence is clear: App-based delivery work can be dangerous and potentially fatal.

Uber's business model only increases the danger. Uber is known to have tracked its drivers' cancellation and acceptance rates, and penalized drivers for cancelling or not accepting rides.[5] Consider Adebayo Adeyemo, known as Bayo, a Black Uber driver who was shot by a passenger after the passenger had made comments about his race.[6] Bayo later said he continued driving the passenger, despite the racial comments, because he was concerned that Uber would penalize him for cancelling the ride. No driver should face punishment for legitimately declining a ride or delivery they believe would place them in a dangerous situation. Higher pay would also reduce the pressure on drivers to accept rides they deem unsafe.

Furthermore, because Uber misclassifies its workers as independent contractors, they do not receive the safety and health benefits of traditional employees, including workers' compensation and disability insurance. Taxi drivers, for example, typically have access to workers' compensation and other benefits when they suffer an occupational injury.[7] By contrast, as recent research reveals, app-based delivery workers and their families often receive nothing from the company when they are harmed on the job.[8] Although Uber drivers can purchase "Optional Injury Protection" from Uber, the program is priced at $0.03/mile, costing workers who drive more than 33,333 annually over $1,000 each year.[9] DoorDash, by comparison, automatically enrolls all its app-based delivery workers in a similar occupational injury protection program for free, although even its injury protection program provides lower benefits than similar worker's compensation programs.[10] Uber thus leaves its workers both highly vulnerable and lacking adequate company support (such as overtime pay, unemployment

[3] See id. at 10-11.

[4] Id. at 5; see also Veena Dubal, The New Racial Wage Code, HARV. L. & POL'Y REV. (May 28, 2021), https://papers.ssrn.com/sol3/papers.cfm?abstract_id=3855094.

[5] See, e.g., James Cook, Uber's internal chart shows how its driver-rating system actually works, INSIDER (Feb. 11, 2015), https://www.businessinsider.com/leaked-charts-show-how-ubers-driver-rating-system-works-2015-2 (reporting on an internal Uber report documenting that Uber tells drivers to keep their acceptance rate above 80% but "the closer to 100% the better"). Uber's website now states, "As of August 21, 2017 Uber is no longer tracking acceptance rate or cancellation rate against Quest promotions. Once the trip tier is completed you will receive the amount offered and have to cash out these earnings." Uber, Uber Help, https://help.uber.com/driving-and-delivering/article/tracking-acceptance-and-cancellation-rates?nodeId=41d29702-a232-4d28-9ec1-a9b085080883 But this changes does not preclude Uber from tracking and using the acceptance rate to determine which drivers in the queue receive rides or to kick them off the platform altogether.

[6] Gig Worker Rising Report, supra note 2, at 13-14.

[7] New York State Workers' Compensation Board, Worker's Compensation Coverage: Taxi/Livery, http://www.wcb.ny.gov/content/main/coverage-requirements-wc/taxi-cabs.jsp.

[8] Gig Worker Rising Report supra note 2, at 14.

[9] Uber, Optional Injury Protection, https://www.uber.com/us/en/drive/insurance/injury-protection/.

[10] DoorDash, Occupational Accident Policy FAQ, https://help.doordash.com/dashers/s/article/Occupational-Accident-Policy-FAQ.

Mr. Dara Khosrowshahi
May 31, 2022
Page 3

insurance, protection from discrimination or retaliation, the right to organize a union, or any state-based paid sick leave or paid family leave).

Uber has also failed to disclose sufficient information about attacks on its workers. In December 2019, Uber released its first safety report, which included data from the preceding two years on motor vehicle fatalities, fatal physical assaults, and sexual assaults involving Uber-related rides. Notably, the report found that Uber drivers suffered sexual and physical assaults at nearly the same rate as passengers.[11] Although publishing this report was a positive step, it did not go far enough. The report excluded statistics on non-fatal physical assaults and robberies against drivers, and the statistics omitted safety incidents that occurred while the driver was active on the Uber app but waiting to be matched with a passenger. Uber has apparently not yet released a successive report despite promising to do so every two years. The limited safety data that Uber has made public is now three years out of date.

Uber also requires drivers to sign mandatory arbitration agreements, with an exception for sexual assault and harassment claims.[12] As Uber's Deputy General Counsel recently wrote, Uber eliminated the mandatory arbitration clauses for sexual assault and harassment claims "to empower survivors to maintain control of how they pursue their claims and feel free to share their stories however they see fit."[13] By the same reasoning, Uber should eliminate mandatory arbitration clauses for claims in which passengers and drivers are victims of other violent assaults.

The root problem of Uber's deficient health and safety policies is its exploitative business model. Make no mistake: App-based delivery workers are employees, and it is unacceptable to subject your employees to these occupational risks with such limited protections. These employees are the reason that Uber, like other app-based delivery companies, collects billions of dollars each year in revenue and is able to serve millions of American customers.[14] Uber's failure to properly categorize its app-based delivery workers as employees means that app-based delivery workers are essentially left on their own. Instead, your drivers and delivery workers should have access to key benefits, including workers' compensation, disability insurance, and the right to unionize.

Given Uber's poor health and safety record, we request a written response to the following questions by June 21, 2022. Please provide separate answers for each question for Uber and Postmates:

1. Please identify how and when your company classifies an app-based delivery worker as working. For example, does your company classify an app-based delivery worker as working when the app-based delivery worker has not yet been assigned to a specific

---

[11] Uber, *US Safety Report* 10 (Dec. 2019), https://www.uber.com/us/en/about/reports/us-safety-report/.
[12] Uber, *U.S. Terms of Use* (Apr. 4, 2022), https://www.uber.com/legal/en/document/?name=general-terms-of-use.
[13] Katie Waitzman, *Embracing ESG: Uber Counsel Talks Safety Standards*, LAW360 (Apr. 20, 2022), https://www.law360.com/massachusetts/articles/1484320/embracing-esg-uber-counsel-talks-safety-standards?nl_pk=577b076a-a54a-4597-99d7-4fac0272e66b.
[14] Uber, Inc., Annual Report (From 10-K), at 54 (Feb. 9, 2022) (revenue of $17.5 billion in 2021).

Mr. Dara Khosrowshahi
May 31, 2022
Page 4

passenger or delivery but is actively looking or waiting for an assignment? If not, why not?

2. Please provide the following safety incident information, including breakdowns of each answer by the race and gender of drivers:
   a. In each of the past five years, how many app-based delivery workers have died from injury or assault on the job while working for your company? For each year, please categorize the cause of each death (e.g., physical assault, motor vehicle accident).
   b. In each of the past five years, how many app-based delivery workers have suffered a non-fatal physical assault on the job while working for your company?
   c. In each of the past five years, how many app-based delivery workers have been sexually assaulted on the job while working for your company?
   d. In each of the past five years, how many app-based delivery workers have been robbed on the job while working for your company?
   e. In each of the past five years, how many app-based delivery workers have had their cars, bikes, or other means of transportation stolen on the job while working for your company?
   f. Will you commit to regularly publishing, on a publicly accessible website, data and other information on fatal physical assaults, non-fatal-physical assaults, sexual assaults, and robberies against your company's app-based delivery workers?

3. Does your company notify app-based delivery workers of ongoing on-the-job emergencies or dangerous situations that could affect their health or safety?
   a. If so, please provide a detailed description of the mechanisms by which your company notifies app-based delivery workers of such emergencies or dangerous situations.
   b. If not, why not?

4. Does your company notify the family members or next of kin of an app-based delivery worker who dies on the job while working for your company?
   a. If so, please describe your policy, practice, and procedure for such notification.
   b. If not, why not?
   c. Will your company commit to notifying its app-based delivery workers' family and next of kin in the event of their death on the job? If not, why not?

5. Has your company paid any compensation to, or has a company insurer paid any claim on behalf of, an app-based delivery worker or their family for injury to or death of the worker on the job while working for your company?
   a. If so, for each of the past five years, please identify the payments and their source, categorized by the amount paid and the nature of the injury or cause of death (e.g., fatal physical assault, motor vehicle accident).
   b. If not, why not?

Mr. Dara Khosrowshahi
May 31, 2022
Page 5

6. Does your company offer a form of occupational injury protection or accident protection to your app-based delivery workers?
   a. If so, please provide a detailed description of the protection program, including the explanation of coverage. If the program is available only to app-based delivery workers in California, please state so.
   b. Is the program free for app-based delivery workers? If not, will your company commit to making the program free?
   c. Does the program cover occupational injuries that occur while the driver is waiting for the next ride or delivery? If not, will your company commit to covering injuries that occur while the driver is waiting for the next ride or delivery?
   d. If your company does not offer an occupational injury or accident protection program, will your company commit to offering a free program for your app-based delivery workers? If not, why not?

7. Are your app-based delivery workers required to sign an arbitration agreement to work for your company?
   a. If so, what claims does your company require its app-based delivery workers to address through arbitration?
   b. Will your company commit to eliminating arbitration agreements from its contracts with your app-based delivery workers? If not, why not?

App-based delivery workers are some of the most vulnerable workers in our economy, but Uber has not sufficiently protected and supported them in the face of a global pandemic, increasing violence, and economic instability. Your refusal to grant them basic insurance and benefits, even in the face of death on the job, and despite their key role in your business, is unacceptable. Going forward, we strongly urge you to prioritize the health and safety of your employees.

Thank you in advance for your attention to this important matter.

Sincerely,

Edward J. Markey
United States Senator

Elizabeth Warren
United States Senator

Ayanna Pressley
Member of Congress

Richard Blumenthal
United States Senator

Mr. Dara Khosrowshahi
May 31, 2022
Page 6

Sherrod Brown
United States Senator

Bernard Sanders
United States Senator

Stephen F. Lynch
Member of Congress

Seth Moulton
Member of Congress

## DECLARATION OF S. PATRICK MENDEL

I, Shawn Patrick Mendel declare as follows:

1. I am a member of the class of Plaintiffs' in the *James v. Uber Technologies Inc.* Case No. 19-CV-06462-EMC.

2. I have personal knowledge of all the facts stated in this declaration and if called to testify, I could and would testify competently thereto.

3. I have provided a correct and true copy of the Uber Technologies Wage and Hour Cases Joint Case Management Conference Statement which is offered to the Court to notice that the California Attorney General is prosecuting the same claims as the Plaintiffs' in this case and against the same defendant Uber Technologies Inc. which means it is not disputable that there is a State action ongoing over the same State law issues and claims raised by the Plaintiffs' in the *James v Uber* case here, and that this Court should abstain and not interfere in the State action being prosecuted by the California Attorney General involving serious State Labor and Employment issues of California State laws, and is therefore required to dismiss the James case under the Younger doctrine.

4. I have provided a correct and true copy of the Congressional Letter sent to Uber Technologies Inc. CEO seeking answers to their questions regarding the safety of Uber drivers and their concern of the now more than 50 drivers who have been murdered on the job. This Court is asked to take Judicial Notice of this Letter and to accept that there is a very serious life threatening situation and Congress is very concerned and the Court should be as responsive to petitions to redress grievances as the members of Congress are showing.

I declare under the penalty of perjury under the laws of the State of California that the above is true and correct and will competently testify to the same.

Executed this 12th day of June, 2022, in San Leandro, California.

_____
S. Patrick Mendel

**Motion to Dismiss**

## PROOF OF SERVICE BY MAIL

## IN THE UNITED STATE DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## CASE NO. 19-CV-06462-EMC

I, Belinda Kirk declare:

I am a citizen of the United States, a resident of Alameda County, California, and

am over 18 years of age. I am not a party to the within entitled action.

My business/residence address is: 1986 Washington Ave, Apt A, San Leandro, CA

94577. On June 13, 2022, I served a copy of the:

1. NOTICE OF MOTION AND MOTION TO DISMISS and
   MEMORANDUM; REQUEST FOR JUDICIAL NOTICE AND
   AFFIDAVIT IN SUPPORT

In this action, in United States District Court, by placing a true copy thereof,

enclosed in a sealed envelope with postage thereon fully prepaid, in the United

States mail at San Leandro, California, 94577, addressed as follows:

Shannon Liss-Riordan                Theane Evangelis
Lichten and Liss-Riordan, P.C.      Gibson Dunn Crutcher LLP
729 Boylston St.                    333 South Grand Ave.
Suite 2000                          Los Angeles, CA 90071
Boston, MA 02116


I declare, under penalty of perjury, under the laws of the State of California that the

foregoing is true and correct.


Dated: June 13, 2022                    _Belinda Kirk_____
                                        BELINDA KIRK

**MOTION TO DISMISS**                              **1**