United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTOPHER JAMES, et al., | Case No. 19-cv-06462-EMC |
| Plaintiffs, | |
| v. | **ORDER GRANTING PLAINTIFFS' REQUEST FOR AN APPEAL BOND** |
| UBER TECHNOLOGIES INC., | Docket No. 233 |
| Defendant. | |

## I.     INTRODUCTION

Plaintiffs ask the Court to impose an appeal bond should S. Patrick Mendel, a settlement class member who is proceeding *pro se*, wish to pursue his objections on appeal.  *See* Docket No. 207 (Plaintiffs' Motion for Final Approval of Class Settlement, or "Mot.") at 20 & 20 n.13; Docket No. 239 ("Plaintiffs' Response to Mendel's Response to Order to Show Cause, or "Pl. Resp.").  The detailed factual and legal background of the case is set forth in the Court's January 26, 2021 Order.  *See* Docket No. 143.  This background information is recounted below to the extent relevant to Mr. Mendel's objections and the present motion.  For the reasons provided below, the Court **GRANTS IN PART** Plaintiffs' request for an appeal bond and requires Mr. Mendel to post a $1,000 appeal bond.

## II.     BACKGROUND

The underlying class action arose out of allegations that certain Uber and Uber Eats drivers were misclassified as independent contractors under California law.  Plaintiffs brought various wage and sick leave claims under the California Labor Code.  *See generally* Docket No. 81 (Amended Complaint).  Mr. Mendel, as a former driver for Uber, is a member of the class.  Docket No. 221 (July 8, 2022 Order) at 2.  At no point did Mr. Mendel seek to intervene in the

case.

On April 5, 2022, after two and a half years of litigation, the Court granted Plaintiffs' motion for preliminary approval of the class action settlement.  Docket No. 195.  The Court set the fairness hearing for July 14, 2022.  *Id.*

On May 27, 2022, Mr. Mendel filed an emergency temporary restraining order and sought a stay "to prevent the imminent murder, rape and assault of Uber drivers and passengers and an unjust settlement of valid claims against Uber."  Docket No. 204 (Motion for Temporary Restraining Order, or "TRO Mot.") at 2.  In his motion, Mr. Mendel argued that the Court should abstain from the case on the basis of *Younger* abstention doctrine "because the Attorney General of California is currently engaged in litigation in State Court over the very same labor and expense violations that are the subject of this dispute."  *Id.* at 7.  Mr. Mendel also devoted several pages to his argument that Uber operated in violation of the Federal Motor Carrier Act and related regulations.  *Id.* at 10–25.  As Mr. Mendel acknowledged in his briefing, this particular argument was not new: in a related case three years earlier, the Court rejected the same argument from Mr. Mendel because the alleged violations of federal and state law were "outside the scope" of the settlement agreement.  *Id.* at 12 (quoting *O'Connor v. Uber Techs., Inc.*, No. 13-cv-03826-EMC, 2019 WL 4394401, at *5 (N.D. Cal. Sept. 13, 2019), *aff'd*, No. 19-17073, 2019 WL 7602362 (9th Cir. Dec. 20, 2019)).

On May 31, 2022, the Court denied Mr. Mendel's motion for a temporary restraining order due to insufficient information regarding Mr. Mendel's standing to intervene in the action.  Docket No. 206.  The Court further observed that Mr. Mendel had not shown either a likelihood of success or a serious question going to the merits of his claims that would warrant the relief that he sought.  *Id.*

On June 9, 2022, when Plaintiffs moved for final approval of the class settlement, they asked the Court to impose an appeal bond on Mr. Mendel based on his "gross misuse of the judicial system."  Mot. at 20 & 20 n.4.  Plaintiffs noted that "most if not all of the issues raised by Mendel in his Objection have already been decided against him in other cases (all of them involving Mr. Mendel himself), and as such, he should be precluded from continuing to endlessly

United States District Court
Northern District of California

1   relitigate these questions." *Id.* at 21 (citing *O'Connor v. Uber Techs., Inc.*, 2019 WL 4394401,

2   *Overton v. Uber Techs., Inc.*, 333 F. Supp. 3d 927, 934 (N.D. Cal. 2018), *aff'd*, 805 F. App'x 485

3   (9th Cir. 2020); *Mendel v. Chao, et al.*, Case No. 19-cv-3244 (N.D. Cal.)).  In addition to Mr.

4   Mendel's various cases against Uber, Plaintiffs alleged that Mr. Mendel had litigated a "wholly

5   frivolous suit" against Class Counsel for malpractice. *Id.* at 20 n.13.  Based on Mr. Mendel's

6   previous cases against Uber and Class Counsel, Plaintiffs expressed their concern that Mr. Mendel

7   would "attempt to hold the class hostage over his own personal grievances." *Id.*

8           On July 5, 2022, Mr. Mendel moved to dismiss the case on the basis of the *Younger*

9   abstention doctrine.  *See* Docket No. 216 at 8–13.  Mr. Mendel also alleged that Uber was

10  operating in violation of federal and state law. *Id.* at 2–4.  The Court exercised its discretion to

11  construe Mr. Mendel's motion to dismiss as objections to the class settlement so that it could

12  consider the merits of his arguments during the upcoming fairness hearing.  Docket No. 221 at 2.

13  On July 12, 2022, Plaintiffs responded to Mr. Mendel's objections and explained why the *Younger*

14  abstention doctrine did not apply.  *See* Docket No. 223 at 2.  In particular, Plaintiffs pointed out

15  that the present case could not have "the practical effect of enjoining the state court proceedings"

16  because the instant case only settled the claims for a small percentage of Uber drivers.  *Id.*

17  Plaintiffs again asked the Court to "order [Mr. Mendel] to pay a bond if he continue[d] to pursue

18  these frivolous objections on appeal, to the detriment of the Settlement Class." *Id.* at 5.

19          On July 21, 2022, during the hearing on the motion for final approval of the class

20  settlement, the Court explained that it was overruling Mr. Mendel's objections because, for the

21  reasons stated on the record, *Younger* abstention did not apply.  Docket No. 227.  The Court orally

22  indicated during the hearing that it would require Mr. Mendel to show cause why he should not be

23  required to post a bond as a condition of appealing the Order and Final Judgment.  *Id.*  A few days

24  after the hearing, the Court ordered Mr. Mendel to show cause why the Court should not require

25  an appeal bond, should Mr. Mendel wish to pursue his objections on appeal.  *Id.* at 2.  The Court

26  specifically ordered Mr. Mendel to address (1) his financial ability to post bond; (2) the risk that

27  he would not pay the costs if the appeal loses; and (3) an assessment of the likelihood that he will

28  lose the appeal and be subject to costs.  *Id.*

United States District Court
Northern District of California

1    On August 23, 2022, Mr. Mendel filed his response to the order to show cause, *see* Docket

2    No. 235, as well as a "motion to disqualify or recuse for judicial prejudicial bias upon pro se

3    plaintiff." Docket No. 236. The majority of Mr. Mendel's response brief is dedicated to his

4    theories that Uber operates in violation of federal transportation laws and that the undersigned has

5    exhibited bias against him. Docket No. 235 (Mendel's Response to Order to Show Cause, or

6    "OSC Resp.") at 2–11. Mr. Mendel did not address the risk that he would not be able to pay the

7    costs if the appeal loses, nor did he address the likelihood that he would lose the appeal. *Id.* As

8    for his financial ability to post bond, Mr. Mendel alleged in his brief that he was "broke without

9    funds or assets because he is now approaching 65 years of age and cannot secure viable career

10   employment." *Id.* at 11. Mr. Mendel also alleged that the Ninth Circuit had granted him in forma

11   pauperis status in September 2021. *Id.*; *see also* Docket No. 237 at 24–25 (asking the Court to

12   take judicial notice of the Ninth Circuit's order requesting Mendel's motion to proceed in forma

13   pauperis). Mr. Mendel did not provide any evidence to support his allegation that he currently

14   lacks the financial ability to post an appeal bond.

15   On September 6, 2022, Plaintiffs filed their response to Mr. Mendel's submission, in which

16   they again urged the Court to impose an appeal bond. *See* Pl. Resp. at 5. The question of whether

17   to impose an appeal bond on Mr. Mendel is thus fully briefed and ripe for adjudication.

18   ### III.   LEGAL STANDARDS

19   "In a civil case, the district court may require an appellant to file a bond or provide other

20   security in any form and amount necessary to ensure payment of costs on appeal." Fed. R. App. P.

21   7. *See Azizian v. Federated Dep't Stores, Inc.*, 499 F.3d 950, 954–55 (9th Cir. 2007) (citing Fed.

22   R. App. P. 7). "[T]he purpose of [an appeal bond] is to protect an appellee against the risk of

23   nonpayment by an unsuccessful appellant." *Fleury v. Richemont N. Am., Inc.*, No. 05-cv-4525

24   EMC, 2008 WL 4680033, at *6 (N. D. Cal. Oct. 21, 2008) (quotations and citations omitted). In

25   determining whether a bond should be required, the court should consider: (1) the appellant's

26   financial ability to post a bond; (2) the risk that the appellant would not pay the appellee's costs if

27   the appeal loses; and (3) the merits of the appeal. *See id.* at *6–7. While an appeal bond should be

28   sufficient to cover costs on appeal, those costs may only include attorney fees if the claim is

brought under a fee-shifting statute that would allow recovery from an objecting class member, as opposed to a defendant. *Azizian*, 499 F.3d at 953–54. Even if a district court concludes that attorney fees are likely to be awarded on the ground that an appeal is frivolous, the district court may not include such fees in an appeal bond absent a fee shifting statute. *See id.* at 954.

**IV.   DISCUSSION**

Plaintiffs seek an appeal bond of an amount between $5,000 and $10,000. Pl. Resp. at 4. Rule 7 of the Federal Rules of Appellate Procedure provides that the district court may require an appellant to post a bond in order to ensure payment of appellate costs. *See* Fed. R. App. P. 7. Congress intended appeal bonds to "protect against the risk of nonpayment by an unsuccessful appellant." *Fleury*, 2008 WL 4680033, at *6. The Court first addresses the question of whether an appeal bond is appropriate in this case. Because, as explained below, the Court finds that an appeal bond is warranted, the Court then reaches the question of what costs should be included in the appeal bond.

A.   Appropriateness of Granting an Appeal Bond

The appropriateness of a bond is analyzed in light of (1) the appealing party's financial ability to post a bond, (2) the risk that the appealing party would not pay costs, if the appeal fails, and the (3) the likelihood that the appealing party will lose their appeal. *Fleury*, 2008 WL 4680033, at *6. The Ninth Circuit does not allow courts to consider an individual's status as a professional objector in determining the appropriateness of an appeal bond. *Id.* (citing *Azizian*, 499 F.3d at 960) (explaining that "Rule 7 is not intended to provide a penalty to address the frivolity of an appeal"). Review of these three factors leaves the Court confident that, on the whole, an appeal bond is appropriate in this case.

1.   Financial Ability to Post Bond

"The objector bears the burden of establishing that [he] cannot post an appeal bond." *Forcellati v. Hyland's, Inc.*, No. 12-cv-01983, 2018 WL 11374915, at *2 (C.D. Cal. Feb. 5, 2018) (citing *Miletak v. Allstate Ins. Co*, No. 06-cv-02778-JW, 2012 WL 3686785, at *2 (N.D. Cal. Aug. 27, 2012)); *see also Fleury*, 2008 WL 4680033, at *7 (finding that failure to establish an inability to pay a bond typically weighs in favor of awarding the bond).

United States District Court
Northern District of California

United States District Court
Northern District of California

In support of his argument that he cannot afford to post bond, Mr. Mendel alleged that he is "broke without funds or assets because he is now approaching 65 years of age and cannot secure viable career employment."  OSC Resp. at 11.  Mr. Mendel further pointed to his in forma pauperis status from last year.  *Id.*; *see also* Docket No. 237 (RJN) at 24.

Plaintiffs contend that Mr. Mendel "has not made a strong showing regarding his financial ability to pay."  Pl. Resp. at 3.  Plaintiffs note that Mr. Mendel did not include a sworn affidavit regarding his income and expenses that would permit the court to evaluate his claims of indigence.  *Id.*  And while Mr. Mendel did provide a copy of the Ninth Circuit's order granting him in forma pauperis status, Plaintiffs observe that this order was based upon financial information submitted in June 2021.  *Id.*  In Plaintiffs' view, "Mendel's reference to outdated filings from fourteen months ago fails to meet his burden to show that he is financially unable to pay an appeal bond today."  *Id.*

The Court agrees with Plaintiffs that Mr. Mendel did not provide a strong showing as to his financial ability to pay an appeal bond.  While Mr. Mendel's in forma pauperis status indicates that he had limited financial means as of June 2021, the Court was not provided with a declaration or other evidence that elucidated his financial status as of present day.[1]  Without some sort of evidentiary showing on this front, the Court cannot find that Mr. Mendel has established that he *currently* lacks the financial ability to post an appeal bond.  *See Bickley v. Schneider Nat'l, Inc.*, No. 08-cv-05806-JSW, 2016 WL 9114937, at *4 (N.D. Cal. Nov. 28, 2016) ("The Court concludes that both Mr. Ellis and Mr. Pittman have limited financial means, but have the ability to post a bond in some amount. The Court finds that this factor weighs in favor of requiring a bond, but in an amount less than that requested by Plaintiffs."); *cf. Edwards v. Nat'l Milk Producers Fed'n*, No. 11-cv-04766-JSW, 2017 WL 4581926, at *5 (N.D. Cal. Sept. 13, 2017) ("The Court finds that Andrews has shown that he has limited financial means available for the purpose of posting an appeal bond.  However, the Court considers not only whether Andrews currently

---

[1] The Court is mindful that that Mr. Mendel is proceeding *pro se.*  The Court notes for the record, however, that Mr. Mendel did submit a declaration in support of his motion to disqualify the undersigned.  *See* Docket No. 237 at 2.

possess sufficient assets to post a bond, but whether he can qualify for a bond in the amount imposed, and in light of Andrews' profession and income finds that Andrews does have the ability to qualify for and post a bond.").

Because Mr. Mendel could have and should have provided current evidence that revealed his current ability to pay an appeal bond, the Court concludes that this factor weighs only slightly against imposing an appeal bond.

### 2.   Risk of Non-Payment

The second factor, risk of non-payment, weighs in favor of granting an appeal bond when collecting costs after a failed appeal would be difficult. *See Fleury*, 2008 WL 4680033, at *7. If an objector resides outside of the state or circuit where an appeal was filed, then an appeal bond is likely appropriate. *Id.* at *7 (finding that the risk of non-payment favored granting the bond because the objector did not reside in California or the Ninth Circuit); *cf. Miletak*, 2012 WL 4686785, at *2 (finding that this factor was "neutral" because the objector was "a resident of California"). Here, Mr. Mendel lives in California. *See, e.g.*, OSC Resp. at 1 (reflecting that Mr. Mendel has a mailing address in San Leandro).

Plaintiffs nonetheless contend that the risk that Mr. Mendel would not pay the costs of appeal is high because "Mr. Mendel has shown a consistent disregard for court rules and procedures." Pl. Resp. at 3. In support, Plaintiffs note that Mr. Mendel filed a procedurally improper motion to dismiss, a "groundless" motion to disqualify the undersigned, and has continued to "press arguments that have already been rejected by the Ninth Circuit." *Id.* at 3–4. The Court agrees with Plaintiffs that Mr. Mendel has filed procedurally improper motions. The Court does not, however, find that such conduct necessarily demonstrates that Mr. Mendel will not pay the costs of an appeal, though it raises the specter of non-cooperation.

The Court concludes that this factor is neutral.

### 3.   Merits of the Appeal

The final consideration in determining whether an appeal bond should be awarded is the merits of the appeal in question. *Fleury*, 2008 WL 4680033, at *21. The Court agrees with Plaintiffs that this factor cuts strongly in favor of requiring a bond.

United States District Court
Northern District of California

United States District Court
Northern District of California

During the fairness hearing on July 21, 2022, the Court thoroughly considered Mr. Mendel's objections regarding *Younger* abstention and found them to be without merit. And to the extent that Mr. Mendel's objections are grounded in the purported unlawfulness of Uber's ridesharing business model, Plaintiffs correctly observe that the Ninth Circuit recently affirmed the dismissal of such claims as barred by res judicata. *See Mendel v. Randolph*, No. 21-15910, 2022 WL 2526965, at *1 (9th Cir. July 7, 2022) ("Mendel's claims that Uber was violating federal motor carrier and antitrust laws were 'based on the same nucleus of facts' as the claims adjudicated in *Overton*."). As such, the Court finds that Mr. Mendel is not likely to succeed on the merits of his appeal and this factor weighs decisively in favor of a bond.

In sum: out of the three factors, the first factor weighs slightly against imposing an appeal bond, the second factor is neutral, and the third factor weighs strongly in favor of imposing an appeal bond. As a result, the Court concludes that an appeal bond is warranted. Next, the Court considers the appropriate amount of the appeal bond.

B.   Appropriate Amount of the Appeal Bond

"It is well-established in the Ninth Circuit that Rule 7 permits only recoverable costs to be included in an appellate bond. This includes the costs of appeal specified in Rule 39, unless a rule or statute, such as an attorneys' fees shifting statute, explicitly provides for the recovery of additional expenses." *Broomfield v. Craft Brew All., Inc.*, No. 17-cv-01027-BLF, 2020 WL 1972501, at *3 (N.D. Cal. Apr. 13, 2020) (quoting *Vargas v. Ford Motor Co.*, No. 12-cv-08388, 2018 WL 2077943, at *1 (C.D. Cal. May 1, 2018)). Rule 39(e) costs include: (1) preparation and transmission of the record; (2) the reporter's transcript; (3) premiums for a bond to preserve rights pending appeal; and (4) the notice of appeal filing fee. Fed. R. App. P. 39(e). "Plaintiffs need not provide an itemized breakdown of the anticipated appellate costs." *Tait v. BSH Home Appliances Corp.*, No. 10-cv-0711, 2015 WL 12748268, at *2 (C.D. Cal. Oct. 19, 2015). "Rather, courts must consider the types of costs requested and the reasonableness of the requests . . . in light of other cases, and the statements in Plaintiffs' declaration." *Broomfield*, 2020 WL 1972501, at *3 (quoting *Tait*, 2015 WL 12748268, at *2).

Plaintiffs submit that the appropriate amount of the appeal bond is in the range of $5,000 to

$10,000.  Pl. Resp. at 4.  Plaintiffs specifically estimate that the costs of preparing the transcript of the final approval hearing and record on appeal, as well as attorneys fees associated with the prosecution of the appeal "are likely to amount to between $5,000 and $10,000 (if not more)."  *Id.* Plaintiffs did not, however, provide an attorney declaration or any other evidence in support of their cost estimate.  Nor did Plaintiffs provide any authority to support their theory that attorneys fees could be included in an appeal bond under these circumstances, even though these costs are not included in Rule 39(e).  *See* Fed. R. App. P. 39(e).

"[C]ourts have routinely estimated that $1,000 is all that is necessary to ensure payment of costs on appeal associated with Rule 39(e)."  *Broomfield*, 2020 WL 1972501, at *4 (citing and collecting authorities); *see also Torczyner v. Staples, Inc.*, No. 16-cv-2965, 2017 WL 11421542, at *2 (S.D. Cal. Nov. 21, 2017) ("The Rule 39 costs (copying and record preparation costs) are not likely to exceed $1,000."); *Bickley*, 2016 WL 9114937, at *5 ("[T]he Court finds that a bond in a total amount of $1,000.00 is all that is necessary to ensure payment of costs on appeal" to cover plaintiffs' projected costs "to copy, prepare, and serve the record and relevant reporter transcripts").  In the absence of any evidence from Plaintiffs indicating that their allowable costs for purposes of an appeal bond exceed this amount, the Court will exercise its discretion and impose an appeal bond in the amount of $1,000.

## V.   **CONCLUSION**

For the foregoing reasons, the Court **GRANTS IN PART** Plaintiffs' request for an appeal bond and orders Mr. Mendel to post a bond in the amount of $1,000 should Mr. Mendel wish to pursue his objections on appeal.

**IT IS SO ORDERED**.

Dated: October 10, 2022

_____
EDWARD M. CHEN
United States District Judge

United States District Court
Northern District of California

9